USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/4/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BEVERLY HILLS TEDDY BEAR COMPANY, :
:
                  Plaintiff, :
:   1:19-cv-3766-GHW
      -against- :
:   MEMORANDUM OPINION
BEST BRANDS CONSUMER PRODUCTS, INC.; :   AND ORDER
and BEST BRANDS SALES COMPANY LLC, :
:
                Defendants. :
-------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

      In an effort to challenge the validity of Beverly Hills Teddy Bear Company's ("Beverly Hills" or "Plaintiff") copyrights in its "Squeezamals" line of stuffed toys, Best Brands Consumer Products, Inc. and Best Brands Sales Company LLC (collectively "Best Brands" or "Defendants") have invoked 17 U.S.C. § 411(b)(2)—a seldom-used statutory mechanism contained within the Copyright Act that requires district courts to ask the Register of Copyrights whether it would have refused registration if it had known that certain information included in the underlying registration application was inaccurate. *See Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016). Defendants have squeezed many arguments into their motion, but, from the Court's perspective, it is all just fluff; the factual record of this case does not currently permit the Court to determine that Plaintiff included any inaccuracies in its registration application. Accordingly, Best Brands' request for a referral is, for now, DENIED.

I.      **BACKGROUND**[1]

In 2017, Beverly Hills hosted a design contest through the website www.99designs.com. Defs.' Mot. for a Referral to the U.S. Copyright Office, Dkt. No. 54 ("Mot."), at 7; Pl.'s Opp'n, Dkt. No. 60 ("Opp'n"), at 7; Declaration of Kerry Brownlee, Dkt. No. 61-1 ("Brownlee Decl."), Ex. A. The contest challenged participants to "create cute stuffed animal designs for [an] up and coming product[.]" Brownlee Decl., Ex. A. The webpage provided participants with links to the websites of two of Beverly Hills' competitors, BC Mini and Silly Squishies, and an image of a previous Beverly Hills design, "for inspiration." *Id.*

Two people won the contest: Benson Tjio and Francesca Ibba. Mot. at 7; Opp'n at 7. Beverly Hills excised a portion of Ibba's submission—the eyes—and directed Tjio to incorporate it into his final design. Mot. at 11; Opp'n at 7; Dkt. Nos. 55-7, 55-8. And thus, the Squeezamals—"collectible, scented, super-squeezy slow rise foam stuffed toys" that come in a variety of mostly animal forms—were born. Second Amended Complaint, Dkt. No. 42 ("SAC"), ¶ 9. Many of these Squeezamals were registered as copyrighted sculptural works with the United States Copyright Office. SAC ¶ 18.

In April 2019, Beverly Hills sued Best Brands for copyright infringement, alleging that Best Brands' production and sale of their "Fuzzy Squishy" line of toys infringed on Beverly Hills' exclusive rights to the Squeezamals' design. SAC ¶¶ 33–36. After discovery closed in March 2020, Best Brands asked the Court for a referral to the Register of Copyrights pursuant to 17 U.S.C.

---

[1] Even though the parties have completed discovery, there is no summary judgment record upon which the Court can rely in adjudicating this dispute—a point which, as the reader will soon see, strongly influences the Court's decision that the factual record here simply does not support a referral to the Copyright Office at this time. Still, the parties have provided the Court with extensive briefing and supporting documentary evidence. Based on this briefing, as citations to both the motion and its opposition reveal, the following facts appear to be undisputed, with one exception: the spelling of Benson Tjio's name. *See* Mot. at 1; Opp'n at 4.

§ 411(b)(2), a "peculiar" and "rarely invoked" provision of the Copyright Act—but one examined twice by this Court in recent years.

*Rosen Book Works*, 188 F. Supp. 3d at 348; *see also Palmer/Kane LLC v. Gareth Stevens Publ'g*, 1:15-cv-7404-GHW, 2016 WL 6238612 (S.D.N.Y. Oct. 24, 2016).  This provision requires courts to seek the advice of the Register in cases where a party alleges that its adversary's certificate of registration contains inaccurate information.

Best Brands allege that the certificates of registration for the Squeezamals are stuffed with inaccuracies.  Mot. at 1.  Specifically, Best Brands allege that the registrations inaccurately (1) list Tjio as the author of the three-dimensional sculptural works for which Beverly Hills sought registration; (2) list Tjio as the sole author of the works and fail to disclose Ibba's contribution; (3) list an incorrect date and (4) nation of first publication, and; (5) fail to identify preexisting works upon which the Squeezamals were based.  Mot. at 1.

Beverly Hills opposed Best Brands' motion on April 9, 2020.  Dkt. No. 60.  Best Brands replied on April 21, 2020.  Dkt. No 64.

## II. LEGAL STANDARD

Under the current version of the Copyright Act, registration of a copyright claim is not a condition of copyright protection.  17 U.S.C. § 408(a).  With certain exceptions that are not relevant here, however, a certificate of copyright registration is a prerequisite to bringing a civil copyright infringement action.  *See* 17 U.S.C. § 411(a).  By statute, a certificate of registration satisfies this prerequisite "regardless of whether the certificate contains any inaccurate information," unless the following two-part test is met: "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1).

Section 411(b)(2), in turn, requires that courts seek the advice of the Register of Copyrights before finding that a certificate of registration does not support an infringement action. *Rosen Book Works*, 188 F. Supp. 3d at 348 ("[C]ourts are in agreement that the provision is mandatory in nature[.]") (citing *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 623 (7th Cir. 2013) ("Instead of relying solely on the court's own assessment of the Register's response to an inaccuracy, the statute obligates courts to obtain an opinion from the Register on the matter.")). In other words, a court must first obtain the Register's guidance before finding that the provision of knowingly inaccurate information would have caused the Register to refuse registration.

Although the statute by its terms requires a referral "in any case in which inaccurate information described under [§ 411(b)(1)] is alleged," 17 U.S.C. § 411(b)(2), to protect against the potential for abuse inherent in this process, courts in this circuit generally agree that they may first require the party seeking invalidation to establish as a factual matter that "(1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office." *Rosen Book Works*, 188 F. Supp. 3d at 349.[2]

Thus, before referring the issue to the Register, a court may determine whether the allegedly inaccurate information is, in fact, inaccurate. Where the factual record is insufficient to make such a determination, a court may choose to "await further factual development at the summary-judgment stage or at trial before issuing a referral." *King-Devick Test Inc. v. NYU Langone Hosps.*, 17-CV-9307

---

[2] Providing its opinion in an oft-cited case addressing this statute, the Register of Copyrights agreed:
> While 17 U.S.C. § 411(b)(2) requires the court to seek the Register's advice when there is an allegation that an application contains inaccurate information, the Register observes that the statute says nothing about the timing of the request. The Register suggests that, at a minimum, the court retains the power to delay the request until a factual record has been developed, *e.g.*, through affidavits or discovery.

Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 11, *Olem Shoe Corp. v. Wash. Shoe Co.*, 09 Civ. 23494 (S.D. Fla.), ECF No. 209. Although the Register's interpretation of the statute warrants "no more than persuasive deference, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), 'it is helpful and, as it tracks the language of the statute, persuasive.'" *Kidd v. Thomson Reuters Corp.*, 925 F.3d 99, 106 (2d Cir. 2019).

4

(JPO), 2019 WL 3071935, at *9 (S.D.N.Y. July 15, 2019); *see also Chic Home Design, LLC v. New Journey Grp. Ltd.*, 15-CV-9468 (JPO), 2017 WL 3738775, at *4 n.2 (S.D.N.Y. Aug. 30, 2017) (concluding that referral was "not appropriate or required" in light of ongoing factual disputes); *Gareth Stevens Publ'g*, 2016 WL 6238612, at *4 (recognizing the district court's "discretion . . . with respect to the appropriate timing of a [referral] request"). If a court ultimately determines that a registration contains inaccuracies, the Register will then "advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2).

### III. ANALYSIS

Defendants moved for a referral to the Register with respect to the materiality of several alleged inaccuracies that, Defendants claim, Beverly Hills knowingly included in its application for copyright registration of the works. Because Best Brands decided to scatter these arguments across their motion in a fairly indigestible way, the Court has summarized the alleged inaccuracies as follows:

A. The registrations incorrectly list Benson Tjio as the author of three-dimensional sculptural works; he allegedly authored only the two-dimensional artwork upon which the three-dimensional sculptural works were based. *See* Reply, Dkt. No. 64 ("Reply"), at 9.

B. The registrations list Benson Tjio as the sole author of the Squeezamals, but Francesca Ibba designed the eyes. Accordingly, the registration is inaccurate because it omits mention of the inclusion of Ibba's contribution to the works for which copyright is claimed. *See* Reply at 9–10.

C. The registrations incorrectly list December 21, 2017, the date the Squeezamals shipped to the United States, as the date of first publication for all the Squeezamals other than the Series 1 Unicorn. But the two-dimensional designs and samples of the three-dimensional products were shown to potential buyers as early as October, 2017. And because the Squeezamals shipped on December 21, 2017, Beverly Hills must have offered them for sale at an earlier date. The registration for the Series 1 Unicorn lists February 27, 2018 as the date of first publication. Best Brands allege this date is inaccurate for the same reasons. *See* Reply at 10.

    D. The registrations list the United States as the nation of first publication. This is allegedly inaccurate because the underlying two-dimensional artwork and samples of some of the three-dimensional products were displayed at a Hong Kong trade show in October 2017. *See* Reply at 10.

    E. The registrations do not identify any preexisting works on which the Squeezamals are based or works that the Squeezamals incorporate. *See* Reply at 10.

Although the parties have engaged in extensive discovery, the parties have not developed a record of undisputed facts on which the Court may rely in determining whether there are any inaccuracies warranting a referral. Still, even the facts that Best Brands marshal in support of their motion do not support a finding that any of these are inaccuracies warranting referral to the Register at this time.

**A. Benson Tjio's Authorship of the Three-dimensional Sculptural Works**

The parties agree: Benson Tjio created two-dimensional artwork, but the works deposited with the Register are three-dimensional sculptures. Best Brands seem to think that this fact alone reveals that Tjio is not the author of the Squeezamals. As a matter of law, that is wrong.

Someone who authors a work that is later reproduced in a different medium is the author of the reproduction as well, unless the reproduction's creator adds "an original contribution not present in the underlying work of art." *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 491 (2d Cir. 1976) (internal quotations omitted). This is because authorship exists only where there is originality—the "*sine qua non* of copyright," *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)—and mere reproduction of a work of art in a different medium "cannot by itself constitute the originality required for copyright protection[.]" *Earth Flag Ltd. v. Alamo Flag Co.*, 153 F. Supp. 2d 349, 354 (S.D.N.Y. 2001); *see also Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980) ("[T]he mere reproduction of the [two-dimensional drawings of] Disney characters in plastic, even though the adaptation of the preexisting works to this medium undoubtedly involved some degree of manufacturing skill, does not constitute originality as this Court has defined the term."); *Batlin*,

536 F.2d at 491 ("[T]he mere reproduction of a work of art in a different medium should not constitute the required originality for the reason that no one can claim to have independently evolved any particular medium."). Thus, in a case involving sculptural reproduction of a two-dimensional design, authorship of the final sculptural work vests in the author of the underlying design unless someone other than that author exercised "creative control or discretion" over the sculpture, *Kyjen Co. v. Vo-Toys, Inc.*, 223 F. Supp. 2d 1065, 1069 (C.D. Cal. 2002), or "add[ed] new original copyrightable authorship to [the sculptural] work," *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 600 (D. Conn. 2019) (emphasis and citations omitted).

Best Brands assert that Tjio is not the author of the three-dimensional sculptural works because he did not physically "create any plush toys." Mot. at 7. But if the Squeezamals are just reproductions of Tjio's two-dimensional designs, then the registrations accurately list him as the author. To establish that the registrations are inaccurate, Best Brands would have to proffer some evidence that someone other than Tjio contributed new, original, copyrightable authorship to the Squeezamals' final form.

Best Brands have not done that; according to Best Brands, Tjio provided Beverly Hills with his two-dimensional designs, and "Beverly Hills took the artwork, and . . . its production department worked with a manufacturer overseas to have the manufacturer create plush toys out of it." Mot. at 7. Indeed, according to Best Brands, Beverly Hills worked carefully to "make sure [the three-dimensional design] look[ed] as close as possible to the [two-dimensional] art." Dkt. No. 55-14 at 20:10–12. While this undertaking "undoubtedly involved some degree of manufacturing skill," this evidence demonstrates, if anything, that *nothing* original was added to the Squeezamals during the production process. *Durham Indus.*, 630 F.2d at 910.[3]

---

[3] Faced with very similar sets of facts, a number of courts have reached the same conclusion: a manufacturer's translation of a two-dimensional drawing into a three-dimensional work is not an original contribution meriting independent copyright protection. *See Durham Indus.*, 630 F.2d at 910 ("[T]he toys

7

Because Best Brands have not established any facts showing that someone other than Tjio contributed new, original, copyrightable authorship to the sculptural reproductions of Tjio's designs, the Court cannot find that Beverly Hills' certificates of registration are inaccurate. It is plausible—though perhaps unlikely, given the uncontested testimony already presented in Best Brands' application—that further record development may reveal that Beverly Hills or the manufacturer actively imbued Tjio's final design with enough originality to establish independent authorship. Absent such evidence, however, referral of this issue to the Register is unwarranted.

### B. The Inclusion of Discrete Design Elements Not Created by Benson Tjio

Again, neither party disagrees that Ibba designed the Squeezamals' eyes, and that she is not listed as the author or coauthor of the Squeezamals. But the mere fact that Ibba designed the Squeezamals' eyes does not necessarily mean that she must be listed somewhere on the registration certificate for the certificate to be accurate.

Best Brands do not explain where Beverly Hills ought to have disclosed Ibba's contribution.[4] For one, Ibba certainly is not the sole author of the Squeezamals. An author is someone "to whom anything owes its origin; originator; maker." *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 107 (2d Cir. 2002) (quoting *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58 (1884)). Best

---

themselves reflect[] no independent creation, no distinguishable variation from preexisting works, nothing recognizably the author's own contribution that sets [the toys] apart from [the two-dimensional drawings upon which they were based]."); *Kyjen*, 223 F. Supp. 2d at 1068–69 (finding author of two-dimensional designs was also author of three-dimensional toys that "generally reflected" those designs, despite intermediate involvement of manufacturer and individual who translated designs into computerized form); *JCW Investments, Inc. v. Novelty, Inc.*, 289 F. Supp. 2d 1023, 1034 (N.D. Ill. 2003), *aff'd*, 482 F.3d 910 (7th Cir. 2007) (finding author of two-dimensional drawing was also author of both a three-dimensional prototype that was a "faithful translation" of the drawing, and a three-dimensional final product that was "devoid of original artistic contribution," both of which were prepared by third parties); *LEGO*, 404 F. Supp. 3d at 600 (D. Conn. 2019) ("The shift from patent drawing to sculpture does not have the requisite originality to constitute a derivative work.").

[4] Best Brands generally presented the Court with a list of theories *why* the registrations might be inaccurate without explaining—or providing any legal support as to—*how*. This sort of briefing forces a court to comb the record, concoct legal arguments, and ultimately do the litigant's work for him. But, as Judge Irving Goldberg pithily put it: "Judges are not ferrets!" *Nicholas Acoustics & Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 847 (5th Cir. 1983).

Brands acknowledge that Tjio created the two-dimensional Squeezamals artwork, but, at Beverly Hills' direction, "incorporate[d]" some "features from the submission of Francesca Ibba . . . into his 2D artwork." Mot. at 10. The record suggests that Ibba authored only a discrete element of the final Squeezamals design, not that any Squeezamal overall "owes its origin" to Ibba.

Whether Ibba should have been listed as a coauthor is a different question. "A co-authorship claimant bears the burden of establishing that each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors." *Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998). Even if Best Brands satisfied the first portion of this test, Defendants have not alleged any facts to suggest that Ibba and Tjio intended to be co-authors.

Referral of this question to the Register is therefore unwarranted given the facts Best Brands have presented to the Court.

### C. The Accuracy of the Publication Dates

Best Brands have not pointed to any facts suggesting that the copyright registrations, which list December 21, 2017 as the publication date for all works other than the Series 1 Unicorn and February 27, 2018 for the Series 1 Unicorn, are incorrect. To allege an inaccuracy here, Best Brands would have had to establish some facts showing that the Squeezamals were published on dates other than December 21, 2017 and February 27, 2018.

> The Copyright Act defines publication as:
>
> the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

17 U.S.C. § 101. The facts Best Brands point to in support of their application for a request to the Register are as follows: (i) Tjio's designs were shown to potential distributors and retailers during

and after a Hong Kong trade show in October 2017; and (ii) the Squeezamals were first shipped to customers on December 21, 2017. Mot. at 16.

These facts are insufficient to demonstrate that the registrations contain an inaccuracy. First, to the extent that the works were openly displayed to passersby at the fair, the "public . . . display of a work does not of itself constitute publication." 17 U.S.C. § 101. Second, not every instance in which an as-yet-unpublished work is shared with others constitutes publication under the Copyright Act. "[P]ublication to a definitely selected group and for a limited purpose, and without the right of diffusion, reproduction, distribution, or sale represents only a limited publication" that does not amount to publication as that term is defined in the Copyright Act. *King-Devick Test, Inc. v. NYU Langone Hosps.*, 17-CV-9307 (JPO), 2019 WL 78986, at *6 (S.D.N.Y. Jan. 2, 2019) (internal quotations omitted). For example, "[s]ending copies of a manuscript to prospective publishers in an effort to secure a book contract does not constitute publication (regardless of whether the copies are returned)." U.S. Copyright Office, Compendium of U.S. Copyright Practices § 1905.1 (3d ed. 2017).

The deposition testimony that Best Brands cite in support of their argument suggests that Beverly Hills' actions in showing the works to prospective buyers at the fair constituted only limited publication. *See* Mot. at 13. David Socha, Beverly Hills' Chief Executive Officer, testified that samples of the works were kept hidden underneath a food service tray, Dkt. No. 55-12 at Tr. 89:14–17, and shown only to "a couple key partners," *i.e.*, "people [Beverly Hills] trust with [its] life that wouldn't share with others." Dkt. No. 55-12 at Tr. 87:17–21. Likewise, Randy Clark, Beverly Hills' President, testified that there would have been "no offers for sale" in October, 2017. Dkt. No. 55-14 at Tr. 85:9–11. Rather, Clark testified, prospective buyers at the fair would have been shown "art boards" in a "private room." Dkt. No. 55-14 at Tr. 85: 12–15. Moreover, Best Brands' only documentary evidence of the purported October 2017 publication, an email from Socha to a potential buyer, specifically admonishes the buyer that the forthcoming "spec" is "confidential,"

10

Dkt. No. 55-11—evidence of the limited purpose for which the "spec" could be used. *See* Compendium (Third) § 1905.1 (suggesting a mark of "Confidential" as an example of an express restriction on further disclosure).

The record is decidedly less developed as to Best Brands' second argument. Best Brands argue that, because the works were first shipped on December 21, 2017, logic dictates that "the product had already been offered for sale, and sold," on a prior date. Mot. at 16. The Register has contemplated similar circumstances in its guidance, stating that "[o]ffering a new line of toys to a group of retailers constitutes publication, provided that the toys are available for distribution when the offer is made." Compendium (Third) § 1906.3. But Best Brands have not shared any facts establishing the date on which the Squeezamals Products were available for distribution.

In sum, Best Brands have failed to establish facts sufficient to support the alleged inaccuracies. Though Best Brands cite extensively to the record in support of their argument that the Squeezamals were published at the Hong Kong Toy Fair, the facts they have shared with the Court are insufficient to support their argument as a matter of law. Conversely, Best Brands provide no factual support for their allegation that publication of the Squeezamals preceded the documented shipping date. Accordingly, the Court cannot say, on this record, whether the registration forms are inaccurate.

### D. The Nation of First Publication

Best Brands incorrectly contend that the works were first published at the Hong Kong Toy Fair, and thus that the registrations are inaccurate because they designate the United States, not Hong Kong or China, as the nation of first publication. As explained above in Part II.C., the Court has already found that the facts Defendants have asserted in support of this argument are, at this time, insufficient. Referral of this question to the Register of Copyrights is therefore unwarranted on this record.

### E. The Omission of Preexisting Works

Best Brands again fail to establish facts sufficient to support their allegation that the certificates of registration inaccurately omit mention of several preexisting works. The Copyright Act requires that a registration application include, "in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." 17 U.S.C. § 409(9). "Because a derivative work is only copyrightable to the extent that it is original, it is important that the Copyright Office be informed of the preexisting work so that it may determine if the author of the derivative work has made an original contribution." *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 155 F. Supp. 2d 1, 23 (S.D.N.Y. 2001). Beverly Hills apparently identified no preexisting works upon which the Squeezamals were based. To show an inaccuracy here, Best Brands must establish facts showing that the Squeezamals are derivative of or incorporate preexisting works.

> In copyright law,
>
> [a] derivative work is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101.

A very generous reading of Best Brands' motion yields two theories advanced to support their contention that the Squeezamals are derivative. First, according to Best Brands, the Squeezamals are derivative works because, in developing the products, Beverly Hills directed its designers to look at other plush toys "for inspiration." Mot. at 19; Brownlee Decl. Ex. A at 2. Second, the Squeezamals are, according to Best Brands, based on a combination of a specific BC Mini product (the "Yamani") and a product sold by Hasbro. Mot. at 20.

This first theory is meritless as currently framed. "[C]opyright does not protect ideas; it protects only the author's particularized expression of the idea." *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135–36 (2d Cir. 2004). Just as "an upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of doll face"—namely, Barbie—other elements constitute the "idea" of an animal-like plush toy. *Id.* at 136. That broad idea belongs not to one individual author, "but to the public domain." *Id.* To establish that the Squeezamals are derivative works, Best Brands must show that Beverly Hills based the Squeezamals on more than mere ideas. They must point to some specific, particularized expression upon which the Squeezamals were based.

Best Brands' conclusory assertion that the Squeezamals are derivative works reflects a fuzzy understanding of copyright law. It is not enough to argue, as Best Brands do, that the Squeezamals are derivative works because they were generally "based on the hot trends from Japan." Mot. at 18; *see also* Dkt. No. 55-16. Nor is it sufficient to assert that Beverly Hills purportedly "wanted the designers to create products like the BC Mini and Silly Squishy" products or directed designers to look at those products "for inspiration." Mot. at 19. These facts do not show that Beverly Hills based its designs on anything more than the unprotectable *scenes a faire* of the plush toy world—*i.e.*, elements "which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Penguin Random House LLC v. Colting*, 270 F. Supp. 3d 736, 747 (S.D.N.Y. 2017) (quoting *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir. 1980)). These indispensable elements belong to the public domain.

Best Brands' second theory fares no better. Best Brands allege that Beverly Hills "unlawfully and pervasively copied" the design of the Yamani products and the eyes from Hasbro's "Littlest Pet Shop" line of toys and "concealed that information from the Copyright Office." Mot. at 19, 21. Whether Beverly Hills' omission of the Yamani and Littlest Pet Shop products as preexisting

material renders the registrations inaccurate thus depends on whether the Squeezamals were, as a matter of fact, copied from those preexisting works.

"Since direct evidence of copying is rarely possible, copying is generally established by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works." *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993). "[T]he determination of the extent of similarity that will constitute a substantial, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (quoting 4-13 Nimmer on Copyright § 13.03 (2009)). "For that reason, and because the question of substantial similarity typically presents an extremely close question of fact, questions of non-infringement have traditionally been reserved for the trier of fact." *Id. See also Durham Indus.*, 630 F.2d at 911 ("[T]he question of infringement is generally resolved by the fact-finder's prediction of the probable reaction of a hypothetical 'ordinary observer.'"). Whether the Squeezamals are copied from or derivative of the Yamani and Littlest Pet Shop products is a question of fact that the Court cannot properly resolve at this stage of the litigation.

Best Brands have failed to allege that the Squeezamals copy any protected expression, and the question of whether the Squeezamals are copied from (or derivative of) the Yamani and Littlest Pet Shop products is a question of fact better resolved by a trier of fact. Thus, referral of this issue is unwarranted on this record.

### IV.     Conclusion

The Court will not refer any of the proposed questions to the Register of Copyrights at this time. Right now, the record is far too undeveloped: some facts are missing, and those already presented to the Court do not adequately support Best Brands' arguments that the underlying certificates of registration at issue in this case are inaccurate.

Defendants' motion for issuance of a request to the Register of Copyrights is therefore DENIED without prejudice. The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 54 and 55.

SO ORDERED.

Dated: June 4, 2020

_____
GREGORY H. WOODS
United States District Judge