UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY HILLS TEDDY BEAR COMPANY<br><br>        Plaintiff,<br><br>v.<br><br>BEST BRANDS CONSUMER PRODUCTS, INC.,<br>and BEST BRANDS SALES COMPANY, LLC<br><br>        Defendants. | Civil Action No.:<br><br>1:19-cv-3766 (GHW) |

**DEFENDANT BEST BRANDS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR DISCOVERY SANCTIONS**

Morris E. Cohen
Lee A. Goldberg
Limor Wigder
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 3rd Floor
New York, New York 10019
(646) 380-2087 (phone – main)
(646) 380-2084 (phone – direct)
(646) 514-2123 (fax)
LGoldberg@GoldbergCohen.com
MCohen@GoldbergCohen.com
LWigder@GoldbergCohen.com

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 1

I.      BEVERLY HILLS INTENTIONALLY CONCEALED INFORMATION ...................... 1

II.      THE INFORMATION IS EXTREMELY RELEVANT ...................................... 4

III.     BEVERLY HILLS CONTINUES TO ACT IN BAD FAITH ........................... 4

IV.     PLAINTIFF IS NOT ENTITLED TO EVADE DISCOVERY WITH IMPUNITY ......... 6

      A.      Mr. Socha Does Not Have the Right to Unilaterally Rule on Relevance ............... 6

      B.      Beverly Hills' Attorneys Failed to Meet Their Responsibilities ............................ 7

V.      SEVERE SANCTIONS ARE WARRANTED .................................................. 9

CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009 (2d Cir. 1988)................................................ 9

*Banco de Ponce v. Buxbaum*, 1995 U.S. Dist. LEXIS 2692, 995 WL 92324 (S.D.N.Y. Mar. 7, 1995) ............................................................................................................................................... 9

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)......................................................................................... 9

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979) .............................................................................................................................................. 8

*Clark v. Westchester Cnty.*, 1998 U.S. Dist. LEXIS 15912 (S.D.N.Y. Oct. 8, 1998) .................... 9

*Gordon Partners, et. al. v. Blumenthal (In re NTL, Inc. Sec. Litig.),* 244 F.R.D. 179 (S.D.N.Y. 2007) ............................................................................................................................................... 7

*Greene v. Netsmart Techs. Inc.*, 2011 U.S. Dist. LEXIS 59710 (E.D.N.Y. Feb. 28, 2011)....... 6, 7

*Markey v. Lapolla Indus.*, 2015 U.S. Dist. LEXIS 112915 (E.D.N.Y. Aug. 25, 2015) ................ 8

*Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 212 F.R.D. 178 (S.D.N.Y. 2003) ........................................................................................................................... 8

*National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 (1976) ............................... 9

*Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67 (2d Cir. 1988)............................................ 9

*Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 435 (S.D.N.Y. 2004)...................................... 8

**Rules**

Fed. R. Civ. P. 26 (g)(1)(A) ..................................................................................................... 8

Fed. R. Civ. P. 26(b)(1)............................................................................................................. 3

Fed. R. Civ. P. 26(b)(1)(A) ...................................................................................................... 3

Fed. R. Civ. P. 26(g)(1).............................................................................................................. 8

Fed. R. Civ. P. 26(g)(3).............................................................................................................. 9

## INTRODUCTION

The only "alternate reality" here is the one that Plaintiff is living in.  Plaintiff admits it intentionally withheld discovery, based on its own self-serving determination that the information was not "relevant."  That pretext conveniently hid extremely probative information.  The disputes in California over the products-in-suit, and the Agreement on copyright ownership, impact the question of standing, a fundamental, threshold, issue.  Plaintiff does not get to make unilateral determinations to preclude the Defendants from using information material to their defense.  Likewise, Plaintiff's Response is devoid of a single fact that Plaintiff's attorneys made any reasonable inquiry of their client.  Diligence by those attorneys is nowhere to be found.

Amazingly, Plaintiff attaches three new documents to its papers (Dkts. 100-1, 100-2, 100-3), documents which Best Brands has never seen before.  Plaintiff operates under a remarkable belief that it can <u>continue</u> to selectively produce just those documents that it believes are helpful to it – after it created, and continues to maintain, a discovery vacuum.  That is prejudicial, and defeats the entire purpose of discovery.  Moreover, the new documents do not help Plaintiff.  Rather, they confirm that Plaintiff's CEO committed perjury.  *Infra,* Section III.

Plaintiff's fraud on this Court and on Best Brands should be met with severe sanctions.

## ARGUMENT

## I.    BEVERLY HILLS INTENTIONALLY CONCEALED INFORMATION

Plaintiff's Response confirms that it intentionally evaded its discovery obligations.

<u>Document Requests</u>.  Plaintiff's excuses ring hollow.  Best Brands requested documents on any disputes relating to the Squeezamals (Dkt. 90-3 at 12¶41 and 11¶36).  Plaintiff produced documents in response to Request 41 (Dkt. 90-31 at 18-19), and Request 36 (*id.* at 16-17), so the requests were not overlooked.  Rather, it concealed every document on the GennComm

disputes.[1]  <u>Its Response Brief provides no explanation for those omissions</u>.  Likewise, Request 41 requested agreements and licenses, but Plaintiff withheld the Agreement.  Even under Plaintiff's mischaracterization of the Agreement as a "patent license," the document still falls under Request 41 (and Request 34).

Plaintiff also withheld every email with GennComm, including, but not limited to, the emails of its V.P. Christy Collins (Dkt. 90-11 at 8 ¶¶41-42).  Its Response completely fails to address the importance of those emails, which confirmed that the Squeezamals fall under the Agreement.  It also withheld the GennComm Provisional Patent Application, falling under "patent … applications … relating to the Squeezamals." (Dkt. 90-3 at 11 ¶40).  Considering the issues regarding the Provisional Application in recent briefs (Dkt. 101), it was plainly relevant.  Also, the Target Order emails confirm that there was a first publication via an <u>offer</u> for sale (Dkt. 54 at 18); and raise questions why the order was later reduced.  That Defendants did not ask questions regarding the contents of <u>unknown</u> documents was plainly of Plaintiff's making.

<u>Interrogatories</u>.  Interrogatory No. 6 sought <u>all</u> agreements (<u>not</u> just copyright ones).  Yet, Mr. Socha, the factual verifier of the responses, did not identify the GennComm Agreement.  Tellingly, his declaration (Dkt. 100 at 4 ¶¶14-15) fails to address the fact that he knew about years of litigation over the Agreement and whether the Squeezamals fell under it, and chose to hide that information.  Likewise, V.P. Collins has stated that the GennComm technology was the basis for the features of the Squeezamals (Dkt. 90-11 at 8 ¶¶41-42), but GennComm was omitted from the response to Interrogatory Nos. 4 and. 6.  The interrogatories asked about <u>all</u> prior art, but that was omitted as well.  It is also very convenient – and prejudicial – that Plaintiff now

---

[1] The GennComm disputes relate to <u>all</u> the Squeezamals.  Thus, Plaintiff's objection (Dkt. 90-31 at 18-19) to the request, that it did not want to produce documents on Squeezamals not in suit, is not applicable.  Simply stated, Plaintiff hid the disputes because disclosure of the state or federal actions with GennComm would have alerted Defendants to the issues and documents therein.

alleges any facts it wants, having hidden all of those facts from cross-examination in discovery.

<u>Initial Disclosures</u>.  Standing and ownership were raised in Best Brands' Answers.  *See e.g.,* Dkt. 43 at 6 (Second & Ninth Defenses); Dkt. 30 at 6.  GennComm and its Agreement were relevant to Plaintiff's "claims and defenses"[2] that it had standing and ownership.  In fact, Plaintiff alleges that, under the Agreement, it owns the copyrights in "manufacture" of the products (Dkt. 77 at 5; *but see,* Dkt. 101 at 24) – which mandated disclosing the Agreement.

<u>Perjury</u>.  As previously discussed, Mr. Socha committed perjury regarding the "patent pending" designations.  Plaintiff's newly-produced documents from Hal Kyle only confirm that perjury.  *Infra,* Section III.  As to the attorney argument that Mr. Socha just had "faulty memory" regarding his IP attorneys (Dkt. 99 at 17), it is not supported by Mr. Socha's declaration (Dkt. 100), which is silent on the issue.  Nor is the claim believable.  He has only <u>three</u> IP firms.  Moreover, Ferguson Case had been actively litigating the GennComm issues for years.  Concurrent with discovery here, it was conducting depositions for him in the California state court case (Dkt. 90-33 at 27-28 ¶¶134, 138).  This CEO surely knew about those California depositions conducted in January 2020 – <u>shortly before</u> his deposition here in February 2020 (Dkt. 90-10).  He surely remembered that major, active, case, being litigated since 2018.  He did not just "forget."   Likewise, he was asked a broad question whether he had **<u>any</u>** Agreements regarding the Squeezamals.  He knew his V.P. Collins had acknowledged that the Agreement covered the Squeezamals, as GennComm had pointed out in the California action.  But he said that there were "no" Agreements.  These were not oversights.  They were falsehoods.

<u>Summary</u>.  Plaintiff's Agreement with GennComm had copyright provisions; and

---

[2] *See,* Fed. R. Civ. P. 26(b)(1)(A).  In addition, a party may obtain discovery "that is relevant to any party's claim or defense" and "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

Plaintiff has had years of ongoing litigation over the Agreement and whether the Squeezamals fell under it.  It hid all traces thereof, including every document or answer that could have alerted Defendants to these issues.  Its own counsel has admitted that the concealment was intentional.

## II.   THE INFORMATION IS EXTREMELY RELEVANT

The relevance of these materials is undeniable.  As demonstrated by the parties' recent submissions to this Court (Dkt. 87 and 101), the documents directly pertain to critical questions, including, *inter alia*:  (1) whether GennComm is an indispensable party here; (2) whether Beverly Hills owned the copyrights (or assigned them to GennComm); (3) whether Beverly Hills had standing to bring this suit to begin with; (4) the first prong of the infringement analysis; and (5) when Plaintiff made offers for sale.  The Agreement has explicit provisions regarding copyright ownership by GennComm; and Beverly Hills' own Vice President understood that it covered the Squeezamals (Dkt. 90-11 at 8 ¶¶41-42).  Her emails stating this were never produced by Beverly Hills to Best Brands, so Best Brands still does not have them.[3]  Ongoing disputes, including a state court litigation, directly overlap the issues in this lawsuit.  No lawyer worth his salt would dare claim that the information is "not relevant."

## III.   BEVERLY HILLS CONTINUES TO ACT IN BAD FAITH

Having withheld all the pertinent documents to this very day, Beverly Hills now attaches to its Brief three documents which it never produced, and Best Brands has not seen before.  Dkts. 100-1, 100-2, 100-3.  One of the documents (Dkt. 100-2), refers to yet additional documents about the Squeezamals that were never produced.  All of this is yet more bad faith.  After the close of discovery, Plaintiff selectively produces self-serving letters by one of its IP attorneys, to

---

[3]  Her emails acknowledged that the Squeezamals (Dkt. 90-11 at 8 ¶¶41-42) fell under the Agreement. Plaintiff's prior admission, contrary to its present position, is just one of the many issues that Defendants were precluded from investigating in discovery, because Beverly Hills buried the documents.

bolster its one-sided positions.  Where are GennComm's responses to the letters? How can Defendants respond in the evidentiary vacuum that Beverly Hills created?  This is all prejudicial.

One of the documents (Dkt. 100-1) states that "BHTB [Beverly Hills] thought Exhibit A described what the provisional application covered.  However, we <u>now</u> know that … Exhibit A of the Agreement is incomplete and did not contain the limitations as described in the actual provisional patent application relating to the plush character which is then compressed into a small package."  *See,* Dkt. 100-1 at 4, last paragraph.  That is an admission that, when Beverly Hills signed the Agreement, it agreed to the scope of Exhibit A as written, without any "small package" limitation.  That is contrary to Plaintiffs' recent position to this Court that Exhibit A incorporated the Provisional Application, and the limitation, "by reference."  Dkt. 87 at 11-12. Even as recently as last week, when Best Brands prepared its response (Dkt. 101) to the indispensable party submission, Best Brands did not have the benefit of that document.

The substantial prejudice to Best Brands is undeniable.  And it is ongoing.

Moreover, the documents confirm that Mr. Socha committed perjury.  As previously noted, he made up a story in his deposition that the patent pending designation was "just to deter people" and that there were no patents pending on the Squeezamals item.  Dkt. 90 at 18.  He falsely testified, to conceal the fact that the items were marked patent-pending based on the pending GennComm Provisional Patent Application, and based on Beverly Hills' obligation, under the GennComm Agreement, to mark the products as patent pending (*see,* Dkt. 90-1 at 5, §III.6).  Plaintiff's Response Brief alleges that Mr. Socha's story was "accurate."  Dkt. 87 at 17. But these newest documents from its patent attorney Hal Kyle tell a different tale.

Plaintiff's patent attorney states that GennComm "caused BHTB [Beverly Hills Teddy Bear] to erroneously place a 'patent pending' notice on the product packaging."  Dkt. 100-2 at 3.

He likewise explained that "the Agreement **required** BHTB [Beverly Hills] to 'mark the [products], containers and packaging with the words 'U.S. Patent Pending' …" Dkt. 100-1 at 3 ¶3 (emphasis in original). To wit, Mr. Socha's attorney has confirmed that "patent pending" was placed on the Squeezamals <u>because GennComm said it was patent pending, and Beverly Hills had to so mark the Squeezamals under the Agreement</u>. When asked about this under oath, Mr. Socha lied. His latest sworn declaration just perpetuates that lie. Dkt. 100 at 4 ¶18.

## IV.    PLAINTIFF IS NOT ENTITLED TO EVADE DISCOVERY WITH IMPUNITY

### A.    Mr. Socha Does Not Have the Right to Unilaterally Rule on Relevance

Plaintiff admits that it intentionally concealed the information, and it is indisputable that it is highly material to questions such as ownership and standing. That is far from "harmless." But Beverly Hills claims its actions were justified because its CEO Socha decided that the documents were not "relevant."[4] Legally, that is no excuse.[5] The position that he can unilaterally rule on relevance is sheer nonsense. The rules of discovery do not work that way. A party cannot hide behind its own unilateral, self-serving, assessments, as a justification for failing to comply with its discovery obligations. If it could, the discovery system would fall apart.

Ever since this issue was discovered, Plaintiff has engaged in a deliberate logical fallacy – *petitio principii*, or assuming the conclusion. Plaintiff concludes that the discovery does not support Best Brands' positions; *ergo*, it had no obligation to produce it. But Plaintiff is not the

---

[4] Mr. Socha claims he executed the Agreement "without seeking any legal advice." Dkt. 100 at 2 ¶7. That decision was his alone. It does not change the terms that he agreed to. Moreover, he has been litigating that Agreement for years, so he now knows its content. His protestations of ignorance are not believable, and are no excuse.

[5] In *Greene,* the court rejected a Plaintiff's defense "that he never intentionally withheld documents, but either did not know they existed or did not know they were relevant to the litigation." *Greene v. Netsmart Techs. Inc.*, 2011 U.S. Dist. LEXIS 59710, at *25 (E.D.N.Y. Feb. 28, 2011). As the court explained, "Having considered all of the facts, I find that Plaintiff and/or his counsel acted in a manner that meets the 'ordinary negligence' standard. As such, Plaintiff is considered to have had a culpable state of mind, and sanctions are appropriate. There is no dispute that Plaintiff failed to produce relevant documents in a timely manner." *Id.*

6

judge here.  Best Brands was entitled to evaluate the information, **so that it could formulate its position for itself**.  That is what discovery is all about.

Plaintiff does not deny that the definition of ITEM, as written, covers the Squeezamals.  And, plainly, the Agreement discusses copyright ownership.  Yet, Plaintiff's CEO makes the unbelievable statement, under oath, that he still considers the Agreement to be unrelated to any copyright issues, or the Squeezamals.  Dkt. 100 at 3 ¶14.  That is willful blindness.  No honest person could deny that it is both relevant, and reasonably calculated to lead to the discovery of admissible evidence.  Best Brands had the right to make its own assessment.

In fact, Plaintiff's acts are sanctionable even under its own position.  "The culpable state of mind requirement is satisfied in this circuit by a showing of ordinary negligence."[6]  Plaintiff's actions were more than that – they were grossly negligent, to put it mildly.  It unilaterally made decisions about its legal obligations without an iota of consultation with its counsel.  That was beyond negligence.  It was a deliberate cultivation of ignorance, in bad faith.

### B.      Beverly Hills' Attorneys Failed to Meet Their Responsibilities

This Court advised Beverly Hills' attorneys that the Court would be looking for facts as to why the information was not produced.  Dkt. 90-30 at 14:15-23.  Yet, in their Response Brief, Plaintiff's attorneys did not supply a single fact indicating that they met their responsibilities.  They claim total ignorance as to the discovery, laying all the decisions on the Plaintiff, which is itself an admission of the insufficient role the attorneys played in the discovery process.

For example, Defendants repeatedly asked for all of Plaintiffs' Agreements.  Dkt. 90 at 14.  Plaintiffs' counsel should have thoroughly vetted that with their client – which was their

---

[6] *Greene*, 2011 U.S. Dist. LEXIS 59710, at *24 (E.D.N.Y. Feb. 28, 2011); *Gordon Partners, et al. v. Blumenthal (In re NTL, Inc. Sec. Litig.),* 244 F.R.D. 179, 198 (S.D.N.Y. 2007).

obligation.  Instead, they represented that there were no more documents.  That is sanctionable.[7]

The attorneys also signed each of Beverly Hills' discovery responses.  *See e.g.,* Dkt. 90-4 at 11; 90-5 at 9; 90-31 at 21.  That signature certified their "knowledge, information, and belief, formed after a reasonable inquiry" that each disclosure was "complete and correct."  Fed. R. Civ. P. 26(g)(1) and (g)(1)(A).  "Rule 26(g) charges all attorneys with a special, 'affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes' of liberal discovery."  *Markey v. Lapolla Indus.*, 2015 U.S. Dist. LEXIS 112915, at *44 (E.D.N.Y. Aug. 25, 2015) (citations omitted). "Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.'"  *Id.* at *45.  The totality here is that the attorneys have not provided <u>even one fact</u> that they made a reasonable inquiry.

"[C]ounsel is responsible for coordinating her client's discovery efforts."  *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 435 (S.D.N.Y. 2004).  Yet, they have supplied no evidence (whatsoever) that they properly discharged their duty to ensure that Plaintiff complied with its discovery obligations.  On the contrary, they allege that Plaintiff – and Plaintiff alone – determined the scope of what was "relevant."  As such, Plaintiff's attorneys have abdicated their responsibilities.[8]  That is itself sanctionable, whether due to willfulness or negligence.[9]

---

[7] *See e.g., Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 212 F.R.D. 178, 224 (S.D.N.Y. 2003) ("There can be no doubt that counsel's repeated representations that all responsive documents had been produced were not the result of a reasonable inquiry, that counsel failed to stop and think about their responses, and that counsel did not engage in discovery responsibly – all in violation of Rule 26.")

[8] In *Metropolitan Opera,* for example, "no attorney had conducted or supervised the Union's document production."  *Metropolitan,* 212 F.R.D. at 190.  In imposing sanctions, the court found that there was no doubt that the attorneys failed to comply with the requirement of making a reasonable inquiry.  *Id.* at 222.  As it explained, "unless Rule 37 is perceived as a credible deterrent rather than a 'paper tiger,' the pretrial quagmire threatens to engulf the entire litigative process."  *Id.* at 220.

[9] In *Cine Forty-Second St. Theatre Corp,* for example, the district court had concluded that "(T)he actions of plaintiff's counsel … were either wilful [o]r a total dereliction of professional responsibility.  No other conclusion is possible."  *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1065 (2d Cir. 1979).  Upon review, the Second Circuit held that "where gross professional negligence has been found[,] that is, where counsel clearly should have understood his duty to the court[,] the full range of sanctions may be marshalled.  Indeed, in this day of burgeoning, costly and protracted litigation courts should

Critical discovery went undisclosed "under their noses," and their certifications on discovery responses were without substantial justification. That is sanctionable under Rule 26. Fed. R. Civ. P. 26(g)(3). In fact, "Rule 26(g) imposes a more stringent certification requirement than Rule 11." *Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1015 (2d Cir. 1988). Furthermore, [i]mposition of sanctions for a violation of Rule 26(g) is mandatory."[10]

## V.   SEVERE SANCTIONS ARE WARRANTED

Plaintiff has been spending years litigating in California over an Agreement containing express clauses that the copyrights would be owned by GennComm, an Agreement its Vice President said covers the Squeezamals. All along, it fraudulently sued multiple parties on the products. It did not breathe a word about the ongoing disputes and threshold issues, and admits that it intentionally withheld information. That is a fraud on this Court and on Best Brands.

Plaintiff repeatedly engaged in perjury, coupled with an intentional concealment of documents and selective production of information. Perjury – even by itself – warrants dismissal. Dkt. 90 at 26. Nor is Plaintiff able to identify any lesser sanction that is appropriate. Dkt. 99 at 18-20. In fact, anything less, such as re-opening discovery, would reward Plaintiffs with a "do-over," calling "no-harm, no foul." This Court warned Plaintiff that the discovery cut-off would be enforced. It should be, or else there is no deterrent to similar conduct in the future by this Plaintiff or others, contrary to the purposes of the Federal Rules. [11]

---

not shrink from imposing harsh sanctions where, as in this case, they are clearly warranted." *Id.* at 1068. "The principal objective of the general deterrent policy of National Hockey [i]s strict adherence to the 'responsibilities counsel owe to the Court and to their opponents,'" *Id.* at 1067, *quoting, National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 640 (1976). "Negligent, no less than intentional, wrongs are fit subjects for general deterrence." *Id.* at 1067 (citation omitted).

[10]  *See, Clark v. Westchester Cnty.*, 1998 U.S. Dist. LEXIS 15912, at *26 (S.D.N.Y. Oct. 8, 1998), citing, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991) and *Banco de Ponce v. Buxbaum*, 1995 U.S. Dist. LEXIS 2692, 995 WL 92324 *8 (S.D.N.Y. Mar. 7, 1995), *aff'd*, 99 F.3d 402 (1995).

[11]  *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (discovery sanctions "are intended to serve a general deterrent effect on the case at hand and on other litigation.").

Moreover, the past history cannot be ignored.  In discovery, Best Brands asked for all Agreements – multiple times – and Plaintiff misrepresented that everything was produced.  Dkt. 90 at 14.  With Plaintiff's track record, Best Brands can never know what to believe about Plaintiff's future representations, or if documents have even been destroyed.  Under Plaintiff's position, it has even been keeping its own attorneys in the dark, making unilateral decisions on relevance.  <u>And even now, after it has been exposed, the exhibits to its latest brief show that its tactical, one-sided, production of information to its advantage continues to this day</u>.

Plaintiff gambled it could get away with its fraud.  But for a third party, it would have.

Plaintiff's discovery abuses were used to conceal the fact that this case should never have been filed.  But now, there is no way to adjudicate Best Brands' defenses while these issues are open, and no end in sight.  As submitted in Best Brands' recent brief (Dkt. 101), this case cannot proceed here without GennComm, and GennComm cannot be joined.  Nor can this case proceed anywhere else while GennComm and Beverly Hills are still litigating threshold issues.

Thus, the alternative to dismissal is to keep this case alive, increasing costs for Best Brands, and consuming its resources and those of the judiciary:  an indefinite perpetuation in response to Plaintiff's bad faith conduct.  But every day that this case remains open, Plaintiff benefits from its wrongful acts, with ongoing leverage to continue to demand a settlement.  All the while, Best Brands is the one who suffers in a case that should never have been brought – forced to sit in limbo with a black cloud over its head.  It should not have to.  In view of Plaintiff's reprehensible actions, this case should be dismissed.

## CONCLUSION

Plaintiff's fraud on this Court, and its unrepentant response to its serious infractions, deserve the severest of sanctions.  Only dismissal is a suitable deterrent and remedy here.

Dated:  September 25, 2020        Respectfully submitted,

*/s/ Morris E. Cohen*

_____

Morris E. Cohen
Lee A. Goldberg
Limor Wigder
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 3rd Floor
New York, New York 10019
(646) 380-2087 (phone – main)
(646) 380-2084 (phone – direct)
(646) 514-2123 (fax)
LGoldberg@GoldbergCohen.com
MCohen@GoldbergCohen.com
LWigder@GoldbergCohen.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2020, a true and correct copy of the foregoing was served on counsel of record via the Court's ECF system.

Dated: September 25, 2020                    */s/ Morris E. Cohen*

                                             _____

                                             Morris E. Cohen