```
                                                                    ┌──────────────────────────────────┐
                                                                    │ USDC SDNY                        │
                                                                    │ DOCUMENT                         │
                                                                    │ ELECTRONICALLY FILED             │
UNITED STATES DISTRICT COURT                                        │ DOC #: _____         │
SOUTHERN DISTRICT OF NEW YORK                                       │ DATE FILED:  12/11/2020          │
------------------------------------------------------------- X     └──────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

BEVERLY HILLS TEDDY BEAR COMPANY,                  :
                                                   :
                                     Plaintiff,    :
                                                   :         1:19-cv-3766-GHW
             -against-                             :
                                                   :
BEST BRANDS CONSUMER PRODUCTS,                     :         MEMORANDUM OPINION &
INC., BEST BRANDS SALES COMPANY,                   :                  ORDER
LLC, and GENNCOMM, LLC,                            :
                                                   :
                                     Defendants.   :
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

This case involves a relatively straightforward copyright infringement claim over the popular

Squeezamals toys:  soft, huggable foam plush figures, designed to look like big-eyed animals, food

items, and other adorable characters.  But what once appeared to be a simple case took an

unexpected turn over a year after it was filed:  previously-undisclosed facts bubbled to the surface

with the potential to fundamentally undermine Beverly Hills Teddy Bear Company ("Plaintiff")'s

ability to continue its pursuit.  Then-third-party GennComm, LLC ("GennComm") contacted Best

Brands Consumer Products, Inc. and Best Brands Sales Company, LLC ("Defendants")[1] to inform

them that Plaintiff had entered into a licensing agreement with GennComm (the "Agreement") that

implicated intellectual property rights for the very products at issue in this case, and that Plaintiff

and GennComm had been actively litigating issues related to the Agreement in California courts

since 2018.  When those facts came to light, Defendants, the parties' attorneys, and the Court

learned that Plaintiff's CEO had decided the GennComm relationship was not relevant to the issues

---

[1] Pursuant to the Court's October 20, 2020 decision on the threshold standing and joinder issues implicated by the
newly-discovered Agreement and litigation, GennComm was added to this action as a defendant on November 10, 2020.
*See* Dkt. No. 117.  However, for the purpose of this decision, the term "Defendants" refers solely to the movants,
Defendants Best Brands Consumer Products, Inc. and Best Brands Sales Company, LLC.

here and had decided to omit the Agreement and other GennComm-related information from Plaintiff's discovery responses in this case.

Defendants were justifiably concerned about the omission.  The Agreement raised gate-keeping questions—the answers to which were potentially lethal to Plaintiff's claim—including whether Plaintiff had an ownership interest in the intellectual property rights at issue, and, therefore standing to bring its claims.  Unsurprisingly, Defendants moved for sanctions against both Plaintiff and its attorneys under Federal Rules of Civil Procedure 26(g) and 37(c), and under the Court's inherent power.

Because Plaintiff withheld information and documents relevant to this case that fell squarely within the scope of Defendants' discovery requests, Defendants' motion for sanctions is granted in part.

## II.    BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history in this matter.  Nonetheless, the Court recapitulates the aspects of the case relevant to this motion.

At the time Defendants' motion for sanctions was filed, one cause of action under the Copyright Act, 17 U.S.C. § 501(a), remained.  *See* Dkt. No. 42, Second Am. Compl. at 10–11. Plaintiff asserted that Defendants have infringed on their copyrights in the Squeezamals products, which they describe as "slow rise foam stuffed toys[.]"  *Id.* at ¶ 9.  Plaintiff alleged that it owns "both registered and unregistered copyrights in and related to the Squeezamals Products" (*id.* ¶ 17) and that it is the "exclusive owner of the Squeezamals Works" (*id.* ¶ 42).  *See id.* ¶ 18.  In their answer, Defendants raised defenses on the issues of, *inter alia*, standing, copyright validity, and copyright ownership.  *See* Dkt. No. 43, Defs.' Answer to Pl.'s Second Am. Comp. at 6–7.

On January 6, 2020, the Court issued a scheduling order that established the deadline for the completion of all fact discovery as February 29, 2020.  Dkt. No. 38.  On July 14, 2020, after the

close of discovery, GennComm, who was then a non-party to this case, contacted Defendants and informed them that it had a non-exclusive license agreement with Plaintiff since June 16, 2017, and that the Agreement covered the products at issue in this case. *See* Dkt. No. 90, Def. Best Brands' Mot. for Disc. Sanctions and Mem. of Law in Supp. ("Mem.") at 2; Dkt. No. 90-1 ("Agreement") at 1; Dkt. No. 85, July 17, 2020 Hearing Tr. at 4:24–5:23; 7:15–8:13. In addition, Defendants learned that Plaintiff and GennComm are currently litigating two cases in California courts that directly involve the Agreement and the Squeezamals products. Mem. at 2, 10, 12–13. Specifically, GennComm sued Plaintiff in California state court to enforce its rights under the Agreement, and Plaintiff sued GennComm in California federal Court, seeking declaratory judgment of invalidity and unenforceability for two of GennComm's patents. *See* Dkt. Nos. 90-11–90-15.

The existence of the GennComm relationship and Agreement was raised for the first time with the Court by Defendants during a conference held on July 17, 2020. Defendants alleged that the Agreement is relevant to this case because it provides that "any and all copyrights, trademarks, and patents relating to [slow-rise products] are to be owned by GennComm, and are transferred to and assigned to GennComm." July 17, 2020 Hearing Tr. 4:24–5:7, 7:15–8:13. Indeed, on its face, the Agreement specifically discusses GennComm and Plaintiff's division of copyrights. Agreement § IV(1) ("All right, title and interest in and to all copyrights, trademarks and patents embodying the ITEM, and all copyright, trademark and patent registrations based thereon, shall be in LICENSOR's name and shall be owned exclusively by LICENSOR, and LICENSEE covenants and agrees that this Agreement shall be deemed a license, not a transfer, of LICENSOR's rights in the ITEM, and that LICENSEE shall have no interest in or claim to the ITEM or to any of the copyrights and trademarks associated therewith, except to the limited extent of the license to use same pursuant to this Agreement, and subject to its terms and conditions."). During the July 17, 2020 conference,

3

Plaintiff's counsel informed the Court that they were unaware of their client's relationship with GennComm until Defendants raised the issue.  July 17, 2020 Hearing Tr. at 6:12–7:4.

The Court provided the parties with additional time to investigate the issues and scheduled a follow-up conference on July 28, 2020 to discuss next steps.  Dkt. No. 74.  During the July 28, 2020 conference, Plaintiff's counsel informed the Court that their client "obviously did know that GennComm [claimed] that the patent rights, which are the subject of the license agreement, were being claimed [sic] as part of the Squeezamal products" but that it nonetheless decided to withhold information related to the Agreement and the GennComm litigation because it did not believe the information was relevant to this action.  Dkt. No. 83, July 28, 2020 Hearing Tr. at 9:22–10:7, 10:16–11:15, 12:15–23.  The Court directed the parties to brief the issue of whether GennComm was a necessary party, and ultimately determined that it would not decide the parties' rights under the Agreement without affording GennComm, a party to the contract, an opportunity to present its position.  *See* Dkt. No. 112.  As a result, the Court ordered that GennComm be joined to this action as a necessary party.  Dkt. Nos. 112, 115–16.  On November 10, 2020, Plaintiff amended its complaint adding GennComm as a defendant.  Dkt. No. 117.

Defendants filed their motion for sanctions on August 28, 2020.  *See* Mem.  As the basis for the present motion, Defendants allege what the Court will describe as five categories of wrongdoing by Plaintiff, all of which relate to Plaintiff's failure to provide information about its dealings with GennComm and the litigation that followed from that relationship:  first, that Plaintiff's initial Rule 26(a)(1) disclosures were inadequate; second, that Plaintiff improperly withheld documents that were responsive to Defendants' requests for production; third, that Plaintiff concealed information when responding to Defendants' interrogatories; fourth, that Plaintiff's CEO, David Socha, perjured himself during his 30(b)(6) deposition; and finally, that by these actions, Plaintiff committed a fraud upon this Court.  *See* Mem. at 8–16.  Defendants request dismissal and attorney's fees and costs,

arguing that such sanctions are warranted here because by litigating in this manner, Plaintiff intentionally concealed relevant—potentially dispositive—information from Defendants and the Court. Defendants have submitted thirty-four exhibits in support of their motion. *See* Dkt. Nos. 90-1–90-34.

Plaintiff opposed the motion on September 18, 2020. Dkt. No. 99, Pl.'s Opp'n to Defs.' Mot. for Disc. Sanctions (the "Opposition"). Plaintiff argues, *inter alia*, that discovery sanctions are not warranted because its responses were accurate and made in good faith. *Id.* at 1–2. The cornerstone of that argument is its belief that the information was not responsive or relevant because the Agreement covers patent rights, not the copyrights at issue here, and the Agreement does not cover the Squeezamals products. *Id.* at 6–8. Plaintiff has submitted a declaration from Mr. Socha, whose conduct is central to this motion, and three exhibits. *See* Dkt. Nos. 100, 100-1–100-3.

Defendants replied on September 25, 2020, Dkt. No. 106, Def. Best Brands' Reply Mem. in Supp. of Mot. for Disc. Sanctions ("Reply"). With the Court's approval, Plaintiff filed a sur-reply to Defendants' motion for discovery sanctions on October 2, 2020. Dkt. No. 109, Pl.'s Sur-Reply in Opp'n to Defs.' Mot. for Disc. Sanctions ("Sur-Reply"). While Defendants did not request leave to file a sur-sur-reply, they filed a letter responding to Plaintiff's sur-reply on October 5, 2020. Dkt. No. 110.

## III.   DISCUSSION

As the Second Circuit has explained,

> [t]he extremely broad discovery permitted by the Federal Rules depends on the parties' voluntary participation. The system functions because, in the vast majority of cases, we can rely on each side to . . . disclose relevant information when asked (and sometimes even before then) without being forced to proceed at the point of a court order.

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018) (citing *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) (observing that

"embroil[ing] trial judges in day-to-day supervision of discovery" is "a result directly contrary to the overall scheme of the federal discovery rules")).  Unfortunately, here, the system did not function as intended, resulting in the Court's intervention.  For their discovery abuses, Defendants argue that Plaintiff should be sanctioned under:  (1) Fed. R. Civ. P. 37(c) for failure to comply with discovery obligations and disclose relevant evidence, *see* Mem. at 17–18 and (2) the Court's inherent power to sanction parties for blatant misconduct and engaging in a fraud on the Court, *see id.* at 16–17.  They also argue that Plaintiff's counsel should be sanctioned under Fed. R. Civ. P. 26(g) for falsely certifying discovery responses and disclosures as complete and correct and for failing to meet their obligations to ensure that their client was complying with the discovery rules, *see* Reply at 7–9.

### A.  Legal Standard

The Federal Rules of Civil Procedure set forth liberal limits on the scope of discovery.  Rule 26 provides:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  "In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be [discoverable]."  *Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (quotation omitted); *Johnson v. Doty*, No. 15-cv-7823 (KMK)(JCM), 2020 WL 1244236, at *1 (S.D.N.Y. Mar. 16, 2020) (stating that information is "relevant if it has any tendency to make a fact more or less probable and the fact is of consequence in determining the action.") (internal quotations and citations omitted).

"Sanctions may be authorized by any of a number of rules or statutory provisions, or may be permissible on the basis of the court's inherent powers." *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997).

> Rules 26(g) and 37 "represent the principal enforcement power to punish discovery abuse." Inherent power sanctions are thus not a primary mechanism by which a party can obtain relief for a discovery abuse: They should serve only as a useful backstop against discovery abuses that do not clearly violate Rules 26(g) and 37.

*Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 236–237 (2d Cir. 2020) (quoting Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* 535 (6th ed. 2020)). After a court determines that sanctions are warranted, it may tailor the sanctions it imposes using a case-by-case approach because "the failure[s] to produce relevant evidence . . . occur along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (internal quotation marks and citation omitted).

### B. Sanctions Under Rule 37(c)

As relevant here, Federal Rule of Civil Procedure 37(c)(1) provides that

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . the court, on motion and after giving an opportunity to be heard . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure . . . [or] impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1). "Rules 26(a) and (e) concern initial disclosures and the supplementation of those disclosures, or responses to discovery requests or interrogatories." *Williams v. City of New York*, No. 16 Civ. 4315 (JGK), 2017 WL 4382283, at *1 (S.D.N.Y. Sept. 29, 2017).

"[Rule 37(c)] permits a court to impose a variety of sanctions for discovery-related abuses, including the payment of the reasonable expenses, including attorney's fees." *Borsanyi v. Huggins*, No. 19-cv-177266 (CBA)(AKT), 2019 WL 4911188, at *6 (E.D.N.Y. Sept. 30, 2019) (quoting *JMC Rest. Holding, LLC v. Pevida*, No. 14 Civ. 6157 (WFK)(VMS), 2016 WL 3351007, at *6 (E.D.N.Y. June 14, 2016)). Where "the alleged misconduct is the non-production of relevant documents, district courts

have broad discretion in fashioning an appropriate sanction." *Pevida*, 2016 WL 3351007, at *6

(E.D.N.Y. June 14, 2016) (quoting *Fossil Indus., Inc. v. Onyx Specialty Papers, Inc.*, 302 F.R.D. 288, 293

(E.D.N.Y. 2014)).

### 1. Application

#### a. Plaintiff's Obligations Under Rule 26(a)

First, Rule 37 sanctions are not warranted for Plaintiff's Rule 26 disclosures because Plaintiff

met its obligation to disclose the information it intended to use in litigating its case.  Defendants

argue that Plaintiff failed to disclose GennComm, its CEO Genna Rosenberg, and its attorney Perry

Goldberg as individuals likely to have discoverable information, as well as the existence of any

GennComm-related documents.  Mem. at 8.  Defendants also claim that Plaintiff should have

disclosed Cristy Collins, Plaintiff's Vice-President, who communicated with GennComm.[2]  *Id.*

> Pursuant to Rule 26(a)(1)(A), a party, without awaiting a discovery request, must provide
>
> the name and, if known, the address and telephone number of each individual likely
> to have discoverable information . . . that *the disclosing party may use to support its claims
> and defenses* [and] a copy—or a description by category and location—of all documents,
> electronically stored information, and tangible things *that the disclosing party* has in its
> possession, custody, or control and *may use to support its claims or defenses*[.]

Fed. R. Civ. P. 26(a)(1)(A) (emphasis added).  "This means that there is no requirement to disclose

anything that the disclosing party will not use, which may include much that is harmful to its case."

8A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2053 (3d ed. 2020)

(internal citation omitted).  Instead, that information is properly obtained through the use of

discovery requests.  *Id.*  Here, the Court accepts Plaintiff's proffer that it does not intend to rely on

---

[2] Plaintiff states that its failure to identify Ms. Collins is "harmless and of no consequence" because she was identified in
documents produced by Plaintiff.  This point, on its own, is insufficient to relieve Plaintiff of its discovery obligations.
*See New York v. United Parcel Serv., Inc.*, No. 15-cv-1136 (KBF), 2016 WL 10672104, at *6 (S.D.N.Y. Sept. 8, 2016)
(holding that the mention of individuals in "document productions . . . was insufficient to fairly put [defendant] on
notice that plaintiffs might rely on such witnesses at trial.").  Nonetheless, as discussed, because Plaintiff had no
obligation to disclose information or individuals that it did not intend to use to support its case, Rule 37 sanctions are
not warranted.  *Gambino v. Payne*, No. 12-cv-824 (LJV)(MJR), 2017 WL 1046733, at *2 (W.D.N.Y. Mar. 20, 2017).

testimony from GennComm, Ms. Rosenberg, Mr. Goldberg, or Ms. Collins, nor on documents

related to the GennComm relationship or litigation.  Therefore, Plaintiff did not have an obligation

to disclose those individuals or documents under Rule 26(a).

In arguing that Plaintiff had an obligation to produce information that was relevant but

adverse to its case, Defendant misconstrues the obligations imposed by Rule 26(a).  The purpose of

the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence."  *Ebewo v.*

*Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (citations omitted); *accord Agence France Presse v.*

*Morel*, 293 F.R.D. 682, 683 (S.D.N.Y. 2013).  The sanction provided by the Rule for the failure to

properly disclose information or individuals in initial disclosures, as well as clarifying Second Circuit

case law, supports the conclusion that it is inapplicable here.  Under Rule 37(c)(1), a party that fails

to disclose information or identify a witness as required by Rule 26(a) "is not allowed to use that

information or witness to supply evidence on the motion, at a hearing, or at trial, unless the failure

was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  To determine whether sanctions

are warranted for incomplete Rule 26 disclosures, the Second Circuit provides a four-factor test that

requires the Court to consider "(1) the party's explanation for the failure to comply with the

[disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the

prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony;

and (4) the possibility of a continuance."  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir.

2006) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (brackets included in *Patterson*)).

Here, factors two and three would lead the non-disclosing party to argue that the testimony

is unimportant and the prejudice insurmountable, an unhelpful result for determining whether the

evidence should be precluded as a sanction to the offending party.  Preclusion serves as a deterrent

only if the party who failed to disclose the information has some desire to present that information

to the Court.  But when the undisclosed information is harmful to the party's case and they have no

intention of using it, the sanction becomes a reward.  Thus, the Court declines to sanction Plaintiff

for its Rule 26(a) disclosures and Defendants' motion for sanctions under Rule 37(c) is denied in

part.

### b.   Plaintiff's Obligations Under Rule 26(e)

In contrast, the Court finds that Plaintiff failed to meet its obligations under Rule 26(e) because

it failed to produce relevant, responsive documents and information in answering Defendants'

interrogatories and document production requests.  Rule 37 permits the imposition of sanctions in

the event that a party fails to comply with its obligations under Rule 26(a), as discussed above, as well

as Rule 26(e).  To determine whether to grant sanctions under Rule 37 when a party withholds

evidence, the Court employs a three-factor test and evaluates:

> (1) whether the party with control of the evidence "had an obligation to timely produce
> it," (2) whether that party had a "culpable state of mind," and (3) whether the withheld
> documents are "relevant to the party's claim or defense such that a reasonable trier of
> fact could find that it would support that claim or defense."

*In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (quoting *Residential*

*Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

> To satisfy the first element of this test, the moving party must show that the
> respondent breached its obligations, either as set forth in Rule 26, Fed. R. Civ. P., or
> as provided in court orders regulating discovery.  The "culpable state of mind" element
> is satisfied by a showing that "a party has breached a discovery obligation . . . through
> bad faith or gross negligence [or] ordinary negligence."  With respect to the third
> element, a finding that a party breached its discovery obligations in bad faith is
> sufficient to establish the relevance of untimely produced or destroyed evidence as a
> matter of law; a finding that a party breached its obligations through gross negligence
> is "frequently" sufficient.

*Id.* (internal citations omitted).

### i.   Plaintiff Failed to Meet its Obligation to Produce
### Information and Documents

The first element of the test asks whether "the party having control of the evidence had an

obligation to timely produce it . . . either as set forth in Rule 26, Fed. R. Civ. P., or as provided in

court orders regulating discovery." *In re Sept. 11th*, 243 F.R.D. at 125 (quotation omitted).  Under

Rule 26(e), Plaintiff is required to supplement or correct its discovery responses "if [it] learns that in

some material respect the . . . response is incomplete or incorrect, and if the additional or corrective

information has not otherwise been made known to the other parties during the discovery process

or in writing[.]"  Fed. R. Civ. P. 26(e)(1)(A).  Under Fed. R. Civ. P. 33(b)(3), "[e]ach interrogatory

must, to the extent it is not objected to, be answered separately and fully in writing under oath."

Fed. R. Civ. P. 34, which governs requests for the production of documents, requires that "[a]n

objection must state whether any responsive materials are being withheld on the basis of that

objection.  An objection to part of a request must specify the part and permit inspection of the rest."

Fed. R. Civ. P. 26(b)(1) is explicit in providing that the scope of discovery is broad, stating that

"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

claim or defense and proportional to the needs of the case."

The Court will describe the discovery requests and responses at issue in this motion to

demonstrate how Plaintiff failed to meet its discovery obligations.

### A.  Interrogatories

Defendants argue that Plaintiff should be sanctioned for failing to comply with discovery

requests and providing false responses to Interrogatories 4, 6, 7, and 14.  *See* Mem. at 10–11; *see also*

Dkt. Nos. 90-4 ("Pl.'s Responses to Defs.' First Set of Interrogatories")–90-5 ("Pl.'s Responses to

Defs.' Second Set of Interrogatories").  Interrogatory No. 6, in particular, is a clear example of

Plaintiff's failure to meet its discovery obligations and produce all relevant information responsive to

the discovery requests.  Interrogatory No. 6 asks Plaintiff to "[i]dentify all agreements relating to the

Squeezamals Products and the alleged rights of the Beverly Hills Teddy Bear Company therein,

including, but not limited to, any and all assignment or transfer of rights documents between the

alleged designer(s) or creator(s) of the Squeezamals Products." Pl.'s Responses to Defs.' First Set of

Interrogatories at 8–9. Plaintiff responded

> [s]ubject to, and without waiving any of the General Objections above, and specifically,
> that this Interrogatory is overbroad, particularly given that it relates to all rights in the
> Squeezamals Products, not just the Squeezamals Works at issue, Plaintiff has entered
> into transfer agreements with the designer of the Squeezamals Products, Benson Tijo,
> which are produced being herewith as BHTBC000002–BHTBC000017.

*Id.* at 9. Plaintiff contends that it was not obligated to disclose the existence of the Agreement

because the Agreement only covers patent rights and does not pertain to the Squeezamals products.

Opposition at 6–8. That justification is unpersuasive for a number of reasons.

First, even accepting Plaintiff's argument that the Agreement only covers patent rights, the

interrogatory is not limited to that subject. Interrogatory No. 6 asked Plaintiff to identify "all

agreements[.]" Second, Plaintiff's argument that the Agreement does not pertain to the Squeezamals

products is equally unavailing. Defendants asked for "all agreements *relat[ed]* to the Squeezamals

Products and the alleged rights of the Beverly Hills Teddy Bear Company," which covers the

Agreement, a result that is clear even with the limited evidence presented to the Court on the

California cases. *See* Pl.'s Responses to Defs.' First Set of Interrogatories at 8 (emphasis added).

The fact that Mr. Socha disagrees with GennComm's position on an issue the parties are currently

litigating—that the Agreement covers the Squeezamals products—does not permit him to withhold

records unilaterally. *See* Dkt. No. 90-11 ("GennComm State Court Amended Complaint") ¶ 53

("On or about January 15, 2018, Plaintiff sent Defendant an email congratulating all of them on the

early success of the Squishamals, (aka Squeezamals) product line that launched at Target stores and

was selling out at Target. Plaintiff requested items owed to the Plaintiff under their agreement,

including the certificate of liability and contractual product samples."); 90-13 ("Pl.'s Federal Court

Complaint") ¶ 31–32 ("BHTB's Squeezamal line of products was released around the end of 2017 . .

. . On information and belief, GennComm drafted the '595 Application, filed on May 21, 2018, with

the specific intent of obtaining one or more issued patent claims reading on BHTB's Squeezamal line of products."). In short, Plaintiff was not entitled to disregard GennComm's known claims to the Squeezamals products when that information was responsive to Defendants' discovery requests.

Interrogatory No. 4. asked Plaintiff to "[i]dentify all of the individuals and entities involved in the creation, design, development, manufacturing, marketing, advertising of the Squeezamals products." Pl.'s Responses to Defs.' First Set of Interrogatories at 8. Plaintiff responded "the persons most intimately involved with the creation, design, development, manufacturing, marketing and/or advertising of the Squeezamals Products are: Benson Tijo, who designed the Squeezamals Works, and Randy Clark, President, who oversaw the final design, development, and manufacture of the Squeezamals Products." *Id.* Plaintiff's response is inadequate on its face. In response to a request for the names of *all* individuals and entities involved with the Squeezamals products, Plaintiff only disclosed the identities of only the two people "*most intimately involved* with the product." *Id.* (emphasis added). This gamesmanship of its evasive response allowed Plaintiff to avoid disclosing the individuals involved in the Squeezamals litigation with GennComm. Notably, the list didn't include Mr. Socha, who the company had designated as its 30(b)(6) witness. Dkt. No. 90-10 ("Socha Deposition"), 14:11-15:22.

> Interrogatory No. 5 asked Plaintiff to
>
> [d]escribe all facts in your possession relating to the alleged conception and design of the Squeezamals Products, including, but not limited to, the identity and full contact information of any and all designers (including addresses, phone, fax, and email contact information), the materials relied upon in designing the products (identified by bates number), the dates of alleged design for each product, and so forth.

Pl.'s Responses to Defs.' First Set of Interrogatories at 8. Plaintiff responded " . . . Benson Tijo, an individual with an address of JI Palmerah Barat 1 No. 38, Jakarta, Indonesia 11480, designed the Squeezamals Works, which were created as a result of a design contest hosted by BHTBC on www.99designs.com. Benson Tijo submitted the initial designs on September 23, 2017 in response

to said contest." *Id.* This too is inadequate on its face. Plaintiff ignored the first part of the interrogatory, which asked for facts related to the conception and design of the Squeezamals products. Second, Plaintiff knew at the time of its response that GennComm claimed to be the designer of the Squeezamals products. Curiously, in connection with its opposition to Defendants' motion for sanctions, Plaintiff submitted a letter that was not produced in discovery but further supported this fact. On October 8, 2018, Harold Kyle, one of Plaintiff's intellectual property attorneys, wrote a letter to Ms. Rosenberg, asking that she refrain from claiming that GennComm was involved with the design of the Squeezamals line. *See* Dkt. No. 100-2 ("October 8, 2018 Kyle Letter").

Interrogatory No. 14 asked Plaintiff to "[i]dentify, for each feature of the Squeezamals Products, the alleged source of that feature, including, but not limited to, any prior art for that particular feature, as well as identifying which individual came up with that feature." Pl.'s Responses to Defs.' Second Set of Interrogatories at 7–8. Plaintiff responded "[t]he source of each feature of the Squeezamals Products and the individuals involved (Benson Tijo and Francesca Ibba) are shown in documents produced as BHTBC000086-BHTBC000093 and BHTBC000098-BHTBC000100." *Id.* at 8. Missing from Plaintiff's response were the numerous pieces of prior art that it identified in connection with the Squeezamals products in its federal California case. Pl.'s Federal Court Complaint ¶ 54; Mem. at 11.

### B.   Document Productions

Defendants also argue that Plaintiff withheld relevant documents from its productions. Mem. at 9–10. As relevant here, Defendants requested the following from Plaintiff:

> 14.  Produce all evidence relating to any agreements including licensing agreements, purchase agreements, asset purchase agreement, and/or or other agreements entered into by Plaintiff in this matter relating to Squeezamals Products . . .
> 22.  Produce all documents and things that refer or relate to Plaintiff's alleged copyright rights . . .

> 34.   Produce all documents and things relating to Plaintiff's licensing of the Squeezamals Products and/or Squeezamals Copyright, including, but not limited to, documents and things relating to Plaintiff's past licensing, and to Plaintiff's licensing policies . . .
>
> 35.   Produce all documents and things relating to the validity, invalidity, enforceability, and/or unenforceability of Plaintiff's alleged intellectual property rights.
>
> 36.   Produce all documents and things relating to prior litigation over the Squeezamals Products and/or Squeezamals Copyright.
>
> 37.   Produce all documents and things that refer or relate to any claim made by any third-party that Plaintiff's Copyrights are invalid or unenforceable . . .
>
> 41.   Produce all documents relating to licenses, contracts, agreements, assignments, or disputes between Plaintiff and third parties relating to the Squeezamals Products.
>
> 42.   Produce all documents referring or relating to any licenses, assignments, agreements, permissions, authorizations, security interests, liens, indemnifications, contracts, and/or arrangements between Plaintiff and any third-party which relate in any manner to the Squeezamals Products . . . .

Dkt. No. 90-31 ("Pl.'s Responses to Defs.' Requests for Production of Documents") at 10–19.

Defendants' Requests for Production of Documents defined the terms "relating to" and "relates to" as "without limitation, concerning, constituting, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, tending to prove or disprove, or explain." Dkt. No. 90-3 ¶ 3. Under that definition, Plaintiff had an obligation to provide GennComm-related documents that mentioned the Squeezamals products, which it failed to do. And as explained above, even accepting that Mr. Socha believed that the GennComm license did not cover the Squeezamals Products, Plaintiff still had an obligation to disclose the documents related to the litigation with GennComm over that very issue. *See* Pl.'s Responses to Defs.' Requests for Production of Documents at 16 (asking for "[a]ll documents and things relating to prior litigation over the Squeezamals Products and/or Squeezamals Copyright."). Further, Request No. 35 asked for "all documents and things relating to the validity, invalidity, enforceability, and/or unenforceability of Plaintiff's alleged intellectual property rights." *Id.* The plain language of the Agreement demonstrates that it would be responsive to this request. *See* Agreement § IV.

Plaintiff's omissions in its responses are underscored by the fact that Plaintiff was expressly informed by GennComm of its position that the Agreement covered the Squeezamals line of

products, and any related intellectual property rights, including copyrights.  For example,

GennComm's motion to dismiss Plaintiff's action in California federal court states

> Plaintiff Beverly Hills Teddy Bear Company ("BHTB") contends that it needs for this
> Court to declare two GennComm patents invalid and unenforceable because
> "GennComm has created a reasonable apprehension of suit against BHTB for alleged
> infringement of the '061 Patent and the '475 Patent that could wrongfully impact
> BHTB's ability to make, use, sell or offer to sell BHTB's products, such as its
> Squeezamals line of products."  Complaint (D.I. 1), ¶ 41.  What BHTB has failed to
> mention in its Complaint is that BHTB already agreed that it would stop selling these
> products upon termination of the parties' License Agreement.  GennComm
> terminated the License Agreement as of April 28, 2020, and thus BHTB is
> contractually prohibited from selling these products.

Dkt. No. 90-14 at 2.  This position was confirmed in GennComm's April 28, 2020 letter to Mr.

Socha, informing him "that if BHTB continues to sell the ITEM following termination, that will

give rise to additional claims in favor of GennComm, including new claims for breach of contract

and claims for trademark infringement, *copyright infringement* and patent infringement."  Dkt. No. 90-

25 at 2 (emphasis added).

Furthermore, Plaintiff itself has now submitted documents that demonstrate its failure to

produce evidence that fell within the scope of Defendants' discovery requests.  *See* Dkt. No. 100-1

("April 11, 2018 Kyle Letter") and October 8, 2018 Kyle Letter.  The April 11, 2018 letter, written

by Mr. Kyle on behalf of Plaintiff, discusses the Surprizamals and Squishamals[3] products, and

Plaintiff's legal position on the intellectual property ownership of those items.  *See, generally*, April 11,

2018 Kyle Letter.  The production of these letters would be required, at minimum, under

Defendants' requests for "all documents and things relating to the validity, invalidity, enforceability,

and/or unenforceability of Plaintiff's alleged intellectual property rights" and "all documents relating

to licenses, contracts, agreements, assignments, or disputes between Plaintiff and third parties

relating to the Squeezamals Products."  Pl.'s Responses to Defs.' Requests for Production of

---

[3] The Squeezamals products were formerly known as Squishamals.  *See* Mem. at 6.

Documents at 16, 18. The same is true of the October 8, 2018 letter, which states "[i]n our April 11th letter to you, we confirmed the reasons why the Beverly Hlils [sic] Teddy Bear Company ("BHTB") SQUEEZAMALS product line was not covered by the non-exclusive patent license agreement with GennComm" and "[w]e must respectfully request that GennComm refrain from making any further statements claiming that GennComm perfected the design and/or was in partnership with Beverly Hills Teddy Bear Company on the SQUEEZAMALS product line, or otherwise imply an association with the line." *See* October 8, 2018 Kyle Letter at 1. These documents hint at the potential trove of responsive documents that Plaintiff possesses but did not produce.[4]

Plaintiff was obligated to produce relevant documents that were responsive to Defendants' discovery requests. In the event that Plaintiff believed it had a meritorious reason for withholding certain documents, Rule 34(b)(2)(C) required it to disclose whether any responsive materials were being withheld on the basis of an objection. Plaintiff failed to meet its obligations here because it chose to hide existence of any GennComm-related documents, in addition to the fact that it was objecting to the production of those documents.

### ii.  Plaintiff Had a Culpable State of Mind

The second element of the test for sanctions under Rule 37 asks whether Plaintiff, in breaching its discovery obligation, had a culpable state of mind. *In re Sept. 11th*, 243 F.R.D. at 125 (S.D.N.Y. 2007) (citation omitted). This element is satisfied because Plaintiff's counsel and Mr. Socha have both represented that he, without seeking advice from his counsel, intentionally withheld

---

[4] Plaintiff also argues that it could not have concealed documents from the GennComm litigation, because they are publicly filed on the docket in California. Opposition at 1, 9. It is true that "discovery need not be required of documents of public record which are equally accessible to all parties." *SEC v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973) (citation omitted). However, although those filings "may have been accessible to the defendants, at least in theory, the plaintiffs were undeniably in the best position to identify and produce it." *See Convolve, Inc. v. Compaq Comput. Corp.*, 643 F. Supp. 2d 336, 342 (S.D.N.Y. 2008).

information from Defendants about Plaintiff's relationship with GennComm and ongoing litigation about the same products at issue in this case. *See* July 28, 2020 Hearing Tr. at 9:1–10:7, 10:16–11:15, 12:15–23; *see also* July 17, 2020 Hearing Tr: 6:11–7:4; Dkt. No. 100 ("Socha Declaration") at ¶¶ 13–15.

Specifically, Mr. Socha, the CEO of a company embroiled in no less than three actions about the same line of products, made a conscious decision about the legal effect of those cases on one other, without consulting his attorneys or informing them about the full extent of the litigation the company was facing. That decision lead to another unilateral decision to withhold documents and information that were clearly responsive to discovery requests. At best, that course of action was grossly negligent. That is sufficient to establish that Plaintiff had the requisite state of mind for the Court to issue sanctions. *See In re Sept. 11th*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007); *see also Vaigasi v. Solow Mgmt. Corp.*, No. 11-CIV-5088 (RMB)(HBP), 2016 WL 616386, at *19 (S.D.N.Y. Feb. 16, 2016).

Mr. Socha maintains that he believes the Agreement is a patent license unrelated to Plaintiff's copyrights and unrelated to the Squeezamals products. Socha Declaration ¶ 14. But this position is unsupported by the record before the Court. It is apparent from the face of the Agreement that it has some relation to Plaintiff's intellectual property rights beyond patents. *See, e.g.*, Agreement § IV(1). If Mr. Socha had a question about the import of the Agreement, he had a plethora of lawyers working for Plaintiff that he could have asked. Furthermore, Plaintiff received a letter from GennComm's CEO that explicitly stated that GennComm would seek to assert its trademarks and copyrights against Plaintiff if Plaintiff continued to sell the products covered by the Agreement. Dkt. No. 90-25.

At the time Mr. Socha decided that GennComm information and documents were not responsive to Defendants' discovery requests, Plaintiff was actively litigating two cases that pertained

to the Agreement and the Squeezamals products.  Mr. Socha does not argue that he was unaware of the subject matter being litigated in the GennComm suits.  Nor could he.  As the CEO, he stated that he "touch[es] everything" and that he interacts with the attorneys regarding "IP protection issues, copyright or otherwise."  Socha Deposition at 29:7–24.  Thus, the facts before the Court demonstrate that Plaintiff had a culpable state of mind in withholding the evidence.

### iii.  The Withheld Evidence Is Relevant to This Action

The third element asks whether withheld evidence is relevant to the party's claim or defense. *In re Sept. 11th*, 243 F.R.D. at 125 (S.D.N.Y. 2007) (citation omitted).  Plaintiff argues that the Agreement and any information related to GennComm are not relevant to this case, and therefore Plaintiff was not obligated to provide that information to Defendant.  *See* Opposition at 1, 5–6, 11–12.  Given the broad definition of relevance, the facts on the ground make it clear that this position is a losing one.

In the context of discovery, relevance is an extremely broad concept.  *See Convolve*, 223 F.R.D. at 167; *Melendez v. Greiner*, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003); *Zanowic v. Reno*, No. 97 Civ. 5292, 2000 WL 1376251, at *2 (S.D.N.Y. Sept. 25, 2000).  In short, "to be discoverable, information must be 'relevant to a[ny] party's claim or defense.'" *Lifeguard Licensing Corp. v. Kozak*, 15 Civ. 8459 (LGS)(JCF), 2016 WL 3144049, at *3 (S.D.N.Y. May 23, 2016) (quoting Fed. R. Civ. P. 26(b)(1)).

> Information is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial.

*Vaigasi*, 2016 WL 616386, at *11 (internal quotations and citations omitted).  "Parties to litigation have the right to challenge the relevance of documents through discovery motion practice, rather than unilateral determinations by individuals in whose interest it is to seek to withhold the production of documents that may lead to the discovery of admissible evidence." *Umbach v.*

*Carrington Inv. Partners* (US), LP, No. 3:08-cv-484 (EBB), 2009 WL 3287537, at *10 (D. Conn. Oct. 9, 2009); *see also Rozell v. Ross-Holst*, No. 05 Civ. 2936 (JGK)(JCF), 2006 WL 163143, at *2 (S.D.N.Y. Jan. 20, 2006).

First, the litigation in California directly pertains to the exact products at issue in this case. The Agreement is a crucial part of those disputes.  Mr. Socha's disagreement with GennComm's legal theories about the scope of the Agreement does not make this untrue.  The fact that Plaintiff's ownership of the Squeezamals intellectual property rights is being challenged in other fora raises a relevance inquiry that should have been presented to the Court, not resolved by Mr. Socha's self-serving "unilateral determination."  *Umbach,* 2009 WL 3287537, at *10

Second, the evidence is "relevant to whether Beverly Hills had the right to file and maintain this lawsuit."  Mem. at 6.  As discussed during the October 20, 2020 conference, the effect of the Agreement on this case is potentially dispositive. First, the information is relevant to Plaintiff's standing to bring this action, a threshold issue.  *See* Dkt. No. 17, Defs.' Answer at 7–8.  And, the withheld information is directly relevant to establishing Plaintiff's ownership of a valid copyright, a key issue in this case.  *See Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  And as Defendants point out, Plaintiff's communications with GennComm also reveal that Plaintiff possesses sales records, which were not produced in discovery, and that may impact the validity of the copyrights-in-suit.  According to Defendants, the records support their position that Plaintiff knowingly provided inaccurate information to the U.S. Copyright Office, which qualifies as grounds to refuse registration.  Mem. at 7–8.  Thus, it is clear the Agreement and the lawsuits in California about the Agreement are relevant to the claims and defenses in this case.

### iv. Sanctions Are Warranted for Plaintiff's Failure to Meet Its Obligations Under Rule 26(e)

Therefore, the Court grants Defendants' motion for sanctions under Rule 37(c) in part, for Plaintiff's failure to fulfill its obligations under Rule 26(e) and supplement its inadequate discovery responses. Plaintiff had an obligation to provide Defendants with the relevant documents and information they requested, but it intentionally omitted them from Plaintiff's discovery responses. Simply put, Plaintiff cannot unilaterally decide to withhold documents which, on their face, are clearly relevant and have some relationship to the intellectual property rights and products at the heart of this case. The Court will impose the appropriate sanctions after turning to Defendants' other arguments.

### C. Sanctions Under Rule 26(g)

"Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by 'explicitly encouraging the imposition of sanctions.'" *Kiobel v. Royal Dutch Petroleum Co.*, No. 02-cv-7618 (KMW)(HBP), 2009 WL 1810104, at *2 (S.D.N.Y. June 25, 2009) (quoting Fed. R. Civ. P. 26 advisory committee's note). Rule 26(g) requires that "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name." Fed. R. Civ. P. 26(g)(1).

> By signing a response to a discovery request, an attorney certifies that to the best of her "knowledge, information, and belief formed after a reasonable inquiry," the response is (1) consistent with the Federal Rules of Civil Procedure and justified under existing law; (2) not interposed for any improper purpose, such as to unnecessarily delay or needlessly increase the costs of litigation; and (3) reasonable given the importance of the issue and the circumstances of the case.

*Kiobel*, 2009 WL 1810104, at *2 (quoting Fed. R. Civ. P. 26(g)(1)).

The certification requirement "obliges each attorney to stop and think about the legitimacy of the discovery request, a response thereto, or an objection." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. and Rest. Emps. Int'l Union*, 212 F.R.D. 178, 219 (S.D.N.Y. 2003) (quoting Fed. R. Civ. P.

26(g), advisory committee's note to 1983 Amendment).  "Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request." *Kiobel*, 2009 WL 1810104, at *2 (quotation omitted).  Instead, under Rule 26(g), attorneys may rely on the representations of their clients, so long as they have made a reasonable inquiry to verify the information in the pleadings that the attorney has signed.  Fed. R. Civ. P. 26(g)(1).  "An attorney's inquiry . . . including her investigation and her resulting conclusions [satisfies Rule 26(g) if the inquiry] was objectively reasonable under the circumstances." *Kiobel*, 2009 WL 1810104, at *2 (citing Fed. R. Civ. P. 26(g) advisory committee's note); *see also Quinby v. WestLB AG*, 04-cv-7406 (WHP)(HBP), 2005 WL 3453908, at *4 (S.D.N.Y. Dec. 15, 2005) ("Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.'").

However, the discovery rules do impose an obligation on "counsel to monitor compliance so that all sources of discoverable information are identified and searched."  *Ryan v. Rock Grp., NY. Corp.*, No. 18-cv-2600 (GHW), 2019 WL 6841874, at *4 (S.D.N.Y. Dec. 16, 2019) (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("[C]ounsel and client must take some reasonable steps to see that sources of relevant information are located.")).

> Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents.  Proper communication between a party and her lawyer will ensure (1) that all relevant information (or at least all sources of relevant information) is discovered, (2) that relevant information is retained on a continuing basis; and (3) that relevant non-privileged material is produced to the opposing party.

*Zubulake*, 229 F.R.D. at 432.  After implementing a litigation hold, a party's counsel is obligated to become "fully familiar with her client's document retention policies, as well as the client's data retention architecture" to "make certain that all sources of potentially relevant information are identified . . . ."  *Id.*  This requires counsel to communicate with the "key players" in the litigation and ensure that searches are properly conducted.  *Id.*  "Counsel cannot just implement a litigation

hold and then sit on his hands, hoping that parties retain and produce all relevant information." *Ryan*, 2019 WL 6841874, at *4.

### 1. Application

Defendants argue that Plaintiff's counsel should be sanctioned under Rule 26(g) for signing Plaintiff's discovery responses without making a reasonable inquiry to confirm that the documents were complete and correct. In addition, Plaintiff's counsel may be subject to sanctions for failing to supervise their client's approach to discovery. However, the Court does not have enough information before it to determine that the imposition of sanctions on counsel for Plaintiff is warranted at this time.[5]

On August 15, 2019, Plaintiff served their responses to Defendants' first set of interrogatories. *See* Pl.'s Responses to Defs.' First Set of Interrogatories. Those responses were signed by Dwana S. Dixon, Jason M. Drangel, Ashly E. Sands, and Kerry B. Brownlee of Epstein Drangel, and verified by Mr. Socha. *Id.* at 11–12. Plaintiff served its responses to Defendants' document requests the same day, which were also signed by Ms. Dixon, Mr. Drangel, Ms. Sands, and Ms. Brownlee. Pl.'s Responses to Defs.' Requests for Production of Documents at 21. Between December 18, 2019 and January 15, 2020, Defendants' counsel contacted Ms. Dixon, Mr. Drangel, Ms. Sands, and Ms. Brownlee three times to ask if the document production was complete,

---

[5] In its opening brief Defendants requested only that the Court sanction Plaintiff under Federal Rule of Civil Procedure 37 and the Court's inherent powers to manage its own affairs. *See* Mem. at 16–17. Defendants requested sanctions against Plaintiff's counsel under Federal Rule of Civil Procedure 26(g) for the first time in their reply brief. *See* Reply at 7–9. A court generally "[does] not consider issues raised in a reply brief for the first time because if a [party] raises a new argument in a reply brief [the opposing party] may not have an adequate opportunity to respond to it." *Saachi v. Verizon Online LLC*, No. 14 Civ. 423, 2015 WL 1729796, at *1 n.1 (S.D.N.Y. Apr. 14, 2015) (alterations in original) (quotation omitted). However, Plaintiff requested leave to submit, and the Court authorized, a short sur-reply on the issue, to which Defendants responded. Dkt. Nos. 108–110. Under these circumstances, where both parties had the opportunity to present their arguments to the Court on a particular issue, the Court sees no injustice in considering the Rule 26(g) arguments made by Defendants in their reply brief. *See Hallett v. Stuart Dean Co.*, No. 20-cv-3881 (JSR), 2020 WL 5015417, at *11 n.8 (S.D.N.Y. Aug. 25, 2020) (considering arguments presented for the first time in a reply where the opposing party was afforded the opportunity to file a sur-reply on the issue); *Morton v. Citibank, N.A.*, No. 18-cv-9048 (JPO), 2019 WL 3066412, at *3 n.1 (S.D.N.Y. July 12, 2019) (same); *Saachi*, 2015 WL 1729796, at *1 n.1 (same). But, even after considering the parties' arguments and the information available, the Court does not have enough information in front of it to determine whether Plaintiff's counsel's inquiry was reasonable based on the circumstances.

as it did not include the settlement or licensing agreements Defendants had requested.  *See* Dkt. Nos.

90-6–90-8.  On February 28, 2020, Ms. Dixon produced settlement agreements and finally

confirmed that no additional documents were forthcoming.  Dkt. No. 90-9.

Plaintiff's counsel highlights that the attorney correspondence demonstrates that they made

"an inquiry."  Sur-Reply at 3; *see* Dkt. No. 90-9 ("We are waiting for confirmation from our client

that no additional documents are forthcoming.  To the extent possible, we will update counsel by

the end of day today to confirm whether or not such additional documents exist and/or will be

produced" and "Plaintiff confirms that no additional documents are forthcoming").  To be clear, the

emails only indicate that the Epstein Drangel attorneys asked their client about the existence of the

"licenses, contracts, agreements, settlement negotiations or settlement agreements" Defendants

requested, not verification of their discovery responses as a whole.  *See* Dkt. Nos. 90-6–90-9.  Mr.

Socha's declaration is no more informative:

> 13.  Epstein Drangel LLP was not involved in the GennComm dispute or subsequent
> litigations arising from the same, nor did I discuss GennComm with my attorneys at
> Epstein Drangel LLP until Defendants raised the issue.
> 14.  Given that it was, and is, my understanding that the GennComm License was, and
> is, a patent license that is unrelated to any of Plaintiff's copyrights and unrelated to the
> Squeezamals Products, and it was, and is, my understanding that this action relates
> solely to copyrights in the designs for the Squeezamals Products, Plaintiff did not
> provide its attorneys in this action with a copy of the GennComm License, any emails
> relating to the same, or copies of GennComm's patents or patent applications, during
> the discovery process.
> 15.  For the above reason, Plaintiff also did not provide its attorneys in this action with
> documents relating to Civil Action No. 20-cv-02849-CJC-JEM, wherein Plaintiff seeks
> a declaration of invalidity of GennComm's patents or Case No. 18VECV00045,
> brought by GennComm against Plaintiff in the Superior Court of the State of
> California, Los Angeles, Northwest District, during the discovery process.

Socha Declaration at ¶¶ 13–15.  In short, the Court has not been provided with any detail as to what

Plaintiff's counsel's inquiry consisted of, why it should be considered reasonable under the

circumstances, or any other information about counsel's management of the discovery process.

Plaintiff's counsel maintains that they did not know about GennComm before defense

counsel raised the issue. This in itself concerns the Court.  To some degree, a failure of communication between client and counsel "falls on counsel and client alike." *Zubulake,* 229 F.R.D. at 436.  And, the Court, like Defendants, finds it alarming that Plaintiff would leave its counsel completely in the dark as to their legal troubles in California which, like this case, were intellectual property disputes about the Squeezamals products.  July 17, 2020 Hearing Tr: 6:11–7:4; *see also* July 28, 2020 Hearing Tr. at 9:22–10:7, 10:16–11:15, 12:15–23.  The Court understands that "[n]othing in Rule 26(g) obligates counsel to disclose the manner in which documents are collected, reviewed and produced in response to a discovery request." *Brown v. Barnes & Noble, Inc.*, No. 16-cv-07333 (RA)(KHP), 2019 WL 7168146, at *3 (S.D.N.Y. Dec. 23, 2019) (quoting Karl Schieneman and Thomas C. Gricks III, *The Implications of Rule 26(g) on the Use of Technology-Assisted Review*, 7 FED. CTS. L. REV. 239, 254 (2013)).  However, attorneys have an obligation understand their client's discovery protocol and to take reasonable steps to ensure compliance with discovery obligations. *Martinez v. City of New York*, No. 16 cv 79 (AMD)(CLP), 2018 WL 604019, at *27 (E.D.N.Y. Jan. 24, 2018) (citing *Zubulake*, 229 F.R.D. at 432).  A basic understanding of Plaintiff's approach to discovery here might have unearthed the GennComm relationship for counsel's assessment.  Instead, the assertion that Mr. Socha, who is not an attorney, understood that it was appropriate for him to make relevance determinations and withhold information about the very products at issue in this case raises serious questions about Plaintiff's counsel's supervision of its client.

Here, Plaintiff is no stranger to litigation.  It is actively litigating at least two other matters in California state and federal court, and brought at least four lawsuits asserting copyright infringement, all in connection with the Squeezamals products.  Mem. at 1–2.  It should be familiar with its discovery obligations to collect and produce relevant information.  Nonetheless, if all Plaintiff's counsel did was forward the discovery requests to their client and ask for their responses, they might not have satisfied their obligations to supervise the discovery process.  *See Phoenix Four, Inc. v. Strategic*

*Res. Corp.*, No. 05 Civ. 4837 (HB), 2006 WL 1409413, at *6 (S.D.N.Y. May 23, 2006) (finding counsel was negligent in failing to ask follow-up questions that would have alerted them to the existence of undisclosed materials).  But the Court does not have any facts before it that reveal this to be the case.

In any event, although counsel's actions were not perfect in outcome, the Court has not been given sufficient information to conclude that their supervision of the discovery process was inadequate to the level that would permit the imposition of sanctions at this time.  Despite the opportunities to present arguments in Defendants' Reply, Plaintiff's Sur-Reply, and Defendants' Response Letter, the parties have only presented evidence that Plaintiff's counsel asked their client about one of Defendants' document production requests, and there is nothing to indicate that counsel did or did not take steps beyond that.  There is similarly no information about Plaintiff's counsel's management of the discovery process, or if and how they attempted to ensure their client understood its discovery obligations.  The Court will not sanction Plaintiff's counsel based on this scant evidentiary record.  Therefore, Defendants' request for sanctions under Rule 26(g) is denied without prejudice.

### D.  The Court's Inherent Power to Impose Sanctions

A district court is granted broad discretion to impose sanctions on a party for discovery-related misconduct "under its inherent power to manage its own affairs."  *Residential Funding*, 306 F.3d at 106–07 (citations omitted).  A court may sanction a party under its inherent power to deter abuse of the judicial process and to prevent a party from perpetrating a fraud on the court.  *See Knox v. United States*, No. 3:12cv01741 (SALM), 2016 WL 4033086, at *4 (D. Conn. July 27, 2016); *Shangold v. Walt Disney Co.*, No. 03 Civ. 9522 (WHP), 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006), *aff'd*, 275 F. App'x 72 (2d Cir. 2008).  Because of the "very potency" of the inherent contempt powers, courts must exercise them "with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44

(1991) (citation omitted).  And, "[i]n the discovery context, that discretion should be exercised with even more restraint than usual." *Yukos*, 977 F.3d at 235.  "But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Chambers*, 501 U.S. at 50.

A fraud on the court occurs where a party:  (1) "improperly influence[s] the trier," (2) "unfairly hamper[s] the presentation of the opposing party's claim or defense," (3) "lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process," or (4) "knowingly submit[s] fraudulent documents to the Court[.]" *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 395 (S.D.N.Y. 2010) (internal quotations omitted).  "Sanctions for fraud are warranted if it is established by clear and convincing evidence that [a party] has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *Yukos*, 977 F.3d at 235 (citing *N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25, 25 (2d Cir. 2011)).  "Thus, clear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power." *Id.*  Under this high standard, the Court may only find a fraud upon the court based on evidence that

> produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*Blair v. Inside Edition Prods.*, 7 F. Supp. 3d 348, 358 (S.D.N.Y. 2014) (alterations in original) (quotation omitted).  The proof must be "highly probable" and "leave[] no substantial doubt." *Waran v. Christie's Inc.*, 315 F. Supp. 3d 713, 718 (S.D.N.Y. 2018) (quoting *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013)).

### 1.  Application

The Court's inherent power to sanction should be exercised with restraint, and only where the party's actions are not covered by Rules 26 and 37.  *Yukos*, 977 F.3d at 235.  The Court has

discussed above whether sanctions are warranted under those Rules.  The Court interprets

Defendants' request for sanctions under its inherent power as being based on Plaintiff's alleged

perpetration of a fraud on the Court through a scheme which, Defendants argue, includes perjury by

Mr. Socha during his 30(b)(6) deposition.  Mem. at 15.

      During his deposition, Mr. Socha stated that he "touch[ed] everything" at the company and

that he interacted with the attorneys regarding "IP protection issues, copyright or otherwise."  Socha

Deposition at 29:7–24.  However, when asked about the identities of Plaintiff's other attorneys, Mr.

Socha only named Mr. Kyle, who worked on trademark issues and consulted on other intellectual

property issues "once in a while," and "another IP attorney" who worked on the Glow Crazy

patents.  *Id.* at 25:2–21.  Despite Mr. Socha's own description of his role as a high-level executive for

Plaintiff, Mr. Socha did not identify Plaintiff's attorneys who were then litigating the cases in

California against GennComm.

      Mr. Socha was also asked why Plaintiff had placed a "patent pending" sticker on the

Squeezamals products, only to later remove it.  Mr. Socha responded that Mr. Kyle instructed them

to remove the sticker and that before Mr. Kyle's instruction, Plaintiff "would just put patent pending

on everything just to deter people."  *Id.* at 30:12–33:15.  This explanation appears to differ from the

statements made by Mr. Kyle in his October 8, 2018 letter to Ms. Rosenberg about the Squeezamals

products.  In that letter, Mr. Kyle stated "Beverly Hills Teddy Bear could very easily have been

expressing to the trade . . . their concerns about the way in which GennComm . . . caused BHTB to

misrepresent to major retailers that the product was patent-protected, and caused BHTB to

erroneously place a 'patent pending' notice on the product packaging."  October 8, 2018 Kyle Letter

at 2.

      The standard for sanctions under the Court's inherent power is appropriately high.  It

requires a finding of bad faith, which "may be inferred 'only if actions are so completely without

merit as to require the conclusion that they *must* have been undertaken for some improper purpose . . . .'" *Construtora Norbeto Oderbrecht S.A. v. Gen. Elec. Co.*, No. 07-cv-8014 (CM), 2007 WL 3025699, at *13 (S.D.N.Y. Oct. 12, 2007) (emphasis added) (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)).  Here, based on the evidence before the Court, perjury and an intent to commit a fraud on the Court are not the only possible explanations for Mr. Socha's incomplete answers, despite Defendants' arguments.  Although he did not say so in his deposition, Mr. Socha's answers could have been the result of faulty memory, as Plaintiff maintains in its opposition. Opposition at 13.  Mr. Socha is not an attorney, and it is possible that he may have been confused about the significance of the patent-pending stickers or misunderstood Defendants' questions.  The limited evidence before the Court at this time simply is not clear and convincing that Mr. Socha perjured himself in his deposition.[6]

In any event, "an isolated instance of perjury, standing alone, will not constitute a fraud upon the court[,]" and Defendants have not presented the Court with clear and convincing evidence that an "unconscionable scheme" was afoot. *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (citations omitted).  Furthermore, neither the deposition nor the discovery responses were "presented to the Court for adjudication [and] (hence there was literally nothing, fraud or otherwise, on the court)." *Otto v. Hearst Commc'ns, Inc.*, No. 17-cv-4712 (GHW)(JLC), 2019 WL 1034116, at *10 (S.D.N.Y. Feb. 21, 2019) (emphasis omitted).

The evidence before the Court—evasive and incomplete discovery responses, and selected portions of Mr. Socha's deposition testimony—is not clearly indicative that Mr. Socha, on behalf of Plaintiff, engaged in the kind of intentional deception required for the imposition of sanctions under the Court's inherent power.  The Court notes, however, that the evidence provided by the parties

---

[6] To be very clear, the Court is not finding now that Mr. Socha's testimony was not perjurious, merely that the limited record before it now does not adequately support that conclusion.  Further factual development or an evidentiary hearing could very well support a different conclusion.

and the multiple opportunities Plaintiff was afforded to amend or correct its answers during the discovery process have raised the Court's suspicions that Plaintiff did indeed intentionally withhold information from its adversary and its counsel to gain an advantage in this litigation. There are inconsistencies between the facts on the ground and Plaintiff's representations in its discovery responses, and the briefings submitted to the Court on standing and joinder and in opposition to this motion. Even so, these inconsistencies do not, at this point, amount to clear and convincing evidence that Plaintiff's actions were conducted in bad faith in an attempt to defraud the Court and Defendants.

Therefore, Defendants' request for sanctions under the Court's inherent power is denied without prejudice.

### E. Sanctions

As explained, the Court has determined that sanctions are warranted under Rule 37(c).

> When deciding a proper sanction, a court generally must consider, in light of the full record of the case, (a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party has been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party.

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 138 (S.D.N.Y. 2009) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998)). These factors are not exclusive. *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010). For example, a court may also consider the "need to deter discovery abuse and efficiently control dockets." *In re Sumitomo Copper Litig.*, 204 F.R.D. 58, 60 (S.D.N.Y. 2001). Indeed, discovery sanctions are designed to serve several purposes: (1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general. *See Allied Artists Pictures*, 602 F.2d at 1066.

The guiding principle underlying the imposition of sanctions is that "any sanction must be narrowly tailored to remedy[] the specific prejudice that the party seeking discovery would otherwise suffer." *Rivera v. New York City Hous. Auth.*, No. 94 Civ. 436, 1998 WL 108032, at *1 (S.D.N.Y. Mar. 11, 1998). The sanction of dismissal is available "only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)).

As a sanction for Plaintiff's failure to comply with its discovery obligations, the Court will reopen fact discovery at Plaintiff's expense. The Court is aware of Defendants' position that this remedy would essentially give Plaintiff a "do-over" and excuse its noncompliance with the Court's order that all fact discovery be completed by February of this year. However, dismissal is only appropriate under "extreme circumstances," which are not present here. *West*, 167 F.3d at 779 (citation omitted). And here, Defendants have not yet moved to compel supplemental responses or depositions from Plaintiff. Therefore, requiring Plaintiff to cover the cost of additional discovery is an appropriate sanction given Defendants' proffer that the universe of withheld documents is still unknown. Mem. at 6–7 ("In fact, as of this writing we have no way of knowing the extent of all the materials that were concealed.").

Defendants are also entitled to reasonable attorney's fees and costs attributable to the additional work that resulted from their discovery of the GennComm relationship including (1) the work on this motion, (2) the work on the briefing for the standing and joinder issue, and (3) follow-up discovery necessary to remedy Plaintiff's failure to provide full and accurate responses to Defendants' original discovery requests.

31

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for sanctions is granted in part.  Defendants may renew their motion for sanctions under Rule 26(g) and the Court's inherent power after further discovery is taken, or after an evidentiary hearing if they wish to request one.  Plaintiff is ordered to pay for both the supplemental discovery and Defendants' reasonable attorney's fees and costs that resulted from its failure to meet its discovery obligations, as detailed above.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 90.

SO ORDERED.

Dated:  December 11, 2020

_____

GREGORY H. WOODS
United States District Judge