USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/29/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BEVERLY HILLS TEDDY BEAR COMPANY,                  :
                                                    :
                                     Plaintiff,    :
                                                    :                1:19-cv-3766-GHW
                    -against-                       :
                                                    :                ORDER
                                                    :
BEST BRANDS CONSUMER PRODUCTS, INC, :
BEST BRANDS SALES COMPANY, LLC, and    :
GENNCOMM, LLC,                                      :
                                                    :
                                     Defendants.   :
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

Plaintiff Beverly Hills Teddy Bear Company ("Plaintiff") and Defendant GennComm, LLC

("GennComm") have requested that the Confidential Settlement and General Release Agreement

(the "Settlement Agreement") submitted in support of the Parties' Joint Letter Regarding Settlement

Between GennComm, LLC and Plaintiff and Stipulation of Facts and [Proposed] Consent Judgment

& Dismissal, be filed under seal.  *See* Dkt. Nos. 130-133, 134.  Because Plaintiff and GennComm

have not overcome the strong presumption of public access that attaches to the Settlement

Agreement, the motion to seal is DENIED.

## I.      BACKGROUND

Plaintiff brought this case against Best Brands Consumer Products, Inc. and Best Brands

Sales Company, LLC (together, the "Best Brands Defendants"), alleging that they infringed on their

copyrights in the Squeezamals products.  *See* Compl., Dkt. No. 1; *see also* Third Am. Compl., Dkt.

No. 117, ¶ 41.  In support of its claim, Plaintiff alleges that it owns "both registered and unregistered

copyrights in and related to the Squeezamals Products" (*id.* ¶ 19) and that it is the "exclusive owner

of the Squeezamals Works" (*id.* ¶ 72).  In response, the Best Brands Defendants raised defenses on

the issues of, *inter alia,* standing, copyright validity, and copyright ownership.  *See* Best Brands Defs.'

Answer, Dkt. No. 121 at 9-10.

On July 14, 2020, GennComm, who was then a non-party to this case, contacted the Best

Brands Defendants and informed them that it had a non-exclusive license agreement with Plaintiff

since June 16, 2017, and that the license agreement covered the products at issue in this case.  In

addition, the Best Brands Defendants learned that Plaintiff and GennComm were litigating two

cases in California courts that involved the license agreement and the Squeezamals products.

Plaintiff disputed the Best Brands Defendants' characterization of the license agreement.  After

reviewing briefing from Plaintiff and the Best Brands Defendants, the Court determined that it

would not decide the parties' rights under the license agreement without affording GennComm, a

party to the contract, an opportunity to present its position.   *See* Dkt. No. 112.  As a result, the

Court ordered that GennComm be joined to this action as a necessary party.  Dkt. Nos. 112, 115–

16.  On November 10, 2020, Plaintiff amended its complaint and added GennComm as a defendant.

Dkt. No. 117.

On December 21, 2020, the Court was informed that Plaintiff and GennComm had entered

into a settlement agreement resolving the California cases, which further provided that their license

agreement should be deemed void ab initio, that GennComm agreed to retroactively assign nunc pro

tunc to Plaintiff "any and all rights that GennComm ever had (if any) relating to any copyrights used

by [Plaintiff] relating to the Squeezamals products, including, but not limited to, the right to sue for

copyright infringement[,]" and that Plaintiff and GennComm agreed to resolve the claims against

GennComm in this action with the entry of a Consent Judgment and Dismissal.  Dkt. No. 127.  On

December 22, 2020, Plaintiff and GennComm filed redacted and sealed versions of the Settlement

Agreement on the docket, and requested that the document remain sealed because "many of the

terms of the Settlement Agreement [are] of minimal relevance to the case at hand [and] more

importantly, the Settlement Agreement contains a confidentiality provision that served as part of the

basis for entering into the same, given the sensitive nature of the settlement terms."  Dkt. No. 131;

see Dkt. No. 134-1 ("Settlement Agreement").

The Court has reviewed the motion in support of sealing the Settlement Agreement and concludes that Plaintiff and GennComm have not met the high burden necessary to overcome the presumption of public access to judicial documents.

## II.    LEGAL STANDARD

There is a long-established "general presumption in favor of public access to judicial documents." *Collado v. City of New York*, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016). The Second Circuit has defined "judicial documents" as documents filed with a court that are "relevant to the performance of the judicial function and useful in the judicial process[.]" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quotation omitted); *see also Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 620–621 (S.D.N.Y. 2011). The presumption of access is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

Applications to seal documents must therefore be "carefully and skeptically review[ed] . . . to insure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection. *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994). "Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quotation omitted); *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,* 814 F.3d 132, 141 (2d Cir. 2016) (requiring that a court make specific, rigorous findings before sealing a document or otherwise denying public access). Higher values that may justify the sealing of documents include national security concerns, attorney-client privilege, law enforcement interests, or the privacy interests of third-parties. *See E.E.O.C. v. Kelley Drye & Warren LLP,* No. 10 Civ. 655 (LTS) (MHD), 2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012) (collecting cases).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action[.]" *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir.

1997).  To meet its heavy burden, the moving party "must offer specific facts demonstrating that

closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Wells*

*Fargo Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 413 (S.D.N.Y. 2014) (quotation omitted).

"[T]he decision as to access [to judicial records] is one best left to the sound discretion of the trial

court, a discretion to be exercised in light of the relevant facts and circumstances of the particular

case."  *Nixon v. Warner Commc'ns*, 435 U.S. 589, 599 (1978).

        In *Mirlis v. Greer*, the Second Circuit summarized the three steps that the Court must follow

to determine whether the presumption of public access attaches to a particular document and bars

disclosure.  *See* 952 F.3d 51, 59 (2d Cir. 2020).  First, the Court determines whether the document is

a "judicial document," namely, "one that has been placed before the court by the parties and that is

relevant to the performance of the judicial function and useful in the judicial process."  *Id.*

(quotation omitted).  Second, the Court "proceeds to 'determine the weight of the presumption of

access to that document.'"  *Id.* (quoting *United States v. Erie Cty.*, 763 F.3d 235, 239, 241 (2d Cir.

2014)).  "The weight to be accorded is 'governed by the role of the material at issue in the exercise

of Article III judicial power and the resultant value of such information to those monitoring the

federal courts.'"  *Id.* (quoting *Amodeo*, 71 F.3d at 1049).  "Finally, the court must identify all of the

factors that legitimately counsel against disclosure of the judicial document, and balance those

factors against the weight properly accorded the presumption of access."  *Id.*

### III.    ANALYSIS

        The parties have failed to meet the burden of proof required for the Settlement Agreement

to be sealed.  Step one of the Circuit's test is easily satisfied.  The information Plaintiff and

GennComm seek to seal serves as the basis for their stipulation of facts and proposed consent

judgment and dismissal.  The proposed consent judgment asks the Court to adopt facts that have a

significant bearing on Plaintiff's claims against the remaining defendants and their defenses, without

any evidence or support other than the Settlement Agreement.  Therefore, it is a judicial document

that is both "relevant to the performance of the judicial function and useful in the judicial process[.]" *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)

With respect to step two, the presumption of public access to the information Plaintiff seeks to shield from the public has substantial weight. The Settlement Agreement contains provisions that bear directly on Plaintiff's burden to prove its case against the Best Brands Defendants, and on the Best Brands Defendants' ability to raise certain affirmative defenses. For example, the Court anticipates that Plaintiff may raise the argument that the Settlement Agreement has the effect of curing any potential standing issues as a result of the fact that it purports to void its license agreement with GennComm *ab initio*.[1] And, as described above, Plaintiff asks for the Court to evaluate a proposed consent order in reliance on the substance of the Settlement Agreement. This is at the core of the judicial function. *Cf. Amodeo*, 71 F.3d at 1050 ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason."); *KeyBank Nat'l Ass'n v. Element Transp. LLC*, No. 16 Civ. 8958 (JFK), 2017 WL 384875, at *3 (S.D.N.Y. Jan. 26, 2017) (document's "irrelevance to the issues before the Court . . . places the presumption of public access at the nadir of the continuum of the weight to be given to the presumption").

The weight of the presumption with respect to this information is very high. As the basis for its request to seal, Plaintiff and GennComm claim that "many of the terms of the Settlement Agreement of minimal relevance to the case at hand." This framing of the Settlement Agreement glosses over the fact that other terms are highly relevant to the issues currently being litigated in this case, including a clause specifically entitled "Best Brands Lawsuit." Settlement Agreement ¶¶ 12, 14-15. That paragraph sets forth a fee-splitting agreement between Plaintiff and GennComm that

---

[1] By anticipating this argument, the Court does not suggest that it would have merit. The Court takes no position on the substantive effect of the Settlement Agreement at this time.

awards GennComm, at a minimum, 25% of the amount Plaintiff recovers from the Best Brands

Defendants if successful in this action. *Id.* at ¶ 15.  In exchange for this payment, "GennComm

agrees to provide its full cooperation and assistance, at GennComm's expense, to help achieve a

prompt resolution, with the maximum recovery feasible, in the Best Brands Lawsuit." *Id.*

As stated above "[t]he weight to be accorded is 'governed by the role of the material at issue

in the exercise of Article III judicial power and the resultant value of such information to those

monitoring the federal courts.'" *Mirlis*, 952 F.3d 51, 59 (2d Cir. 2020) (quoting *Amodeo*, 71 F.3d at

1049).  There is significant value in permitting the public to view the Settlement Agreement, as it

colors GennComm's motivation for stipulating to certain facts in the proposed consent judgment.

GennComm clearly has an interest in Plaintiff's success in this case and benefits by its stipulation to

facts which would effectively preclude the Best Brands Defendants from raising arguments that have

a potentially dispositive impact on this case.

Step three of the Circuit's test requires that the Court consider the countervailing interests

that weigh against public disclosure.  Courts in this district have long held that bargained-for

confidentiality does not overcome the presumption of access to judicial documents.  *See Wells Fargo*

*Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014); *see also Aioi Nissay Dowa Ins. Co.*

*v. ProSight Specialty Mgmt. Co.*, No. 12 Civ. 3274 (JPO), 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21,

2012) ("[W]hile enforcement of contracts is undeniably an important role for a court, it does not

constitute a 'higher value' that would outweigh the presumption of public access to judicial

documents . . . . Respondents may have an action for breach of contract against [petitioner] for its

alleged failure to adhere to its obligations under the confidentiality agreement—the Court makes no

finding whatsoever on that question.").  And the text of the Settlement Agreement itself provides

that Plaintiff and GennComm, the settling parties, are prohibited from disclosing information

related to the Settlement Agreement "except: (i) to the extent specifically required by law or legal

process or as authorized in writing."  Settlement Agreement ¶ 20.  In other words, while the

6

agreement might prohibit the *parties* from disclosing its terms, contrary legal obligations, including the presumption of public access, can qualify that prohibition.  And, of course, the Court expects that the parties to the Settlement Agreement were well aware of its importance to the ongoing litigation in this case.  Plaintiff and GennComm cannot, by virtue of their private agreement, keep its terms secret, while asking the Court to act on it, and proposing that it be used as both sword and shield in the ongoing action.  If the Court was to read the agreement as contracting away or rebutting the presumption of public access, "then it would not only eviscerate an express exception to that prohibition, but also sanction a loophole under which contracting parties could insert confidentiality clauses in their agreements in order to thwart the common law right of public access to judicial documents that is said to predate the Constitution."  *Rapaport v. Barstool Sports, Inc.*, No. 18 Civ. 8783 (NRB), 2020 WL 1082608, at *2 (S.D.N.Y. Mar. 2, 2020) (internal quotation marks and alterations omitted).

The Court recognizes that there may be other reasons for permitting a settlement agreement to be filed under seal.  *See, e.g., Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004). However, Plaintiff and GennComm only identified two arguments in favor of sealing the Settlement Agreement—that the Settlement Agreement contains terms irrelevant to this action and that a confidentiality provision applies.  And as discussed, those reasons are plainly insufficient because the terms of the Settlement Agreement itself are highly relevant to the Court's adjudication of Plaintiff's claims against not only GennComm, but also the Best Brands Defendants who were not parties to the Settlement Agreement.  And Plaintiff's and GennComm's desire and agreement to keep the agreement secret is not sufficient to shelter it from public disclosure, given the presumption of public access to judicial documents.

IV.     CONCLUSION

One of the strengths of the United States legal system is that its courts do not operate in secret.  The Court declines Plaintiff and GennComm's invitation to deviate from that bedrock

principle. Because Plaintiff and GennComm have not rebutted the presumption of public access,

their motion to seal the Settlement Agreement is denied.

The Clerk of Court is directed to unseal Dkt. No. 134. The Clerk of Court is further

directed to terminate the motion pending at Dkt. No. 131.

SO ORDERED.

Dated:  December 29, 2020

_____
GREGORY H. WOODS
United States District Judge