USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/8/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                    :

BEVERLY HILLS TEDDY BEAR COMPANY,  :
                    :

           Plaintiff,  :        1:19-cv-3766-GHW
                    :

     -against-  :        MEMORANDUM
                    :      OPINION AND ORDER

BEST BRANDS CONSUMER PRODUCTS, INC, :
BEST BRANDS SALES COMPANY, LLC, and  :
GENNCOMM, LLC,  :
                    :

         Defendants.  :
                    :
--------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.   INTRODUCTION

On December 11, 2020, the Court issued an order imposing sanctions on Plaintiff Beverly

Hills Teddy Bear Company ("Plaintiff") for its "failure to fulfill its obligations under Rule 26(e) and

supplement its inadequate discovery responses." Dkt. No. 124 at 21. The order awarded Best

Brands Consumer Products, Inc. and Best Brands Sales Company, LLC ("Defendants")[1] the cost of

"supplemental discovery and Defendants' reasonable attorney's fees and costs that resulted from

[Plaintiff's] failure to meet its discovery obligations." *Id.* at 32. Defendants subsequently moved to

recover $192,210.16 in fees and expenses. Dkt. No. 155 at 3–4. Plaintiff opposes the motion and

argues that it should be required to pay no more than $77,367.58. Dkt. No. 160 at 11. For the

reasons discussed below, the Court awards Defendants $160,257.04 in attorney's fees and expenses.

---

[1] Pursuant to the Court's October 20, 2020 decision on the threshold standing and joinder issues implicated by the newly discovered Agreement and litigation, GennComm was added to this action as a defendant on November 10, 2020. *See* Dkt. No. 117. However, for the purpose of this decision, the term "Defendants" refers solely to the movants, Defendants Best Brands Consumer Products, Inc. and Best Brands Sales Company, LLC.

## II.     BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history in this matter.  Nonetheless, the Court recapitulates the aspects of the case relevant to this motion.

This case involves a copyright infringement claim over the popular Squeezamals toys.  One cause of action under the Copyright Act, 17 U.S.C. § 501(a), remains.  *See* Dkt. No. 42, Second Am. Compl. at 10–11.  Plaintiff has alleged that Defendants have infringed on its copyrights in the Squeezamals toys.  *Id.* at ¶ 9.  Plaintiff has alleged that it owns "both registered and unregistered copyrights in and related to the Squeezamals Products" (*id.* ¶ 17) and that it is the "exclusive owner of the Squeezamals Works" (*id.* ¶ 42).  *See id.* ¶ 18.  Defendants have raised defenses on the issues of, *inter alia*, standing, copyright validity, and copyright ownership.  *See* Dkt. No. 43, Defs.' Answer to Pl.'s Second Am. Comp. at 6–7.

On January 6, 2020, the Court issued a scheduling order which established the deadline for the completion of all fact discovery as February 29, 2020.  Dkt. No. 38.  On July 14, 2020, after the close of discovery, GennComm contacted Defendants and informed them that it had been party to a non-exclusive license agreement with Plaintiff since June 16, 2017 (the "Agreement"), and that the Agreement covered the products at issue in this case.  *See* Dkt. No. 90, Def. Best Brands' Mot. for Disc. Sanctions and Mem. of Law in Supp. ("Def.'s Mot. for Disc. Sanctions.") at 2; Dkt. No. 90-1 at 1; Dkt. No. 85, July 17, 2020 Hearing Tr. at 4:24–5:23; 7:15–8:13.  In addition, Defendants learned that Plaintiff and GennComm were then litigating two cases in California courts that directly involved the Agreement and the Squeezamals products.  Def.'s Mot. for Disc. Sanctions at 2, 10, 12–13.  Specifically, GennComm sued Plaintiff in California state court to enforce its rights under the Agreement, and Plaintiff sued GennComm in federal court in the Central District of California, seeking a declaratory judgment of invalidity and unenforceability with respect to two of GennComm's patents.  *See* Dkt. Nos. 90-11–90-15.

The existence of the GennComm relationship and the Agreement was raised for the first time with the Court by Defendants during a conference held on July 17, 2020. Defendants argued that the Agreement was highly relevant to this case because it deprived Plaintiff of its ownership interest in the property at issue in this action—providing that "any and all copyrights, trademarks, and patents relating to [slow-rise products] are to be owned by GennComm, and are transferred to and assigned to GennComm." July 17, 2020 Hearing Tr. 4:24–5:7, 7:15–8:13. During the conference, Plaintiff's counsel informed the Court that they had been unaware of their client's relationship with GennComm until Defendants raised the issue. July 17, 2020 Hearing Tr. at 6:12–7:4.

The Court provided the parties with additional time to investigate the issues and scheduled a follow-up conference on July 28, 2020 to discuss next steps. Dkt. No. 74. During the July 28, 2020 conference, Plaintiff's counsel informed the Court that their client "obviously did know that GennComm [claimed] that the patent rights, which are the subject of the license agreement, were being claimed as part of the Squeezamal products" but that it nonetheless had decided to withhold information related to the Agreement and the GennComm litigation because it did not believe that the information was relevant to this action. Dkt. No. 83, July 28, 2020 Hearing Tr. at 9:22–10:7, 10:16–11:15, 12:15–23. The Court directed the parties to brief the issue of whether GennComm was a necessary party, and ultimately determined that it would not decide the parties' rights under the Agreement without affording GennComm, a party to the contract, an opportunity to present its position. *See* Dkt. No. 112. As a result, the Court ordered that GennComm be joined to this action as a necessary party. Dkt. Nos. 112, 115–16. On November 10, 2020, Plaintiff amended its complaint adding GennComm as a defendant. Dkt. No. 117.

Defendants filed a motion for sanctions on August 28, 2020. *See* Def.'s Mot. for Disc. Sanctions. On December 11, 2020, following ample briefing, the Court granted Defendants' motion

in part.  *See* Dkt. No. 124 (the "December 11 Order").  The Court found that "Plaintiff withheld information and documents relevant to this case that fell squarely within the scope of Defendants' discovery requests."  *Id.* at 2.  The Court found that this violated Rule 26(e), and imposed sanctions under Rule 37(c).  *See id.* at 21.  Specifically, the Court reopened discovery "at Plaintiff's expense" and awarded Defendants "reasonable attorney's fees and costs attributable to the additional work that resulted from their discovery of the GennComm relationship including (1) the work on this motion, (2) the work on the briefing for the standing and joinder issue, and (3) follow-up discovery necessary to remedy Plaintiff's failure to provide full and accurate responses to Defendants' original discovery requests."  *Id.* at 31.

On February 5, 2021, Defendants moved to recover $192,210.16 in attorney's fees and expenses pursuant to the December 11 Order.  *See* Dkt. No. 155 at 14.  On February 19, Plaintiff filed a brief in opposition, arguing that Defendants should be awarded no more than $77,367.58.  *See* Dkt. No. 160 ("Pl.'s Opp'n") at 11.  On February 26, Defendants filed a reply brief in which they conceded some trivial fees but otherwise stood by the fees and expenses they had sought in their February 5 motion.  *See* Dkt. No. 165 ("Defs.' Reply").

Defendants are represented by Morris Cohen and Lee Goldberg, both partners at Goldberg Cohen LLP, and Limor Wigder, a senior associate at the same firm.  Dkt. No. 156 ("Cohen Decl.") ¶ 4.  Mr. Cohen has over twenty-five years of experience.  *Id.* ¶ 7.  Mr. Goldberg has over thirty years of experience.  *Id.* ¶ 8. Ms. Wigder has nearly nine years of experience.  *Id.* ¶ 9.  Mr. Cohen, Mr. Goldberg, and Ms. Wigder all specialize in intellectual property litigation.  *Id.* ¶ 11.  This is, however, only Ms. Wigder's second copyright case.  Defs.' Reply at 11.  Mr. Cohen and Mr. Goldberg have both billed Defendants at an hourly rate of $617.50.  Cohen Decl. ¶ 5.  Ms. Wigder has billed Defendants at an hourly rate of $427.50.  *Id.*

III.    **LEGAL STANDARD**

Second Circuit precedent requires a party seeking an award of attorneys' fees to support its request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). District courts have "considerable discretion" in determining what constitutes a reasonable award of attorneys' fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). The Second Circuit has directed that district "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). Those hourly rates "are the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

In determining a reasonable hourly fee, the Second Circuit has also instructed district courts to consider "all of the case-specific variables." *Arbor Hill*, 522 F.3d at 190. The touchstone inquiry is "what a reasonable, paying client would be willing to pay." *Id.* at 184; *see id.* at 191 ("By asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services."). The court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and "should also consider that [a client] might be able to negotiate with his or her attorneys." *Id.* at 190. A district court may additionally factor into its determination "the difficulty of the questions involved[,] the skill required to handle the problem[,] the time and labor required[,] the lawyer's experience, ability and reputation[,] the customary fee charged by the Bar for similar services[,] and the amount involved." *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, No. 09 Civ. 8665 (JGK) (FM), 2010 WL 5538552, at *2

(S.D.N.Y. Dec. 6, 2010) (alterations in original) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)), *report and recommendation adopted*, No. 09 Civ. 8665 (JGK), 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011).

An applicant for an award of fees bears "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (footnote omitted). "The critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Flores v. J&B Club House Tavern, Inc.*, No. 10-Civ-4332 (GAY), 2012 WL 4891888, at *5 (S.D.N.Y. Oct. 16, 2012) (internal quotation marks and citation omitted). "A district court should reduce the number of hours included in the fee calculation if the claimed time is 'excessive, redundant, or otherwise unnecessary.'" *Luessenhop v. Clinton Cnty.*, 324 F. App'x 125, 126-27 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). In the event a district court reduces the number of hours included in the calculation of fees, it "must ordinarily state its reasons for excluding those hours 'as specifically as possible' in order to permit meaningful appellate review." *Gierlinger*, 160 F.3d at 876 (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998)).

## IV. DISCUSSION

Mr. Cohen's and Mr. Goldberg's hourly rates are reasonable in light of the rates charged by attorneys in this district with similar skills, reputation, and experience. The Court finds, however, that Ms. Wigder's rate is unreasonably high for an associate with limited experience in copyright cases. Therefore, for the reasons discussed below, the Court in its discretion reduces Ms. Wigder's rate from $427.50 to $300 per hour. The Court further reduces Ms. Wigder's rate to $175 per hour for entries that describe paralegal work and excludes entirely entries that describe purely clerical

work.

The time entries submitted by Defendants' counsel are mostly reasonable. While Defendants' counsel misconstrue the scope of the December 11 Order, relatively few of their requests for reimbursement fell outside its proper scope. Defendants' counsel has also for the most part provided the Court with records adequate to determine whether the hours it has billed are reasonable. The Court finds only two time entries in which Defendants' counsel's use of block billing has hindered the Court's ability to assess the entries' reasonableness. The Court does not find any instances in which Defendants' counsel has made excessive use of partners or billed excessively for relatively simple tasks.

### A. Reasonable Rates

#### 1. Mr. Cohen and Mr. Goldberg

The rates billed by Mr. Cohen and Mr. Goldberg are reasonable. "[C]ourts in this district have generally found hourly rates of $400 to $750 to be appropriate for partners in copyright and intellectual property cases." *Hughes v. Benjamin*, No. 17-CV-6493 (RJS), 2020 WL 4500181, at *6 (S.D.N.Y. Aug. 5, 2020); *see, e.g., Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, No. 13-CV-1526 (RJS), 2020 WL 2848232, at *6 (S.D.N.Y. June 1, 2020) (reducing experienced intellectual-property partner's rate from $825 to $750); *Sub-Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs., Inc.*, No. 13-CV-2548 (KMW) (JLC), 2014 WL 1303434, at *9 (S.D.N.Y. Apr. 1, 2014) (finding $785 per hour reasonable for an intellectual property partner with thirty-eight years of experience); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. Ltd. Liab. Co.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (finding $735 per hour reasonable for a partner working on a trademark-infringement case).

Plaintiff does not contest the reasonableness of these rates, but nonetheless argues that Defendants have failed to demonstrate their reasonableness. Pl.'s Opp'n at 3–4. This is not so.

Defendants have provided several examples in which courts in this district have approved of rates higher than Mr. Cohen's and Mr. Goldberg's. Dkt No. 155 at 8-9. Plaintiff contends that Defendants should have supported their claims about market rates for intellectual-property partners in New York City with "concrete evidence . . . such as relevant industry reports." Pl.'s Opp'n at 4 n.2. While parties may present such evidence to challenge precedential rates, they are not required to do so when precedent already supports their position. *See Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209-10 (2d Cir. 2005) (a court may "rel[y] exclusively on an hourly rate set in prior caselaw . . . in the absence of any credible evidence . . . of a higher prevailing market rate."). Since Defendants have provided ample information about Mr. Cohen's and Mr. Goldberg's experience and the prevailing rates in this district, the Court finds that Defendants have met their burden of establishing that Mr. Cohen's and Mr. Goldberg's rates are reasonable.

2. Ms. Wigder

Although Ms. Wigder's rate falls within the band of rates that have been found reasonable in this district, the Court finds that it is unreasonable to award Ms. Wigder a rate at the upper end of that band in this particular case.

Ms. Wigder has nearly nine years of experience as an attorney and specializes in intellectual property law, but this is only her second copyright case. Defs.' Reply at 7. Since her experience does not directly relate to the subject matter of this case, her rate should be reduced. Her rate should also be reduced to a lower level within the prevailing range of fees because associates at boutique firms generally command lower rates than associates at larger firms. *See, e.g., Barcroft Media, Ltd. v. Fashion In Me Inc.*, No. 16CV7574 (LGS) (DF), 2018 WL 4565889 (S.D.N.Y. June 5, 2018), *report and recommendation adopted*, No. 16 CIV. 7574 (LGS), 2018 WL 4568727 (S.D.N.Y. July 25, 2018) (reducing rate of sixth-year associate specializing copyright litigation rate from $400 to $300 in part because of lower rates at other boutique firms). The Court in its discretion therefore reduces Ms. Wigder's

hourly rate from $427.50 to $300. *See, e.g., Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, No. 13-CV-1526 (RJS), 2020 WL 2848232, at *6 (S.D.N.Y. June 1, 2020) ("courts in the Southern District have generally found [associates'] hourly rates of $200 to $450 to be reasonable in copyright cases"); *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 361 (S.D.N.Y. 2010) (finding that an associate's hourly rate of $390.10 fell "at the very top of the spectrum of reasonable hourly rates for associates" at a firm with 480 attorneys).

### 3. Paralegal and Clerical Work

Plaintiff objects to several time entries on the grounds that Ms. Wigder billed for "clerical work" at an associate's rate. Pl.'s Opp'n at 10. These entries, in addition to others that Plaintiff did not mention, appear to bill Defendants an unreasonably high rate for work that could have been wholly or mostly performed by a paralegal. "Attorneys who are overqualified for clerical tasks are not allowed to be paid at their hourly rate for this work." *FameFlyNet, Inc. v. Shoshanna Collection, LLC*, No. 16 CIV. 7645 (RWS), 2018 WL 671267, at *3 (S.D.N.Y. Feb. 1, 2018). Such work may be compensable at a paralegal rate, but "[e]ven paralegal work . . . is not compensable if it is purely clerical." *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) (citing *Bridges v. Eastman Kodak Co.*, No. 91 CIV. 7985 (RLC), 1996 WL 47304, at *7 (S.D.N.Y. Feb. 6, 1996), *aff'd*, 102 F.3d 56 (2d Cir. 1996)). The Court therefore excludes entries describing purely administrative or clerical work entirely and reduces the rates for entries describing paralegal work by half, to a reasonable paralegal rate of $175 per hour. *See, e.g., Latin Am. Music Co.*, 2020 WL 2848232, at *7 ("judges in the Southern District of New York have generally found hourly rates of $150 to $200 to be reasonable for paralegals in copyright cases").

The entries are as follows:

a. On July 1, 2020, Ms. Wigder billed 1.3 hours for "[c]ollecting and converting documents for production" and "Bates Stamping and producing" them to Plaintiff. Defs.' Mot. Ex. 1, at 3,

no. 14. Since the entry does not explicitly mention attorney work such as reviewing or selecting documents for production, the Court reduces the entire 1.3 hours to the paralegal rate of $175 per hour.

b. On July 29, 2020, Ms. Wigder billed 0.3 hours for "[o]rdering transcript . . . and sending edits to court reporters." Defs.' Mot. Ex. 1, at 7, no. 11. Defendants contend that this time was "spent on ordering a transcript, reviewing, and then sending edits to the Court Reporter." Defs.' Reply at 10. The text of the time entry, however, makes no mention of the attorney task of "reviewing" the transcript. The tasks it describes—ordering a transcript and sending edits—are purely clerical. *See, e.g., Hines v. City of Albany*, No. 1:06-CV-1517 (GTS/RFT), 2015 WL 12828107, at *5 (N.D.N.Y. May 13, 2015) ("ordering a transcript . . . is a non-legal clerical/secretarial task"), *aff'd*, 613 F. App'x 52 (2d Cir. 2015). The Court therefore excludes this entire 0.3-hour entry.

c. On August 29, 2020, Ms. Wigder billed 0.5 hours to "[d]ownload and save all file stamped materials filed in connection with Motion for Discovery Sanctions." Defs.' Mot. Ex. 1, at 10, no. 20. Downloading files is a purely clerical task. *See, e.g., Agudelo v. E & D LLC*, No. 12 CV 960 (HB), 2013 WL 1401887, at *3 (S.D.N.Y. Apr. 4, 2013). The Court therefore excludes this entire 0.5-hour entry.

d. On September 18, 2020, Ms. Wigder billed 0.7 hours to "[p]roofread [a] brief" and prepare a table of authorities. Defs.' Mot. Ex. 1, at 13, no. 17. Proofreading usually refers to checking a document for spelling, grammatical, and formatting errors, not editing its substance, and can therefore be done by a paralegal rather than an attorney. *See, e.g., Cooper v. Sunshine Recoveries, Inc.*, No. 00CIV8898LTSJCF, 2001 WL 740765, at *4 (S.D.N.Y. June 27, 2001) (reducing time spent proofreading to "clerk" rate). Preparing a table of authorities likewise requires only an understanding of formatting rules, not of a brief's underlying caselaw. *See,*

*e.g., Estrella o/b/o M.R.E. v. Berryhill,* No. 15 CV 6966 (CS) (LMS), 2017 WL 6033042, at *3 (S.D.N.Y. Dec. 5, 2017) (finding that preparing a table of authorities is "paralegal in nature," but not purely clerical). The Court therefore reduces this 0.7-hour entry to the paralegal rate.

e.    On November 11, 2020, Ms. Wigder billed 0.3 hours to download Plaintiff's Third Amended Complaint and calendar a response due date. Defs.' Mot. Ex. 1, at 15, no. 45. Since downloading files is a purely clerical task and the Court cannot determine how much time was spent on calendaring the response due date, the Court excludes this 0.3-hour entry.

f.    On January 19, 2021, Ms. Wigder billed 0.3 hours for "[r]eviewing Court's [o]rder" and "[d]ocketing of new deadlines." Defs.' Mot. Ex. 1, at 19, no. 35. A paralegal could have reviewed the order to calendar its deadlines. *See, e.g., King Fook Jewellry Grp. Ltd. v. Jacob & Co. Watches, Inc.*, No. 14 Civ. 742 (ER) (JLC), 2019 WL 2535928, at *5 (S.D.N.Y. June 20, 2019) (reducing attorney's hourly rate to paralegal rate for time spent calendaring deadlines), *report and recommendation adopted sub nom. King Fook Jewellery Grp. Ltd. v. Jacob & Co. Watches Inc.*, No. 14 CIV. 742 (ER), 2019 WL 4879212 (S.D.N.Y. Oct. 3, 2019). The Court therefore reduces this 0.3-hour entry to the paralegal rate.

g.    Finally, on January 22 and 23, 2021, Ms. Wigder billed a total of 2.8 hours to tabulate her firm's bills in this case. Defs.' Mot. Ex. 1, at 20, nos. 47 & 48. Since a paralegal could have grouped related billing entries and summarized them in a spreadsheet, the Court reduces all 2.8 hours to the paralegal rate.

In sum, the Court finds that three of Ms. Wigder's time entries, totaling 1.1 hours, constitute purely clerical work; the Court excludes these from Defendants' legal fees for the purposes of this application. A further five entries, totaling 5.1 hours, constitute paralegal work; the Court reduces Ms. Wigder's rate for these entries to $175 per hour. Those two reductions trim $1,758.00 from Defendants' award.

### B. Reasonable Hours

Plaintiff argues that Defendants have sought compensation for work done outside the scope of the December 11 Order, that Defendants' counsel kept inadequate records of their time, and that Defendants' counsel have otherwise billed excessively. However, for the most part, Defendants' counsel submitted time entries that describe work within the scope of the December 11 Order. There are certain exceptions to that conclusion, which are detailed below. Furthermore, most time entries submitted by Defendants' counsel aggregate only related tasks and therefore do not constitute improper block billing. Finally, Defendants' counsel has not made excessive use of partners on this case, nor otherwise billed excessive amounts of time.

As a threshold matter, the Court declines to adopt Plaintiff's approach of applying a blanket cut to Defendants' hours. *See* Pl.'s Opp'n at 11. "[I]n cases in which substantial numbers of voluminous fee petitions are filed, the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'" *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (quoting *Carey*, 711 F.2d at 1146). The Court may, however, decline to do so when records of the hours are not so voluminous that examining them line-by-line would be burdensome. *Velez v. DNF Assocs., LLC*, No. 1:19-cv-11138-GHW-SDA, 2020 WL 6946513, at *3 (S.D.N.Y. Nov. 25, 2020) (declining to apply a blanket cut when attorneys submitted only six pages of bills). Defendants' bills span only around twenty-one pages, *see* Defs.' Mot. Ex. 1, and Plaintiff itself has not found an exacting, line-item review overly burdensome, *see* Pl.'s Opp'n at 5–10 (objecting to dozens of particular time entries). The Court has therefore examined Defendants' time entries one-by-one and excluded or trimmed them where appropriate.

#### 1. Scope of the December 11, 2020, Order

Plaintiff argues that certain of Defendants' time entries are outside the scope of the Court's

December 11 Order. *See* Pl.'s Opp'n at 5–8. The Court agrees that many of the time entries of which Plaintiff complains fall outside the scope of the order. The December 11 Order awarded Defendants "reasonable attorney's fees and costs attributable to the additional work that resulted from their discovery of the GennComm relationship including (1) the work on [the sanctions] motion, (2) the work on the briefing for the standing and joinder issue, and (3) follow-up discovery necessary to remedy Plaintiff's failure to provide full and accurate responses to Defendants' original discovery requests." December 11 Order at 31. Despite the gravity of Plaintiff's discovery violation, the Court has made clear to Defendants' counsel that "[t]he entire litigation is not now at [P]laintiff's cost." Dkt. No. 163 at 39:10–11. The December 11 Order sanctions Plaintiff for its failure to disclose its relationship with GennComm, not for the existence of the relationship or any subsequent agreements between Plaintiff and GennComm.

Accordingly, although the order encompasses a large category of work, it has clear limits. First, it covers only "*additional* work"—not work that Defendants' counsel would simply have performed earlier in the litigation if it had learned about GennComm during discovery. *Id.* Second, it covers only "work on *the* briefing for the standing and joinder issue," *viz.*, the briefing done ahead of the Court's October 20 order requiring that GennComm be joined to the action—not all subsequent work on standing and joinder. *Id.* Third, it covers only "discovery *necessary* to remedy Plaintiff's failure," that is, to redress the issue of late disclosure—not all discovery that Defendants' counsel deems expedient with respect to the GennComm relationship, regardless of Plaintiff's untimely disclosure. *Id.*

With these limits in mind, the Court applies the December 11 Order to Defendants' counsel's time entries by category:

a.  On July 14, 2020, Mr. Goldberg billed 0.3 hours for work on an adjournment request. *See* Defs.' Mot. Ex. 1, at 3, no. 22. Defendants concede that the December 11 order does not

13

cover work done on an adjournment request prior to when Defendants raised the GennComm issue. Defs.' Reply at 1. The Court therefore excludes this 0.3-hour time entry.

b. On July 17, 2020, Mr. Cohen billed 2.6 hours to "[p]repare for" and "[p]articipate in [a] court conference re summary judgment." *See* Defs.' Mot. Ex. 1, at 3, no. 23. Plaintiff contends that the December 11 Order does not cover work on this conference because the conference would have occurred even if Plaintiff had properly disclosed the GennComm issue. *See* Pl.'s Opp'n at 5. But the bulk of the conference—and, by implication, Defendants' preparation for it—was spent on the GennComm issue, not setting a schedule for summary judgment. *See* Dkt. No. 85 at 9:2–11. A brief conference would have occurred regardless of the GennComm issue, but Defendants' work on the GennComm issue would not. The hours Defendants billed for that work therefore fall within the scope of the December 11 Order. Since, however, the Court is unable to determine what fraction of the 2.6 hours was spent on the GennComm issue rather than summary judgment, it reduces this time entry by half, to 1.3 hours.

c. Between August 3 and August 7, 2020, Defendants' counsel billed 25.2 hours across seven time entries for work related to a Rule 11 motion. Defs.' Mot. Ex. 1, at 7, nos. 16, 18-20 & 22-24. Plaintiff argues that work on the motion should be excluded because the motion was never filed and would not have addressed only the GennComm issue. *See* Pl.'s Opp'n at 5–6. Work may, however, be reasonably billed even if it does not produce the kind of work product envisioned at the time. "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Attorneys routinely pursue promising avenues that they ultimately abandon. Such work merits compensation. *See, e.g., Underdog Trucking, L.L.C. v. Verizon Servs.*

*Corp.*, 276 F.R.D. 105, 112–13 (S.D.N.Y. 2011) (approving of a portion of hours spent preparing a reply brief even though counsel decided not to file it). Further, as Plaintiff itself recognized, the Rule 11 motion would have covered substantially the same issues as did the sanctions motion that Defendants filed with the Court. *See* Defs.' Reply Ex. 5, at 17:13–16. The issues in that sanctions motion arose directly from Plaintiff's failure to disclose the GennComm issue. The hours Defendants billed for work on the abandoned Rule 11 motion therefore fall within the scope of the December 11 Order.

d. Between August 17 and August 20, 2020, Mr. Cohen billed 0.9 hours for work relating to Defendants' response to a subpoena from GennComm. *See* Defs.' Mot. Ex. 1, at 9, nos. 1, 2, 4 & 6. On October 20 and 22, 2020, Mr. Cohen and Mr. Goldberg billed a further 9.4 hours for work that included communications with Perry Goldberg, counsel for GennComm. *See* Defs.' Mot. Ex. 1, at 14–15, nos. 36, 37, 40 & 41. Plaintiff objects to Defendants' inclusion of all these time entries. Pl.'s Opp'n at 6. Plaintiff argues that such work arose from its relationship with GennComm rather than its failure to disclose the relationship. Pl.'s Opp'n at 7 n.8. The Court agrees. Plaintiff is only responsible for "additional work that resulted from [Defendants'] discovery of the GennComm relationship," December 11 Order at 31. There is no reason to think that Defendants' counsel would not have responded to a subpoena from GennComm or spoken with its counsel even if Plaintiff had properly disclosed its relationship with GennComm. These tasks are therefore neither "additional work" nor a result of Defendants' untimely "discovery of the GennComm relationship." *See id.* Furthermore, although Defendants contend that "Plaintiff's concealment of information . . . [left] Defendants to investigate the facts from another source," Defs.' Reply at 3, the Court cannot conclude that this line of inquiry would not have been pursued had Plaintiff disclosed the GennComm relationship earlier—this seems a natural outgrowth of

the existence of the relationship, not the late timing of the disclosure. Indeed, the Court later reopened fact discovery in large part to give Defendants an opportunity to obtain information about the GennComm issue directly from Plaintiff. Since the work in these entries was not necessary to remedy Plaintiff's failure to provide timely discovery, the Court reduces Mr. Cohen and Mr. Goldberg's hours by a further 10.3 hours, reducing Defendants' award by $6,360.25.

e. Between December 17, 2020, and January 28, 2021, Defendants' counsel billed 15.3 hours across fourteen time entries for work on third-party subpoenas. *See* Defs.' Mot. Ex. 1, at 17–18, nos. 9–11, 15 & 18–22, 20–21, nos. 51, 52, 54–56. Plaintiff notes that many of the subpoenas have not been served and contends that they exceed the scope of supplemental discovery. Pl.'s Opp'n at 6–7. The Court agrees that this third-party discovery falls outside the scope of the Court's sanctions order. Again, the Court ordered that Plaintiff pay for the additional costs associated with its late disclosures, not everything related to GennComm and its relationship with Plaintiff. Third-party subpoenas do not fall into the category of "follow up discovery necessary to remedy Plaintiff's failure to provide full and accurate responses to Defendants' original discovery requests," for the simple reason that this discovery is not sought from Plaintiff with respect to the original discovery request propounded to it. December 11 Order at 31. Defendants state that they sought documents from third parties because they did not want to "rely[] on Plaintiff" to produce the documents. Defs.' Reply at 3. But Defendants' mistrust of Plaintiff and its counsel does not justify compensating Defendants for seeking discovery from a third party. For this reason, the Court excludes all 15.3 hours, reducing Defendants' award by $6,050.50.

f. On December 21 and 22, 2020, and January 6, 2021, Mr. Cohen and Mr. Goldberg billed 13.1 hours across five time entries for work stemming from Plaintiff's and GennComm's

settlement agreement and proposed consent judgment. *See* Defs.' Mot.' Ex. 1, at 18–19, nos. 12, 17, 23, 28 & 29. On January 29, 2021, Defendants' counsel billed a further 3.6 hours for work on a letter requesting leave to amend their answer. *See* Defs.' Mot. Ex. 1, at 21, nos. 61, 63 & 64. Plaintiff argues that all of this work arose from the existence of its relationship with GennComm rather than its failure to disclose that relationship. *See* Pl.'s Opp'n at 7 n.8. Plaintiff characterizes the amended complaint in particular as a result of Plaintiff and GennComm entering into a consent judgment in state court, not of Plaintiff's failure to disclose the GennComm issue. *See* Pl.'s Opp'n at 7. The Court agrees. Since there is nothing to suggest that Plaintiff and GennComm would not have entered into a settlement agreement and proposed a consent judgment even if Plaintiff had properly disclosed its relationship with GennComm, Defendants' counsel's work on these issues was not a result of Plaintiff's non-compliance with its discovery obligations. And while these issues bear directly on standing and joinder, they were not part of the parties' original briefing of the standing and joinder issue referenced in the Court's order. *See* December 11 Order at 31. The Court therefore excludes all these entries, reducing Mr. Cohen's hours by 9.9 and Mr. Goldberg's by 3.2. Defendants' award is accordingly reduced by $8,089.25

g.   On January 21, 2021, Mr. Cohen billed 0.5 hours for a telephone call with Plaintiff's counsel "re next steps in case." Defs.' Mot. Ex. 1, at 20, no. 40. Plaintiff argues that the call should be excluded because it was about resolving the case. *See* Pl.'s Opp'n at 7. Defendants in their reply brief claim that the call "directly related to the present motion and how to deal with the issues of attorneys' fees and discovery in the case." Defs.' Reply at 4. Confronted with these differing accounts, the Court defers to Defendants' contemporaneous record of the call. That record is, however, simply too vague for the Court to determine whether the "next steps" discussed in the call related to Plaintiff's failure to disclose its relationship with

17

GennComm. The Court therefore excludes the entry, reducing Mr. Cohen's hours by 0.5.

h.  On January 28 and 29, 2021, Mr. Cohen billed 0.5 hours for work on a joint letter on mediation. Defs.' Mot. Ex. 1, at 21, nos. 58 & 60. Plaintiff argues that this work was "not occasioned by any of Plaintiff's discovery violations." Pl.'s Opp'n at 7. The Court agrees that any connection between Plaintiff's failure to disclose the GennComm issue and the parties' efforts to settle this case is too tenuous to support awarding Defendants these fees. The Court therefore excludes these two entries, reducing Mr. Cohen's hours by 0.5.

In sum, the Court finds that Defendants' counsel billed for 41.3 hours of work that fell outside the scope of the December 11 Order. The Court reduces Mr. Goldberg's and Mr. Cohen's hours by a combined 30.6 and Ms. Wigder's by 10.7, reducing Defendants' award by $22,105.50.

2. Block Billing

The block billing that appears in the time entries submitted by Defendants' counsel is mostly benign. "Block billing" merely means "aggregating multiple tasks into one billing entry." *Adorno v. Port Auth. of N.Y. & N.J.,* 685 F.Supp.2d 507, 515 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Molefi v. Oppenheimer Trust*, No. 03 Civ. 5631 (FB), 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007)). Any task, however, can be expressed as a series of sub-tasks. A billing entry that lists those sub-tasks is not therefore impermissible; it is merely more specific. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F.Supp.3d 333, 343-44 (finding that a 6.75-hour entry reading "[r]evise and finalize spoliation memo of law . . . exhibits for same and notice of motion[,] file and arrange for service of same," did not warrant a reduction in billed hours because it specifically listed each individual task and the tasks were related). Whether the entry is permissible ultimately turns on whether "the Court can determine the reasonableness of the work performed." *Adorno*, 685 F.Supp.2d at 515 (internal quotation marks omitted) (quoting *Mugavero v. Arms Acres, Inc.*, No. 03 CIV.05724 PGG, 2010 WL 451045, at *8 (S.D.N.Y. Feb. 9, 2010)). Defendants' counsel has

for the most part grouped tasks in ways that do not impede the Court's ability to assess the reasonableness of the hours spent on those tasks. Therefore, with the exceptions addressed below, the Court sees no need to reduce the legal fees awarded to Defendants on account of block billing.

On July 20 and 21, 2020, Mr. Goldberg billed for two long periods of work totaling 9.1 hours. *See* Defs.' Mot. Ex. 1, at 4, nos. 27 & 30. The first entry, for 4.8 hours, combines several tasks related to parties' joint letter on the motion to dismiss and for sanctions.[2] *See* Defs.' Mot. Ex. 1, at 4, no. 27 ("Review pleadings . . . revise letter . . . legal research . . . telephone call with Morris [Cohen] re: same"). So does the second entry, for 4.3 hours. *See* Defs.' Mot. Ex. 1, at 4, no. 30 ("Prepare letter . . . review pleadings and deposition transcripts . . . telephone calls with Morris [Cohen] re: same"). Plaintiff argues that these entries obscure "how much time was spent on each task" and thus prevent the Court from determining whether the time spent on each task was reasonable. *See* Pl.'s Opp'n at 8. All these tasks are, however, part of the broader task of preparing the letter filed with the Court on July 24, 2020. The Court can determine whether Mr. Goldberg spent a reasonable amount of time on this broader task without knowing how long he spent on each of the component tasks listed in the entries. These entries therefore do not constitute impermissible block billing.

Similarly, on August 27, 2020, Mr. Cohen billed 5 hours for work on Defendants' motion for sanctions. *See* Defs.' Mot. Ex. 1, at 10, no. 15. On September 3, 2020, Mr. Cohen billed 6.8 hours for work on Defendants' Rule 11 pre-motion conference letter to the Court. *See* Defs.' Mot. Ex. 1, at 10, no. 25. On September 15 and 17, he billed 7 and 7.6 hours, respectively, for work on a motion in opposition. *See* Defs.' Mot. Ex. 1, at 13, nos. 12 & 15. Plaintiff contends that these entries all

---

[2] Mr. Goldberg submitted a declaration to the effect that 0.2 of these 4.8 hours were spent on revising a letter requesting a page extension. Dkt. No. 166 ¶ 6. There is, however, no need to exclude this time. Requesting a page extension was a necessary step in preparing the joint letter, so time spent on it is properly included in the total time spent preparing the joint letter.

constitute impermissible block billing. *See* Pl.'s Opp'n at 8. The Court disagrees. Each of these entries relates to a single overarching task. The fact that some of these entries include, for example, time spent speaking to Mr. Goldberg does not make them impermissible. It is reasonable to assume that conferring with a colleague was a part of Mr. Cohen's writing process for that letter, particularly given that Mr. Goldberg is also an attorney of record on this case. Since the Court can still determine whether these entries bill a reasonable number of hours for the overarching tasks they describe, it declines to trim them.

The Court does, however, find that some of Defendants' counsel's entries do constitute impermissible block billing. The 6.3 hours billed by Mr. Cohen and 5.2 hours billed by Mr. Goldberg on July 28, 2020, combine various activities related to the standing and sanctions issues. Defs.' Mot. Ex. 1, at 6, nos. 7 & 8. Some of these activities are not obviously part of a single overarching task. The telephone calls listed in these entries could have been part of preparation for the conference, but the records do not make this clear. Since the telephone calls are not listed separately, the Court cannot easily determine whether the time spent preparing for and participating in the conference was reasonable. *See* Defs.' Mot. Ex. 1, at 6, no. 7. For that same reason, the Court cannot determine whether the time Mr. Goldberg spent to "review and edit [an] NDA" was reasonable. *See* Defs.' Mot. Ex. 1, at 6, no. 8. The Court in its discretion therefore reduces each of these entries by 50%—entry 7 to 3.15 hours, and entry 8 to 2.6 hours. This reduces Defendants' award by $3,550.63.

3. Use of Partners

Plaintiff argues that Defendants' counsel made excessive use of partners in this case. Given the complexity of this case, however, it was reasonable for Defendants to entrust most of the work to Mr. Cohen and Mr. Goldberg. Plaintiff's own representation was entrusted almost exclusively to partners. *See* Dkt. No. 161 ("Drangel Decl.") at 2–3. Defendants' counsel also delegated a reasonable amount of work to Ms. Wigder. A larger firm might have delegated still more work to an

associate, but also would have charged significantly higher hourly rates. Defendants' use of partners therefore did not lead to unreasonable attorney's fees.

       4.   Excessive Billing

Plaintiff argues that Defendants' counsel spent excessive time on certain tasks. Plaintiff points to a series of entries in which Defendants' counsel spent a combined 5 hours preparing Defendants' Third Amended Answer. *See* Defs.' Mot. Ex. 1, at 15, nos. 48–52. The Court finds this time reasonable given the scope of the changes between Defendants' Second and Third Amended Answers. *See* Defs.' Reply Ex. 3.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion for attorney's fees and expenses is GRANTED IN PART and DENIED IN PART. The sanction imposed by the Court does not require that Plaintiff pay Defendant for the costs associated with litigating all issues related to Plaintiff, GennComm, and their relationship—only the consequences of Plaintiff's untimely disclosure, as well as the cost associated with briefing the standing and joinder issues specifically contemplated at the at the time of the order. The Court awards Defendants' counsel $160,257.04 in fees and expenses.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 155.

SO ORDERED.

Dated: June 8, 2021
New York, New York

                                      _____
                                      GREGORY H. WOODS
                                  United States District Judge