UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BEVERLY HILLS TEDDY BEAR COMPANY

            Plaintiff,

v.

BEST BRANDS CONSUMER PRODUCTS, INC.,
and BEST BRANDS SALES COMPANY, LLC

            Defendants.

Civil Action No.:

1:19-cv-3766 (AS)

# DEFENDANT BEST BRANDS' RESPONSE
# TO PLAINTIFFS' RULE 56.1 COUNTERSTATEMENT

Morris E. Cohen
Lee A. Goldberg
Limor Wigder
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 3rd Floor
New York, New York 10019
(646) 380-2087 (phone – main)
(646) 380-2084 (phone – direct)
(646) 514-2123 (fax)
MCohen@GoldbergCohen.com
LGoldberg@GoldbergCohen.com
LWigder@GoldbergCohen.com

Pursuant to Local Rule 56.1, and the Court's Individual Rule 8(I), Defendants respectfully submit the following response to Plaintiffs' Rule 56.1 Counterstatement (Dkt. 272) regarding Defendants' Motion for Summary Judgment as to Plaintiff's Lack of Standing and Failure to Join a Necessary and Indispensable Party (Dkt. 264) ("Defendants' MSJ").[1] Defendants note that their responses are solely for the purposes of summary judgment in this matter, and fully reserve all rights to further dispute any statements herein or otherwise by Plaintiff at a trial, if any.

1. Exhibit 6 is a true and correct copy of an excerpt of Plaintiff's sworn interrogatory responses in this matter. See, Exhibit 6 (Plaintiff's Interrogatory Responses), and Cohen Declaration ¶6 ("Cohen Dec.") (authenticating exhibit).

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

2. Plaintiff swore under oath that "Benson Tijo" is the sole designer of all of the designs of the copyrights-in-suit. *See* Exhibit 1 (Plaintiff's Interrogatory Responses), Responses to Interrogatories 4 and 5.

   **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 2 of Defendants' SMUF. More specifically, Plaintiff does not dispute that Benson Tijo designed the copyrights-in-suit; however, Plaintiff indicated that Plaintiff's employees, including Randy Clark, had some involvement in the process. *See* Exhibit 6, Response to Interrogatory 4. Additionally, Exhibit 1 *(Dkt. No.*

---

[1] In the opening paragraph of Defendants' SMUF, they indicate that "Plaintiffs" submit the same; however, the SMUF is on behalf of Defendants. Additionally, Defendants also include the headings from their brief, which do not qualify as facts, but instead legal argument, as such, Plaintiff has not included those in the instant response. To the extent any response is required by Plaintiff, Plaintiff disputes all of the headings on the basis that the headings constitute legal arguments, do not contain any citations to evidence, and do not qualify as facts.

*266-1*) is not Plaintiff's Interrogatory Responses, but instead, that is Exhibit 6 (*Dkt. No. 266-6*).

3.  Exhibit 1 is a copy of all of the purported assignments from Mr. Tijo produced by Plaintiff in discovery.  *See*, Exhibit 1; Cohen Declaration ¶1.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

4.  Defendants have contended that Francesca Ibba is a co-author of the designs of the copyrights-in-suit.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

5.  Exhibit 2 is a copy of all of the purported assignments from Ms. Ibba produced by Plaintiff in discovery.  *See,* Exhibit 2; Cohen Declaration ¶2.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

6.  The first assignment in Exhibit 1 states that, upon meeting certain conditions, Mr. Tijo's rights are assigned to "Customer."  Exhibit 1 at p.1 ¶3.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

7.  "Customer" is defined on page two of the assignment as David Socha.  Exhibit 1 at p.2.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 7 of Defendants' SMUF. More specifically, Plaintiff does not dispute that David Socha's name is listed as the signatory under "Customer" on p. 2; however, BHTBC's corporate address at the time (24625 Railroad Ave., Santa Clarita, CA, 91321 United States) is listed beneath his name, and as such, Plaintiff disputes the contention that David Socha, an individual, qualifies as the "Customer". *See* Exhibit 1, p. 2; *Declaration of David Socha In Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment Regarding Standing and Failure to Join a*

*Necessary and Indispensable Party*, submitted simultaneously herewith ("*Socha SJ Dec.*"), ¶ 5.

8.  "Customer" is not defined anywhere in the document as Plaintiff Beverly Hills. Exhibit 1 at pgs 1-2.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 8 of Defendants' SMUF. More specifically, Plaintiff does not dispute that BHTBC is not explicitly named in Exhibit 1; however, BHTBC's corporate address at the time (24625 Railroad Ave., Santa Clarita, CA, 91321 United States) is listed. *See* Exhibit 1, p. 2; *Socha SJ Dec.*, ¶ 5.

9.  The statements in paragraphs 6-8 above apply to all the assignments in Exhibit 1, other than the last one.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes the statements set forth in paragraphs 6-8 for the reasons set forth above, and as such, disputes the applicability of the statements to all assigns in Exhibit 1 for those same reasons.

10. The last assignment of Exhibit 1 also states that, upon meeting certain conditions, Mr. Tijo's rights are assigned to "Customer."   Exhibit 1 at BHTBC000016 ¶3.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

11.  "Customer" is defined on page two of that last assignment as Jim Durgin.  Exhibit 1 at BHTBC000017.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 11 of Defendants' SMUF. More specifically, Plaintiff does not dispute that Jim Durgin's name is listed as the signatory under "Customer" on BHTBC000017; however, BHTBC's corporate address at the time (24625 Railroad Ave.,

Santa Clarita, CA, 91321 United States) is listed beneath his name, and as such, Plaintiff disputes the contention that Jim Durgin, an individual, qualifies as the "Customer". *See* Exhibit 1, BHTBC000017; *Socha SJ Dec.*, ¶ 5.

12. "Customer" is not defined anywhere in that last assignment as Plaintiff Beverly Hills.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 12 of Defendants' SMUF. More specifically, Plaintiff does not dispute that BHTBC is not explicitly named in the last assignment of Exhibit 1; however, BHTBC's corporate address at the time (24625 Railroad Ave., Santa Clarita, CA, 91321 United States) is listed. *See* Exhibit 1, BHTBC000017; *Socha SJ Dec.*, ¶ 5.

13. There was no admissible evidence produced in discovery that Plaintiff Beverly Hills was the one who paid Mr. Tijo.  Cohen Dec. ¶34.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes the factual assertions set forth in paragraph 13 of Defendants' SMUF. More specifically, in discovery, Plaintiff produced documents demonstrating that payment, posted by  the account used by Plaintiff's employees on 99Designs.com (the "99Designs Platform"), was released to Mr. Tijo. *Declaration of Kerry B. Brownlee In Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment Regarding Standing and Failure to Join a Necessary and Indispensable Party*, submitted simultaneously herewith ("*Brownlee Dec.*"), ¶ 3, Ex. A, BHTBC000088, 93.

14. There was no admissible evidence produced in discovery from Mr. Tijo indicating his intent when he purportedly signed the assignments in Exhibit 1.  Cohen Dec. ¶31.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

15. There was no admissible evidence produced in discovery that Mr. Tjio had the intent to assign his rights to Plaintiff Beverly Hills, not to Mr. Socha.  Cohen Dec. ¶32.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes the factual assertions set forth in paragraph 15 of Defendants' SMUF. More specifically, Plaintiff produced correspondence between Luke Solomon, on behalf of Plaintiff, and Mr. Tijo that demonstrates that Plaintiff referred to itself consistently in the first person plural (i.e., we, us) when communicating, and as such, Mr. Tijo knew, or should have known, he was designing on behalf of a company, not an individual, and intended to assign his rights to the same. *See Brownlee Dec.*, ¶ 3, Ex. A, BHTBC000088-93; Ex. G at 20:11-21:6.

16. In fact, Mr. Tijo provided no evidence at all during discovery.  Cohen Dec. ¶33.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

17. Mr. Socha testified that Plaintiff disclosed all agreements in discovery. Exhibit 3 at 21:3 – 25:3.

    **PLAINTIFF'S RESPONSE:** *DISPUTED.* Plaintiff disputes some of the factual assertions set forth in paragraph 17 of Defendants' SMUF. More specifically, Plaintiff does not dispute that Mr. Socha testified that Plaintiff disclosed all agreements "related to the Squeezamals" (21:7-9), and believes Plaintiff produced all agreements relating to the copyrights in the same (22:5-9), and this litigation (24:21- 25:3), but disputes that Plaintiff has disclosed "all agreements", regardless of topic, in discovery. *See* Defendants' SMUF, Ex. 3 at 21:3-25:3.

18. There were no assignments from Mr. Socha to Plaintiff produced in discovery.  Cohen Dec. ¶20.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

19. There were no assignments from Mr. Durgin to Plaintiff produced in discovery. Cohen Dec. ¶21.

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

20. No discovery was provided showing that Mr. Socha assigned any copyright rights that he had, or may have had, to Plaintiff before filing this suit in 2019. Cohen Dec. ¶22.

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

21. As shown in the documents produced to Plaintiff in discovery (e.g. BHTB000411), Defendants' last sale of the accused products was on January 9, 2020. Cohen Dec. ¶36.

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

22. As shown by the first assignment in Exhibit 1, the beginning of its first page indicates that it was "Last revised on:  16th of January 2019."  Exhibit 1, page 1.

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

23. But its second page lists an October 2, 2017 execution date.  Exhibit 1, page 2.

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

24. All of the assignments from Mr. Tijo that Plaintiff relies on have a "Last revised on" date on the first page which is after the date of signature listed on the second page.  Exhibit 1.

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

25. The same goes for the assignment from Ms. Ibba. Exhibit 2.

   **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 25 of Defendants' SMUF. More specifically, Plaintiff does not dispute that the assignment on Exhibit 2 lists a "Last revised on" date that is after the date of signature listed on the second page of the assignment. However, Plaintiff

disputes that "Plaintiff relies on" the assignment, given that Ms. Ibba is not an author nor listed on Plaintiff's copyright registrations. *Dkt. Nos. 117-3 -117-5*.

26. Mr. Tjio never authenticated his electronic "signature" in discovery.  Cohen Dec. ¶24.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

27. Mr. Tijo provided no evidence in discovery that he ever executed the "assignments" in Exhibit 1.  Cohen Dec. ¶25.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*. However, Mr. Tijo is not a party to this action, nor was a subpoena served on him and as such, he is, and remains, under no obligation to produce evidence in discovery.

28. There was no admissible evidence produced in discovery that the designers (Mr. Tijo and/or Ms. Ibba) personally affixed an electronic signature to the assignments in Exhibits 1 and 2, with conscious intent to do so.  Cohen Dec. ¶26.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes the factual assertions set forth in paragraph 28 of Defendants' SMUF. More specifically, Mr. Tijo and Ms. Ibba executed the assignments pursuant to a design contest or 1-to-1 project(s) on the 99Designs Platform, governed by the General Terms and Conditions of the 99Designs Platform, which each must have consented to in order to enroll as designers. *See Brownlee Dec.*, ¶¶ 3-5, Exs. A-C. Plaintiff produced assignments affixed with Mr. Tijo's and Ms. Ibba's names (*see* Exs. 1-2 to Defendants' SMUF), and there is no evidence whatsoever that casts doubt on either person's intent to assign his or her rights thereunder.

29. No drafts of the assignments (i.e. the assignments in Exhibit 1 or Exhibit 2) were produced in discovery.  Cohen Dec. ¶27.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

30. No records were produced in discovery as to the nature of the revisions (to the assignments of Exhibits 1 and 2) through the last revised date in 2019 listed thereon. Cohen Dec. ¶28.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

31. Mr. Tijo did not provide any deposition testimony in discovery. Cohen Dec. ¶29.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*. However, Mr. Tijo is not a party to this action, nor was a subpoena served on him and as such, he is, and remains, under no obligation to provide deposition testimony.

32. Ms. Ibba also did not provide any deposition testimony in discovery. Cohen Dec. ¶30.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*. However, Ms. Ibba is not a party to this action, nor was a subpoena served on her and as such, she is, and remains, under no obligation to provide deposition testimony.

33. Plaintiff had years of discovery to produce any evidence of rights from Mr. Tijo, who they identified as the designer. Cohen Dec. ¶23.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 33 of Defendants' SMUF. More specifically, Plaintiff does not dispute that discovery in this case has spanned several years, and that Mr. Tijo has been identified as a designer. The remainder of paragraph 33 is argumentative, and does not properly assert facts, and as such, Plaintiff is not required to respond to the same.

34. Plaintiffs did not provide any evidence of payment to Mr. Tijo, whether payment by Plaintiff or anyone else, and did not provide any evidence of Mr. Tijo's receipt of any payment (or Ms. Ibba's receipt of payment). Cohen Dec. ¶¶34-35.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes the factual assertions set forth in paragraph 34 of Defendants' SMUF. More specifically, in discovery, Plaintiff produced documents demonstrating that payment, posted by  the account used by Plaintiff's employees on 99Designs.com (the "99Designs Platform"), was released to Mr. Tijo. *Brownlee Dec.*, ¶ 3, Ex. A, BHTBC000088, 93.

35. No material undisputed facts are set forth in Section III.B (only citations of law).

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Nevertheless, Plaintiff disputes the propriety of this assertion on a Rule 56.1 statement.

36. Based on the materials produced by Plaintiff in discovery, including supplemental discovery, GennComm is a party to two contracts with Plaintiff.  *See* Exhibits 4 and 5; Cohen Dec. ¶¶4-5 (authenticating exhibits).

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 36 of Defendants' SMUF. More specifically, Plaintiff does not dispute that the agreements on Exhibits 4 and 5 are contracts between Plaintiff and GennComm, but disputes that these contracts are the only two contracts ever entered, regardless of topic, between Plaintiff and GennComm throughout time. *See, e.g.*, Defendants' SMUF, Ex. 3 (23:12-23:23).

37. It is a party to a 2017 Agreement with Plaintiff. *See* Exhibit 4; Cohen Dec. ¶4.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*, assuming that the "[i]t in paragraph 37 refers to GennComm.

38. It is also a party to a 2020 Agreement with Plaintiff. *See* Exhibit 5; Cohen Dec. ¶5.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*, assuming that the "[i]t in paragraph 38 refers to GennComm.

39. The 2017 Agreement provides that the parties submit to the <u>exclusive</u> jurisdiction of courts in the State of California, County of Los Angeles.  Exhibit 4, 2017 Agreement at page 20, Section XXVII.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*, assuming that the parties in paragraph 39 refers to Plaintiff and GennComm.

40. The 2020 Agreement provides that venue for any action relating to the agreement will be in Los Angeles, California.  Exhibit 5, 2020 Agreement at BHTBC001770, Section 23.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

41. GennComm's counsel, Perry Goldberg, told this Court that "Lauren, my co-counsel,  had an email to her assistant outlining what she wanted the assistant to tell Judge Watkins' clerk, and its very detailed about this case."  Transcript of April 8, 2021 at 17:9-12.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

42. Mr. Perry Goldberg also asserted that "we'll be producing that document immediately." *Id.* at 17:19.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

43. That email was never produced to Best Brands.  Cohen Dec. ¶15.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

44. GennComm was issued a subpoena for documents.  After Best Brands filed a motion to compel against GennComm in California for production of responsive documents, the motion was resolved with a court-ordered stipulation including proposed narrowed

document requests.   Exhibit 13 at 3 (category 4:   "All documents relating to the Stipulated Judgment entered by the Los Angeles Superior Court in the California action between BHTB and GennComm").   Best Brands also issued a subpoena to GennComm for testimony.   Exhibit 14 (Topic 4: seeking testimony regarding BHTBC and GennComm's "Stipulated Judgment in the Los Angeles Superior Court, and all communications relating to those agreements.").   Cohen Dec. ¶¶13-14 (authenticating documents).

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*, with the exception that Topic 5, rather than Topic 4, refers to the "Stipulated Judgment in the Los Angeles Superior Court, and all communications relating to those agreements." Defendants' SMUF, Ex. 14.

45. GennComm never produced any such alleged email referred to by Perry Goldberg. Cohen Dec. ¶15.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

46. Nor did it provide any testimony or evidence relating thereto.  Cohen Dec. ¶16.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

47. No such email was ever produced by Plaintiff here either.  Cohen Dec. ¶17.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

48. Nor was any other evidence produced to Best Brands of the alleged *ex parte* verbal communication with a court clerk.  Cohen Dec. ¶18.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

49. In the 2020 Agreement, GennComm was given a contractual right and interest to 25% of Beverly Hills' proceeds in this case, as set forth in further detail in that agreement. Exhibit 5 at ¶15.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 49 of Defendants' SMUF. More specifically, Plaintiff does not dispute that under the agreement, produced as Exhibit 5 at ¶ 15, GennComm was given a 25% interest in "all net amounts BHTB recovers from the Best Brands Lawsuit (less attorney's fees paid by BHTB, any potential sanction award against BHTB in the Best Brands Lawsuit, and any and all fees paid by BHTB to BB, including all fees and costs that BHTB is required to pay arising from or relating to the Court's December 14, 2020 Order in the Best Brands Lawsuit, *Docket Entry No. 125*)"; however, such percentage was contingent on certain preconditions, as set forth in Exhibit 5.

50. GennComm never consented to the exercise of personal jurisdiction over it in this case.

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

51. Rather, its counsel Mr. Perry Goldberg stated to this Court that:  "GennComm certainly does not intend to waive any defense based on lack of personal jurisdiction …"  Tx of 6-21-21 at 7:18-20.

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

52. GennComm was previously joined to this case and had ample opportunity to participate, but was unwilling to do so, and was then dismissed.  Dkt. 222.

   **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 52 of Defendants' SMUF. More specifically, Plaintiff does not dispute that previously joined this case, had an opportunity to participate, and was dismissed. Given that the docket of this case demonstrates that GennComm did participate, Plaintiff disputes that GennComm was unwilling to do so.

53. The 2017 Agreement provides that it is to be governed by California law.  Exhibit 4 at 20, §XXVII.1.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

54. The 2017 Agreement concerned a defined "ITEM" and stated that "[t]he ITEM is generally described as follows:

> "Pop Up Plush:  Plush figure comprising of slow rising, kid safe, latex, polyurethane or other memory foam filler that has been cut or molded (e.g., machine, injection, additive printed), into the shape of a plush toy or other character.  The exterior will be covered with a general plush material synthetic or natural that is sewn or wrapped around the sculpted memory foam.
> Provisional Patent Application No. 62508800 – Filed May 19, 2017."

Exhibit 4, p. 22 (Exhibit A).

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

55. Plaintiff's CEO David Socha testified that the Squeezamals are plush-covered slow rise foam products, which are kid safe.  Exhibit 3 at 28:11-18.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*, with the exception that 28:11-18 is not a part of Exhibit 3.

56. He testified that various of them can have the material cut or molded into the shape of a plush toy or other character (*Id.* at 19-21 and 29:15-23).

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 56 of Defendants' SMUF. More specifically, Plaintiff does not dispute that Mr. Socha testified that certain Squeezamals, depending on which one, could have material cut or molded into the shape of a plush toy or other character (28:19-21, which is not on Exhibit 3), but also stated that the Series 1 Squeezamals were "balls, foam covered balls" (29:21-23). *Brownlee Dec.*, ¶ 11, Ex. H.

57. Mr. Socha also testified that their exterior is covered with a general plush material that is sewn or wrapped around the sculpted memory foam. Exhibit 3 at 28:24 - 29:6.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 57 of Defendants' SMUF. More specifically, Plaintiff does not dispute that Mr. Socha testified that the Squeezamals are "covered with a general plush material that is sewn or wrapped" (28:24-29:7, which is not part of Exhibit 3), but also stated that "it's not necessarily sculpted" (29:5-7). *Brownlee Dec.*, ¶ 11, Ex. H.

58. The Plaintiff's images of the products attached to their Third Amended Complaint (Dkt. 117-1), and their copyright applications (Dkt. 117-3 through 117-5), likewise show that these are plush toys for animal characters.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 58 of Defendants' SMUF. More specifically, Plaintiff does not dispute that the Squeezamals products are plush toys featuring animal characters, but does not understand the meaning of "plush toys for animal characters" such that it can appropriately formulate a response. Moreover, Dkt. Nos. 117-3 through 117-5 are Plaintiff's copyright registrations, and associated deposit materials, not its copyright applications. Such documents speak for themselves.

59. They also list the names of the corresponding animal characters. Dkts. 117-3 through 117-5.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 59 of Defendants' SMUF. More specifically, Plaintiff does not dispute that Plaintiff's copyright registrations list the names of certain animals,

but disputes that the names of those animals corresponds with the names of each character.

60. They also show that they are cut, sculpted, or molded into a ball.  Dkt. 117-1 and Dkts. 117-3 through 117-5.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

61. Plaintiff's CEO Socha admitted under oath that the definition of the ITEM does not require a box.  Exhibit 3 at 42:18-43.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 61 of Defendants' SMUF. More specifically, Plaintiff does not dispute that Mr. Socha testified that, in response to questioning from Defendants' counsel, certain portions of the 2017 license did not require a box (Exhibit 3, 42:18-43:16), but he did not specifically testify regarding the definition of ITEM.

62. He admitted the same in California litigation with GennComm (*id*. at 43:17-45:15).

**PLAINTIFF'S RESPONSE:** Plaintiff disputes some of the factual assertions set forth in paragraph 62 of Defendants' SMUF. More specifically, Plaintiff does not dispute that in its Third-Amended Cross-Complaint, Plaintiff stated, in relevant part, that "No reference to the limitation of the box or packaging element was referenced in Exhibit A's description of what the Provisional Patent Application covered", but denies that said statement constitutes an admission by Mr. Socha in the "California litigation with GennComm" that the definition of "ITEM" does not require a box.

63. Beverly Hills submitted a judicial filing in California regarding the 2017 Agreement. Exhibit 7; Cohen Dec. ¶7 (authenticating exhibit).

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

64. In its filing, Beverly Hills admitted that the Agreement, and Exhibit A, do not require a box.  Exhibit 7 at p.4 ¶10.

   **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 64 of Defendants' SMUF. More specifically, Plaintiff does not dispute that in its Third-Amended Cross-Complaint, it stated, in relevant part, that "No reference to the limitation of the box or packaging element was referenced in Exhibit A's description of what the Provisional Patent Application covered", but denies that said statement constitutes an admission that "the Agreement, and Exhibit A, do not require a box."

65. It stated that "the Agreement only generally described the Pop Up Plush as "slow rising, kid safe, latex, polyurethane or other memory foam filler that has been cut or molded . . . into the shape of a plush toy or other character . . . [the] exterior will be covered with a general plush material.  No reference to the limitation of the box or packaging element was referenced in Exhibit A's description of what the Provisional Patent Application covered." *Id.*

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

66. Beverly Hills admitted in a judicial filing that it did not have a copy of the Provisional Application when it executed the 2017 Agreement.  Exhibit 7 at p.4 ¶10, and p.5 ¶15.

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

67. It stated (*id*.) that "On November 27, 2017 GENNCOMM finally provided BHTB with the Provisional Patent Application (seven months after the April 2017 meeting at BHTB)".  Exhibit 7 at 5 ¶15.

   **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

68. November 27, 2017 was more than five months after the June 16, 2017 Agreement Exhibit 4 at 1.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

69. Beverly Hills' CEO likewise admitted in deposition testimony in this case that Exhibit A to the 2017 Agreement did not have the Provisional Patent Application attached.  Exhibit 3 at 44:2-6, 13-23.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 69 of Defendants' SMUF. More specifically, Plaintiff does not dispute that Plaintiff's CEO testified, when read portions of the Third-Amended Cross-Complaint by Defendants' counsel (i.e., "'Exhibit A to the agreement does not have a copy of the provisional patent application attached.' That was a true statement that you made to the court; correct?"), Mr. Socha indicated "I believe so." Exhibit 3 to Defendants' SMUF at 44:2-6, 13-23. Plaintiff disputes that the foregoing statement qualifies as an "admission".

70. In addition, the Squeezamals <u>were</u> sold in a box (even though that is not required by the definition), as shown by images retrieved from the Internet.  Exhibit 8; Cohen Dec. ¶8.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 70 of Defendants' SMUF. More specifically, Plaintiff disputes that a box "is not required by the definition" of ITEM. *See Dkt. No. 266-4*, p. 23. Moreover, the "images retrieved from the Internet" constitute hearsay, and are not admissible to show that the Squeezamals products were in fact sold in a box. *See, e.g., Sovereign Cape Cod Invs. LLC v. Eugene A. Bartow Ins. Agency, Inc.*, 2023 U.S. Dist. LEXIS 130495, at *34 (E.D.N.Y. July 27, 2023).

71. The 2017 Agreement states that LICENSEE Beverly Hills "hereby assigns to LICENSOR [GennComm] all copyrights and trademarks in ITEM."  Exhibit 4 at 6, Section IV.1.

   **PLAINTIFF'S RESPONSE**: *UNDISPUTED*.

72. It also states that "[a]ll right, title, and interest in and to all copyrights … embodying the ITEM, and all copyright … registrations based thereon … shall be owned exclusively by LICENSOR [GennComm] ... and LICENSEE [Beverly Hills] shall have no interest in or claim to the ITEM or any copyrights."  Exhibit 4 at 6 (§IV.1).

   **PLAINTIFF'S RESPONSE**: *UNDISPUTED*.

73. The copyrights-in-suit do not show something merely "used in connection" with the Squeezamals.  Dkt. 117-3 through 117-5.

   **PLAINTIFF'S RESPONSE**:  *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 73 of Defendants' SMUF, given that the statement itself is vague and ambiguous. Plaintiff does not dispute that Plaintiff's copyright registrations (*Dkt. Nos. 117-3-117-5*) are not "merely" "used in connection" with the Squeezamals products; however, Plaintiff asserts that the copyrights are in fact used in connection with and/or on the Squeezamals products.

74. They do not illustrate advertisements or displays.  *Id.*.

   **PLAINTIFF'S RESPONSE**: *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 74 of Defendants' SMUF, given that the statement itself is vague and ambiguous. Plaintiff does not dispute that Plaintiff's copyright registrations (*Dkt. Nos. 117-3-117-5*) do not constitute advertisements or displays.

75. They show the plush toys themselves.  *Id.*

**PLAINTIFF'S RESPONSE**: *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 75 of Defendants' SMUF, given that the statement itself is vague and ambiguous. Plaintiff does not dispute that Plaintiff's copyright registrations (*Dkt. Nos. 117-3-117-5*) cover 3-dimensional sculptural works that constitute plush toys, but otherwise disputes that the registrations "show the plush toys themselves", as that language is not understood.

76. The copyrights are to the designs "embodying the ITEM." *Id.*

   **PLAINTIFF'S RESPONSE**: *DISPUTED*. Plaintiff disputes the factual assertions set forth in paragraph 76 of Defendants' SMUF. Plaintiff's copyright registrations (*Dkt. Nos. 117-3-117-5*) cover 3-dimensional sculptural works that constitute plush toys. The interpretation of "embodying the ITEM" calls for a legal interpretation, and is not a fact.

77. They are to the designs of plush toys. *Id.*

   **PLAINTIFF'S RESPONSE**: *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 77 of Defendants' SMUF, given that the statement itself is vague and ambiguous. Plaintiff does not dispute that Plaintiff's copyright registrations (*Dkt. Nos. 117-3-117-5*) cover 3-dimensional sculptural works that constitute plush toys.

78. They are not to methods of manufacturing.

   **PLAINTIFF'S RESPONSE**: *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 78 of Defendants' SMUF, given that the statement itself is vague and ambiguous. Plaintiff does not dispute that Plaintiff's copyright registrations (*Dkt. Nos. 117-3-117-5*) cover 3-dimensional sculptural works that constitute plush toys, and do not cover methods of manufacturing.

79. Plaintiff has represented to this Court that the copyrights-in-suit cover three-dimensional products, having stated that "Plaintiff sought out to, and did in fact, register three-dimensional sculptural works with the USCO [U.S. Copyright Office]." Dkt. 60 at 9.

**PLAINTIFF'S RESPONSE**: *UNDISPUTED*.

80. Plaintiff likewise explained that these are "3-dimensional stuffed animal products." Dkt. 60 at 10.

**PLAINTIFF'S RESPONSE**: *UNDISPUTED*.

81. The parties' 2017 Agreement also provided that "LICENSEE [Beverly Hills] agrees that it will, at any time upon request of LICENSOR, assign, transfer, and convey to LICENSOR [GennComm] all rights to any ITEM including by way of example all trademarks, service marks, or copyright and goodwill, title, and other rights in and to the ITEM *which may be obtained by* LICENSEE or which are contemplated hereby. LICENSEE shall execute any instruments presented to it by LICENSOR to accomplish or confirm the foregoing. Any such assignment, transfer, or conveyance shall be without further consideration, other than the mutual covenants set forth in this Agreement. LICENSEE hereby agrees that it *shall not at any time acquire any rights in the ITEM* by virtue of any use it may make of the ITEM." Exhibit 4 at Section IV.2 (emphases added).

**PLAINTIFF'S RESPONSE**: *UNDISPUTED*.

82. On December 18, 2020, GennComm and Beverly Hills entered into an agreement (the "2020 Agreement") to settle their state court and federal court litigations in California. Exhibit 5.

**PLAINTIFF'S RESPONSE**: *UNDISPUTED*.

83.   Beverly Hills relies on section 12 of the 2020 Agreement as voiding their prior 2017 Agreement and any assignments therein.

**PLAINTIFF'S RESPONSE**: *UNDISPUTED*. Plaintiff also relies on the Stipulated Judgment entered by Hon. Shirely K. Watkins, Judge of the Superior Court for the State of California, on December 29, 2020. Defendants' SMUF, Ex. 12.

84.   GennComm filed suit against Beverly Hills in 2018 over the 2017 Agreement.  Exhibit 9 (docket sheet); Cohen Dec. ¶9 (authenticating exhibit).

**PLAINTIFF'S RESPONSE**: *UNDISPUTED*.

85.   GennComm's First Verified Complaint sets forth its position, under oath, and seeks to enforce the 2017 Agreement against Beverly Hills.   Exhibit 10; Cohen Dec. ¶10 (authenticating exhibit).

**PLAINTIFF'S RESPONSE**: *UNDISPUTED*.

86.   GennComm also sent a certified letter in December 2019 terminating the 2017 Agreement, and seeking to enforce its various provisions, including the assignment of the copyrights in the ITEM to GennComm.  Exhibit 11 p.1, last paragraph.  Cohen Dec. ¶11 (authenticating exhibit).

**PLAINTIFF'S RESPONSE**: *UNDISPUTED*.

87.   GennComm only changed its position in December 2020 for a payoff.  Exhibit 3, Tx. of Deposition of June 29, 2023 of Plaintiff's CEO David Socha at 62:15-20, and 64:8-18.

**PLAINTIFF'S RESPONSE**: *DISPUTED*. Plaintiff disputes the factual assertions set forth in paragraph 87 of Defendants' SMUF, and notes that the assertion itself is argumentative. In response to Defendants' counsel's questioning regarding why GennComm changed its position, Mr. Socha stated "Because I think -- I don't know. I'm

assuming they wanted to settle." Exhibit 3 to Defendants' SMUF, 63:14-15. While Mr. Socha testified that, as part of the settlement, GennComm received payment from Plaintiff (64:8-15), he did not testify that GennComm "only changed its position in December 2020 for a payoff."

88. Namely, as part of the 2020 Agreement, Beverly Hills promised to pay GennComm 25% of any recovery in the present suit, and $420,000.  Exhibit 5, Section 15 ("GennComm's portion will be 25% of all net amounts BHTB recovers from the Best Brands Lawsuit") and Section 2 (providing for a "lump sum reasonable royalty totaling $420,000").

**PLAINTIFF'S RESPONSE**: *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 88 of Defendants' SMUF. More specifically, Plaintiff does not dispute that under the agreement, produced as Exhibit 5 at ¶ 15, GennComm was given a 25% interest in "all net amounts BHTB recovers from the Best Brands Lawsuit (less attorney's fees paid by BHTB, any potential sanction award against BHTB in the Best Brands Lawsuit, and any and all fees paid by BHTB to BB, including all fees and costs that BHTB is required to pay arising from or relating to the Court's December 14, 2020 Order in the Best Brands Lawsuit, *Docket Entry No. 125*)"; however, such percentage was contingent on certain preconditions, as set forth in Exhibit 5. Plaintiff also does not dispute that it agreed to pay GennComm $420,000 pursuant to Section 2 "for a retroactive license to the Patents and GennComm's know-how (the "Past Royalty") and a future compulsory royalty as described below for a license to continue using the Patents and GennComm's know-how on a going forward basis."

89. Both parties presented a Consent Judgment (or "Stipulated Judgment") to the state court, purporting that the 2017 Agreement was "void *ab initio*."  Exhibit 12 at p.2.

**PLAINTIFF'S RESPONSE**: *UNDISPUTED*.

90. No discovery was ever provided to Best Brands that either party informed the state court judge of the desired effect of the Consent Judgment on this litigation, and the claims herein.  Cohen Dec. ¶18.

**PLAINTIFF'S RESPONSE**: *UNDISPUTED*.


### DEFENDANTS' RESPONSE TO PLAINTIFF'S RULE 56.1 STATEMENT OF ADDITIONAL MATERIAL UNDISPUTED FACTS

91. Plaintiff's U.S. Copyright Registration Nos.: VA 2-111-231, covering the Squeezamals Series 1 White Cat; VA 2-111-208, covering the Squeezamals Series 1 Monkey; VA 2-111-230, covering the Squeezamals Series 1 Penguin; VA 2-112-188, covering the Squeezamals Series 1 Unicorn; VA 2-140-693, covering the Squeezamals Series 1 Teal Cat; VA 2-140-694, covering the Squeezamals Series 1 Duck; VA 2-140-678, covering the Squeezamals Series 1 Ladybug; VA 2-140-680, covering the Squeezamals Series 1 Pink Owl; VA 2-140-672, covering the Squeezamals Series 1 Bunny; VA 2-140-676, covering the Squeezamals Series 1 Fox; VA 2-140-679, covering the Squeezamals Series 1 Pig; and VA 2-140-698, covering the Squeezamals Series 1 Narwhal (collectively, "Squeezamals Works", and "Squeezamals Registrations", respectively) all issued before or within five years after first publication of each of the Squeezamals Works. *Dkt. Nos. 117-3-117-5*.

**DEFENDANTS' RESPONSE**: *UNDISPUTED*.

92. Pursuant to David Socha's instructions, the Squeezamals Registrations were filed in Plaintiff's name. *See Brownlee Dec.*, ¶ 9, Ex. F, 131:6-132:9; *see also* 27:19-23.

**DEFENDANTS' RESPONSE**:  *DISPUTED*.  The statement is not supported by the deposition excerpts cited.

93. The Squeezamals Works were created, manufactured, and commercialized at Plaintiff's expense. *Socha SJ Dec.*, ¶ 8.

**DEFENDANTS' RESPONSE**:  *DISPUTED*.  Defendants object that the allegation is not supported by admissible evidence produced during the discovery period, such that they are prejudiced by their inability to cross-examine the witness on this allegation, and to explore the facts relating thereto.  Also, to the extent this is meant to imply that no other entity's expense was involved, this is disputed based on GennComm's statements. *See e.g.*, Dkt. 266-11 at 6 ("BHTB has been profiting substantially from the products derived from what GennComm shared with BHTB under NDA and then under the License Agreement.").

94. Benson Tijo was selected by Plaintiff as a contest winner of a contest that Plaintiff ran through the 99Designs platform, available at www.99designs.com (the "99Designs Platform"), entitled "CREATE CUTE STUFFED ANIMAL DESIGNS FOR UP AND COMING PRODUCT!" (the "Contest"). *Brownlee Dec.*, ¶ 3, Ex. A, BHTBC0000086-87.

**DEFENDANTS' RESPONSE**:  *DISPUTED in part*.  Disputed that "Plaintiff" ran the contest.  In Plaintiff's own response papers (Dkt. 270-6, Ex. G, 20:11 - 21:6) Mr. Solomon testified that "David Socha created the account" and that it was "created under his name".  Also, he did not testify that he was "acting on Plaintiff's behalf", he testified that he was acting on Mr. Socha's behalf.  In addition, to be sure, the cited document indicates that Benson "Tjio" was selected as a contest winner along with two other entities, namely, "Francesca.ibba00" and "HealMe."  *UNDISPUTED* that a contest was

run through the 99Designs platform, available at www.99designs.com (the "99Designs Platform"), entitled "CREATE CUTE STUFFED ANIMAL DESIGNS FOR UP AND COMING PRODUCT!"

95. In the brief for the Contest, Plaintiff indicated as follows: "We have an up and coming stuffed animal product and we need your help designing it! They're extremely cute and soft plush (think memory foam). . .We have 3 animals we'd like you to design in your own unique way." *Brownlee Dec.*, ¶ 4, Ex. B, BHTBC0000096-97.

**DEFENDANTS' RESPONSE**: *UNDISPUTED.*

96. Per Section 1.2 of the General Terms & Conditions on the 99Designs Platform: "(a) Customer may create a design contest ("Design Contest") by creating a design brief ("Design Brief"), paying the Customer Payment (as defined in Section 3.1 below) to 99designs and following the other instructions on the Site." *Brownlee Dec.*, ¶ 5, Ex. C.

**DEFENDANTS' RESPONSE**: *DISPUTED.*  Defendants dispute the misleading use of this document copyrighted 2019 (*see,* Dkt. 270-3 at 9) as alleged evidence regarding a contest that ran, and rights allegedly transferred, in 2017 (*see e.g.*, Dkt. 266-1 at 3). Defendants also object to the use of this document which was not produced during the discovery period (the declaration lists it as accessed on August 28, 2023, after the close of discovery), and to the use of this inadmissible hearsay.

97. After the Contest, Plaintiff engaged Benson Tijo's services for a 1-to-1 project on 99Designs involving the creation of fifteen (15) animal designs (Service #217293/Project ID #365597) (the "First 1-to-1 Project"). *Brownlee Dec.*, ¶ 3, Ex. A, BHTBC0000088.

**DEFENDANTS' RESPONSE**:  *DISPUTED.*  The confusing mash-up of separate documents together appear to link different projects, and do not link the "fifteen (15)

animal designs" to that Service # or Project #.  The document and statement are also objected to as inadmissible hearsay, and lacking in foundation.

98. Payment was released to Benson Tijo in the amount of $330 for the First 1-to-1 Project. *Brownlee Dec.*, ¶ 3, Ex. A, BHTBC0000088.

**DEFENDANTS' RESPONSE**:  *DISPUTED*.  The document does not support the statements regarding a 1-to-1 project, and is disputed and objected to for the reasons set forth in Defendants Response to ¶97 above.

99. Benson Tijo assigned the designs created pursuant to the First 1-to-1 Project to "Customer" (with David Socha listed as the signatory, with an address of 2425 Railroad Avenue, Santa Clarita, CA 91321 listed underneath) via a Design Transfer Agreement that was executed October 2, 2017. Defendants' SMUF, Ex. 1, BHTBC000002-3.

**DEFENDANTS' RESPONSE**:  *DISPUTED*.  There is no admissible evidence that the designer executed the assignment to transfer any of his rights, as the assignment is not authenticated.  It is also not a true and correct copy of any document executed by the designer as noted in Defendants' opening brief, and as shown by the fact that it has an execution date of 2017 but a last revision date of 16 of January 2019, which are mutually exclusive.  Indeed, Plaintiff does not even know the designer's actual last name.  It is listed at times as "Tjio" (*see* Dkt. 270-1 at 2) and at other times as "Tijo" (*see,* Plaintiff's statement in present ¶99).  Furthermore, designers on the 99designs site are allowed to use pseudonyms (*see e.g.,* Dkt. 270-1 at 2, referring to contest winner "HealMe").  There is also no admissible evidence listing a "First 1-to-1 Project" to Service #217293/Project ID #365597 as noted in the response to ¶97 above.

100. After the First 1-to-1 Project, Plaintiff reached out to Benson Tijo and asked: "Would you be interested in working with us again? We have 50 different styles of these guys we need done in 2 weeks. Can you give us a quote?". *Brownlee Dec.*, ¶ 3, Ex. A, BHTBC0000088.

**DEFENDANTS' RESPONSE**: *DISPUTED*. As noted in Defendants' response to ¶97 above, there is no admissible evidence listing a "First 1-to-1 Project" to Service #217293/Project ID #365597, and the confusing mashup of screens in the cited document (BHTBC0000088) make it impossible to tell what actually came first and "after." Also, taken in sequence, BHTBC0000086 lists "three cute animals," BHTBC0000087 lists "my dog design" (singular), and BHTBC0000088 alleges "15 animals design Completed", which is all inconsistent. This all objected to as inadmissible evidence, which *inter alia*, is confusing, lacking foundation, and inadmissible hearsay.

101. Plaintiff then engaged Benson Tijo's services for a second 1-to-1 project on 99Designs involving the creation of fifty (50) animal designs (Service #224346/Project ID # 374595) (the "Second 1-to-1 Project"). *Brownlee Dec.*, ¶ 3, Ex. A, BHTBC0000088-93.

**DEFENDANTS' RESPONSE**: *DISPUTED*. Again, this is not based on admissible evidence. the documents are confusing and inconsistent. They purport to refer to a project for 50 animals for $1200 (BHTBC000089), but then the project is listed on the top of the next page as completed (BHTBC000089), and then a "new quote" for the alleged same 50 animals project inconsistently lists a quote of $1320 (BHTBC00090), with no indication of the document of how one figure led to another, indicating that the document is incomplete. The images of the animals in the exhibit are also micro-sized making it impossible to discern what they actually are, or which copyrights they allegedly

correspond to. *See e.g.,* BHTBC000092. They are objected to as being confusing, lacking foundation, hearsay, and not supporting Plaintiffs' statement.

102. Payment was released to Benson Tijo in the amount of $1,320 for the Second 1-to-1 Project. *Brownlee Dec.*, ¶ 3, Ex. A, BHTBC0000093.

**DEFENDANTS' RESPONSE**: *DISPUTED*. As noted above (¶101), it is unclear what the "Second 1-to-1 Project" allegedly is, and what alleged designs it covers, and the sequence of documents are inconsistent and confusing. Also, this hearsay document alleging release of funds lacks foundation from anyone with actual knowledge of the alleged release. Also, objected to as misleading to the extent Plaintiff wishes to use this document to show that designer Benson received the funds, which is outside the scope of the document and not shown by any admissible evidence.

103. Benson Tijo assigned the designs created pursuant to the Second 1-to-1 Project to "Customer" (with David Socha listed as the signatory, with an address of 2425 Railroad Avenue, Santa Clarita, CA 91321 listed underneath) via a Design Transfer Agreement that was executed November 10, 2017. Defendants' SMUF, Ex. 1, BHTBC000004-5.

**DEFENDANTS' RESPONSE**: *DISPUTED*. There is no admissible evidence that the designer executed the assignment to transfer any of his rights, as the assignment is not authenticated. It is also not a true and correct copy of any document executed by the designer as noted in Defendants' opening brief, and as shown by the fact that it has an execution date of 2017 but a last revision date of 16 of January 2019, which are mutually exclusive. Indeed, Plaintiff does not even know the designer's actual last name. It is listed at times as "Tjio" (*see* Dkt. 270-1 at 2) and at other times as "Tijo" (*see,* Plaintiff's statement in present ¶99). Furthermore, designers on the 99designs site are allowed to

use pseudonyms (*see e.g.,* Dkt. 270-1 at 2, referring to contest winner "HealMe"). There is also no admissible evidence listing a "Second 1-to-1 Project" to any particular discernable designs as noted in the response above.

104.  2425 Railroad Avenue, Santa Clarita, CA 91321 was Plaintiff's corporate address at the time of the First 1-to-1 Project and Second 1-to-1 Project. *Socha SJ Dec.*, ¶ 5.

**DEFENDANTS' RESPONSE**: *DISPUTED*. Defendants object that the allegation is not supported by admissible evidence produced during the discovery period, such that they are prejudiced by their inability to cross-examine the witness on this allegation, and to explore the facts relating thereto.

105.  Plaintiff is a California corporation, founded by David Socha in or about 1994, of which David Socha is the CEO and sole owner. *Brownlee Dec.*, ¶ 9, Ex. F, 38:8-39:21.

**DEFENDANTS' RESPONSE**: *UNDISPUTED.*

106.  David Socha is a resident of the State of California. *Socha SJ Dec.*, ¶ 4.

**DEFENDANTS' RESPONSE**: *DISPUTED.* Defendants object that the allegation is not supported by admissible evidence produced during the discovery period, such that they are prejudiced by their inability to cross-examine the witness on this allegation, and to explore the facts relating thereto.

107.  The designs made by Benson Tijo pursuant to the First 1-to-1 Project and Second 1-to-1 Project were used as a basis for Plaintiff's three-dimensional Squeezamals Works. *Socha SJ Dec.*, ¶ 11.

**DEFENDANTS' RESPONSE**: *DISPUTED.* Defendants object that the allegation is not supported by admissible evidence produced during the discovery period, such that they are prejudiced by their inability to cross-examine the witness on this allegation, and

to explore the facts relating thereto. Defendants also object based on the inconsistencies regarding the "First 1-to-1 Project" and "Second 1-to-1 Project" noted above, the imperceptible images therein, the lack of evidence linking those projects to particular designs, including any particular "three-dimensional Squeezamal Works." Defendants also object that the affiant claims that the designs "were used as a basis for" the copyrighted works, rather than averring that they are *the same* as the copyrighted works, indicating a disconnect between the copyrighted works and the assignments.

108. Per Section 1.3 of the General Terms & Conditions on the 99Designs Platform: "(a) Customers and Designers can work with each other on design projects by creating a 1-to-1 project ("Project Service") and following the directions on the Site. Designer can create quotes for Customers. 99designs will invoice Customer based on Designer's quote plus platform and other applicable fees. Customer can pay 99designs' invoices and reserve the right to accept designs before they are considered Sold Designs. If designs have not been accepted by Customer, Customer may request a refund of the Customer Payment from 99designs, at any time up to 60 days after the date of invoice payment, or 10 days after delivery of Designs, whichever happens sooner." *Brownlee Dec.*, ¶ 5, Ex. C.

**<u>DEFENDANTS' RESPONSE</u>**: *DISPUTED*. Defendants dispute the misleading use of this document copyrighted 2019 (*see,* Dkt. 270-3 at 9) as alleged evidence regarding events in, and rights allegedly transferred in, in 2017 (*see e.g.*, Dkt. 266-1 at 3). Defendants also object to the use of this document which was not produced during the discovery period (the declaration lists it as accessed on August 28, 2023, after the close of discovery), and to the use of this inadmissible hearsay. Cohen Supp. Dec. ¶6.

109. Section 15.2 of the General Terms & Conditions on the 99Designs Platform explicitly states that the terms "shall be governed by and construed solely and exclusively in accordance with the laws of the State of California, USA without giving effect to any law that would result in the application of the law of another jurisdiction." *Brownlee Dec.*, ¶ 5, Ex. C.

**DEFENDANTS' RESPONSE**: *DISPUTED*.  Defendants dispute the misleading use of this document copyrighted 2019 (*see,* Dkt. 270-3 at 9) as alleged evidence regarding events in, and rights allegedly transferred in, in 2017 (*see e.g.*, Dkt. 266-1 at 3). Defendants also object to the use of this document which was not produced during the discovery period (the declaration lists it as accessed on August 28, 2023, after the close of discovery), and to the use of this inadmissible hearsay.  Cohen Supp. Dec. ¶6.

110. The 99Designs Platform General Terms & Conditions provide that the Design Transfer Agreement, a form assignment provided by the 99Designs Platform, "sets forth the legally binding terms between the applicable Designer and Customer". *Brownlee Dec.*, ¶ 5, Ex. C, Section 2.

**DEFENDANTS' RESPONSE**: *DISPUTED*.  Defendants dispute the misleading use of this document copyrighted 2019 (*see,* Dkt. 270-3 at 9) as alleged evidence regarding events in, and rights allegedly transferred in, in 2017 (*see e.g.*, Dkt. 266-1 at 3). Defendants also object to the use of this document which was not produced during the discovery period (the declaration lists it as accessed on August 28, 2023, after the close of discovery), and to the use of this inadmissible hearsay.  Cohen Supp. Dec. ¶6.

111. The 99Designs Platform further provides as follows: "99designs gives you the security of knowing you'll be paid for your work. Payments are made by clients before any work should begin." *Brownlee Dec.*, ¶ 6, Ex. D.

**DEFENDANTS' RESPONSE**: *DISPUTED.* Defendants dispute the misleading use of this document retrieved 9/6/2023 (*see,* Dkt. 270-4, footer) as alleged evidence regarding events in, and rights allegedly transferred in, in 2017 (*see e.g.*, Dkt. 266-1 at 3). Defendants also object to the use of this document which was not produced during the discovery period (the declaration lists it as accessed on 9/6/2023, after the close of discovery), and to the use of this inadmissible hearsay. Cohen Supp. Dec. ¶8.

112. All of the assignments involving Mr. Tijo and Ms. Ibba that were produced in this action were pulled directly from Plaintiff's account on the 99Designs Platform, and contain an autogenerated "last revised on" date at the top. *Brownlee Dec.*, ¶ 7.

**DEFENDANTS' RESPONSE**: **UNDISPUTED in part, and DISPUTED in part**. Undisputed that Ms. Brownlees "accessed and reviewed" Plaintiff's account on the 99Designs Platform. *OBJECTED* to and *DISPUTED* to the extent it is ambiguous who "pulled" the assignments from the platform, when they were "pulled," and when Ms. Brownlee "accessed and reviewed" the account.

113. The intellectual property assignment provisions in the documents produced by Plaintiff (paragraph 3 of those signed by Mr. Tijo, and paragraph 3b) of the assignment signed by Ms. Ibba) are identical to those set forth in the 2017 versions that Plaintiff's counsel was provided by the 99Designs Platform. *Compare Brownlee Dec.*, ¶ 8, Ex. E; Defendants' SMUF, Ex. 1.

**DEFENDANTS' RESPONSE**: *DISPUTED.* Defendants object that the allegation is not supported by admissible evidence produced during the discovery period, such that they are prejudiced by their inability to cross-examine the witness on this allegation, and to explore the facts relating thereto. Cohen Supp. Dec. ¶14. Also, objected to as inadmissible hearsay, and lacking any foundational testimony from a witness with knowledge who was produced during discovery. Defendant also objects to the allegation that any documents were signed by Mr. Tijo or Tjio, or Ms. Ibba, as there is no evidence of the same.

Also, disputed and objected to as misleading. In actuality, the platform stated that they "no longer have the resource to retrieve the 2017 version of the Design Transfer Agreements." Dkt. 270-5 at 4. Moreover, the new documents are not dated, so there is no way to tell which version they are, and from what dates of use on the platform, as Plaintiff has never provided any discovery as to the same. Furthermore, there are plain differences in the documents (*see e.g.*, the provision as to which documents take precedence which is in the final paragraph of Dkt. 266-1 at 3 but not in the new copy relied on by Plaintiff in 270-5 at 8). This confirms that the assignment documents changed over time. Thus, based on Plaintiff's new allegations, this confirms that the alleged "assignment" by Mr. Tijo produced in discovery is not the document he allegedly signed (if it was ever signed at all).

In addition, Plaintiff claims rights from Mr. "Tijo" or "Tjio" based on both a design contest and a "1-to-1" project (see Plaintiffs' statements in ¶¶94-95 above), but none of the assignments allegedly signed by him (Dkt. 266-1) are consistent with the purported copy of assignments from contests in 2017 (Dkt. 270-5 at 10)

Moreover, Defendants object to both the assignments relied on by Plaintiff, and those recently provided by the 99designs site, as incomplete. The documents state that they incorporate the definitions of "Terms of Use" ("1. Overview. … "Capitalized Terms not otherwise defined in this Agreement have the meaning set forth in the Terms of Use"). However, contemporary Terms of Use from 2017 were never provided by Plaintiff in discovery. Cohen Supp. Dec. ¶7. And there is no showing that the Terms of Use in 2017 and 2019 needed to interpret each of the assignments were the same (including, the associated use of "Customer" and so forth).

114. The 99Designs Platform is intended to connect clients and designers, with the understanding that designers will be paid for their work, and in return, the designers will transfer their intellectual property rights, including copyrights, in the same to the clients. *Brownlee Dec.*, ¶ 5, Ex. C.

**DEFENDANTS' RESPONSE**: *DISPUTED*. Defendants dispute the misleading use of this document copyrighted 2019 (*see,* Dkt. 270-3 at 9) as alleged evidence regarding events in, and rights allegedly transferred in, in 2017 (*see e.g.*, Dkt. 266-1 at 3). Defendants also object to the use of this document which was not produced during the discovery period (the Brownlee declaration lists it as accessed on August 28, 2023, after the close of discovery), and to the use of this inadmissible hearsay. Cohen Supp. Dec. ¶6.

115. While Mr. Socha created Plaintiff's account on the 99Designs Platform, Luke Solomon, an employee of Plaintiff, acting on Plaintiff's behalf, created the Contest and corresponded with Mr. Tijo. *Brownlee Dec.*, ¶ 10, Ex. G, 20:11-21:6; *see also* ¶ 9, Ex. F, 70:19-71:9.

**DEFENDANTS' RESPONSE**:  *DISPUTED*.  In the cited evidence (Ex. G, 20:11 - 21:6) Mr. Solomon, in fact, testified that "David Socha created the account" and that it was "created under his name".  Also, he did not testify that he was "acting on Plaintiff's behalf", he testified that he was acting on Mr. Socha's behalf.  The cited evidence also does not state that Mr. Solomon created the contest or that he communicated with Mr. Tijo.

116.  There is no evidence of record, or otherwise, that Mr. Tijo has ever contested any of the assignments at Exhibit 1 (*Dkt. No. 266-1*) or objected to Plaintiff's ownership and use of the Squeezamals Works. *See Socha SJ Dec.*, ¶ 6.

**DEFENDANTS' RESPONSE**:  *DISPUTED.*  Defendants object that the allegation is not supported by admissible evidence produced during the discovery period, such that they are prejudiced by their inability to cross-examine the witness on this allegation, and to explore the facts relating thereto.  Cohen Supp. Dec. ¶11.  Also, objected to as misleading.  Mr. Socha's declaration does not indicate that he ever communicated with Mr. Tijo to know whether Mr. Tijo contested the assignments or not.  In fact, Mr. Solomon testified that all communications with Mr. Tijo were through the 99designs website.  Exhibit 1 at 43:9-15.  Yet, no communications with Mr. Tijo through the website as to whether or not he contested the assignments were ever produced by Plaintiff.  Cohen Supp. Dec. ¶11.  Indeed, there is no evidence from Mr. Tijo or Tjio in discovery (*supra, ¶¶*27, 31 which is undisputed), such that there is no showing that he is even aware of the alleged assignments.

117.  The 99Designs Platform invoices pertaining to the First 1-to-1 Project and Second 1-to-1 Project were paid for using a Mastercard, which is used for Plaintiff's corporate purposes, and paid off by Plaintiff's corporate funds. *Socha SJ Dec.*, ¶ 7.

**DEFENDANTS' RESPONSE**:  *DISPUTED.*  Defendants object that the allegation is not supported by admissible evidence produced during the discovery period, such that they are prejudiced by their inability to cross-examine the witness on this allegation, and to explore the facts relating thereto.  Cohen Supp. Dec. ¶9.  Also, objected to as ambiguous and potentially misleading.  The affiant claims that the Mastercard "is used for Plaintiff's corporate purposes" but omits any indication of whether it is a personal card used for "Plaintiff's corporate purposes" or a card issued to the company.

118.  In the December 2020 Confidential Settlement and General Release Agreement ( (the "2020 Settlement"), GennComm, LLC ("GennComm") agreed that the Squeezamals Works were never assigned to GennComm by Plaintiff, and disclaimed any and all interest in the same (to the extent it ever had any). *Dkt. No. 258-5*, ¶ 12.

**DEFENDANTS' RESPONSE**:  *DISPUTED*.  As part of that agreement, GennComm stated that "For the avoidance of any doubt, GennComm hereby relinquishes any rights it ever had (if any) relating to those trademarks and copyrights by operation of law or otherwise and assigns to BHTB all such rights (if any) *nunc pro tunc* that GennComm obtained, or might have obtained relating to the trademarks, copyrights and associated goodwill pertaining to Squishamals and Squeezamals®." Dkt. 266-5 at 8, ¶12.  This is an implicit admission that might have had rights.  Moreover, prior documents by GennComm specifically assert that it owned the copyright rights to the Squeezamals. Dkt. 266-11 at 2 (last paragraph)

119.  The 2020 Settlement was entered into by Plaintiff and GennComm to settle disputed

claims, including two litigations among them. *See Dkt. No. 258-5*, p. 2.

**DEFENDANTS' RESPONSE**:  *UNDISPUTED.*

120.  Plaintiff's products marketed under the SQUEEZAMALS® trademark (the

"Squeezamals Products") are not encased in any packaging, but instead are sold to the

end consumer with just a hang tag. *Dkt. No. 89*, ¶ 6, Ex. A.

**DEFENDANTS' RESPONSE**:  *DISPUTED.*  Dkt. 266-8.

121.  The Squeezamals Products also may appear on retail shelves in a large CDU box. *Dkt.*

*No. 89*, ¶ 7, Ex. B.

**DEFENDANTS' RESPONSE**:  *OBJECTED* to as unclear as to the intent of "CDU

box" and, therefore, disputed.

122.  After the launch of the Squeezamals Products, Plaintiff expanded its product offerings

to include products such as "Scented Pet Mini Plush Squeezamals 2.5-Inch Mystery

Pack", which are sold in boxes; however, such products do not expand when they come

out of their boxes, and are not at issue here. *Dkt. No. 89*, ¶ 8.

**DEFENDANTS' RESPONSE**:  *DISPUTED*.  Dkt. 266-8 illustrate "Squeezamals" (not

listed as Series 2, so therefore before) sold in boxes and listed as "slow rise."  *See e.g.,*

Dkt. 266-8 at 5.

123.  In or about April 19, 2017, David Socha had a meeting with GennComm

representatives during which GennComm pitched "POP UP PLUSH™ to Plaintiff. *Dkt.*

*No. 89*, ¶ 9, Ex. C.

**DEFENDANTS' RESPONSE**:  *UNDISPUTED.*

124. On or about July 2017, David Socha received "Licensee Deal Terms" from GennComm, which he executed. *Dkt. No. 89*, ¶ 10, Ex. D.

**DEFENDANTS' RESPONSE**: *UNDISPUTED.*

125. GennComm had absolutely no involvement in Plaintiff's Squeezamals Products, including the creation, manufacture or sale thereof. *Dkt. No. 89*, ¶ 11.

**DEFENDANTS' RESPONSE**: *DISPUTED*. GennComm has stated to the contrary. *See e.g.*, Dkt. 266-11 at 6 ("BHTB has been profiting substantially from the products derived from what GennComm shared with BHTB under NDA and then under the License Agreement.").

126. It is, and has always been, Plaintiff's and David Socha's position that Plaintiff is the owner of all copyrights relating to the Squeezamals Products (i.e., the Squeezamals Works). *Dkt. No. 89*, ¶ 12; *Socha SJ Dec.*, ¶ 10.

**DEFENDANTS' RESPONSE**: *DISPUTED*. The statement is inconsistent with the 2017 Agreement's express assignment to GennComm that Mr. Socha signed as CEO of Plaintiff Beverly Hills. Dkt. 266-4 at 7, Section IV. Also, Mr. Solomon testified that "David Socha created the account" with 99designs and that it was "created under his name". The assignments associated with the 99designs matters were then signed in Mr. Socha's – not Plaintiff's – name. *See e.g.*, Dkt. 266-1 at 3.

127. Plaintiff's Squeezamals Products, and the copyrights contained therein, were created, manufactured, and commercialized at Plaintiff's expense. *Socha SJ Dec.*, ¶ 8.

**DEFENDANTS' RESPONSE**: *DISPUTED*. Defendants object that the allegation is not supported by admissible evidence produced during the discovery period, such that they are prejudiced by their inability to cross-examine the witness on this allegation, and

to explore the facts relating thereto.  Cohen Supp. Dec. ¶10.  Also, to the extent this is meant to imply that no other entity's expense was involved, this is disputed based on GennComm's statements.  *See e.g.*, Dkt. 266-11 at 6 ("BHTB has been profiting substantially from the products derived from what GennComm shared with BHTB under NDA and then under the License Agreement.").

Dated: September 21, 2023                    Respectfully submitted,

                                             */s/ Morris E. Cohen*

                                             _____
                                             Morris E. Cohen
                                             Lee A. Goldberg
                                             Limor Wigder
                                             GOLDBERG COHEN LLP
                                             1350 Avenue of the Americas, 3rd Floor
                                             New York, New York 10019
                                             (646) 380-2087 (phone – main)
                                             (646) 380-2084 (phone – direct)
                                             (646) 514-2123 (fax)
                                             LGoldberg@GoldbergCohen.com
                                             MCohen@GoldbergCohen.com
                                             LWigder@GoldbergCohen.com