UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY HILLS TEDDY BEAR COMPANY,<br><br>         Plaintiff,<br><br>-against-<br><br>BEST BRANDS CONSUMER PRODUCTS, INC. and BEST BRANDS SALES COMPANY, LLC,<br><br>         Defendants. | 19-CV-3766 (AS)<br><br>MEMORANDUM OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

  Plaintiff Beverly Hills Teddy Bear Company ("BHTBC") sues Defendants Best Brands Consumer Products, Inc. and Best Brands Sales Company, LLC (collectively, "Best Brands") for allegedly infringing its copyrights in Squeezamals, a line of stuffed toys. Best Brands now moves for summary judgment. For the following reasons, Best Brands' motion is DENIED.

## BACKGROUND

  In 2017, an online contest was held seeking "cute stuffed animal designs for [an] up and coming product." Dkt. 276 ¶ 94. The parties dispute whether this contest was held by BHTBC or BHTBC's CEO, David Socha. *Id.* They also dispute whether contest-winner Benson Tijo assigned his rights in the winning designs to BHTBC or Socha personally. *Id.* ¶ 99.

  In July of 2018, BHTBC registered copyrights in its stuffed toys with the U.S. Copyright Office, attaching pictures of the toys and describing them as sculptural works. *See, e.g.*, Dkt. 117-3. The certificates stated that Benson Tijo was the copyrights' author and that BHTBC had acquired the copyrights through written agreement. *See, e.g.*, Dkt. 117-3 at 2, 10, 18, 26, 34.

  In April 2019, BHTBC brought this lawsuit against Best Brands for infringing its Squeezamals copyrights. Dkt. 1. After discovery closed, Best Brands requested a referral to the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2), which requires courts to get the Register's advice when a party alleges that a certificate of registration is inaccurate. Dkt. 68 at 3. This Court denied that request, finding that Best Brands had failed to allege any facts showing inaccuracies. *Id.* at 5–14. For example, Best Brands argued that the certificates were inaccurate because they listed Tijo, who had submitted two-dimensional designs, as the author of the three-dimensional copyrighted works. *Id.* at 6. This Court disagreed, explaining that "in a case involving sculptural reproduction of a two-dimensional design, authorship of the final sculptural work vests in the author of the underlying design" unless someone else exerted "creative control" over the sculptural work or added "new original copyrightable authorship." *Id.* at 7 (citations omitted).

Things then hit another snag. A company called GennComm, LLC ("GennComm") contacted Best Brands, claiming that it had executed a licensing agreement with BHTBC in 2017 that implicated Squeezamals intellectual property rights. Dkt. 124 at 1, 3. In fact, BHTBC and GennComm were actively litigating two cases in California involving that agreement and Squeezamals: GennComm had sued BHTBC in state court, and BHTBC had sued GennComm in federal court. *Id.* at 3; Dkt. 222 at 2–3.

Under the licensing agreement, GennComm gave BHTBC a non-exclusive right "to make, use and sell the subject matter of all patents and patent applications … filed on the ITEM." Dkt. 266-4 at 3. The ITEM was described as follows:

> Pop Up Plush: Plush figure comprising of slow rising, kid safe, latex, polyurethane or other memory foam filler that has been cut or molded (e.g., machine, injection, additive printed), into the shape of a plush toy or other character. The exterior will be covered with a general plush material synthetic or natural that is sewn or wrapped around the sculpted memory foam.
>
> Provisional Patent Application No. 62508800 - Filed May 19, 2017.

*Id.* at 22. As relevant here, the agreement also discussed copyrights:

- "All right, title and interest in and to all copyrights … embodying the ITEM, and all copyright … registrations based thereon … shall be owned exclusively by [GennComm] … and [BHTBC] shall have no interest in or claim to the ITEM or to any of the copyrights … associated therewith." *Id.* at 6.
- BHTBC "hereby assigns to [GennComm] all copyrights … in ITEM." *Id.*
- "All … copyrights … used in connection with the manufacture, sale or advertisement of the ITEM, shall be and remain the sole property of [BHTBC]." *Id.* at 8.
- BHTBC "agrees that it will, at any time upon request of [GennComm], assign, transfer, and convey to [GennComm] … all … copyright … in and to the ITEM which may be obtained by [BHTBC]." *Id.* at 7.

After this licensing agreement was uncovered, Best Brands moved for sanctions. Dkt. 90. BHTBC protested that sanctions were unwarranted because the agreement concerned patents, not copyrights. Dkt. 124 at 18. Though this Court did not settle the scope of the licensing agreement, it granted Best Brands' motion for sanctions, observing that the agreement "has some relation to Plaintiff's intellectual property rights beyond patents." *Id.*

This Court also determined that GennComm was a necessary party to this litigation "because an evaluation of the standing arguments raised by [Best Brands] requires [the Court] to determine the rights and interests under the license agreement to which GennComm is a party." Dkt. 113 at 12. So BHTBC amended its complaint, adding GennComm as a defendant and seeking a declaration that GennComm has no rights in Squeezamals. Dkt. 117 ¶¶ 1, 79–83.

But GennComm would not stay in this suit for long. Soon, BHTBC and GennComm entered into a settlement agreement resolving their claims in California. Dkt. 266-5. The settlement agreement declared the licensing agreement void *ab initio*. Dkt. 266-5 ¶ 12. It also provided that, "[f]or the avoidance of any doubt," any copyrights pertaining to Squeezamals that BHTBC had previously transferred to GennComm were assigned back to BHTBC *nunc pro tunc*. *Id.* And the agreement called for BHTBC to pay GennComm "for a retroactive license to the Patents and GennComm's know-how" and "25% of all net amounts [BHTBC] recovers from the Best Brands Lawsuit." *Id.* ¶¶ 2, 15. The California state court entered a stipulated judgment based on the parties' consent, which also declared the licensing agreement void *ab initio*. Dkt. 266-12 at 3.

BHTBC and GennComm then asked this Court to enter a consent judgment, declaring that "GennComm has no rights in and to [Squeezamals]." Dkt. 130 at 4. This Court denied that request, finding that it "did not have any factual or legal support" for that conclusion. Dkt. 222 at 4.

Though this Court refused to enter the consent judgment, it did find that BHTBC's claim against GennComm was mooted by the settlement agreement and so dismissed GennComm from this lawsuit. Dkt. 222 at 1–2. Best Brands asked this Court to dismiss GennComm for lack of personal jurisdiction instead, but the Court refused to do so, noting that sua sponte dismissal for lack of personal jurisdiction would be improper. *Id.* at 9–10. This case was then reassigned to me.

Now, Best Brands moves for summary judgment, arguing that BHTBC lacks standing because it did not own the copyrights that were allegedly infringed. Dkt. 264 at 2–8, 15–24. Best Brands also argues that the lawsuit must be dismissed because GennComm is an indispensable party that cannot be joined. *Id.* at 9.

## LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 220 (2d Cir. 2023) (cleaned up). On a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Williams v. New York City Hous. Auth.*, 61 F.4th 55, 61 (2d Cir. 2023).

## DISCUSSION

Best Brands argues that BHTBC did not own the copyrights at the time of infringement and so cannot sue. Best Brands also says that the case must be dismissed for failure to join an indispensable party, GennComm. But Best Brands fails to show that there are no genuine issues of material fact as to BHTBC's ownership of the relevant copyrights. It also fails to show that GennComm is a necessary party.

### I. Copyright Ownership

Best Brands argues that BHTBC "lacked standing to sue at the inception of this case" because it did not own the relevant copyrights. Dkt. 264 at 1. But it is worth clarifying that Best Brands' argument does not implicate Article III standing. Best Brands does not contend that BHTBC has failed to show a concrete injury caused by Best Brands' alleged infringement that is redressable by this Court. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Rather, Best Brands argues that BHTBC did not own the relevant copyrights at the time of the alleged infringement, as required by Section 501(b) of the Copyright Act. *See* 17 U.S.C. § 501(b). Though the Second Circuit has sometimes referred to copyright ownership as a question of standing, it recently clarified that ownership is a question of *statutory* standing, or the "right to pursue a cause of action under the Copyright Act." *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 402 n.4 (2d Cir. 2018).

#### A. BHTBC is presumed to own the relevant copyrights.

The plaintiff in a copyright infringement action bears the burden of proving copyright ownership. *Urbont v. Sony Music Ent.*, 831 F.3d 80 (2d Cir. 2016). But the "possession of a certificate of registration [made within five years after first publication of the copyrighted work] provides its holder with a rebuttable presumption of ownership of a valid copyright, [and] creates a rebuttable presumption that all facts stated in the certificate are true." *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 52 (S.D.N.Y. 2009) (citation omitted); *see* 17 U.S.C. § 410(c).

Best Brands does not dispute that BHTBC has certificates of registration covering the disputed works and issued within five years of their publication. *See* Dkt. 276 ¶ 91; *see also* Dkt. 117-3 at 2. So BHTBC is presumed to own the copyrights, and the burden shifts to Best Brands to rebut the presumption. The presumption "may be rebutted where other evidence in the record casts doubt on the question." *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) (cleaned up).

Best Brands says two contracts cast doubt on BHTBC's ownership. First, it points to the initial assignments from the copyrights' author, arguing that these assignments show that BHTBC never owned the relevant copyrights. And second, it argues that even if BHTBC once owned the relevant copyrights, the 2017 licensing agreement transferred the relevant copyrights to GennComm.

One point of contention must be resolved before considering these two arguments: BHTBC says these arguments are dead on arrival because Best Brands, as a third party to the alleged transfers, "lack[s] standing" to challenge their validity. Dkt. 269 at 3. But the Second Circuit rejected a similar argument in *Urbont*. There, a composer sued various defendants for allegedly infringing his copyright in the Iron Man theme song. *Urbont*, 831 F.3d at 83. The defendants argued that the composer created the song as a "work for hire" for Marvel, and thus, that Marvel rather than the composer owned the copyright. *Id.* The composer countered that the defendants lacked standing to challenge his ownership because they were third parties to his relationship with Marvel, and Marvel itself had never disputed his ownership. *Id.* at 85–87. The Second Circuit

4

disagreed, emphasizing that "[a] plaintiff in a copyright infringement suit bears the burden of proving ownership of the copyright" even when "such ownership is challenged … by a third party." *Id.* at 88. So Best Brands can "challenge the validity of the underlying ownership transfer[s]" to rebut the presumption of BHTBC's ownership. *Id.*

> B. <u>Best Brands fails to show that there is no issue of material fact as to the validity of the initial transfer.</u>

Best Brands first argues that the assignments show that BHTBC never owned the copyrights because they identify BHTBC's CEO, David Socha, as the "Customer" rather than BHTBC itself. Dkt. 264 at 3. But BHTBC points to evidence that in executing the assignments, Socha was acting as BHTBC's agent, which is enough to preclude summary judgment.

Copyright ownership "vests initially in the author … of the work." 17 U.S.C. § 201(a). But it can be transferred "by any means of conveyance," though the transfer is "not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." *Id.* §§ 201(d)(1), 204(a).

Best Brands does not identify any provision of the Copyright Act that requires the instrument of conveyance to specifically identify the party to whom the copyright was transferred. *See* 17 U.S.C. § 204(a) (requiring only a writing signed by the transferor or his agent); *see also* 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03. And outside the Copyright Act's requirements, "[a]n alleged transfer of copyright is … governed by state contract law." *Close-Up Int'l, Inc. v. Berov*, 382 F. App'x 113, 115 (2d Cir. 2010). As such, whether these copyrights were transferred to Socha or to BHTBC depends on state contract law. The parties appear to agree that California law applies here. *See* Dkt. 269; Dkt. 274.

Under California law, "[t]he contract of the agent is the contract of the principal." *See Sumner v. Flowers*, 278 P.2d 772, 774 (Cal. Dist. Ct. App. 1954); *see also* 12 Williston on Contracts § 35:34 (4th ed. May 2023 update) (explaining that when a contract is executed by an agent with authority, "the contract is with the principal, who has *all rights* and duties *under it*" (emphasis added)). So if Socha was acting as BHTBC's agent in signing the agreement, the copyrights were transferred to BHTBC, not Socha.

"[W]hether an agent acted on behalf of a principal is a question of fact." *Seneca Ins. Co. v. Cnty. of Orange*, 13 Cal. Rptr. 3d 1, 5 (Cal. Ct. App. 2004). BHTBC points to substantial evidence indicating that Socha was acting as its agent in acquiring the copyrights, including that (1) BHTBC's address was listed on the assignments (rather than Socha's personal address), Dkt. 271 ¶ 5; (2) other BHTBC employees had used Socha's account to set up the design contest, Dkt. 270-6 at 70:11–71:12; (3) the copyrights were purchased using BHTBC "corporate funds," Dkt. 271 ¶ 7; (4) BHTBC, with Socha's cooperation, registered the copyrights in BHTBC's name, Dkt. 270-6 at 131:6–132:9; and (5) Socha "always" understood that "[BHTBC] is the true and correct owner of the intellectual property rights in [Squeezamals]," Dkt. 271 ¶ 10.

Best Brands counters that this evidence cannot be considered because the assignments unambiguously identify Socha, not BHTBC, as the "Customer." Dkt. 274 at 2. But parol evidence is admissible to prove that in making a contract, an agent was acting on behalf of a principal. *See, e.g.*, *Jacobs v. Locatelli*, 213 Cal. Rptr. 3d 514, 522 (Cal. Ct. App. 2017), *as modified* (Feb. 28, 2017) (citing *S. P. Co. v. Von Schmidt Dredge Co.*, 50 P. 650, 651–52 (Cal. 1897)). As the Supreme Court has explained and California courts have agreed:

> [N]otwithstanding the rule of law that a[ written] agreement may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own name was acting for him. This proof does not contradict the writing; it only explains the transaction.

*Ford v. Williams*, 62 U.S. 28, 289 (1858); *see also Sumner*, 278 P.2d at 774 (declaring the above-quoted principle "the universal law"). Thus, BHTBC can use parol evidence to show the capacity in which Socha signed the agreements. And given the evidence it has identified, Best Brands fails to show that there is no genuine dispute as to that fact.

Best Brands complains that there is no evidence indicating that Tijo knew that Socha was acting on BHTBC's behalf. *See, e.g.*, Dkt. 274 at 2. But Tijo's knowledge is irrelevant. Best Brands does not identify any provision of copyright law requiring the copyright's author to know the identity of the person or entity to whom the copyright is being transferred. And under ordinary contract law, an agent can bind a principal when acting with actual authority. Actual authority does not depend on the counterparty's understanding; actual authority "arises when the principal's conduct causes the *agent* reasonably to believe that the principal consents to the agent's act on behalf of the principal." *Kinder v. Capistrano Beach Care Ctr., LLC*, 308 Cal. Rptr. 3d 631, 636 (Cal. Ct. App. 2023) (citation omitted).

Best Brands also argues that these "purported assignments are inadmissible." Dkt. 274 at 3. It complains, among other things, that the assignments are hearsay and have not been authenticated. *Id.* at 4. But it is unclear how this argument fits into Best Brands' motion for summary judgment. As explained earlier, where the plaintiff has certificates of registration, there is a presumption of ownership, and it is up to the party contesting ownership to produce contrary evidence. Best Brands *itself* introduced the assignments as contrary evidence, making Best Brands' inadmissibility argument puzzling. Dkt. 266-1 at 2–5. If these assignments are inadmissible, the Court would be left with the presumption of ownership, and Best Brands' motion for summary judgment would still fail.

Because Best Brands itself introduced the assignments and BHTBC did not argue that they are inadmissible, the Court has considered them for the purpose of this motion. If either party seeks to introduce the assignments at trial, that party will need to authenticate them and satisfy this Court of their admissibility.

      C.  <u>Best Brands fails to show that there is no issue of material fact as to whether the copyrights were transferred to GennComm.</u>

Best Brands also argues that even if BHTBC once owned these copyrights, it transferred them to GennComm in the 2017 licensing agreement. Dkt. 264 at 15. It points to language declaring that all copyrights "embodying the ITEM" "shall be owned exclusively by [GennComm]" and that BHTBC "hereby assigns to [GennComm] all copyrights … in ITEM." Dkt. 266-4 at 6. BHTBC counters that the "ITEM" does not encompass Squeezamals because Squeezamals are not encased in any packaging. Dkt. 269 at 21–23. And even if it did, BHTBC points out that the licensing agreement also says that "[a]ll … copyrights … used in connection with the manufacture … of the ITEM, shall be and remain the sole property of [BHTBC]." Dkt. 266-4 at 8.

This Court finds another provision more on point and sufficient for denying Best Brands' motion for summary judgment. BHTBC did not acquire the relevant copyrights from Tijo until *after* the licensing agreement was signed. *Compare* Dkt. 266-1 at 3, 5, 7, 9, 11, 13, 15, 17 (transferring copyrights on dates ranging from October 2, 2017, to December 29, 2018)*, with* Dkt. 266-4 at 2 (listing date of licensing agreement as June 16, 2017). And the licensing agreement has a provision specifically governing copyrights that are obtained by BHTBC in the future: "[BHTBC] will, at any time upon request of [GennComm], assign, transfer, and convey to [GennComm] … all … copyright … and other rights in and to the ITEM which may be obtained by [BHTBC]." Dkt. 266-4 at 7. So even if the copyrights referenced in the 2017 licensing agreement encompass the copyrights implicated here, it does not appear that they were automatically transferred to BHTBC. And Best Brands does not point to any evidence that BHTBC ever assigned these copyrights to GennComm. Best Brands has included a December 23, 2019 letter from GennComm requesting that BHTBC "assign, transfer, and convey to GennComm all … copyrights … in the ITEM." Dkt. 266-11 at 2. But Best Brands has not included any evidence that such an assignment was ever made. Nor has it cited any authority indicating that a dispute over ownership, without any actual transfer of ownership, is sufficient to effect a change in ownership for purposes of standing to sue. So even if the later settlement agreement is invalid, summary judgment in Best Brands' favor is inappropriate.

**II.**    **Joinder of GennComm**

Finally, Best Brands says that this case must be dismissed for failure to join an indispensable party, GennComm. Best Brands says that GennComm is a necessary party because it "claims an interest relating to the subject matter of the action." Dkt. 264 at 12 (quoting Fed. R. Civ. P. 19(a)(1)(B)). But this argument fails because GennComm has not asked to be added back to this litigation, and "it is the absent party that must claim an interest" under Rule 19(a)(1)(B). *ConnTech Dev. Co. v. Univ. of Connecticut Educ. Properties, Inc.*, 102 F.3d 677, 683 (2d Cir. 1996) (cleaned up). Best Brands also says that the Court cannot accord complete relief without GennComm "since the Court needs to reach the issues of GennComm's collusion and fraud to accord Best Brands' relief as to the Stipulated or Consent Judgment." Dkt. 264 at 13. As discussed,

the Court does not need to reach that issue. But even if it did, the relevant question under Rule 19(a)(1)(A) is whether the court can "accord complete relief among existing parties," not whether absent parties have an interest in how the court resolves certain issues. Fed. R. Civ. P. 19(a)(1)(A); *see MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006); *ConnTech*, 102 F.3d at 683 (concluding that nonparty was not required to be joined in case regarding arbitration agreement because it is "not required to do anything" under the agreement). Best Brands fails to explain why the Court could not afford complete relief without GennComm's participation. So GennComm is not an indispensable party.

## CONCLUSION

Best Brands' motion for summary judgment is DENIED.

The Clerk of Court is directed to terminate Dkt. 264

SO ORDERED.

Dated: November 14, 2023
New York, New York

                                                                                     ARUN SUBRAMANIAN
                                                                                     United States District Judge