UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY HILLS TEDDY BEAR COMPANY | Civil Action No.: |
| Plaintiff, | 1:19-cv-3766 (AS) |
| v. | |
| BEST BRANDS CONSUMER PRODUCTS, INC., and BEST BRANDS SALES COMPANY, LLC | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**DEFENDANT BEST BRANDS' MOTION FOR SUMMARY JUDGMENT OF COPYRIGHT INVALIDITY INCLUDING A REQUEST FOR A REFERRAL TO THE REGISTER OF COPYRIGHTS**

Morris E. Cohen
Lee A. Goldberg
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 3rd Floor
New York, New York 10019
(646) 380-2087 (phone – main)
(646) 380-2084 (phone – direct)
(646) 514-2123 (fax)
MCohen@GoldbergCohen.com
LGoldberg@GoldbergCohen.com

Donald L. Rhoads
Rhoads Legal Group PC
100 Park Avenue, Suite 1600
New York, NY 10017
(212) 390-8510 (phone)
drhoads@rhoadslegal.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

TABLE OF EXHIBITS ...................................................................................................... iv

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT ................................................................................................................... 4

I.      THE STANDARD FOR SUMMARY JUDGMENT ....................................... 4

II.     BHTBC SUBMITTED FALSE INFORMATION TO THE COPYRIGHT OFFICE ....... 4

    A.      The Statutory Requirement as to the Date of First Publication ............................ 4

    B.      The Copyright Applications Have False Publication Dates ................................. 5

III.    THE INFORMATION VITIATES THE PRESUMPTION OF VALIDITY .................... 7

IV.     BHTBC KNEW THE INFORMATION WAS FALSE ...................................... 9

    A.      The Products Were Offered to Sale and Sold by November 27, 2017 .................. 9

    B.      CEO Socha and President Clark Were Aware The Information Was False .......... 9

    C.      The Unicorn Registration Also Has False Information ....................................... 10

V.      A REFERRAL TO THE COPYRIGHT OFFICE IS REQUIRED ................................. 11

VI.     THE COPYRIGHT REGISTRATIONS SHOULD BE INVALIDATED ....................... 13

CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Argento v. Santiago*, 2018 U.S. Dist. LEXIS 25218 (W.D.N.Y. Feb. 15, 2018) ........................ 14

*Carol Barnhart Inc. v. Econ. Cover Corp.*, 773 F.2d 411 (2d Cir. 1985) ...................................... 8

*Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc*., 342 F.3d 149 (2d Cir. 2003) ............... 8

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, No. LA CV16-00339 JAK (FFM),
    2023 U.S. Dist. LEXIS 62711 (C.D. Cal. Mar. 17, 2023) ...................................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).................................... 4

*Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347 (S.D.N.Y. 2016) ............... 12

*Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980 (S.D.N.Y. 1980)................................. 14

*Unicolors, Inc. v. H&M Hennes & Mauritz, Ltd. P'ship*, 52 F.4th 1054 (9th Cir. 2022) ............ 14

*Urbont v. Sony Music Entm't*, 831 F.3d 80 (2d Cir. 2016)........................................................... 7


**Statutes**

17 U.S.C. §101 ................................................................................................................................. 5

17 U.S.C. §409(8) ........................................................................................................................... 4

17 U.S.C. §411(b) ......................................................................................................................... 11


**Rules**

Fed. R. Civ. P. 56(a). ...................................................................................................................... 4

Fed. R. Civ. P. 56(g) ....................................................................................................................... 4


**Other Authorities**

Copyright Compendium 3rd §1902 ................................................................................................. 5

Copyright Compendium 3rd §1906.1 .............................................................................................. 8

H.R. Rep. No. 94-1476, at 138 (1976), 1976 U.S.C.C.A.N. at 5754............................................. 5

## TABLE OF EXHIBITS

Exhibit 1       GennComm's March 11, 2019 1st Verified First Amended Complaint against BHTBC in California state court

Exhibit 2       BHTBC's Answer to GennComm's Verified First Amended Complaint

Exhibit 3       Deposition of David Socha dated June 29, 2023 (excerpted)

Exhibit 4       Email of Randy Clark dated November 27, 2017 to Genna Rosenberg and Jeremy Medwed

Exhibit 5       Email of David Socha dated October 15, 2017 (BHTBC1625)

Exhibit 6       30(b)(6) Deposition of David Socha dated February 25, 2020 (excerpted)

Exhibit 7       30(b)(6) Deposition of Randy Clark dated February 21, 2020 (excerpted)

Exhibit 8       Artwork of displays for retail sales

Exhibit 9       Artwork

Exhibit 10      Chart Summarizing information in Beverly Hills Series 1 Registrations

Exhibit 11      Copyright Registrations in Suit

Exhibit 12      Comparison of Unicorn to Previously Published Works

Exhibit 13      Sample VA Copyright Application

Exhibit 14      Deposition of David Socha dated June 29, 2023 (complete) (designated confidential by BHTBC and emailed to chambers)

Exhibit 15      30(b)(6) Deposition of David Socha dated February 25, 2020 (complete) (designated confidential by BHTBC and emailed to chambers)

Exhibit 16      30(b)(6) Deposition of Randy Clark dated February 21, 2020 (complete) (designated confidential by BHTBC and emailed to chambers)

Exhibit 17      Register of Copyrights' Response in *Dmarcian, Inc. v. Dmarcian Europe B.V*, 21-cv-00067-MR (W.D.N.C), Dkt. 272

Exhibit 18      Register of Copyrights' Response in *Geospatial Technology Associates, LLC v. the United States et al*., 16-cv-346-EGB (Ct. Cl.), Dkt. 349

Defendants Best Brands Consumer Products, Inc. and Best Brands Sales Company, LLC (collectively "Best Brands") move for summary judgment[1] as to the copyright registrations asserted by Beverly Hills Teddy Bear Company ("BHTBC" or "Beverly Hills"). Summary judgment is requested: (1) that the information obtained in discovery removes any presumption of validity from the copyrights; (2) that false information was submitted to the Copyright Office in BHTBC's applications; (3) that this necessitates a referral to the Register of Copyrights; and (4) that the copyrights are invalid as a result. A Rule 56.1 Statement of Undisputed Material Facts ("SUMF") is submitted concurrently herewith.

## INTRODUCTION

This case has been rife with misconduct by BHTBC. There are serious indications that, from the start, BHTBC concealed from the Copyright Office and Best Brands that BHTBC's "original" designs were derived from third parties. Dkt. 260 at 2. BHTBC then concealed damaging facts in discovery, including its agreement assigning its copyright rights to GennComm, leading Judge Woods to sanction BHTBC for this non-disclosure. When the agreement came to light, BHTBC then paid-off GennComm to make representations contrary to GennComm's representations under oath in years of its litigation with BHTBC. And BHTBC has tried all along to conceal that it made numerous false statements to the Copyright Office in its applications for copyrights on these designs it did not even own. Supplemental discovery revealed numerous documents proving the falsity of BHTBC's prior statements, which BHTBC *also* concealed in bad faith throughout the initial discovery period.

---

[1] Best Brands had filed before Judge Woods a single pre-motion conference letter regarding summary judgment on both standing and copyright invalidity. Dkt. 258. But since standing (including ownership) is a threshold issue, Judge Woods preferred to bifurcate the issues and to have separate motions (Dkt. 262, Tx. of July 31, 2023 at 15:22). Per the recent court conference before Your Honor, Best Brands now brings the second part of its motion herein.

This motion focuses on one aspect of the misconduct, the falsities in the copyright applications. And contrary to BHTBC's statement in the recent hearing, they warrant summary judgment of invalidity. *Infra,* Section VI. To wit, this motion arises from BHTBC's own testimony and documents, and has four parts:

(1)     The information obtained from BHTBC in discovery "casts doubt" on the statements that BHTBC made to the Copyright Office, including, for example, the date of first publication. Accordingly, Best Brands is entitled to a ruling that the copyrights have no presumption of validity, and that BHTBC must prove the operative facts.

(2)     Beyond casting doubt, the discovery *proves* that BHTBC submitted false information to the Copyright Office as to the date of first publication of the designs; and omitted mandatory information regarding the fact that the unicorn was related to prior published designs. BHTBC's testimony and documents confirm that BHTBC offered the designs for sale weeks or months before the alleged date of first publication. It also shows that the unicorn is not wholly original when it was first published, as represented to the Copyright Office. Rather, it was based on previously published (and registered) designs like the Narwhal and Teal Cat.

(3)     In view of the inaccuracy of the information, 17 U.S.C. §411(b) provides that "the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." As a result, the mandatory referral to the Register is respectfully requested.

(4)     In view of BHTBC's submission of false information on statutorily required elements of its copyright registrations (17 U.S.C. §409(8)), subject to the response from the Register of Copyrights, the copyright applications should be held invalid.

## FACTUAL BACKGROUND

Attached as Exhibit C to Beverly Hills' Third Amended Complaint ("TAC", Dkt. 117) are the copyright registrations it is asserting.[2]  For ease of reference, the registrations are attached as Exhibit 11, with a summary chart in Exhibit 10.  (The initial 11 are referred to herein as "the first set of applications or registrations, followed by the Unicorn application or registration.)  In each application, BHTBC knowingly submitted false information to the Copyright Office.

When this issue was raised early on before Judge Woods, he ruled that "the record is far too undeveloped" at that stage for a referral to the Register of Copyrights.  Dkt. 68 at 14.  As a result, he denied Best Brands' motion without prejudice.  *Id.* at 15.  Based on the record developed since then, is indisputable that BHTBC submitted knowingly inaccurate information to the Copyright Office in BHTBC's applications.  *Infra,* Section II.

The record now includes critical information that BHTBC previously concealed.  After discovery closed, Best Brands learned of key facts from third party GennComm.  BHTBC had withheld all those facts, including even the existence of GennComm, in contravention of multiple discovery requests which Best Brands issued to seek this very type of information.  BHTBC's misconduct was also deliberate:  it was fully aware of its years of contested litigation with GennComm regarding the intellectual property rights in the Squeezamals products which are at the center of this lawsuit.  Accordingly, Judge Woods sanctioned BHTBC and opened up

---

[2]  BHTBC is asserting the following registrations (Dkt. 117 at 5-6 ¶20):  Reg. No. VA 2-111-231, for the Series 1 White Cat; Reg. No. VA 2-111-208, for the Series 1 Monkey; Reg. No. VA 2-111-230, for the Series 1 Penguin; Reg. No. VA 2-112-188, for the Series 1 Unicorn; Reg. No. VA 2-140-693, for the Series 1 Teal Cat; Reg. No. VA 2-140-694, for the Series 1 Duck; Reg. No. VA 2-140-678, for the Series 1 Ladybug; Reg. No. VA 2-140-680, for the Series 1 Pink Owl; Reg. No. VA 2-140-672, for the Series 1 Bunny; Reg. No. VA 2-140-676, for the Series 1 Fox; Reg. No. VA 2-140-679, for the Series 1 Pig; Reg. No. VA 2-140-698, for the Series 1 Narwhal; (collectively, "the Copyright Registrations").  These all list a date of first publication of December 21, 2017, other than the Series I Unicorn (listing February 27, 2018).

supplemental discovery.  Dkt. 124 at 32.  Best Brands then obtained documents from the previously-unknown BHTBC-GennComm litigations, emails between BHTBC and GennComm, and numerous other documents, all of which BHTBC had concealed from Best Brands through the close of discovery in blatant bad faith.  This newly-discovered information proved the inaccuracies in BHTBC's Copyright Registrations, among other falsehoods advanced by BHTBC in this litigation.  Based thereon, Best Brands redeposed BHTBC's CEO David Socha, further confirming that BHTBC submitted false information to the Copyright Office.

**ARGUMENT**

## I.    THE STANDARD FOR SUMMARY JUDGMENT

"A party may move for summary judgment, identifying each claim or defense … on which summary judgment is sought." Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  The Court can grant all the relief, or "may enter an order stating any material fact … is not genuinely in dispute and treating the fact as established in the case."  Fed. R. Civ. P. 56(g).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted).

## II.   BHTBC SUBMITTED FALSE INFORMATION TO THE COPYRIGHT OFFICE

### A.    The Statutory Requirement as to the Date of First Publication

The copyright statutes provide that an application for a published work must include the date of first publication.  17 U.S.C. §409(8) ("The application for copyright registration … shall include – … (8) if the work has been published, the date and nation of its first publication").

By law, an offer for sale to retailers constitutes publication.  17 U.S.C. §101.  As defined in the statute, "[t]he offering to distribute copies … to a group of persons for purposes of further distribution … or public display, constitutes publication."  As the legislative history and U.S. Copyright Office explain, "publication occurs 'when copies or phonorecords are offered to a group of wholesalers, broadcasters, motion picture theatres, etc.' for the purpose of 'further distribution, public performance, or public display.'" Copyright Compendium 3rd §1902, quoting H.R. Rep. No. 94-1476, at 138 (1976), reprinted in 1976 U.S.C.C.A.N. at 5754.

### B.     The Copyright Applications Have False Publication Dates

BHTBC represented to the Copyright Office that its asserted designs (other than the unicorn) had a first publication date of "December 21, 2017."  Exhibits 10 and 11; SUMF ¶19. That was false.  BHTBC made offers for sale to retailers well before November 27, 2017.

GennComm's verified pleading in California, for example, recounts that "[o]n November 27, 2017, RANDY CLARK, President of Defendant requested a call with Plaintiffs and sent to Plaintiff an email with a pdf showing the Squishamals and retail display, to show use of Plaintiff's innovation."  Exhibit 1 ¶48; SUMF ¶20.  ("Squishamals" was an earlier name for BHTBC's Squeezamals-designs-in-suit.  SUMF ¶21)  The pleading goes on to say that "[o]n November 27, 2017, RANDY CLARK spoke with GENNA ROSENBERG and JEREMY MEDWED [of GennComm] by telephone and advised that Target had reduced their order by eighty percent (80%), and reiterated their costing challenges notwithstanding the significant sales already conducted pursuant to the underlying agreement herein."  Exhibit 1 ¶49; SUMF ¶22.  In its Answer, BHTBC admitted under oath Clark's statement to Rosenberg that Target had reduced their order.  Exhibit 2 ¶49; SUMF ¶23.

Thus, Target had not only placed an order by then, it had originally placed a larger order before then, which as of November 27th it reduced by 80%.

Clark's own email to GennComm in November 2017 likewise confirms this. Exhibit 4; SUMF ¶24. It shows the Squishamals/Squeezamals and confirms that BHTBC was "pitching" them, i.e., offering them for sale. *Id.* CEO Socha's deposition testimony (Exhibit 3 at 99-109) likewise confirms that BHTBC had offered the products for sale to Target by this time:

> Q:    So, again, I'm asking you, was there an order by Target before November 27, 2017?
>
> A:    I don't know the PO date, but it sounds around that time sure.
>
> Q:    So Target committed to buying a certain amount, correct?
>
> A:    I believe so, yes.
>
> Q:    And then they reduced their order by 80 percent?
>
> A:    From what I recall, I don't know the specific, but that sounds about right.

Exhibit 3 at 101:15-102:2. Seeing where this was going, BHTBC's attorneys tried to improperly obstruct the deposition testimony contrary to the established rules, and as recognized in the Court's Individual Rule 6.A. Exhibit 3 at 103:13-106:13. Best Brands then continued the questioning (Exhibit 3 at 107:9 - 109:8):

> Q:    … I'm asking if you showed them a product and they purchased them.
>
> A:    Yeah, we showed them a product and then they decide whether they want it or not.
>
> Q:    And here you showed them the Squeezamals, they decided they wanted it, and then you shipped them a few months later; correct? Or at some point later. I'm not asking exactly the date.
>
> A:    Correct. That's how it worked.
>
> Q:    And that's what happened here?
>
> A:    Yes.
>
>        …

6

Q:    Mr. Socha do you see this email?  [Exhibit 4 hereto]

Q:    And Randy Clark is your president, the president of Beverly Hills?

A:    Yes.

      …

Q:    Do you see it says "Hey, Genna and Jeremy, good to catch up, and thanks for the time.  Attached is what we are pitching to customers for Squishamals."  Do you see that?

A:    Yes.

Q:    And below is a picture of what you were pitching to customers for Squishamals; correct?

A:    Correct.

Q:    And that included what you had pitched to Target; correct?

A:    Correct.

Thus, BHTBC showed the Squeezamals to retailers such as Target, offering them for sale; Target placed orders before November 27, 2017 (so that Target, of course, could distribute the products to its customers); and BHTBC subsequently shipped them.

Plaintiff's offers for sale before November 27, 2017 constitutes publication.  The first set of copyright applications, in contrast, list first publication dates of December 21, 2017.  That is false.  Long before the December date, there were offers for sale to retailers such as Target, and even sales, as shown by the fact that Target placed an order and then reduced it by 80%.  Sale of even one copy constitutes publication, and there was far more than sale of one copy.[3]

## III.    THE INFORMATION VITIATES THE PRESUMPTION OF VALIDITY

A copyright registration "made before or within five years after first publication of the work constitutes prima facie evidence of the validity of the copyright."  *Urbont v. Sony Music Entm't*, 831 F.3d 80, 87-89 (2d Cir. 2016) (citations omitted).  "However, 'a certificate of

---

[3]  *See,* Copyright Compendium 3ʳᵈ §1906.1 ("publication occurs when one or more copies … are offered to … retailers …").

registration creates no irrebuttable presumption of copyright validity,' and 'where other evidence in the record casts doubt on the question, validity will not be assumed.'" *Id.* at 89, quoting *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 166 (2d Cir. 2003). The presumption "merely orders the burdens of proof. The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff." *Carol Barnhart Inc. v. Econ. Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985).

Here, the evidence in discovery abundantly "casts doubt" on the facts underlying the statements made in the applications to the Copyright Office. As a result, the presumption of validity is legally vitiated, and the burden of proof shifts to BHTBC in this case.

Notably, the repudiation of the presumption of validity is significant in connection with both the present motion and the pending motion for reconsideration on ownership.[4] To wit, the evidence here also casts doubts on the registrations, again eliminating the presumption and shifting the burden to BHTBC to prove up the facts alleged in the registrations. And since the presumption is eliminated, BHTBC must prove up **all** the facts, including those in the application as to the alleged dates and nation of publication, and those associated with alleged ownership by written agreement. Thus, a finding on the present motion is also intertwined with and bears upon the pending motion for reconsideration (Dkt. 280). Namely, BHTBC's provision of inaccurate information to the Copyright Office further casts doubt on the registrations, requiring a finding of no presumption of validity.

---

[4] The two are thus related. As noted above (*supra* n.1) Best Brands had initially contemplated a single summary judgment motion on both standing and copyright invalidity, but Judge Woods preferred to bifurcating the issues into separate motions since standing is a threshold issue.

**IV.    BHTBC KNEW THE INFORMATION WAS FALSE**

    **A.    The Products Were Offered to Sale and Sold by November 27, 2017**

Indeed, the testimony and documents from discovery more than "cast doubt" on the facts in the applications.  They show that BHTBC submitted information to the Copyright Office that BHTBC knew was inaccurate.

The dates on which BHTBC was offering its products for sale to retailers were well known to BHTBC.  This is information within its own records, and within the direct personal knowledge of its CEO and President.  They were well aware of their sales efforts.  By the end of November, there had been a Target order, and a subsequent reduction of the order.

    **B.    CEO Socha and President Clark Were Aware The Information Was False**

It was no secret to BHTBC that the products were first offered for sale long before December 21, 2017.  Its own CEO admitted in his deposition that there were offers for sale well before December 21 2017.  *Supra,* Section II.B.

Moreover, CEO Socha and President Clark were well aware of their extensive efforts in offering to sell the products.  Mr. Socha testified that the designs were first shown in Hong Kong in October 2017.  SUMF ¶30, Exhibit 5 (email), Exhibit 6, Socha 2-25-20 Dep. at 86:20 - 88:19, and Exhibit 5.  In an email on October 15th (under the subject line "Squishamals") he stated that "We have a new line that is getting a lot of attention at the show in Hong Kong."  Exhibit 5; SUMF ¶31.  (As noted above, "Squishamals" was the original name before they changed it to "Squeezamals."  SUMF ¶21.)  In Hong Kong, he showed the designs to "key partners," i.e., to overseas distributors.  SUMF ¶32; Exhibit 6, Socha Dep. at 87:9-89:22, and Exhibit 5.  The first samples were hidden beneath a food service tray.  SUMF ¶33; Exhibit 15, Dep. at 89:14-17.  As Mr. Socha testified, the designs were shown to their Australian distributor, their UK distributor,

and their Canadian distributor, to get them to buy it.  SUMF ¶34; Exhibit 6, Socha Dep. at 87:22-88:14.  Randy Clark, the company president, was showing the designs at meetings, and Mr. Socha was at some of the meetings.  SUMF ¶35; Exhibit 6, Socha Dep. at 89:4-11; Exhibit 7, Randy Clark Dep. at 85:20-86:3 (testifying that the designs were shown in Hong Kong in October).  Beverly Hills then received commitments for purchases in October from their distributor in Australia (SUMF ¶36; Exhibit 6, Socha Dep. 101:2-25), their distributor in the UK (*id.,* Socha Dep. 99:7 - 100:12; 101:20 - 103:21), and so forth.

Thereafter, BHTBC continued to offer the products for sale.[5]  SUMF ¶37.  For example, it offered the line for sale to Target at a sales meeting on November 2, 2017.  SUMF ¶40; Exhibit 6, Socha Dep. 108:15 – 109:5; Exhibit 7, Clark Dep. at 32:9-33:13.[6]  As Socha confirmed in his deposition (quoted above), BHTBC showed Target the products, Target purchased them, and BHTBC subsequently shipped them.  SUMF ¶41.

In short, BHTBC's CEO and President, were personally engaged in extensive efforts offering the products for sale long before December 21, 2017.  They knew – they had to know – that the data they subsequently submitted to the Copyright Office was false.  And tellingly, BHTBC never produced a single document in discovery corroborating the alleged first publication dates listed in any of the asserted registrations.  SUMF ¶42; Cohen Dec. ¶19.

### C.    The Unicorn Registration Also Has False Information

BHTBC has alleged that the unicorn is not affected, because it asserts that the unicorn was published later.  That does not save BHTBC.  On the contrary, the unicorn registration is

---

[5] For example, its 30(b)(6) witness believed that their representative approached Five Below with artwork showing the line.  *Id.,* Socha Dep. 90:10 – 91:21.  The artwork illustrating the intended designs was in final, or essentially final, form by the end of October.  Exhibit 6, Socha Dep. 107:16-24, 109:10-23; Exhibit 7, Clark Dep. 35:20-36:20.

[6] Artworks of displays for the retail sales are attached as Exhibit 8.  SUMF ¶39.

also invalid, having withheld mandatory information as to the earlier publication.

BHTBC asserts that the unicorn had a date of first publication (February 27, 2018) which was later than December 2017 date of the other registrations such as the Narwhal. *See,* Exhibits 10 (summary chart) and 11 (registrations). But the unicorn is a derivative of the Narwhal. *See*, Exhibit 12 (comparison). *See also*, Exhibit 11 pgs. 27-34 (Unicorn, Dkt. 117-3 at 26-33) and pgs. 90-97 (Narwhal, Dkt. 117-5 at 17-24). This cannot be in dispute – the unicorn has the same horn, same eyes, same pink cheeks, same mouth, along with a similar overall shape and look. Exhibit 12, p.1. Similarly, the unicorn's ears and feet are derived from the previously published Teal Cat. *Id.* p.2. The feet are likewise derived from numerous other works, such as the Pink Owl (Dkt. 42-5 p.3).

BHTBC was obligated to notify the Copyright Office that the unicorn was related to previously published works. *See*, Exhibit 13 (instructions for Space 6). There is a specific field requiring this information (in both the paper and electronic application). *See e.g.*, Exhibit 13 Spaces 6. But BHTBC did not inform the Copyright Office that the unicorn was related to any prior published works (SUMF ¶44).

BHTBC should have also notified the Copyright Office that the unicorn registration incorporated aspects of earlier registrations. *Id.*, Space 5. Here too, it did not inform the Copyright Office that the unicorn was related to any prior registrations (SUMF ¶45).

BHTBC withheld this information. It falsely indicated that the unicorn was completely original, i.e. not related to any prior published works or registrations.

## V.    A REFERRAL TO THE COPYRIGHT OFFICE IS REQUIRED

Section 411(b) of the copyright statutes (17 U.S.C. §411(b) provides as follows:

(1)    A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless –

    (A)    the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

    (B)    the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

(2)    In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

Best Brands has shown that BHTBC included inaccurate information on its applications for copyright, with knowledge that the information was inaccurate. This fulfills Section 411(b)(1)(A). In view thereof, the statute requires that the "court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." *Id.* Since referral is mandatory,[7] such referral is respectfully requested.

The following is the text of a proposed request to the Copyright Office:

Definition: The "First Set of Applications-in-Suit" are defined as the applications which were registered as: U.S Copyright Reg. No. VA 2-111-231 ("Series 1 White Cat")"); Reg. No. VA 2-111-212, for the Series 1 Dog"); Reg. No. VA 2-111-208 ("Series 1 Monkey"); Reg. No. VA 2-111-202 ("Series 1 Panda"); Reg. No. VA 2-111-230 ("Series 1 Penguin"); Reg. No. VA 2-140-693 ("Series 1 Teal Cat"); Reg. No. VA 2-140-694 ("Series 1 Duck"); Reg. No. VA 2-140-678 ("Series 1 Ladybug"); Reg. No. VA 2-140-680 ("Series 1 Pink Owl"); Reg. No. VA 2-140-672 ("Series 1 Bunny"); Reg. No. VA 2-140-676 ("Series 1 Fox"); Reg. No. VA 2-140-679 ("Series 1 Pig"); Reg. No. VA 2-140-698 ("Series 1 Narwhal"), as of which were filed by Beverly Hills Teddy Bear Company, Inc. ("BHTBC").

In addition, Reg. No. VA 2-112-188 is referred to as "Series 1 Unicorn" application or registration.

---

[7] *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) ("courts are in agreement that the provision is mandatory in nature, requiring district courts to solicit the advice of the Copyright Office when the statutory conditions are satisfied") (collecting cases).

Question 1:  Would the Register of Copyrights have refused registration of the First Set of Applications-in-Suit had the Register known that the applications included an inaccurate first date of publication, the works having been offered for sale before the listed date?

Question 2:  Would the Register of Copyrights have refused registration of BHTBC's subsequent application had the Register known that the design therein was derived from previously published works not listed in the application; for example, had it known that the Series I Unicorn was derived from the Series I Narwhal and Series I Teal Cat, which were not listed in Series I Unicorn application?

Question 3:  Would the Register of Copyrights have refused registration had the Register known that the design therein was derived from previously registered works not listed in the application; for example, that the Series I Unicorn was related to the prior registrations for the first set of applications-in-suit?

## VI.    THE COPYRIGHT REGISTRATIONS SHOULD BE INVALIDATED

The Copyright Office has indicated in similar situations that it would not have issued a registration had it known of the inaccurate information.  In *Dmarcian*, the Register of Copyrights held that "the Copyright Office would not have registered the Work if it had known that the application provided incorrect dates of first publication."  Exhibit 17 (*Dmarcian* Dkt. 272-1 at 1). Similarly, in *Geospatial Technology Associates*, the Register held that "the U.S Copyright Office … would not have registered the Work if it had known that the application provided incorrect dates of first publication … or that the deposit material included an 'appreciable amount' of public domain material, previously published or previously registered material, or material owned by a third party that was not excluded in the application."  Exhibit 18 (*Geospatial* Dkt. 349 at 2).

Accordingly, should the Copyright Office confirm, in response to Questions 1, 2, and/or 3, that it would have refused registration, the copyright registrations must be held invalid. Such invalidation on summary judgment is well within this Court's authority, contrary to what BHTBC argued in the recent court conference.  In *Gold Value*, for example, the court upheld its prior invalidation of copyright registrations because the plaintiff had submitted inaccurate information regarding publication.  *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, No. LA CV16-00339 JAK (FFM), 2023 U.S. Dist. LEXIS 62711, at \*13-15, \*35-39 (C.D. Cal. Mar. 17, 2023).  *See also, Unicolors, Inc. v. H&M Hennes & Mauritz, Ltd. P'ship*, 52 F.4th 1054, 1067 (9th Cir. 2022) (a "registration is invalid under § 411(b) if the registrant perpetrated fraud on the Copyright Office by knowingly misrepresenting material facts"), *cert. denied*, 143 S. Ct. 2583 (2023); *Argento v. Santiago*, 2018 U.S. Dist. LEXIS 25218, at \*4 (W.D.N.Y. Feb. 15, 2018) (invalidating registration after referral to Register, due to knowingly inaccurate information therein).  Similarly, in *Russ Berrie* the application  failed to disclose that Berrie's Gonga was a derivative work.  *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 983-84, 988 (S.D.N.Y. 1980)

The same applies here.  BHTBC sued on registrations containing knowingly inaccurate information that it supplied to the Copyright Office.  As a result, invalidation of the registrations and dismissal of the action is fully warranted.

It is also respectfully requested that the Copyright Office be asked to provide a ruling within thirty (30) days and/or that trial be deferred until the Copyright Office's ruling, since this serious issue regarding the validity of the registrations needs to be addressed before trial.

## CONCLUSION

BHTBC's executives knew they were engaged in extensive offers for sale for months that they subsequently received an order from Target; and that Target subsequently reduced its order by 80%; all before November 27, 2017.  But BHTBC provided false information to the Copyright Office, telling it that the dates of first publication were December 21, 2017.  It also represented to the Copyright Office that the Unicorn was not related to any previously published or registered works, when that too was false.

This warrants summary judgment that the discovery casts doubts on the statements in BHTBC's copyright applications, such that there is no presumption of validity associated with the copyright registrations.  Rather, the burden is shifted to BHTBC to prove the facts underlying its registrations.

This also warrants that summary judgment be entered under Rule 56(g), that BHTBC knowingly submitted inaccurate information to the Copyright Office.

It also warrants a referral to the Register of Copyrights to assess whether the Register would have refused registration had it known that the information was inaccurate.

Should the Register confirm that it would have refused registration, summary judgment should be granted that the copyrights registrations in suit are invalid, and the case dismissed.

Dated:  December 18, 2023                    Respectfully submitted,

*/s/ Morris E. Cohen*
_____
Morris E. Cohen
Lee A. Goldberg
Limor Wigder
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 3rd Floor
New York, New York 10019
(646) 380-2087 (phone – main)
(646) 380-2084 (phone – direct)

(646) 514-2123 (fax)
LGoldberg@GoldbergCohen.com
MCohen@GoldbergCohen.com
LWigder@GoldbergCohen.com

Donald L. Rhoads
Rhoads Legal Group PC
100 Park Avenue, Suite 1600
New York, NY 10017
(212) 390-8510 (phone)
drhoads@rhoadslegal.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2023, a true and correct copy of the foregoing was served on counsel of record via the Court's ECF system.

Dated: December 18, 2023                    */s/ Morris E. Cohen*

_____

Morris E. Cohen