# EXHIBIT 3

Page 1

```
 1
 2   UNITED STATES DISTRICT COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4   - - - - - - - - - - - - - - - - - - - -
 5   BEVERLY HILLS TEDDY BEAR COMPANY,
 6                    Plaintiff,
 7         -against-       19-cv-3766-GHW
 8   BEST BRANDS CONSUMER PRODUCTS, INC.; BEST
     BRANDS SALES COMPANY, LLC; GENNCOMM, LLC,
 9
                     Defendants.
10
     - - - - - - - - - - - - - - - - - - - -
11
                     Zoom Videoconferencing
12
                     June 29, 2023
13                   12:10 p.m.
14
                CONFIDENTIAL TRANSCRIPT
15
16
17        DEPOSITION of BEVERLY HILLS TEDDY
18   BEAR COMPANY, by DAVID SOCHA, on behalf of
19   the Plaintiff in the above-entitled
20   action, held at the above time and via
21   Zoom, taken before Genevieve Guilfoyle, a
22   Notary Public of the State of New York,
23   pursuant to the Federal Rules of Civil
24   Procedure, and stipulations between
25   Counsel.
```

```
 1
 2   REMOTE APPEARANCES:
 3
 4   EPSTEIN DRANGEL, LLP
 5   Attorneys for Plaintiff
 6   60 East 42nd Street - Suite 2520
 7   New York, New York 10165
 8   BY:   KERRY BROWNLEE, ESQ.
 9         JASON DRANGEL, ESQ.
10
11
12   GOLDBERG COHEN, LLP
13   Attorneys for Defendants
14   1350 Avenue of the Americas, 3rd Floor
15   New York, New York 10019
16   BY:   MORRIS E. COHEN, ESQ.
17         LEE GOLDBERG, ESQ.
18
19
20
21
22
23
24
25
```

Page 3

1
2              STIPULATIONS
3
4         IT IS HEREBY STIPULATED AND
5   AGREED, by and among counsel for the
6   respective parties hereto, that the
7   filing, sealing and certification of the
8   within deposition shall be and the same
9   are hereby waived;
10            IT IS FURTHER STIPULATED AND
11  AGREED that all objections, except as to
12  form of the question, shall be reserved to
13  the time of the trial;
14            IT IS FURTHER STIPULATED AND
15  AGREED that the within deposition may be
16  signed before any Notary Public with the
17  same force and effect as if signed and
18  sworn to before the Court.
19            *     *     *
20
21
22
23
24
25

Page 99

1           D. Socha - Confidential
2    sentence that the matters are true of your
3    own knowledge upon information and belief,
4    you believe them to be true; isn't that
5    correct?
6         A    Okay.
7         Q    You declared this under penalty
8    of perjury of the laws of the State of
9    California.
10        A    Okay.
11        Q    So, when you signed this, you
12   believed that was correct?
13        A    Okay.
14        Q    That Target reduced its order.
15        A    Okay.
16        Q    So going back to GennComm's
17   statement, there was a November 27, 2017,
18   communication between Randy and Genna
19   about Target reducing its order; do you
20   see that?
21        A    Yes.
22        Q    And you said that's correct; is
23   that right?
24        A    If that's what I said.  Again,
25   this is six years ago.

Page 100

1         D. Socha - Confidential
2     Q    You wouldn't have lied to the
3  court under penalty when you were saying
4  that, would you?
5     A    Correct.
6     Q    So when did Beverly Hills first
7  sell these Squeezamals to Target?
8     A    I believe we shipped January.
9     Q    But when did they first sell it?
10    A    I believe January, February,
11 around that time frame, of '18.
12    Q    It says here that Target had an
13 order and that November 27th of 2017, by
14 then, they reduced their order.  So their
15 order had to be before November 27, 2017,
16 doesn't it?
17    A    Their PO could have been, but we
18 have to manufacture the goods.  I don't
19 believe they shipped until --
20         MS. BROWNLEE:  Just to
21    interrupt, is this relating to the
22    scope of supplemental discovery, these
23    dates?  Because I'm failing to
24    understand -- if you're getting into
25    publication date --

Page 101

1           D. Socha - Confidential
2              MR. COHEN:  That's a speaking
3       objection, first of all.  Second of
4       all, I'm asking about a document that
5       was produced in supplemental discovery
6       that we had no knowledge about before
7       supplemental discovery.
8              So this complaint that was
9       produced to us that we had no
10      knowledge of, we didn't even know this
11      case existed, and now that we have
12      this document, I'm asking about it.
13      It's certainly within supplemental
14      discovery.
15      Q    So, again, I'm asking you, was
16 there an order by Target before November
17 27, 2017?
18      A    I don't know the PO date, but it
19 sounds around that time, sure.
20      Q    So Target committed to buying a
21 certain amount; correct?
22      A    I believe so, yes.
23      Q    And then they reduced their
24 order by 80 percent?
25      A    From what I recall, I don't know

Page 102

1       D. Socha - Confidential
2  the specific, but that sounds about right.
3       Q    Why did they reduce their order?
4       A    Well, I believe it said because
5  of pricing.
6       Q    So it was because of Target's
7  objection to price was too high, or what
8  was the reason?
9       A    Well, it would never be too low,
10 so I'm assuming it was too high.
11      Q    So you don't have a specific
12 recollection.  You're just assuming that
13 it was because of pricing?
14      A    Correct.  It was six years ago.
15 Yes.
16      Q    Where it says "reiterated their
17 costing challenges notwithstanding the
18 significant sales already conducted
19 pursuant to the underlying agreement
20 herein."  What does that refer to?
21      A    I don't know.
22      Q    So is your answer today they are
23 saying there were already sales conducted,
24 but you're having problems with your
25 costing?

```
                                               Page 103
 1            D. Socha - Confidential
 2       A     I -- I don't know.
 3       Q     Well, you said that it was true
 4   in your verification; right?  So what did
 5   you understand it to mean when you said
 6   that it was true?
 7       A     Well, based on what this says,
 8   it looks like the cost of goods was higher
 9   than the market could bear.
10       Q     Okay.  But you had made sales,
11   and now you had to, what, reduce your
12   price or the order?
13            MS. BROWNLEE:  I reiterate the
14       objection that this is outside the
15       scope of the Court's order.
16            MR. COHEN:  Your objection is
17       noted and improper.  I'm going to
18       continue.  This is directly within the
19       scope of a document that we didn't
20       receive until the supplemental
21       discovery.  I'm entitled to ask about
22       the statements that are in this
23       document, and you can't interrupt or
24       try to obstruct the deposition that
25       way.
```

Page 104

1      D. Socha - Confidential
2          MR. DRANGEL:  We are allowed to
3      put our position on the record,
4      Morris, and do not cut her off again
5      like you did previously.
6          MR. COHEN:  I didn't cut her
7      off.  She put her position on the
8      record, and I'm reiterating it.  You
9      have a standing objection -- Jason,
10     you are not defending the deposition.
11     I don't understand where you think you
12     have two attorneys doing a deposition.
13     It's not proper.  Stop interrupting.
14         MR. DRANGEL:  You rudely cut her
15     off in the middle of her objection.
16     I'm not going to stand for that.
17         MR. COHEN:  You are not
18     defending the deposition.
19         MR. DRANGEL:  I'm going to do my
20     duty.
21         (At this time, a discussion was
22     held off the record.)
23         MR. COHEN:  Jason, don't
24     interrupt me, don't speak over me.
25     You can wait until I'm finished.

Page 105

1           D. Socha - Confidential
2      Don't interrupt your partner, and
3      don't interrupt any of us.
4           MR. DRANGEL:  The only one who
5      interrupted anyone was you.  Let's
6      move on.
7           MR. COHEN:  We're going to move
8      on, Jason, and, listen, if you're
9      going to attend the deposition, you
10     have to abide by the rules.  You can't
11     decide that now both of you are going
12     to be defending the deposition.
13          MR. DRANGEL:  You have to abide
14     by the rules also.
15          MR. COHEN:  I am.
16          MR. DRANGEL:  This deposition
17     was limited to supplemental discovery.
18     This is a public document that you
19     could have obtained at any given time
20     and you chose not to, to do your
21     investigation.
22          MR. COHEN:  That's wrong.
23          MR. DRANGEL:  Objection to this
24     line of questioning.  You should move
25     on.

1          D. Socha - Confidential
2             MR. COHEN:  Absolutely not.  I'm
3      not moving on.  I'm not abiding by
4      your discussion.  The court gave
5      supplemental discovery because of
6      these issues that we didn't even know
7      existed.  There's no way for us to
8      look for --
9             MR. DRANGEL:  You can take it up
10     with the court.  Continue on at your
11     discretion.
12            MR. COHEN:  I'm asking the
13     question.
14  BY MR. COHEN:
15     Q     So I'm asking now, David, about
16  the significant sales already conducted.
17  What does that mean "significant sales"?
18  How many sales were conducted, to the best
19  of your knowledge?
20     A     I don't know specific.  I don't
21  know specific, but this isn't like going
22  into a 7-Eleven and buying a candy bar.
23  We have to plan and design and make these
24  products.  So we made some products.  We
25  may have orders almost a year in advance.

Page 107

1      D. Socha - Confidential
2          So just to give you an idea.
3  I'm sure Best Brands understands how that
4  works as well, but, yeah, so we may have
5  had sales but it doesn't mean -- sales
6  doesn't mean we shipped them. It just
7  means we might have orders on the book.
8      Q    I'm not asking if you shipped
9  them. I'm asking if you showed them a
10 product and they purchased them.
11     A    Yeah, we showed them a product,
12 and then they decide whether they want it
13 or not.
14     Q    And here you showed them the
15 Squeezamals, they decided they wanted it,
16 and then you shipped them a few months
17 later; correct? Or at some point later.
18 I'm not asking exactly the date.
19     A    Correct. That's how it works.
20     Q    And that's what happened here?
21     A    Yes.
22          (At this time, a discussion was
23     held off the record and a recess was
24     taken.)
25          MR. COHEN:  Back on the record.

Page 108

1  　　　　D. Socha - Confidential
2  　　I'd like to mark as Exhibit 47 a
3  　　document with Bates number BHTBC 4644.
4  　　It also has another Bates number,
5  　　GennComm 355.  This was produced to us
6  　　in supplemental discovery.  It's an
7  　　e-mail dated Monday, November 27,
8  　　2017, from Randy Clark to Genna
9  　　Rosenberg, and I'll put it on the chat
10 　　and post it.
11 　　Q　　Mr. Socha, do you see this
12 e-mail?
13 　　A　　Yes.
14 　　Q　　And Randy Clark is your
15 president, the president of Beverly Hills?
16 　　A　　Yes.
17 　　Q　　And he was the president at the
18 time of this e-mail; correct?
19 　　A　　I believe so, yes.
20 　　Q　　Do you see it says "Hey, Genna
21 and Jeremy, good to catch up, and thanks
22 for the time.  Attached is what we are
23 pitching to customers for Squishamals."
24 Do you see that?
25 　　A　　Yes.

Page 109

1       D. Socha - Confidential
2       Q    And below is a picture of what
3  you were pitching to customers for
4  Squishamals; correct?
5       A    Correct.
6       Q    And that included what you had
7  pitched to Target; correct?
8       A    Correct.
9       Q    We never got records of this
10 initial order or the 80 percent reduction.
11 Do you know why we never received those
12 records?
13      A    Are you asking me?
14      Q    I'm asking you, yes.
15      A    Oh, I have no idea.
16           MR. COHEN:  Well, we request
17      those documents.  We request the
18      documents of the initial orders and
19      all the reduction documents and
20      anything else related thereto.
21           THE WITNESS:  Is there a
22      question?
23           MR. COHEN:  No, that's for your
24      counsel, to you and your counsel, but
25      I was just putting that on the record.