# EXHIBIT 17

THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00067-MR

| | |
|---|---|
| DMARCIAN, INC.,<br><br>          Plaintiff,<br><br>    v.<br><br>DMARCIAN EUROPE BV,<br>  f/k/a dmarcian Europe BV,<br><br>          Defendant. | **NOTICE OF FILING THE**<br>**RESPONSE OF THE REGISTER**<br>**OF COPYRIGHTS** |

The undersigned counsel of the Department of Justice appear on behalf of the Register of Copyrights (Register) for the purpose of filing the Register's response to the Court's *Memorandum of Decision and Order*, Dkt. No. 206 (June 12, 2023). The *Response of The Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2)* is attached.

Respectfully submitted, this 16th day of October, 2023.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

s/Scott Bolden
SCOTT BOLDEN
Acting Director
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Email: Scott.Bolden@usdoj.gov
Telephone: (202) 307-0262
Facsimile: (202) 307-0345

1

DENA J. KING
UNITED STATES ATTORNEY

s/Gill P. Beck
GILL P. BECK
Assistant United States Attorney
Chief, Civil Division
NC Bar Number #13175
Assistant United States Attorney
Room 233, United States Courthouse
100 Otis Street
Asheville, North Carolina 28801
Telephone:  828-259-0645
Facsimile:  828-271-4327
Email:  Gill.Beck@usdoj.gov

THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00067-MR

DMARCIAN, INC.,

             Plaintiff,

    v.

DMARCIAN EUROPE BV,
 f/k/a dmarcian Europe BV,

             Defendant.

**RESPONSE OF THE
REGISTER OF COPYRIGHTS
TO REQUEST PURSUANT TO 17
U.S.C. § 411(b)(2)**

On June 12, 2023, pursuant to 17 U.S.C. § 411(b)(2), the Court requested

advice from the Register of Copyrights ("Register") on three questions concerning

whether certain alleged inaccuracies, if known prior to registration, would have

caused the Copyright Office ("Copyright Office" or "Office") to refuse registration

of the computer software program claimed in registration number TX0008941559,

titled "dmarcian Source Code" (the "Work").[1]

    The Register hereby responds that, based on the legal standards and

examining practices set forth below, the Copyright Office would not have

registered the Work if it had known that the application provided incorrect dates of

first publication and/or completion, or that the deposit included material created or

published after the dates provided on the application.  If the Office had known

---

[1] Mem. of Decision and Order at 26–27 ("Order"), ECF No. 206.

1

about these issues at the time of the application, it would have attempted to resolve the variances between the deposit material and the application.  If it was unable to do so, the Office would have refused registration.

If this Court finds that dmarcian, Inc.'s ("Plaintiff's") deposit did include materials that were created after the claimed dates of first publication and/or completion, this requires an additional inquiry regarding the validity of the application.  Pursuant to the Supreme Court's decision in *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, the question is whether Plaintiff represented the dates of first publication and/or completion on the application "with knowledge that it was inaccurate."[2]  An applicant's lack of actual knowledge of either fact or law can preclude a finding that the registration is invalid.[3]

Finally, to the extent that Plaintiff now seeks to correct the deficiencies in its application, it has two options.  Plaintiff may either file a supplementary registration application to correct the dates of first publication and completion, and disclose any unclaimable material that appears in the deposit it already submitted; or, in the alternative, Plaintiff may submit a new application for a basic registration, along with a correct deposit copy.

---

[2] *See* 17 U.S.C. § 411(b)(1)(A).
[3] 595 U.S. 178 (2022).

2

## BACKGROUND

**I.     Examination History**

A review of the records of the Office reveals the following:

Original Registration

On February 18, 2021, the Office received an application to register the Work as a computer program.  The application identified Eudaemonic Development, LLC as the Work's author as a work made for hire, and Plaintiff as copyright claimant via transfer by written agreement.  It stated that the Work was completed in 2012 and first published in the United States on February 9, 2012. The application did not disclose that the deposit copy included material created after the date of completion or date of publication, or that the deposit copy included preexisting material.

The deposit copy Plaintiff submitted with the application was a 20-page text file containing source code and HTML.  On February 19, 2021, the registration specialist sent an inquiry to the applicant requesting permission to describe the authorship as "computer program and HTML," as the deposit copy included HTML markup in addition to source code.  In addition, the registration specialist

sought confirmation that the deposit was meant to be a trade secret submission.[4] The applicant answered both questions in the affirmative on March 8, 2021.

Based on the information provided in the application, the Office had no reason to question Plaintiff's representations and accepted them as true and accurate.  The Office registered the claim on March 9, 2021, with an effective date of registration ("EDR")[5] of February 18, 2021, and assigned it registration number TX0008491559 (the "Registration").

<u>Supplementary Registration</u>

On August 19, 2022, the Office received an application for supplementary registration to augment the information contained in the Registration.  Plaintiff sought to change the author from Eudaemonic LLC to Timothy G. Draegen (the developer of the software) and to remove the indication that the Work was made for hire.  Based on the information provided in the application, the Office had no reason to question Plaintiff's representations and accepted them as true and

---

[4] To submit source code that does not contain trade secret material, claimants must typically provide the first 25 pages and last 25 pages of that code.  37 C.F.R. § 202.20(c)(2)(vii)(A)(1); U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 1509.1(F)(3) (3d ed. 2021) ("COMPENDIUM (THIRD)").  For source code that does contain trade secret material, claimants have several options, including submitting a total of 20 pages of code.  37 C.F.R. § 202.20(c)(2)(vii)(A)(2) (claimant may submit "the first and last 10 pages or equivalent units of source code alone with no blocked-out portions"); COMPENDIUM (THIRD) § 1509.1(F)(4)(b).

[5] The EDR is the date the Office received a completed application, the correct deposit copy, and the proper filing fee.  17 U.S.C. § 410(d).

accurate.  The Office registered the claim in this supplementary registration application on September 1, 2022, effective August 19, 2022, and assigned it registration number TX0009164197 (the "Supplementary Registration").

## II.    The Court's Request

As the Office understands the dispute, Mr. Draegen developed the dmarcian software in 2012 and subsequently founded a company, dmarcian, Inc., to market it.  Plaintiff later partnered with Defendant to commercialize the European market for the product.  At some point, dmarcian Europe BV ("Defendant") hired developers to refactor the software to add application programming interface ("API") functionality.[6]  Disputes arose between the parties regarding the ownership of the portions of the code that Defendant's developers had created.[7]

Defendant alleges that Plaintiff's original and supplementary registration applications contained inaccuracies related to the author of the code, the dates of publication and completion, and the nation of first publication.[8]  Plaintiff admits that it deposited the version of the software created in 2021, but argues that it had provided the dates of publication and author information on the application based

---

[6] Refactoring is "a change made to the internal structure of software to make it easier to understand and cheaper to modify without changing its observable behavior."  MARTIN FOWLER, REFACTORING: IMPROVING THE DESIGN OF EXISTING CODE 45 (2d ed. 2018).

[7] Order at 3–7.

[8] *Id.* at 14–24.

on the 2012 version because all of the copyrightable material in the code was created by 2012.[9]

In its June 12, 2023 Order, the Court requested the advice of the Register on whether the alleged inaccuracies regarding the dates of creation and publication of the Work and the deposit, if known, would have caused the Office to refuse registration of Plaintiff's applications.  The Court specifically asked:

1. Would the Register of Copyrights have refused Registration Numbers TX0009164197 or TX0008941559 had it known that the deposited code was created in or after 2017?[10]

2. Would the Register of Copyrights have refused Registration Numbers TX0009164197 or TX0008941559 had it known that the deposited lines of code were the lines in use in 2021, and not an exact copy of the code as it existed in 2012?[11]

3. Would the Register of Copyrights have refused Registration Numbers TX0009164197 or TX0008941559 had it known that the deposited code was published in or after 2017?[12]

Because the Court's questions implicate a range of copyright issues, the Office sets forth below the portions of the Copyright Act, Office regulations, and the *Compendium of U.S. Copyright Office Practices* on which the responses rely.

---

[9] *Id*. at 19.  The Office makes no determination as to whether any of the material added after 2012 is copyrightable.

[10] *Id.* at 26.  The Office understands that the court's inquiry identifies 2017 as a relevant date because of the claim that the HTML file in the deposit was created in 2017.  *See id.* at 23.

[11] *Id.* at 26–27.

[12] *Id.* at 27.

## ANALYSIS

### I.    Relevant Statutes, Regulations, and Agency Practice

An application for copyright registration must comply with the requirements

of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 408(d), 409, and 410.

Regulations governing applications for registration are codified at 37 C.F.R.

§§ 202.1 to 202.24.  Further, the principles that govern how the Office examines

registration applications are set out in the *Compendium of U.S. Copyright Office*

*Practices*, *Third Edition* (the "*Compendium*"), an administrative manual that

instructs agency staff regarding their statutory and regulatory duties and provides

expert guidance to copyright applicants, practitioners, scholars, courts, and

members of the general public regarding Office practices and related principles of

law.  The Office publishes regular revisions of the *Compendium* to provide

additional guidance where necessary and to reflect changes in the law or Office

practices, which are provided for public comment prior to finalization.  Here,

Plaintiff filed its original registration application in 2021 and its supplementary

registration application in 2022.  Therefore, the governing principles the Office

would have applied at that time are set forth in the version of the *Compendium* that

was first released in January 2021.[13]

---

[13] COMPENDIUM (THIRD) is available on the Copyright Office's website at
https://www.copyright.gov/comp3/docs/compendium.pdf.

7

## A.      Year of Completion and Date of Publication

An application for copyright registration must include "the year in which creation of the work was completed."[14]  In defining when a work is "created," the Copyright Act states: "where a work is prepared over a period of time, the portion of [the work] that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work."[15]  The *Compendium* instructs applicants to "provide the year of completion for the specific version that is being registered."[16]  For computer programs "prepared over a period of time," it provides specific guidance regarding the year of completion: "the portion that has been fixed at any particular time constitutes the version that has been completed as of that date."[17]

For works that have been published, the Copyright Act also requires that applications include the date of first publication of the work.[18]  The *Compendium* instructs applicants to identify the date on which the work was first published with the authorization of the copyright owner.[19]  The statute defines publication as the "distribution of copies . . . of a work to the public by sale or other transfer of

---

[14] 17 U.S.C. § 409(7).

[15] *Id.* § 101 (defining "created"); *see also* COMPENDIUM (THIRD) § 611.1(B).

[16] COMPENDIUM (THIRD) § 611.1(B).

[17] *Id.* § 721.9(D) (citing 17 U.S.C. § 101 (definition of "created")).

[18] *Id.* § 409(8).

[19] COMPENDIUM (THIRD) § 612.4.

ownership, or by rental, lease, or lending."[20]  Likewise, "offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication," provided that the offer is made by or with the authority of the copyright owner and copies of the work exist at the time the offer is made.[21]

When submitting an application for a published work, an applicant must also provide the month, day, and year that copies of that specific work were distributed for the first time or were first offered to a group of persons for further distribution, public performance, or public display.[22]  If the date of creation or date of first publication provided in the application is inconsistent with other dates appearing on the application or the deposit, the *Compendium* provides that the registration specialist may communicate with the applicant regarding the inconsistency.[23]

## B.    Registration of Multiple Versions of a Computer Program

The Copyright Act provides that "where [a] work has been prepared in different versions, each version constitutes a separate work."[24]  The *Compendium* explains that "[a]s a general rule, a registration covers one individual work, and an

---

[20] 17 U.S.C. § 101 (defining "publication").

[21] *Id.*; COMPENDIUM (THIRD) §§ 1906, 1906.3.

[22] COMPENDIUM (THIRD) §§ 612.6(A), 612.7(G).

[23] *Id.* §§ 603.2(C), 721.9(D), 721.9(E).

[24] 17 U.S.C. § 101 (defining "created").

9

applicant should prepare a separate application, filing fee, and deposit for each work that is submitted for registration."[25]

The Copyright Office will register multiple versions of a published work, provided that each version contains "new material" that is "original" and "contain[s] a sufficient amount of copyrightable authorship"[26] that "does not appear in the other versions," if the applicant submits "a separate application, a separate filing fee, and a separate set of deposit copies for each version."[27]  This requirement is not satisfied by "[m]aking only a few minor changes or revisions to a preexisting work, or making changes or revisions of a rote nature that are predetermined by the functional considerations of the hardware."[28]  "[T]he Office will not register the functional aspects of a computer program, such as the program's algorithm, formatting, functions, logic, system design, or the like."[29]  An application to register a new version of a computer program should identify any

---

[25] *See* COMPENDIUM (THIRD) § 511.  There are limited exceptions to this rule, including for registration of collective works, published works using the "unit of publication" option, and group registration for serials, newspapers, newsletters, contributions to periodicals, unpublished photographs, published photographs, databases, short online literary works, musical works published on the same album, and secure test items.  *See* 37 C.F.R. §§ 202.3(b)(5), 202.4; COMPENDIUM (THIRD) §§ 511, 512.2.

[26] COMPENDIUM (THIRD) § 721.8.

[27] *Id.* § 512.2.  Depending on which version is the "most complete" and when each version is published with respect to the other versions, the COMPENDIUM (THIRD) outlines specific application procedures.  *See id.* §§ 512.2(A)–(C).

[28] *Id.* § 721.8.

[29] *Id.* § 721.7.

10

unclaimable material, including the previously published version of the computer program, in the application and exclude it from the claim.[30]

The *Compendium* illustrates this point with the following example:  A software company seeks to register "version 3.0" of a computer program.  Version 3.0 contains an appreciable amount of code that also appeared in versions 1.0 and 2.0 of the same program, both of which were previously distributed.[31]  In this situation, version 3.0 is a derivative computer program, and an application to register version 3.0 "should be limited to the new material that appears in version 3.0, and any source code that appeared in versions 1.0 or 2.0 should be excluded from the claim."[32]

## C.    Deposit Copy for Computer Programs

The Copyright Act generally requires two complete copies of the best edition of published works to be deposited with the application, but authorizes the Register to permit the deposit of only one copy of a work or identifying material in certain circumstances.[33]  A "complete" copy of a published work "includes all elements comprising the applicable unit of publication of the work, including elements that, if considered separately, would not be copyrightable subject

---

[30] *Id.* § 721.8.
[31] *Id.*
[32] *Id.*
[33] 17 U.S.C. §§ 408(b)(2), (c).

matter."[34]  Applicants seeking to register computer programs need only deposit

"'one copy of identifying portions' for the specific version of the program that the

applicant intends to register."[35]  The Office defines "identifying portions" as the

first and last twenty-five pages of the source code for the version being registered

if the computer program is over fifty pages, or the entire source code if the

computer program is less than fifty pages.[36]  By regulation, it also permits

redactions for trade secret material as long as the deposit reveals an appreciable

amount of original computer code.[37]

### D.    Supplementary Registration

The Copyright Office recognizes that there may be a need for a registrant to

correct certain errors or provide additional information after the Office has issued a

registration.  It therefore permits registrants to file an application for a

supplementary registration to correct certain errors or amplify the information

---

[34] COMPENDIUM (THIRD) § 1509.1(F) (quoting 37 C.F.R. § 202.20(b)(2)(ii) (2017)). The deposit copy of the work must match the version being registered, and the version constitutes what has been fixed at a particular date.  *See* COMPENDIUM (THIRD) § 721.9(D) ("Each version of a program is considered complete when that version has been fixed in a tangible medium of expression for the first time. When a program is prepared over a period of time, the portion that has been fixed at any particular time constitutes the version that has been completed as of that date.").
[35] 37 C.F.R. § 202.20(c)(2)(vii)(A).
[36] *Id.* § 202.20(c)(2)(vii)(A)(1).
[37] *Id.* § 202.20(c)(2)(vii)(A)(2).

provided in the original registration (referred to as the "basic registration").[38]
Errors or omissions regarding the year of completion or date of publication are
included in the limited set of information that may be corrected through a
supplementary registration application.[39]  The Office will not, however, accept a
new or corrected deposit copy submitted through a supplementary registration
application.[40]

    If an application to correct or amplify the basic registration is approved, the
Office will prepare a certificate of supplementary registration that contains
pertinent information from the application, create a public record that identifies
and describes the changes or revisions that have been made to the registration, and
assign a separate registration number and EDR[41] to the supplementary

---

[38] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; COMPENDIUM (THIRD) § 1802.  The Office
may decline to issue a supplementary registration if it is aware that there is actual
or prospective litigation involving the basic registration (1) if the proposed change
would be directly at issue in the litigation, and (2) if the proposed amendment may
confuse or complicate the pending dispute.  COMPENDIUM (THIRD) § 1802.9(G).
[39] COMPENDIUM (THIRD) §§ 1802.6(G), (I); *see also id.* at § 1802.6(J).  A
supplementary registration may correct or amend information that appears on the
certificate of registration in the fields/spaces: "Author Created, Limitation of
Copyright Claim, Nature of Authorship, and/or Material Added to This Work."
[40] 37 C.F.R. § 202.6(d)(4)(ii); COMPENDIUM (THIRD) § 1802.7(D).
[41] The EDR for a supplementary registration "is the day on which an acceptable
application and filing fee" have been received in the Copyright Office.
COMPENDIUM (THIRD) § 1802.12.

registration.[42]  The Office will not cancel or replace the original registration or the public record of that registration, or change the information or EDR set forth therein.  Instead, the basic registration and the supplementary registration, including their respective EDRs, coexist in the public record because the "supplementary registration augments — but does not supersede — the information set forth in the basic registration."[43]  The *Compendium* explicitly defers to courts in determining whether changes in a supplementary registration should be deemed effective as of the original EDR:

> The Office maintains both [original and supplementary registration] records to allow courts to decide (i) whether the changes made by the supplementary registration are material, and (ii) whether those changes should or should not be deemed effective as of the date that the basic registration was made or the date that the supplementary registration was made.[44]

### E.    Factual Assertions in Registration Applications

Generally, the Office "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records."[45]  Applicants are required to submit a

---

[42] *Id.* § 1802.10.  The Office will also place a note in the public record for the supplementary registration that cross-references the registration number and the year of registration for the basic registration.  *Id.* § 1802.11.

[43] *Id.* § 1802; 17 U.S.C. § 408(d).

[44] COMPENDIUM (THIRD) § 1802.12.

[45] *Id.* § 602.4(C).

"declaration . . . that the information provided within the application is correct to the best of [the applicant's] knowledge."[46]

There may be instances during the application process, however, where further communication between the applicant and the Office is necessary to clarify information in the application.  It is not unusual for a registration specialist to correspond with an applicant about factual assertions if the assertions appear to conflict with other information in the application materials.[47]  Only if the Office determines that all the "legal and formal requirements" of title 17 have been met, does it issue and record a certificate of registration.[48]

## II.    Register's Response to the Court's Questions

Based on the foregoing statutory and regulatory standards and examining practices, the Register concludes that the Office would not have registered the Work if it had been aware that (1) the Work's first publication date and/or completion date were incorrect and/or (2) the deposit material consisted of a copy of code created after 2012, and not  the code as it existed on the date claimed in the application.

---

[46] 37 C.F.R. § 202.3(c)(3)(iii).
[47] COMPENDIUM (THIRD) § 603.2(C).
[48] 17 U.S.C. § 410(a); COMPENDIUM (THIRD) § 602.

<u>Questions 1 and 3</u>

Questions 1 and 3, respectively, ask whether the Register would have refused registration had the Office been aware that the deposited code was created in or after 2017 (Question 1) or published in or after 2017 (Question 3). Because the Office's analysis is the same with regard to the completion of the Work and the publication of the Work, both questions are answered below.

As explained above, an applicant seeking to register a published work must provide the date of first publication (month, day, and year) and year of completion for that specific work.[49] The *Compendium* explains that, for a program prepared over time, "the portion that has been fixed at any particular time constitutes the version that has been completed as of that date."[50] Any changes to the work after the completion date, even if those changes are not themselves copyrightable, result in a different completion date, as the result is a separate work.[51] Therefore, if the deposit Plaintiff provided was not a copy of the work as published or completed on the dates indicated on the application, the Office would have refused registration.

Before doing so, the Office would have corresponded with Plaintiff to request revisions to its application. At the time of application, the Office would

---

[49] 17 U.S.C. §§ 409(7)–(8); COMPENDIUM (THIRD) §§ 611, 612.1, 612.4; *see also* 37 C.F.R. § 202.3(b)(4)(ii) (2017).
[50] COMPENDIUM (THIRD) §721.9(D).
[51] 17 U.S.C. § 101.

16

have permitted Plaintiff to submit a different deposit copy that contained the version of the software that *was* completed and published on the dates indicated in the application.[52]  If Plaintiff declined to cure these defects, however, the Office would have refused to register the Work.

Question 2

Question 2 asks the Register whether the Office would have refused registration had it been aware that the deposit copy for the Registration represented the lines in use in 2021 rather than a copy of the code as it existed in 2012.  As explained above, the deposit must be a copy of the work claimed on the registration application.[53]  The Office therefore would have refused Plaintiff's original registration application if it had known that the deposit copy was the changed 2021 version of the Work, rather than the version published or completed on the dates indicated on the application.

If the Office had known about this inaccuracy when the original application was filed, however, it would have given Plaintiff an opportunity to cure.  To do so, Plaintiff would have been required to deposit a copy of the source code from the

---

[52] In that instance, the EDR for the registration would be the date the Office received the new acceptable deposit copy.  COMPENDIUM (THIRD) § 625.2.
[53] 17 U.S.C. §§ 408(b)(2), (c); 37 C.F.R. § 202.20(b)(2)(ii) (2017); *see* COMPENDIUM (THIRD) §§ 721.9(D), 1509.1(F).

17

2012 version of the Work.[54]  If Plaintiff declined to do so, the Office would have refused to register the Work.

Plaintiff cannot cure the defect in its claim now by filing a supplementary registration application, however.  As explained above, a supplementary registration may be used to correct an error or omission in a basic registration involving the year of completion, dates of publication, or claim limitations.  Errors in a deposit copy, however, cannot be cured via supplementary registration.[55]  To correct its claim, Plaintiff would need to submit a new application for a basic registration, along with a correct deposit copy.

The Office also understands that Plaintiff has represented that later versions of the Work did not add any copyrightable material.[56]  An application to register a derivative work must identify "preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."[57]  The Office will register, at most, "the new material or revised material that the author contributed to that work," but not any "unclaimable material that may appear in the program."[58]  Plaintiff therefore

---

[54] In that instance, the EDR for the registration would be the date the Office received the new acceptable deposit copy.  COMPENDIUM (THIRD) § 625.2.

[55] 37 C.F.R. § 202.6(d)(4)(ii); COMPENDIUM (THIRD) § 1802.7(D).

[56] Order at 19.

[57] 17 U.S.C. § 409(9).

[58] COMPENDIUM (THIRD) § 1509.1(F)(2).  The Copyright Office will register the new authorship the author contributed to a derivative work if it "contains a

cannot receive a registration for a later version of the Work in which all additions are "unclaimable."[59]

## CONCLUSION

After review of the available facts in this action and application of the relevant law, regulations, and Office practices, the Register hereby advises the Court that the Office would have refused registration if it had known that Plaintiff's application provided incorrect dates of first publication and/or completion of the Work, or that the deposit included material that was added or altered after the dates provided on the application.

However, Plaintiff may still correct the deficiencies in its application.  It may either file a supplementary registration application to correct the dates of first publication and completion, and disclose any unclaimable material that appears in

---

sufficient amount of original expression, meaning that the derivative work must be independently created and it must possess more than a modicum of creativity." *Id.* § 311.2 (citing *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 782 (2d Cir. 1994)).

[59] Unclaimable materials, including previously published material, that may appear in a work may not be registered. *Id.* § 721.8; *see also id.* § 311.2 (stating that "a registration for a derivative work does not cover any previously published material, previously registered material, or public domain material that appears in the derivative work"); *id.* at *Glossary* (defining "unclaimable material" for the purposes of copyright registration).  Applicants must identify appreciable amounts of unclaimable material and new authorship. *Id.* §§ 621.8(B), 621.8(C), 621.8(E), 721.8.

19

the deposit it already submitted; or, it may submit a new application for a basic

registration, along with a correct deposit copy.


Dated: October 13, 2023

Shira Perlmutter
Register of Copyrights and Director
of the U.S. Copyright Office
(202) 707-8350
sperlmutter@copyright.gov

20