# EXHIBIT 18

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| GEOSPATIAL TECHNOLOGY ASSOCIATES, LLC, | |
| Plaintiff, | Case No. 1:16-cv-346C |
| v. | Hon. Eric G. Bruggink |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| ASM RESEARCH, LLC, | |
| Third-Party Defendant. | |

## RESPONSE OF THE REGISTER OF COPYRIGHTS TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)

On November 23, 2022, pursuant to 17 U.S.C. § 411(b)(2), the Court requested advice from the Register of Copyrights ("Register") on several questions related to "whether inaccurate information, if known [at the time of copyright registration], would have caused the Register of Copyrights to refuse registration" of the computer software program claimed in registration number TX0008420604, titled "Methods for Object-Based Identification, Sorting and Ranking of Target Detection and Apparatuses Thereof" (the "Work").[1]  On March 22, 2023, the Court referred a supplemental question to the Register.[2]

---

[1] Order Referring Copyright Registration Questions at 1 ("Order"), ECF No. 332 (quoting 17 U.S.C. § 411(b)(2)).

[2] Order Referring Suppl. Copyright Registration Question ("Supplemental Order"), ECF No. 342.

The Register hereby responds that, based on the legal standards and examining practices set forth below, the U.S. Copyright Office ("Copyright Office" or "Office") would not have registered the Work if it had known that the application provided incorrect dates of first publication and/or completion, or that the deposit material included an "appreciable amount" of public domain material, previously published or previously registered material, or material owned by a third party that was not excluded in the application. To the extent the Office had known about these issues at the time of the application, it would have attempted to resolve the variances between the deposit material and the application. Further, as explained below, Geospatial Technology Associates, LLC ("Geospatial") cannot file a supplementary registration application to provide a different deposit. It could, however, do so to correct the dates of first publication and completion and exclude any unclaimable material that appears in the deposit.

## **BACKGROUND**

### I.     **Examination History**

A review of the Copyright Office's records reveals the following:

On July 15, 2017, the Office received an application to register the Work as a computer program. The application identified William Basener as the Work's sole author, and Geospatial as the copyright claimant via transfer by written agreement. It stated that the Work was completed in 2011 and first published in the United States on January 28, 2011. The deposit copy that accompanied the application was a thirty-five-page text file containing source code, which appears to be the entirety of the source code for the Work. The application did not exclude any preexisting material from the claim.

Based on the information provided in the application, the Office had no reason to question Geospatial's representations and accepted them as true and accurate. The Office

registered the claim on July 15, 2017, with an effective date of registration ("EDR")[3] of July 15, 2017, and assigned it registration number TX0008420604 (the "'604 Registration").

## II. The Court's Request

As the Office understands the dispute, plaintiff Geospatial owns the copyright in the Work, which is also known as the Ninja.pro software program.[4] Geospatial alleges, among other things, that the United States (the "Government") "infringed, and/or authorized and/or induced others to infringe" its copyright in the Work by "unauthorized copying, modification, distribution, and/or use of" the Work.[5] Specifically, Geospatial alleges that at least eight software packages or programs produced by Government employees or contractors and/or used by Government employees contain substantial portions of the Work.[6]

According to the Order, the parties disagree about the scope of the registration for the Work. The Government has argued that the '604 Registration covers only the 2015 version of Ninja.pro because Geospatial submitted code from that version of the software as the deposit with the copyright application, and does not extend to earlier versions of the Ninja.pro software.[7] Geospatial argues that its submission of the source code from the 2015 version of the program was in error and that the '604 Registration "should instead protect and include an earlier 2010 version of Ninja.pro."[8]

---

[3] The EDR is the date the Office received a completed application, correct deposit copy, and the proper filing fee. 17 U.S.C. § 410(d).

[4] Pl.'s Fourth Am. Compl. ¶ 6, ECF No. 120 (redacted public version).

[5] *Id.* ¶¶ 6, 11.

[6] *Id.* ¶ 35. The Register does not believe ASM Research, LLC, a third-party defendant in this case, has any relevance to the questions in the Court's Order.

[7] Order at 1.

[8] *Id.*

The Court asked for the Register's views regarding the following questions:[9]

1.      Would the Register of Copyrights have refused to register the application for the '604 Registration under any scenario or combination of the scenarios set forth below:

   a.      If the claimed software was not first published on January 21, 2011;[10]

   b.      If the claimed software was not completed in 2011;

   c.      If the claimed software is derived from undisclosed works, including prior published versions of the Applicant's own software;

   d.      If the Applicant claimed to have created and recorded in a tangible medium of expression one or more earlier versions of the claimed software, but could neither locate nor identi[f]y any tangible version of the earlier works;

   e.      If the source code submitted as the deposit copy was not the version for which the Applicant sought registration but a later version of the software that included material added after the asserted completion date;

   f.      If the source code submitted as the copyright deposit copy included material added after January 28, 2011;

   g.      If the source code submitted as the copyright deposit copy was altered to remove third party copyright notices;

   h.      If the source code submitted as the copyright deposit copy failed to identify additional authors?

   i.      If the source code submitted as the deposit copy included material that is unclaimable because it is a "work of the United States Government?"[11]

2.      If you answer question 1 in the affirmative, which scenario or combination of scenarios set forth in question 1 would have caused you to refuse to register the application?

---

[9] *Id.* at 1–2.

[10] For purposes of this response, the Register assumes that the Court's reference to January 21, 2011 is intended to refer to the date on which the Work was first published: January 28, 2011.

[11] Question 1(i) was added in the Court's Supplemental Order.  Supplemental Order at 1.

Because the Court's questions implicate a wide range of copyright issues, the Office sets forth below the portions of the Copyright Act,[12] Copyright Office's regulations, and *Compendium of U.S. Copyright Office Practices* on which the responses rely.

## ANALYSIS

## I.    Relevant Statutes, Regulations, and Agency Practice

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 409, and 410.  Regulations governing applications for registration are codified in title 37 of the Code of Federal Regulations at 37 C.F.R. § 202.1 to 202.24.  Further, the principles that govern how the Office examines registration applications are set out in the *Compendium of U.S. Copyright Office Practices, Third Edition* (the "*Compendium*"), an administrative manual that instructs agency staff regarding their statutory and regulatory duties and provides expert guidance to copyright applicants, practitioners, scholars, courts, and members of the general public regarding Office practices and related principles of law.  The Office publishes regular revisions of the *Compendium* to provide additional guidance where necessary and to reflect changes in the law or Office practices, which are provided for public comment prior to finalization.  Because Geospatial filed the application in July 2017, the governing principles the Office would have applied when evaluating the application are set forth in the version of the *Compendium* that was released in December 2014.[13]

---

[12] Title 17, U.S. Code.
[13] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2014) ("2014 COMPENDIUM (THIRD)"), https://www.copyright.gov/comp3/docs/compendium-12-22-14.pdf.

## A.    Completion Year and Publication Date

An application for copyright registration must include "the year in which creation of the work was completed."[14]  In defining when a work was "created," the Copyright Act states: "where a work is prepared over a period of time, the portion of [the work] that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work."[15]

The Office's regulations provide that the "year of creation" means "the latest year in which the creation of any copyrightable element was completed."[16]  When registering a derivative work, which is a work "based upon one or more preexisting works,"[17] the *Compendium* states that "the applicant must give the year that the derivative version was completed (not the year the original work was completed)."[18]  The *Compendium* instructs an applicant to "provide the year of completion for the specific version that is being registered."[19]

For published works, the Copyright Act also requires that applications include the date of first publication of the work.[20]  The statute defines publication as the "distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[21]  Likewise, "offering to distribute copies or phonorecords to a group of persons for purposes of

---

[14] 17 U.S.C. § 409(7).
[15] *Id.* § 101 (defining "created").
[16] 37 C.F.R. § 202.3(b)(4)(ii) (2017).
[17] 17 U.S.C. § 101 (definition of a "derivative work").  Derivative works are discussed further below.
[18] 2014 COMPENDIUM (THIRD) § 802.9(C).
[19] *Id.* § 611.3.
[20] 17 U.S.C. § 409(8).  The *Compendium* clarifies that this date should be the date that the work was first published with the authorization of the copyright owner.  2014 COMPENDIUM (THIRD) § 612.1, 612.4.
[21] 17 U.S.C. § 101 (defining "publication").

further distribution, public performance, or public display, constitutes publication."[22]  The
*Compendium* instructs applicants to provide the month, day, and year that copies of the work
were distributed for the first time or were first offered to a group of persons for further
distribution, public performance, or public display, if known.[23]

### B.  Author's Name

A registration application also must include "the name(s) of the author(s) who created the
copyrightable material that the applicant intends to register."[24]  The applicant is not required to
include the names of individuals whose contributions were "*de minimis* or uncopyrightable."[25]
Likewise, the applicant should not include "the name of any person who created material that is
not owned by the copyright claimant or material that the applicant does not intend to register."[26]

### C.  Deposit Copy for Computer Programs; Copyright Notice

The Copyright Act generally requires two complete copies of the best edition of
published works to be deposited with the application, but authorizes the Register to permit the
deposit of only one copy of a work or identifying material in certain circumstances.[27]  Applicants
seeking to register computer programs must deposit "one copy of identifying portions of the
program, reproduced in a form visually perceptible without the aid of a machine or device."[28]
The Office defines "identifying portions" as the first and last twenty-five pages of the source
code for the version being registered, or the complete source code if the computer program is

---

[22] *Id.*  To constitute publication, the offer must be made "by or with the authority of the copyright
owner" and copies of the work must exist at the time the offer is made.  2014 COMPENDIUM
(THIRD) § 1906, 1906.3.
[23] 2014 COMPENDIUM (THIRD) § 612.6(A), 612.7(E), 612.7(G).
[24] *Id.* § 613.3, 613.9; 17 U.S.C. § 409(2).
[25] 2014 COMPENDIUM (THIRD) § 613.3.
[26] *Id.* § 613.10(C).
[27] 17 U.S.C. § 408(b)(2), (c).
[28] 37 C.F.R. § 202.20(c)(2)(vii)(A) (2017).

less than fifty pages.[29]  A "complete" copy of the source code "includes all elements comprising the applicable unit of publication of the work."[30]

### D.  Registration of Multiple Versions of a Computer Program

The Copyright Act provides that "where [a] work has been prepared in different versions, each version constitutes a separate work."[31]  The *Compendium* explains that "[a]s a general rule, a registration covers an individual work, and an applicant should prepare a separate application, filing fee, and deposit for each work that is submitted for registration."[32]

The Copyright Office will register different versions of a computer program as derivative works provided that each version contains "new material" that is "original" and "contain[s] a sufficient amount of copyrightable authorship"[33] that "does not appear in the other versions."[34] An application to register a new version of a computer program should identify any unclaimable material, including the previously published version of the computer program, in the application and exclude it from the claim.[35]

For example, the *Compendium* addresses the situation where a software company seeks to register "version 3.0" of a computer program that contains an appreciable amount of code that

---

[29] *Id.*; 2014 COMPENDIUM (THIRD) § 1509.1(C)(3).
[30] 37 C.F.R. § 202.20(b)(2)(ii) (2017).
[31] 17 U.S.C. § 101 (defining "created").
[32] 2014 COMPENDIUM (THIRD) § 1101.  There are limited exceptions to this rule, including for registration of collective works, published works using the "unit of publication" option, and group registration for serials, newspapers, newsletters, contributions to periodicals, unpublished photographs, published photographs, databases, short online literary works, musical works published on the same album, and secure test items.  *See* 37 C.F.R. § 202.3(b)(5)–(10), 202.4 (2017); 2014 COMPENDIUM (THIRD) §§ 511, 512.2 n.2, 1101.
[33] 2014 COMPENDIUM (THIRD) § 721.8.
[34] *Id.* § 512.2.  Depending on which version is the "most complete" and when each version is published with respect to the other versions, the *Compendium* outlines specific application procedures.  *See id.* § 512.2(A)–(C).
[35] *Id.* § 721.8.

appeared in versions 1.0 and 2.0 of the same program, which were distributed to the public prior to the filing of the application.[36]   The *Compendium* states that version 3.0 would be considered a derivative computer program and an application to register version 3.0 "should be limited to the new material that appears in version 3.0, and any source code that appeared in versions 1.0 or 2.0 should be excluded from the claim."[37]

### E.   Identification and Exclusion of Unclaimable Material

A registration for a specific version of a computer program does not cover any "unclaimable material" that may appear in that version.  The *Compendium* defines "unclaimable material" as "[p]reviously published material," "[p]reviously registered material," "[m]aterial that is in the public domain," and "[c]opyrightable material that is owned by a third party."[38] The *Compendium* further provides that if a work "contains an appreciable amount of unclaimable material, the applicant should identify the unclaimable material that appears in that work and should exclude that material from the claim [by providing] . . . a brief, accurate description of the unclaimable material in the appropriate field/space of the application."[39]  The applicant must also identify the new material it intends to register.[40]

In certain circumstances, however, unclaimable material does not need to be excluded. Significantly, the requirement only applies when the preexisting material comprises "an appreciable portion of the work."[41]  The *Compendium* observes that "[i]f the applicant intends to

---

[36] *Id.*
[37] *Id.*
[38] *Id.* § 621.1; *see also id.* at *Glossary* (defining "unclaimable material" for the purposes of copyright registration).
[39] *Id.* § 621.1.  The Compendium provides detailed instructions and examples for identifying unclaimable material in the online application and paper application.  *Id.* § 621.8(B), 621.8(E).
[40] *Id.* § 621.1.  The Compendium provides detailed instructions and examples for identifying new authorship in the online application and paper application.  *Id.* § 621.8(C), 621.8(E).
[41] *Id.* § 621.2.

register a work that contains a minimal amount of unclaimable material, the applicant need not identify or disclaim that material in the application."[42]  Additionally, there is no need to exclude "material that is uncopyrightable, such as facts or mere ideas," or "quotations from a preexisting work."[43]

Thus, whether an application must exclude preexisting works is a fact-intensive question. It depends on whether the preexisting material was previously published or registered, in the public domain, or owned by a third party.  Without sufficient information about the preexisting work and the new work, the Office cannot evaluate whether the preexisting work comprises an "appreciable amount" of the new work, or whether the new material added is copyrightable in itself.

a.  *Previously Published Material*

Where an applicant registers a work with "an appreciable amount of material that was published at any time before the application is submitted," including material owned by the applicant or a third party, "the applicant should exclude that previously published material from the claim."[44]

b.  *Public Domain Works*

An applicant that seeks to register a work "that contains an appreciable amount of material that is in the public domain in the United States" must exclude that material from the claim.[45]  Because works of the Government are generally in the public domain, applicants seeking to register works that contain an appreciable amount of material authored by the

---

[42] *Id.* § 621.2; *see also id.* § 621.9(A)(1).
[43] *Id.* § 621.2.
[44] *Id.* § 621.4.
[45] *Id.* § 621.6, 621.8(B).

Government must generally exclude that material.[46]  The *Compendium* also notes that, "[i]n most cases, material that is in the public domain has been published before, and as such, should also be excluded from the claim as previously published material."[47]

> ### c.   Derivative Works

The statutory requirements for copyright registration dictate that an application to register a derivative work must include "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."[48]  Identifying the new or revised material the author has contributed to a work and any material that is not claimed "is essential to defining the claim that is being registered" and "ensures that the public record will be accurate."[49]  If the work is registered, the registration will cover "the new material or revised material that the author contributed to that work," but not "the unclaimable material that may appear in the program."[50] This means that a derivative work registration will not cover any previously published, previously registered, or public domain material.[51]

The Copyright Office will register the new authorship the author contributed to a derivative work if it "contains a sufficient amount of original expression, meaning that the derivative work must be independently created and it must possess more than a modicum of

---

[46] 17 U.S.C. § 105(a).  Exceptions to this rule involve certain civilian members of qualifying military institutions.  *See id.* § 105(b)–(c) (note that section 105(c) exists twice in title 17 and the intended citation is to the section (c) with the header reading "Definitions").
[47] 2014 COMPENDIUM (THIRD) § 621.6.
[48] 17 U.S.C. § 409(9).
[49] 2014 COMPENDIUM (THIRD) § 621.1.
[50] *Id.* § 1509.1(C)(2).
[51] *Id.* § 311.

creativity."[52]  The amount of creativity required for a derivative work is the same as that required

for a copyright in any other work.  "[T]he key inquiry is whether there is sufficient nontrivial

expressive variation in the derivative work to make it distinguishable from the [preexisting] work

in some meaningful way."[53]

### F.    Supplementary Registration

The Copyright Office recognizes that there may be a need for a registrant to correct

certain errors or provide additional information after the Office has issued a registration.  It

therefore permits registrants to file an application for a supplementary registration to correct

certain errors or amplify the information provided in a copyright registration.[54]  The availability

of a supplementary registration to correct errors is limited, however.  The current version of the

*Compendium*, which would apply to any application for supplementary registration filed now,

provides that a supplementary registration can be used to "correct or amend the information that

appears on the certificate of registration in the fields/spaces marked Author Created, Limitation

of Copyright Claim, Nature of Authorship, and/or Material Added to This Work," so long as the

authorship described in the application for supplementary registration is registrable.[55]  A

---

[52] *Id.* § 311.2 (citing *Waldman Publ'g Corp. v. Landoll, Inc.,* 43 F.3d 775, 782 (2d Cir. 1994)); *id.* § 311.1 (citing H.R. REP. NO. 94-1476, at 57 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 5670).

[53] *Id.* § 311.2 (citing *Schrock v. Learning Curve Int'l, Inc.,* 586 F.3d 513, 521 (7th Cir. 2009)).

[54] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 1802 (3d ed. 2021) ("2021 COMPENDIUM (THIRD)").  However, the Office may decline to issue a supplementary registration when it is aware that there is actual or prospective litigation involving a basic registration (1) if the proposed change would be directly at issue in the litigation, and (2) if the proposed amendment may confuse or complicate the pending dispute.  2021 COMPENDIUM (THIRD) § 1802.9(G).

[55] 2021 COMPENDIUM (THIRD) § 1802.6(J).  As with any registration application from which materials are excluded, if the supplementary registration application excluded certain materials, those materials would no longer be covered by the registration and would have to be registered separately.  *See* 2014 COMPENDIUM (THIRD) § 621.1.

supplementary registration cannot be used "to correct an error in the deposit copy(ies) that were submitted with the application for basic registration."[56]

    If an application for supplementary registration to correct or amplify the registration record is approved, the Copyright Office prepares a certificate of supplementary registration that contains pertinent information from the application, creates a public record that identifies and describes the changes or revisions that have been made, and assigns a separate registration number and EDR[57] to the supplementary registration.[58] The Office will not cancel or replace the original registration or the public record of that registration, or change the information or EDR set forth therein. Instead, the original registration and the supplementary registration, including the EDRs for each, coexist with each other in the public record because the "supplementary registration augments — but does not supersede — the information" submitted in the original registration.[59] The *Compendium* explicitly defers to a court to determine whether the changes in the supplementary registration should be deemed effective as of the original EDR, or the EDR for the supplementary registration, providing the following guidance:

> The Office maintains both records to allow courts to decide (i) whether the changes made by the supplementary registration are material, and (ii) whether those changes should or should not be deemed effective as of the date that the basic registration was made or the date that the supplementary registration was made.[60]

---

[56] 2021 COMPENDIUM (THIRD) § 1802.7(D) (citing 37 C.F.R. § 202.6(d)(4)(ii)).

[57] The EDR for the supplementary registration "is the day on which an acceptable application and filing fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for supplementary registration, have all been received in the Copyright Office." *Id.* § 1802.12.

[58] *Id.* § 1802.10. The Office will also place a note in the public record for the supplementary registration that cross-references the registration number and the year of registration for the basic registration. *Id.* § 1802.11.

[59] *Id.* § 1802; 17 U.S.C. § 408(d).

[60] 2021 COMPENDIUM (THIRD) § 1802.12.

13

## II.  Register's Response to the Court's Request

Based on the foregoing statutory standards, regulatory standards, and examining practices of the Office, the Register concludes that the Office would not have registered the Work if it had been aware that (1) the Work's first publication date and/or completion date were incorrect, or (2) that the deposit material included an appreciable amount of unclaimable material that the Plaintiff did not exclude in the application.  Because much of the record in this case is sealed, the Register is unable to apply the law to the facts of this case in many respects.  The following discussion aims to provide a legal framework that will aid the Court in doing so.

Questions 1.a and 1.b

Would the Register have refused to register the Work "[i]f the claimed software was not first published on January 21, 2011" or "was not completed in 2011?"[61]

As explained above, an applicant seeking to register a published work must provide the date of first publication (month, day, and year) and year of completion for the version of the work that it includes as a deposit.[62]  If the deposit copy Geospatial provided for the '604 Registration was not first published or completed on the dates indicated in the application, the Office would have refused registration.

Before doing so, however, the Office would have corresponded with Geospatial to request revisions to the application.[63]  If Geospatial provided the correct years of completion and dates of first publication for the submitted version of the software, the problems with the

---

[61] *See* Order at 1.
[62] 17 U.S.C. § 409(7)–(8); 2014 COMPENDIUM (THIRD) §§ 611, 612.1, 612.4; *see also* 37 C.F.R. § 202.3(b)(4)(ii) (2017).
[63] 2014 COMPENDIUM (THIRD) §§ 603.2(C), 721.9(D)–(E) (stating that registration specialist will communicate with applicant if there is inconsistency between dates provided on application and dates in deposit).

publication date and completion year could have been cured.  Alternately, the Office would have permitted Geospatial to submit a different deposit copy that contained the version of the software that *was* completed and published on the dates indicated in the application (if such a version existed).[64]  If Geospatial declined to cure these defects, however, the Office would have refused its application to register the Work.

Question 1.c

Would the Register have refused to register the Work "[i]f the claimed software is derived from undisclosed works, including prior published versions of the Applicant's own software?"[65]

The Office would not have registered the Work if it had been aware that Geospatial failed to exclude from its claim public domain material, previously published or previously registered material, or copyrightable material owned by a third party, if that material constituted an appreciable portion of the work.[66]  An application to register a derivative work must generally identify and exclude "any preexisting work or works that it is based on or incorporates," and should include "a brief, general statement of the additional material covered by the copyright claim being registered."[67]

The factual record available to the Register is insufficient to make three important determinations.  First, answering Question 1.c requires a determination as to whether the Work includes material from preexisting works that is "unclaimable material."  If preexisting material that was previously published or previously registered, was in the public domain, or was owned

---

[64] In that instance, the EDR for the registration would be the date the Office received the new acceptable deposit copy.  *Id.* § 625.2.

[65] Order at 2.

[66] 2014 COMPENDIUM (THIRD) §§ 621.1, 721.8.

[67] 17 U.S.C. § 409(9); 2014 COMPENDIUM (THIRD) § 621.1.

by a third party was included in the Work, including material that consisted of prior versions of the Ninja.pro software, that material would be "unclaimable material."[68]

Second, answering Question 1.c requires a determination as to whether any such unclaimable material constitutes "an appreciable portion" of the Work. If the unclaimable material constitutes an "appreciable portion" of the Work, and is not uncopyrightable, the Office would have refused to register the Work unless Geospatial excluded the unclaimable material in the application. and provided a brief explanation of the material Basener had added.[69]

Third, Question 1.c depends on whether the new material authored by Basener was copyrightable. When excluding unclaimable material, the applicant must provide a brief explanation of the material the author added.[70] This allows the Office to consider whether the new material added contains a sufficient amount of copyrightable authorship to be registrable. If the new material Basener authored contains a sufficient amount of copyrightable authorship, the Office would have granted a registration, which would have covered only the material authored by Basener.[71]

The Court did not provide information in the Order regarding the content of the "undisclosed works" from which the Work may have been derived, except that such works might include previous versions of Geospatial's software. The Register was unable to obtain relevant information from the parties' filings relating to the Government's motion pursuant to § 411(b)(2) because all those filings are sealed. The Register therefore cannot determine based on the available facts if the undisclosed works constituted "unclaimable material," what amount of the

---

[68] 2014 COMPENDIUM (THIRD) §§ 621.1, 721.8.
[69] 17 U.S.C. § 409(9); 2014 COMPENDIUM (THIRD) § 621.1.
[70] 2014 COMPENDIUM (THIRD) §§ 621.1, 721.8.
[71] *Id.* § 1509.1(C)(2).

source code in the deposit constitutes unclaimable material, and whether the material Basener added demonstrated a sufficient amount of copyrightable authorship to be registrable.

Question 1.d

Would the Register have refused to register the Work "[i]f the Applicant claimed to have created and recorded in a tangible medium of expression one or more earlier versions of the claimed software, but could neither locate nor identi[f]y any tangible version of the earlier works?"[72]

An applicant is not required to locate or provide the Office with a copy of any preexisting works. It must only provide "a brief, accurate description of the unclaimable material in the appropriate field/space of the application."[73] Thus, Geospatial's inability to locate or provide the Office with a copy of any preexisting works would not have been a basis for refusing registration.

Questions 1.e and 1.f

Would the Register have refused to register the Work "[i]f the source code submitted as the deposit copy was not the version for which the Applicant sought registration but a later version of the software that included material added after the asserted completion date" or "[i]f the source code submitted as the copyright deposit copy included material added after January 28, 2011?"[74]

If the deposit copy provided for the '604 Registration was the 2015 version of the Work and not the version published or completed on the date indicated on the application (January 28,

---

[72] Order at 1–2.
[73] 2014 COMPENDIUM (THIRD) § 621.1.
[74] Order at 2.

2011), or if the Work included material that was added after January 28, 2011, the Office would have refused the registration.

Again, however, if the Office had known about these inaccuracies when the application was filed, the Office would have given Geospatial an opportunity to cure.[75] Geospatial could have done so either by depositing source code from the version of the Work that was completed and published on the date indicated in the application, or by conforming the information on the application with the deposit submitted.[76] If Geospatial declined to comply with either of these options to cure the defect in the claim, the Office would have refused to register the Work.

Question 1.g

Would the Office have refused to register the Work "[i]f the source code submitted as the copyright deposit copy was altered to remove third party copyright notices?"[77]

If the Work contained third-party copyright notices when it was published, the Office would have refused to register the Work if Geospatial removed those copyright notices from the deposit it submitted to the Office.[78]

The *Compendium* does not explicitly address the removal of third-party copyright notices in deposit materials.[79] It is clear, however, that where the source code for a computer program is less than fifty pages, like the Work, the deposit must include a complete copy of "the entire

---

[75] 2014 COMPENDIUM (THIRD) §§ 603.2(C), 721.9(D)–(E).

[76] In that instance, the EDR for the registration would be the date the Office received the new acceptable deposit copy. *Id.* § 625.2.

[77] Order at 2.

[78] If, alternatively, Geospatial removed the third-party copyright notices as part of the process of creating the Work, rather than for the purpose of creating a deposit copy, the deposit without the third-party copyright notices would have been an accurate representation of the complete Work Geospatial sought to register.

[79] In some circumstances, the intentional removal or alteration of a copyright notice without legal authority or permission of the copyright owner can constitute a violation of the Digital Millennium Copyright Act. 17 U.S.C. § 1202(b)(1).

source code" being registered.[80]  A "complete" copy of a published work "includes all elements

comprising the applicable unit of publication of the work."[81]  Thus, if the Work included the

third-party copyright notices when it was published, the Office would have refused to register the

Work if the copyright deposit did not include the third-party notices as a part of the "entire

source code."  Additionally, the removal of a third-party copyright notice could suggest

intentional concealment of the fact that some of the material was owned by a third party and

should have been excluded from the claim.

Question 1.h

Would the Office have refused to register the Work "[i]f the source code submitted as the

copyright deposit copy failed to identify additional authors"?[82]

The Office would not have refused registration on this basis.  A deposit copy is not

required to include the identity of all of the authors of the work.[83]

Question 1.i

Would the Register have refused to register the Work "[i]f the source code submitted as

the deposit copy included material that is unclaimable because it is a 'work of the United States

Government?'"[84]

---

[80] 37 C.F.R. § 202.20(c)(2)(vii)(A)(1) (2017); *see also* 17 U.S.C. § 408(b)(2), (c); 2014
COMPENDIUM (THIRD) § 1509.1(C)(1).
[81] 37 C.F.R. § 202.20(b)(2)(ii) (2017).
[82] Order at 2.
[83] The Office might have refused to register the work if Geospatial failed to identify third-party
authors in the application.  Applicants must identify on the application all authors of
copyrightable material they intend to register.  17 U.S.C. § 409(2); 2014 COMPENDIUM (THIRD)
§ 613.3, 613.9.  If the unidentified authors added more than *de minimis* or uncopyrightable
contributions to the Work and Geospatial intended to register the portions of the Work authored
by those third parties, the Office would have refused to register the Work if Geospatial had not
identified those third parties as authors on the application.
[84] Supplemental Order at 1.

Works of the Government are generally in the public domain.[85]  As discussed above, an application to register a derivative work must generally identify and exclude public domain material and should include "a brief, general statement of the additional material covered by the copyright claim being registered."[86]  If the Office had been aware that Geospatial did not exclude work authored by the Government, it would have first analyzed whether that material constituted "an appreciable portion" of the Work.[87]

If the material authored by the Government was not an "appreciable portion" of the Work, or consisted solely of uncopyrightable material (such as facts or ideas), Geospatial was not required to exclude the uncopyrightable material on the application and there would be no basis to refuse registration on this ground.[88]  If, however, the material authored by the Government constituted an "appreciable portion" of the Work and is not uncopyrightable, the Office would not have registered the Work unless Geospatial excluded the material in the application.

The Office also would have analyzed whether the material Basener added contained a sufficient amount of copyrightable authorship to be independently copyrightable.  As explained above, the Office would not have registered the Work unless the new material contained a sufficient amount of copyrightable authorship to be registrable.[89]

Supplementary Registration Application

A supplementary registration application could amend the existing registration to provide the correct dates of first publication and completion for the 2015 version of the program that was

---

[85] 17 U.S.C. § 105.
[86] 17 U.S.C. § 409(9); 2014 COMPENDIUM (THIRD) § 621.1.
[87] 2014 COMPENDIUM (THIRD) § 721.8.
[88] Id. § 621.2, 621.9(A)(1).
[89] Id. § 721.8.

included in the deposit, and to exclude any unclaimable material from the claim.[90]  Geospatial

could not use a supplementary registration, however, to substitute a different deposit.[91]  This

means that Geospatial may not submit the source code from an earlier version of the Ninja.pro

software to the Office in connection with this application.  The remaining information in any

supplementary application must correspond to the material that was submitted as the deposit

when the basic application was filed.

      If Geospatial were to file an application for a supplementary registration while this case

was pending, the Copyright Office would follow its usual practice of declining to consider a

supplementary registration until resolution of the litigation unless the Court advised it that the

application could proceed during the pendency of the litigation.[92]

      If the Court allowed Geospatial to file a supplementary registration application and it was

accepted by the Office, the supplementary registration would be assigned a new EDR.  It would

then be within the Court's discretion to determine whether the errors in the original registration

were material, and whether the amended registration should be "deemed effective as of the date

that the [original] registration was made or the date that the supplementary registration was

made."[93]  The Court may, based on its assessment of the significance of the errors, deem the

---

[90] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; 2021 COMPENDIUM (THIRD) § 1802.  Again, without additional information about the underlying facts, the Register cannot make a determination as to which, if any, errors Geospatial may have made.

[91] 2021 COMPENDIUM (THIRD) § 1802.7(D) (The "Office will not issue a supplementary registration to correct an error in the deposit copy(ies) that were submitted with the application for basic registration."); *see* 37 C.F.R. § 202.6(d)(4)(ii).

[92] *See* 2021 COMPENDIUM (THIRD) § 1802.9(G) (noting that the Office may decline to issue a supplementary registration if it is "aware that there is actual or prospective litigation" involving an original registration).

[93] *Id.* § 1802.12.

changes effective as of the original EDR, rather than the EDR of any supplementary registration.[94]

## **CONCLUSION**

Based on review of the relevant law, regulations, and the Copyright Office's practices, the Register hereby advises the Court that the Office would not have registered the Work if it had known that the deposit included material added after the asserted date of first publication or completion date, or that the deposit included undisclosed previously published, public domain, or other unclaimable material if that material constituted an "appreciable portion" of the Work. Geospatial could file a supplementary registration application to correct the publication date and date of creation and/or to exclude any unclaimable material that appears in the source code for 2015 version of the program, which it submitted as the deposit when it filed its original application. A supplemental registration could not be used, however, to submit a new deposit.

Dated: May 23, 2023

_Shira Perlmutter_

Shira Perlmutter
Register of Copyrights and Director of the
U.S. Copyright Office
(202) 707-8350
sperlmutter@copyright.gov

---

[94] _Id._

22