Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipounselors.com
Grace Rawlins
grawlins@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Tel: 212-292-5390
Fax: 212-292-5391
*Attorneys for Plaintiff*
*Beverly Hills Teddy Bear Company*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY HILLS TEDDY BEAR COMPANY<br>*Plaintiff*<br><br>v.<br><br>BEST BRANDS CONSUMER PRODUCTS, INC.; AND BEST BRANDS SALES COMPANY, LLC<br>*Defendants* | **CIVIL ACTION NO. 19-cv-3766-AS**<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING COPYRIGHT INVALIDITY INCLUDING A REQUEST FOR A REFERRAL TO THE REGISTER OF COPYRIGHTS** |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 1

II.   ABBREVIATED STATEMENT OF RELEVANT FACTS & PROCEDURAL
      HISTORY ........................................................................................... 2

III.  ARGUMENT ....................................................................................... 4

      A.    SUMMARY JUDGMENT STANDARD ............................................ 4

      B.    DEFENDANTS' MSJ IS PROCEDURALLY IMPROPER ................. 4

      C.    DEFENDANTS HAVE NOT ESTABLISHED THAT A REFERRAL TO
            THE U.S. COPYRIGHT OFFICE IS WARRANTED .......................... 5

            1.    *Legal Standard for Requests for Referral to U.S. Copyright Office* .......... 5

            2.    *Defendants Have Failed to Identify Any Inaccuracies in the
                  Publication Dates for the Squeezamals Applications* ................................ 7

                  i.    The December 17, 2021 Publication Date Set Forth In the
                        Squeezamals Registrations Is Accurate ........................................ 7

                  ii.   The February 27, 2018 Publication Date In the
                        Squeezamals Unicorn Application Is Correct .............................. 11

                  iii.  The Record Is Largely the Same As When Judge Woods
                        Denied the First Referral Motion ................................................. 11

            3.    *Defendants Have Otherwise Failed to Identify Any Inaccuracy in
                  the Squeezamals Unicorn Application* ...................................... 12

            4.    *If There Were Any Inaccuracies, Such Inaccuracies Were Not
                  Known* ................................................................................................. 15

            5.    *Any Technical Inaccuracies Would Not Invalidate the Squeezamals
                  Registrations* ..................................................................................... 17

      D.    PLAINTIFF'S SQUEEZAMALS REGISTRATIONS SHOULD NOT BE
            INVALIDATED .................................................................................. 19

      E.    DEFENDANTS HAVE FAILED TO REBUT THE PRESUMPTION OF
            VALIDITY, LET ALONE ESTABLISH THAT IT SHOULD BE
            "VITIATED" ..................................................................................... 20

IV.   CONCLUSION ................................................................................... 22

## **TABLE OF AUTHORITIES**

**Cases**

*Archie MD, Inc. v. Elsevier, Inc.*, 261 F. Supp. 3d 512 (S.D.N.Y. Aug. 20, 2017)...................... 19

*Classic Concepts, Inc. v. Linen Source, Inc.*, Nos. 04-8088 GPS (MANx), 04-8457 GPS (MANx), 2006 U.S. Dist. LEXIS 96767 (C.D. Cal. Apr. 26, 2006) ......................... 11, 12

*Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15-cv-00666-JZ, 2018 U.S. Dist. LEXIS 55557 (N.D. Ohio, Mar. 30, 2018) ............................................... 16

*Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*, No. 1:11-cv-10561-TLL-CEB, 2012 U.S. Dist. LEXIS 149539 (E.D. Mich. Oct. 15, 2012) ........................................... 16

*eScholar, LLC v. Otis Educ. Sys.*, No. 7:04-cv-04051-SCR,  2005 U.S. Dist. LEXIS 40727 (S.D.N.Y. Nov. 3, 2005) ...................................................................... 24

*Frank Betz Assocs. v. J.O. Clark Constr., L.L.C.*, No. 3:08-cv-159, 2010 U.S. Dist. LEXIS 53437, 2010 WL 2253541 (M.D. Tenn. May 30, 2010) ..................................... 15

*Frye v. Lagerstrom*, No. 15 Civ. 5348 (NRB), 2019 U.S. Dist. LEXIS 221585 (S.D.N.Y. Dec. 23, 2019)................................................................................................. 7

*Gaffney v. Muhammad Ali Enter. LLC*, No. 20 Civ. 7113 (GBD)(OTW), 2022 U.S. Dist. LEXIS 161663 (S.D.N.Y. Sept. 7, 2022)................................................... 17, 19

*Gaste v. Kaiserman*, 863 F.2d 1061 (2d Cir. 1988)................................................................ 25

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, No. LA CV16-00339 JAK (FFM), 2023 U.S. Dist. LEXIS 62711 (C.D. Cal. Mar. 17, 2023) ................................... 4

*LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583 (D. Conn. July 25, 2019)........ 15

*Lennar Homes of Tex. Sales & Mktg. v. Perry Homes, LLC*, 117 F. Supp. 3d 913 (S.D. Tx. July 24, 2015) ...................................................................................................... 16

*Lieb v. Korangy Publ'g, Inc.*, No. CV 15-0040 (AYS), 2022 U.S. Dist. LEXIS 69510 (E.D.N.Y. April 14, 2022) ............................................................................................ 7

*Mambu Bayoh v. Afropunk Fest 2015 LLC*, No. 18cv5820 (DLC), 2020 U.S. Dist. LEXIS 9045 (S.D.N.Y. Jan. 15, 2020)................................................................... 5, 7

*Op Art v. B.I.G. Wholesalers*, 2006 U.S. Dist. LEXIS 116199 (N.D. Tex., July 20 2006).......... 25

*Palmer Kane, LLC v. Gareth Stevens Publishing*, No. 15-cv-7404 2016, U.S. Dist. LEXIS 147336 (S.D.N.Y. May 27, 2016) ........................................................................ 7

*Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347 (S.D.N.Y. 2016).............. 6, 7

*Robert L. Stark Enters. v. Neptune Design Grp., LLC*, No. 1:16 CV 264, 2017 U.S. Dist. LEXIS 55951, 2017 WL 1345195 (N.D. Ohio Apr. 12, 2017) ......................................... 16

*Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980 (S.D.N.Y. 1980).................................. 5

*Silberman v. Innovation Luggage, Inc.*, 01 Civ. 7109 (GEL), 2003 U.S. Dist. LEXIS 5420 (S.D.N.Y. Mar. 31, 2003) ............................................................................... 4

*Stern v. Lavender*, 319 F. Supp. 3d 650 (S.D.N.Y. 2018) ............................................ 24

*Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408 (S.D.N.Y. 1999) ............................ 24

*Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941 (2022) ..................... 17, 18, 19

*Unicolors, Inc. v. H&M Hennes & Mauritz, Ltd. P'ship*, 52 F.4th 1054 (9th Cir. 2022).............. 5

*Yurman Design, Inc. v. Chaindom Enters.*, No. 99 Civ. 9307 (JFK), 2002 U.S. Dist. LEXIS 18329, 2002 WL 31358991 (S.D.N.Y. Sept. 30, 2002) ....................................... 15

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) ..................................... 7

**Statutes**

17 U.S.C. § 101 ............................................................................................................. 8, 14

17 U.S.C. § 410(c) ............................................................................................................. 7

17 U.S.C. § 411(b) ............................................................................................................. 6

**Other Authorities**

Compendium (Third) § 1906.3 (3d. Ed. 2017) ................................................................. 8

Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2), *Fashion Avenue Sweater Knits, LLC v. Poof Apparel Corp., et al.*, Civil Action No. 2:19-cv-06302-CJC-JEM, Docket No. 129-1, p. 6 (C.D. Cal. Feb. 5, 2021), *available at* https://www.copyright.gov/rulings-filings/411/fashion-avenue-sweater-knits-llc-v-poof-apparel-corp.pdf ................................................................. 9

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................... 4

Fed. R. Civ. P. 56(f)(1) ..................................................................................................... 8

**Treatises**

2 Nimmer on Copyright § 7.20[B][1] (2023) ................................................................. 16

2 Nimmer on Copyright § 7.20[d] ..................................................................................... 5

Plaintiff,[1] through its counsel, respectfully submits this Memorandum of Law in Opposition to Defendants' MSJ.

## I.    <u>INTRODUCTION</u>

In yet another obvious attempt to distract and mislead this Court from Defendants' own malfeasance, Defendants' MSJ—improperly styled as a motion for summary judgment rather than a simple motion for a referral to the U.S. Copyright Office—is replete with utterly irrelevant, extraneous facts, innuendo, and flagrant accusations, including unsupported allegations of "concealment" (with an iteration of the word "conceal" used five times in the first paragraph of Defendants' introduction alone). Despite the fact that the initial discovery period ended nearly four years ago, now, after a trial has finally been scheduled, Defendants are deliberately seeking to delay this action even further, thereby needlessly racking up legal expenses, by alleging inaccuracies in Plaintiff's Squeezamals Registrations when there are none. In fact, the facts on which Defendants rely are largely the same as those Defendants had in their possession when Defendants filed their First Referral Motion (as defined *infra*), which was denied by Judge Woods. Defendants' intentional delay tactic is evidenced by Defendants' explicit request that "trial be deferred until the Copyright Office's ruling" (Defendants' MSJ, p. 14). Deplorably, Defendants' bad faith actions are the epitome of why courts have urged caution in invoking the referral process under 17 U.S.C. § 411(b)(2), on which Defendants rely. Nonetheless, since it is plain that Defendants have woefully failed to establish any inaccuracies in Plaintiff's Squeezamals Applications and Squeezamals Registrations, let alone ***knowing*** inaccuracies, any referral to the U.S. Copyright Office is unequivocally unwarranted. Further, the remainder of Defendants' MSJ

---

[1] All capitalized terms referenced, but not defined herein, shall be given the definitions set forth in Plaintiff's Counterstatement ("Plaintiff's SMUF") to Defendants' Rule 56.1 Statement of Material Undisputed Facts (*Dkt. No. 293*) ("Defendants' SMUF"), filed simultaneously herewith.

is entirely baseless, if not frivolous, and as such, it should be denied outright, as further delineated herein. As Defendants have brought up *ad nauseum*, Plaintiff has already been required to pay for its discovery violations, none of which were committed with mal intent, and now it is time for Defendants to be forced to pay for their own intentional, infringing conduct, and this case should proceed to trial, without any further undue delay.

## II.    ABBREVIATED STATEMENT OF RELEVANT FACTS & PROCEDURAL HISTORY

In 2017, in anticipation of launching a new line of products, Plaintiff hosted a design contest through www.99designs.com, a third-party platform that primarily connects creative designers with businesses. *See Declaration of Kerry Brownlee*, *Dkt. No. 270*, Exs. A.-D (*Dkt. Nos. 270-1 to 270-4*). Mr. Benson Tjio won said contest, and thereafter, Plaintiff worked with Mr. Tjio to create two-dimensional artwork that was then used as the basis for Plaintiff's line of slow rise foam stuffed toys, which was offered for sale under the Squeezamals brand name (the "Squeezamals Products"). *See, e.g., id.* at ¶ 3, Ex. A, BHTBC0000086-87. The majority of characters from the first series of the Squeezamals Products were shipped to Target in or about December 27, 2017, and launched in store in Target in January 2018. Plaintiff's SMUF, ¶¶ 48, 51. Certain other series one characters, such as the unicorn, launched later. Plaintiff's SMUF, ¶ 49. In or about July 2018, Plaintiff applied to register the twelve (12) sculptural works at issue here (the "Squeezamals Applications" and "Squeezamals Works", respectively), and thereafter, the U.S. Copyright Office issued copyright registrations covering the same (the "Squeezamals Registrations"). Plaintiff's SMUF, ¶¶ 46-47.

In April 2019, Plaintiff sued Best Brands for copyright infringement, arising from their production and sale of their "Fuzzy Squishy" line of toys that Plaintiff alleges are nearly identical, or at the very least, substantially similar to its Squeezamals Works (collectively, the "Alleged

Infringing Products"). *Dkt. No. 1*. A comparison of some of the Alleged Infringing Products—products that, per the deposition testimony of Defendants' CEO, were sourced in the fall of 2018, and in store in 2019 (i.e., well after the Squeezamals Works were designed, and launched)—to some of the Squeezamals Works that appears in the operative Third Amended Complaint (*Dkt. No. 117*) appears below:



| **Squeezamals Works** | **Alleged Infringing Products** |
|---|---|

After discovery closed on February 29, 2020, Best Brands asked the Court for a referral to the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2) (*Dkt. No. 55*) (the "First Referral Motion"), which Judge Woods denied in a Memorandum Opinion and Order dated June 4, 2020 (*Dkt. No. 68*) (the "6/4 Order"). After the issue of a third-party, GennComm, LLC came to light in July 2020, in a Memorandum Opinion & Order dated December 11, 2020 (*Dkt. No. 124*), the Court reopened fact discovery for the limited purpose of remedying Plaintiff's failure to comply with certain of its discovery obligations. After years of protracted litigation, the supplemental, limited discovery period closed on July 12, 2023 (*Dkt. No. 252*). Defendants then did not bring

Defendants' MSJ, which seeks yet another referral to the U.S. Copyright Office, until December 18, 2023.

## III.     ARGUMENT

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The Court 'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Silberman v. Innovation Luggage, Inc.*, 01 Civ. 7109 (GEL), 2003 U.S. Dist. LEXIS 5420, at *17 (S.D.N.Y. Mar. 31, 2003) (citation omitted).

### B.  DEFENDANTS' MSJ IS PROCEDURALLY IMPROPER

As a threshold matter, Defendants' MSJ is procedurally improper and should be denied on that basis. As Plaintiff's counsel intimated at the hearing before the Court on November 28, 2023, "Section 411(b)(2) does not allow a court to find that a certificate of copyright registration is invalid on the basis of inaccuracy without first making a referral to the Copyright Office."[2] *Mambu*

---

[2] Defendants misapprehend Plaintiff's counsel's statements by suggesting that BHTBC indicated that invalidation on summary judgment was not within this Court's authority (Opposition, p. 14). Plaintiff did not make such an argument, but instead, correctly stated that prior to invalidating a copyright, this Court would be required to make a referral to the U.S. Copyright Office, and as such, summary judgment on the issue of any purported invalidity is entirely premature. This is supported by *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, No. LA CV16-00339 JAK (FFM), 2023 U.S. Dist. LEXIS 62711 (C.D. Cal. Mar. 17, 2023), which Defendants cited, wherein the ruling on the motions for summary judgment had to be deferred until after an inquiry was made to the Register of Copyrights). The remainder of the cases cited by Defendants do not prove their point (Opposition, p. 14). *See Unicolors, Inc. v. H&M Hennes & Mauritz, Ltd. P'ship*, 52 F.4th 1054 (9th Cir. 2022) (did not involve a motion for summary judgment; Court found copyrights valid on remand); and *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980 (S.D.N.Y. 1980) (prior to the enactment of the mandatory referral process). To be clear, only after a referral, could the Court find that a copyright may not be entitled to protection, but it does not have the power to cancel a registration. 2 Nimmer on Copyright § 7.20[d] ("To be sure, [courts] may invalidate the underlying copyright protection. . . . But the judicial branch has no authority to order an instrumentality of the legislative branch (not a party to the litigation) to undertake the affirmative action of canceling a copyright certificate.").

*Bayoh v. Afropunk Fest 2015 LLC*, No. 18cv5820 (DLC), 2020 U.S. Dist. LEXIS 9045, at *11 (S.D.N.Y. Jan. 15, 2020). Consequently, Defendants cannot ask this Court to invalidate Plaintiff's copyright registrations without first satisfying the preconditions of 17 U.S.C. § 411(b)(1) (as discussed *infra*). Thus, any motion for summary judgment on the grounds of invalidity is wholly premature. Instead, Defendants should have simply moved for a renewed, straightforward motion for a referral to the U.S. Copyright Office, which they could have done long ago rather than waiting until trial has been scheduled as an obvious, improper delay tactic.[3] Moreover, under Your Honor's Individual Practices in Civil Cases, and specifically, Rule I (iii), "[p]arties may not file more than one motion for summary judgment absent prior Court approval." During the conference on November 28, 2023, Your Honor indicated that Defendants could proceed with their motion for a referral, but did not approve any second motion for summary judgment. *See Dkt. No. 283* (referring to briefing on the referral motion). Nonetheless, Defendants' MSJ is substantively flawed, as further detailed herein.

### C. DEFENDANTS HAVE NOT ESTABLISHED THAT A REFERRAL TO THE U.S. COPYRIGHT OFFICE IS WARRANTED

#### 1. *Legal Standard for Requests for Referral to U.S. Copyright Office*

Pursuant to 17 U.S.C. § 411(b), a certificate of registration is sufficient to support an infringement action, ***regardless of whether such a certificate contains any inaccurate information, <u>except when</u>***: 1) "the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate"; and 2) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration". 17

---

[3] Notably, after the close of the initial discovery period, prior to filing the First Referral Motion, in a letter to the Court in anticipation of filing a motion for summary judgment, Defendants previously conceded as such by stating "as a necessary step before filing that motion [for summary judgment], Defendants request a referral to the Copyright Office" (*Dkt. No. 47*).

U.S.C. § 411(b)(1)(A)-(B). The foregoing provision of the Copyright Act goes on to provide the Court with a mechanism by which it is to request "the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration". 17 U.S.C. § 411(b)(2). Courts have urged caution in invoking the foregoing mechanism, given, as is the case here, that "the referral procedure is vulnerable to abuse", and can be used as a delay tactic. *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016).

In light of the potential for abuse of the above-referenced referral mechanism, prior to making a referral to the U.S. Copyright Office, courts within the Second Circuit have required a movant to demonstrate that: 1) an application for registration contained inaccurate information; and 2) the registrant knowingly included such information.[4] *Palmer/Kane LLC*, 188 F. Supp. 3d at 349; *see also Palmer Kane, LLC v. Gareth Stevens Publishing*, No. 15-cv-7404 2016, U.S. Dist. LEXIS 147336 (S.D.N.Y. May 27, 2016) (wherein Judge Woods declined to make a referral to U.S. Copyright Office, given that there was no factual finding that inaccurate information was knowingly included on the copyright application); *Frye v. Lagerstrom*, No. 15 Civ. 5348 (NRB), 2019 U.S. Dist. LEXIS 221585 (S.D.N.Y. Dec. 23, 2019) (noting that Section 411(b)(2) only requires solicitation of advice from the U.S. Copyright Office when a movant has satisfied the preconditions, and finding referral to be inappropriate because the defendant failed to adduce evidence that plaintiff knowingly omitted a co-owner on an application); and *Mambu Bayoh*, 2020 U.S. Dist. LEXIS 9045 (finding referral was inappropriate, given that the defendants had not pointed to any evidence of knowing misrepresentations). Only upon a finding that the requisite

---

[4] This approach aligns with the fact that Plaintiff's certificates of registration serve as prima facie evidence of their validity and the facts stated in such certificates, and the burden is on Defendants to rebut this presumption, which they have not done. *See* 17 U.S.C. § 410(c); Plaintiff's SMUF, ¶ 46; and *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001).

preconditions have been satisfied is a referral to the U.S. Copyright Office then mandatory. *See Lieb v. Korangy Publ'g, Inc.*, No. CV 15-0040 (AYS) 2022 U.S. Dist. LEXIS 69510, at *37 (E.D.N.Y. April 14, 2022). Since Defendants have failed to identify any inaccuracies, let alone knowing ones, a referral to the U.S. Copyright Office is inappropriate, as further set forth below. Instead, since Defendants have moved for summary judgment, the Court would be well within its right to find that Plaintiff's Squeezamals Registrations are valid as a matter of law. *See* Fed. R. Civ. P. 56(f)(1).

### 2.    *Defendants Have Failed to Identify Any Inaccuracies in the Publication Dates for the Squeezamals Applications*

In Defendants' MSJ, Defendants allege the following purported inaccuracies: 1) that all twelve (12) of the Squeezamals Applications purportedly contained inaccurate publication dates (Defendants' MSJ, pp. 5-7, 10-11); and 2) with respect to Plaintiff's Squeezamals Application covering the unicorn (the "Unicorn Squeezamals Application") only, that Plaintiff allegedly failed to "notify the Copyright Office that the unicorn was related to previously published works" (Defendants' MSJ, p. 11). Both of these arguments are entirely unmeritorious.

### i. The December 17, 2021 Publication Date Set Forth In the Squeezamals Registrations Is Accurate

Under 17 U.S.C. § 101, publication is "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." In addition, "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." *Id.* An offer to distribute, however, only constitutes publication *to the extent that copies exist when the offer is made*. Compendium (Third) § 1906.3 (3d. Ed. 2017)[5] (providing the example that offering a new

---

[5] Plaintiff filed its Squeezamals Applications in or about July 2018, and at that time, the Compendium of U.S. Copyright Office Practices, Third Edition ("Compendium (Third)") that was

line of toys to a group of retailers constitutes publication, "***provided that the toys are available for distribution when the offer is made***") (emphasis added). As the Register of Copyrights of the U.S. Copyright Office has made clear: "[t]he work being offered must also be ready for further distribution at the time of the offer. In other words, "[o]ffering to distribute copies or phonorecords before they exist or before they are ready for further distribution, public performance, or public display does not constitute publication." Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2), *Fashion Avenue Sweater Knits, LLC v. Poof Apparel Corp., et al.*, Civil Action No. 2:19-cv-06302-CJC-JEM, Docket No. 129-1, p. 6 (C.D. Cal. Feb. 5, 2021), *available at* https://www.copyright.gov/rulings-filings/411/fashion-avenue-sweater-knits-llc-v-poof-apparel-corp.pdf[6] (hereinafter, "Fashion Avenue Register Response").

In defiance of the above well-established principles, in Defendants' MSJ, they erroneously focus solely on "offers for sale", and fail to mention, let alone analyze, the latter requirement of whether the Squeezamals Products constituting the Squeezamals Works were actually available for distribution when any of those offers were made (*see* Defendants' MSJ, pp. 4-5). Defendants incorrectly aver that since "BHTBC made offers for sale to retailers well before November 27, 2017" (Defendants' MSJ, p. 5), the Squeezamals Works—with the exception of the unicorn (which will be addressed *infra*)—must have been published sometime (on some unspecified date) prior to

---

first released in December 2014, and as updated in 2017, was in effect, which is available at https://www.copyright.gov/comp3/2017version/docs/compendium.pdf. A new version thereof was released in January 2021; however, the 2017 version is applicable here since it was in effect when the Squeezamals Applications were submitted, and as such, it is the version cited throughout.
[6] *See also id.* at pp. 11-12: "[w]hile an offer to distribute copies does not require an actual distribution in order to be considered publication, the COMPENDIUM (THIRD) takes the position that the group of persons must have the actual ability to accept the offer when it is made, not merely the ability to accept the offer at some point in the future when the works have been produced." The Register of Copyrights then goes on further to find that "[i]f the garments that Plaintiff would distribute had not yet been manufactured when the offer was made, the guidance of COMPENDIUM (THIRD) is that there was no 'offer to distribute copies' and the Subject Designs were not published." *Id.* at pp. 14-15.

the listed date of December 21, 2017. Yet, Defendants fail to appreciate that none of the evidence that Defendants point to establishes the Squeezamals Works were available for further distribution when any of the "offers for sale" were made, given that they undoubtedly were not. More specifically, the statements that Defendants point out in the verified pleading and answer (Defendants' MSJ, p. 5, Exhibit 1 ¶¶ 48, 49; Exhibit 2 ¶49) merely demonstrate that Plaintiff had shown a design mock up to GennComm, LLC in or about November 27, 2017, and that Target had expressed a commitment to purchase (and then reduced) its order for the Squeezamals Products. In fact, the statement in the verified pleading regarding costing challenges suggests that Plaintiff was in the midst of the manufacturing process (in other words, that it was not completed). Moreover, the email and deposition testimony that Defendants point to (Defendants' MSJ, p. 6, Exhibit 4, Exhibit 3 at 99-109)[7] actually confirms that what was "pitched" to retailers was a two-dimensional mockup of a CDU, not the three-dimensional Squeezamals Works covered by the Squeezamals Applications. Despite that evidence, Defendants summarily conclude that "BHTBC showed the Squeezamals to retailers such as Target, offering them for sale; Target placed orders before November 27, 2017 (so that Target, of course, could distribute the products to its customers); and BHTBC subsequently shipped them" (Defendants' MSJ, p. 7) without considering what was shown to retailers,[8] under what circumstances (i.e., with confidentiality restrictions[9]), and when the Squeezamals Products shipped. Similarly, Defendants, without any citation to legal

---

[7] Defendants' statement that Plaintiff's attorneys "tried to improperly obstruct the deposition testimony contrary to the established rules" because they were "[s]eeing where this was going" (Defendants' MSJ, p. 6) is not only a flagrant accusation, but it is patently false, and irrelevant to the merits of Defendants' MSJ. Judge Woods granted Defendants limited supplemental discovery, and Defendants' counsel was improperly, and repeatedly, exceeding the scope of the discovery awarded. Regrettably, once again, Defendants' mudslinging, unprofessional tactics are not a substitute for cogent legal arguments based in law and fact.

[8] Note 5 in Defendants' MSJ highlights that Defendants fail to appreciate the important distinction between the two-dimensional artwork for the Squeezamals Products versus the three-dimensional sculptural works that are actually covered by the Squeezamals Registrations at issue here.

[9] *See* Defendants' MSJ, Ex. 5 (noting that the spec. sheet was confidential).

authority, incorrectly equate sales with orders and/or commitments to purchase, stating the "[s]ale of even one copy constitutes publication", yet Defendants fail to analyze, let alone appreciate, what correctly constitutes a sale in the applicable legal sense. *See, e.g., Classic Concepts, Inc. v. Linen Source, Inc.*, Nos. 04-8088 GPS (MANx), 04-8457 GPS (MANx), 2006 U.S. Dist. LEXIS 96767 (C.D. Cal. Apr. 26, 2006) (noting that since the Copyright Act does not define "sale", the court could properly look to the Uniform Commercial Code, which defines sale as "the passing of title from the seller to the buyer for a price", which may occur on the date of shipment).

In an attempt to mislead this Court, Defendants fail to mention the plethora of evidence, which was already submitted in connection with Defendants' First Referral Motion, that actually supports the correctness of the publication date of December 21, 2017. *See, e.g.,* Plaintiff's SMUF, ¶¶ 50, 51; *Dkt. Nos. 55-21* (the air waybill for the first shipment to Target, signed December 20, 2017, which indicates that the Squeezamals Products actually shipped to the United States on Flight No. KZ202 on December 21, 2017); and *61-2* (the first invoice for the Squeezamals Products indicating that they were estimated to ship on or about December 27, 2017); *see also* Defendants' SMUF, Ex. 7, Clark Dep., 23:9-25 (Randy Clark's deposition testimony wherein he asserts that he went to China in November 2017 to work on three-dimensional samples, to be in store January 2018), *Id.* at 34:7-10 (Randy Clark indicates that a commitment to purchase, made by Target or otherwise, does not constitute an actual purchase order: "Now, when I say 'order', it might not be an actual physical purchase order. It might be a commitment"), *Id.* at 85:9-19 (Randy Clark indicates that in October 2017, Plaintiff did not even have three-dimensional samples, but only preliminary two-dimensional artwork). In its Squeezamals Applications, Plaintiff properly relied upon the dates of first shipment (i.e., the dates of first sale) as the dates of first publication for the Squeezamals Works. *See, e.g., Classic Concepts, Inc.*, 2006 U.S. Dist. LEXIS 96767. Not only

have Defendants failed to adduce sufficient evidence casting doubt on the accuracy of the December 21, 2017 first ship date/first publication date for the Squeezamals Works (other than the unicorn), which is presumed valid in the first instance, but also, such a date is fully supported by the evidence of record.

### ii. The February 27, 2018 Publication Date In the Squeezamals Unicorn Application Is Correct

As for the unicorn, which was indisputably released later than the other Squeezamals Works at issue, Defendants have failed to adduce any evidence whatsoever to suggest an alternate publication date, and as such, have woefully failed to rebut the presumption of validity of the publication date set forth in the Squeezamals Unicorn Application (i.e., February 27, 2018). The first invoice for the unicorn is dated March 14, 2018 (Plaintiff's SMUF, ¶ 54, *Dkt. No. 55-18*), which means that it shipped prior to then, given that, as evidenced by the invoices produced by Plaintiff (all of which are available to the Court upon its request), it is Plaintiff's practice that the ship date precedes the invoice date. *See, e.g.*, *Dkt. Nos. 55-18; 61*, ¶ 4, Ex. B. Defendants incoherently suggest that: "the unicorn registration is also invalid, having withheld mandatory information as to the earlier publication" (Defendants' MSJ, p. 10-11). While Defendants' argument appears to be focused on Plaintiff's purported failure to identify derivatives in the Squeezamals Unicorn Application, which is addressed *infra*, to the extent that Defendants are challenging the publication date set forth in the Squeezamals Unicorn Application, they have failed to point to any evidence that such a date is inaccurate, and as such, have clearly failed to rebut the presumption of the correctness thereof.

### iii. The Record Is Largely the Same As When Judge Woods Denied the First Referral Motion

Notably, while Defendants suggest that new documents and information came to light through supplemental discovery, the new documents that Defendants rely on regarding purportedly

inaccurate publication dates—a verified pleading and answer (both of which are publicly available) (Defendants' MSJ, Exhibits 1 and 2), and deposition testimony from Mr. Socha (Exhibit 3)—merely contain the same information revealed through the initial discovery phase. Defendants had the opportunity to, and did in fact, depose Plaintiff's representatives regarding the offers for sale to Target, and other retailers, during the original discovery period. *See, e.g.,* Defendants' SMUF, Exs. 6-7, 14, 16. In other words, the record before the Court remains largely the same as what was before Judge Woods when he denied the First Referral Motion. In rejecting Defendants' arguments regarding any inaccuracies in the publication dates set forth on Plaintiff's Squeezamals Registrations, Judge Woods held as follows, which applies in equal force now:

> Best Brands have not pointed to any facts suggesting that the copyright registrations, which list December 21, 2017 as the publication date for all works other than the Series 1 Unicorn and February 27, 2018 for the Series 1 Unicorn, are incorrect. To allege an inaccuracy here, Best Brands would have had to establish some facts showing that the Squeezamals were published on dates other than December 21, 2017 and February 27, 2018.

6/4 Order, p. 9. In Defendants' MSJ, like Defendants' First Referral Motion, Defendants have unequivocally failed to demonstrate that the Squeezamals Applications, and ensuing Squeezamals Registrations, contain any inaccuracy whatsoever with respect to the publication dates listed therein.

### 3. Defendants Have Otherwise Failed to Identify Any Inaccuracy in the Squeezamals Unicorn Application

Unlike in the First Referral Motion, despite having the opportunity, but failing, to do so, in Defendants' MSJ, Defendants now also suggest that the Squeezamals Unicorn Application was inaccurate because "BHTBC did not inform the Copyright Office that the unicorn was related to any prior published works". The fact that Defendants are now raising this argument for the first time—an argument that could have been made at the outset of this litigation—after a trial date has

been set further supports that Defendants' MSJ is a wholly improper delay tactic. Regardless,

Defendants' argument is flawed, as further detailed herein.

Under the Copyright Act, a derivative work is defined as "a work based upon one or more

preexisting works" in which "a work may be recast, transformed, or adapted". 17 U.S.C. § 101.

However,

> [t]he fact that an author incorporated uncopyrightable elements of a preexisting
> work into his or her work does not necessarily mean that the author's expression
> qualifies as a derivative work.  For example, merely incorporating a word, letter,
> number, or common geometric shape from one or more preexisting works does not
> constitute derivative authorship.  Instead, the author of a derivative work must
> recast, transform, or adapt some of the copyrightable portions of a preexisting work.

Compendium (Third) § 311.1 .1. Only "[i]f a derivative work contains an ***appreciable amount*** of

previously published material, previously registered material, public domain material, or third

party material" should the applicant "exclude that material from the claim". *Id.* at 311.2[10]

(emphasis added).

Further, while there is a split of authority, in the Second Circuit and elsewhere, there is a

"body of case law holding that a copyright registrant need not disclose preexisting works of its

own creation." *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 600 (D. Conn.

July 25, 2019), citing *Yurman Design, Inc. v. Chaindom Enters.*, No. 99 Civ. 9307 (JFK), 2002

U.S. Dist. LEXIS 18329, 2002 WL 31358991, at *10-11 (S.D.N.Y. Sept. 30, 2002) (rejecting the

"false premise" that "a copyright applicant must disclose that its work is derived from another

work the applicant has created [on a copyright application]"); *Frank Betz Assocs. v. J.O. Clark

Constr., L.L.C.*, No. 3:08-cv-159, 2010 U.S. Dist. LEXIS 53437, 2010 WL 2253541, at *11 (M.D.

Tenn. May 30, 2010) ("[t]he issue raised by § 409(9) is whether and to what extent the derivative

---

[10] Despite the fact that Defendants know that Plaintiff submitted electronic copyright applications
for the Squeezamals Works, Defendants submitted a "blank copy of the Copyright Office's VA
application form", which is the paper form. Defendants' MSJ, Ex. 13.

design incorporates elements designed by someone else. Where, as here, the evidence indicates that [the plaintiff] created derivative designs based on its own original designs, the concerns that § 409(9) raises are not implicated."); and *Robert L. Stark Enters. v. Neptune Design Grp., LLC*, No. 1:16 CV 264, 2017 U.S. Dist. LEXIS 55951, 2017 WL 1345195, at *9 (N.D. Ohio Apr. 12, 2017) ("As the copyright would have simply incorporated plans created by defendant, its failure to identify those plans as pre-existing materials does not implicate Section 409(9) of the Copyright Act."); *see also Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15-cv-00666-JZ, 2018 U.S. Dist. LEXIS 55557, Note 12 (N.D. Ohio, Mar. 30, 2018) (finding 409 was not implicated "[b]ecause [the plaintiff] utilized its own [work] to create the [new work], '[i]ts failure to inform the Copyright Office of this information did not deprive [the Office] from fully evaluating its application,' and the plaintiff [was] entitled to enforce its rights in both works in federal court."); and *Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*, No. 1:11-cv-10561-TLL-CEB, 2012 U.S. Dist. LEXIS 149539 (E.D. Mich. Oct. 15, 2012) (rejecting argument that the plaintiff failed to disclose derivative work and comply with 409(9) when plaintiff created derivatives based on own original designs).[11]

Here, the unicorn does not contain an ***appreciable*** amount of preexisting, copyrightable elements of the other Squeezamals Works identified by Defendants (i.e., the narwhal, the teal cat and/or the pink owl) such that it would qualify as a derivative of any of the other Squeezamals Works. Regardless, even if the unicorn qualified as a derivative, all the Squeezamals Works—all of which are at issue in this litigation—are owned by Plaintiff and as such, Plaintiff was not

---

[11] *Contra Lennar Homes of Tex. Sales & Mktg. v. Perry Homes, LLC*, 117 F. Supp. 3d 913 (S.D. Tx. July 24, 2015). *See also* 2 Nimmer on Copyright § 7.20[B][1] (2023) ("In general, failure to disclose that the registered work is derivative of an earlier, underlying work should occasion rejection of the registration certificate only if the claimant was for some reason ineligible to register the derivative work.").

necessarily required to identify any of the foregoing. Therefore, Defendants have failed to establish that the omission of any of the other Squeezamals Works amounts to an inaccuracy in the Squeezamals Unicorn Application.

### 4.    *If There Were Any Inaccuracies, Such Inaccuracies Were Not Known*

Even if Defendants had established any inaccuracies, which they unequivocally have not, they have failed to demonstrate that any such inaccuracies (were any to exist) were known by Plaintiff. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L. P*., 142 S. Ct. 941, 945 (2022) ("a certificate of registration is valid even though it contains inaccurate information, as long as the copyright holder lacked 'knowledge that it was inaccurate.' §411(b)(1)(A)."). With respect to knowledge, or a lack thereof, "[t]he Supreme Court recently held that '[l]ack of knowledge of either *fact or law* can excuse an inaccuracy in a copyright registration. . . This requires that the owner of the registration have actual knowledge about the specific inaccuracy." *Gaffney v. Muhammad Ali Enter. LLC*, No. 20 Civ. 7113 (GBD)(OTW), 2022 U.S. Dist. LEXIS 161663 (S.D.N.Y. Sept. 7, 2022), citing *Unicolors, Inc.*, 142 S. Ct. at 945 (finding plaintiff's copyright registrations were valid, without referring to the U.S. Copyright Office, given that the defendants had failed to show that the plaintiff had actual knowledge of potential inaccuracies relating to what constitutes legal publication under the Copyright Act).

Here, Defendants are alleging inaccuracies with respect to the publication dates (for all Squeezamals Applications, except potentially the Squeezamals Unicorn Application, although that is unclear) and the purported omission of information pertaining to preexisting works (for the Squeezamals Unicorn Application only). In other words, inaccuracies regarding portions of copyright applications that require both legal and factual knowledge. *Unicolors, Inc.*, 142 S. Ct. at 947 (noting that an assessment of what constitutes publication under §409(8) and whether a work qualifies as a derivative under §409(9) involves a legal and factual assessment, and that

"[i]naccurate information in a registration is therefore equally (or more) likely to arise from a mistake of law as a mistake of fact."). Regarding publication, Defendants state, without any evidentiary citations that:

> [t]he dates on which BHTBC was offering its products for sale to retailers were well known to BHTBC. This is information within its own records, and within the direct personal knowledge of its CEO and President. They were well aware of their sales efforts. By the end of November, there had been a Target order, and a subsequent reduction of the order.

Defendants' MSJ, p. 9. Defendants fail to consider that, in that same vein, Plaintiff would likewise be aware of other information and documents in its records, including, but not limited to, an airway bill establishing a first shipment of December 21, 2017 (*Dkt. No. 55-21*), and a first invoice demonstrated that the Squeezamals Products were estimated to ship on or about December 27, 2017 (*Dkt. No. 61-2*). To the extent that there is any error in the publication dates listed, which again, there was not, it would be an unknown innocent mistake of law, not a knowing inaccuracy. *See, e.g., Gaffney*, 2022 U.S. Dist. LEXIS 161663; *see also Unicolors, Inc.*, 142 S. Ct. at 947; and Fashion Avenue Register Response, pp. 16-18 (noting that "determining whether a work has been published can raise complex legal questions for which there are not always straightforward answers", and citing cases wherein "courts have determined that ambiguity in the definition of the term 'publication' prevented a finding that an applicant provided inaccurate information with knowledge that it was inaccurate"); and *Archie MD, Inc. v. Elsevier, Inc.*, 261 F. Supp. 3d 512 (S.D.N.Y. Aug. 20, 2017) (finding question of publication to be unsettled and as such, any inaccuracy was not a knowing one). Notably, Defendants fail to establish what, if anything, Plaintiff understood to qualify as publication at the time the Squeezamals Applications were submitted. In fact, the "facts" that Defendants suggest that Plaintiff was aware of do not demonstrate that the Squeezamals Works were in fact published on a different date (*see*

Defendants' MSJ, pp. 9-10). For example, Defendants aver that "CEO Socha and President Clark were well aware of their extensive efforts in offering to sell the products"; however, the testimony and "evidence" that Defendants point to, as Judge Woods found in the 6/4 Order (pp. 9, 11), evidences limited publication, at best, which does not amount to publication under the Copyright Act. Consequently, not only have Defendants failed to establish any inaccuracies in the publications date listed, but also, even if inaccuracies were to exist, Defendants have failed to establish Plaintiff's "actual, subjective awareness of both the facts and the law". *Unicolors, Inc.*, 142 S. Ct. at 947.

Likewise with respect to the alleged omission of Plaintiff's own related works in the Squeezamals Unicorn Application, Defendants do not even analyze whether Plaintiff had knowledge thereof (Defendants' MSJ, pp. 10-11). Nonetheless, as with publication, whether a work actually qualifies as a derivative under the Copyright Act involves complex legal questions, and Defendants have failed to demonstrate Plaintiff's knowledge of any such inaccuracies. "Nor can the Court 'infer'. . .any conclusion as to Plaintiff's knowledge from the record." *Beom Su Lee v. Karaoke City*, No. 1:18-cv-03895 (PAE) (SDA), 2020 U.S. Dist. LEXIS 240311 (S.D.N.Y. Dec. 18, 2020), citing *Richard Feiner & Co., Inc. v. New York Times Co.*, No. 07-CV-011218 (RMB) (RLE), 2009 U.S. Dist. LEXIS 150825, 2009 WL 10696498, at *5 (S.D.N.Y. Dec. 15, 2009) ("The Court cannot draw even 'legitimate inferences from the facts'; rather, that is the role of the jury."). Consequently, Defendants have failed to establish any knowing inaccuracies in any of Plaintiff's Squeezamals Applications.

### 5. *Any Technical Inaccuracies Would Not Invalidate the Squeezamals Registrations*

Finally, it must be noted that were any such inaccuracies to exist (which they do not), such inaccuracies are of the type that could be cured by Plaintiff's filing of supplementary registrations.

Compendium (Third) §§ 1802 (noting that supplementary registrations are used to "correct or amplify the information given in a registration", *citing* 17 U.S.C. § 408(d)); 1802.6(I) (noting that a supplementary registration may be used to correct an error involving the date of publication); 1802.6(J) (noting that a supplementary registration is appropriate to correct or amend the Author/Created, Limitation of Copyright Claim, Nature of Authorship, and/or Material Added to Work sections). If Plaintiff reasonably thought there were any inaccuracies in its Squeezamals Registrations, it would have already filed for supplementary registrations, but since no such inaccuracies reasonably exist, no such supplementary registrations have been filed. Nevertheless, the very fact that any such "technical" defects could be cured by supplementary registrations demonstrates that any such defects, if they existed (which again, they do not), would not invalidate Plaintiff's Squeezamals Registrations or impact the U.S. Copyright Office's decision to issue the same. *See, e.g., Freeplay Music, LLC v. Dave Arbogast Buick-GMC*, Inc., No. 3:17-cv-42, 2019 U.S. Dist. LEXIS 163383 (S.D. Ohio Sep. 24, 2019) (finding a referral to the U.S. Copyright Office was unwarranted, in part because the U.S. Copyright Office has already indirectly spoken on the issue that the knowing failure to include co-authors does not invalidate copyright registrations by virtue of the availability of supplementary registrations to rectify any such issue); *see also* Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2), *Design Tech Homes, Ltd. v. TVision Homes, Ltd.*, et al., 18-cv-04268, Dkt. No. 115-1 (S.D. Tex. Aug. 29, 2019), *available at* https://www.copyright.gov/rulings-filings/411/design-tech-homes-v-rvision-homes-no-h-18-4268-sd-tex-aug-29-2019.pdf (wherein the Register of Copyrights issued an opinion, pursuant to 17 U.S.C. 411, in which she indicated that a supplementary registration amending a publication date and indicating that a work was a derivative corrected any inaccuracies in the basic registration). Nonetheless, since Defendants have failed to establish any inaccuracies, let alone any

18

knowing inaccuracies, a referral to the U.S. Copyright Office is inappropriate.

### D.  PLAINTIFF'S SQUEEZAMALS REGISTRATIONS SHOULD NOT BE INVALIDATED

Not only have Defendants failed to establish that a referral to the U.S. Copyright Office is warranted, but even if this matter is referred to the U.S. Copyright Office—which, again, Plaintiff respectfully submits it should not be—Defendants are incorrect that "should the Copyright Office confirm, in response to Questions 1, 2, and/or 3, that it would have refused registration, the copyright registrations must be held invalid." That "[t]he Copyright Office has indicated in similar situations[12] that it would not have issued a registration had it known of the inaccurate information" (Opposition, p. 13) is irrelevant, given that in the unlikely event that this Court refers this case to the Register of Copyrights, the U.S. Copyright Office will opine on the specific facts at hand. Even once the Register of Copyrights issues a response, this does not mean that this Court must then hold Plaintiff's Squeezamals Registrations invalid. *See, e.g.*, Fashion Avenue Register Response, pp. 17-18 ("Particularly when there is no question of whether the applicant was a proper claimant or that the work is protectable by copyright, a copyright registration should not be invalidated – and the copyright owner's ability to enforce the copyright compromised – when the application was submitted in good faith based on a reasonable interpretation of the law"); *Archie MD, Inc. v. Elsevier, Inc.*, 261 F. Supp. 3d 512 (S.D.N.Y. Aug. 20, 2017) (after having referred a question to the Register of Copyrights, and the response did not definitively resolve the issues pertaining to the validity of the registration, the Court denied the defendant's motion for summary judgment, and scheduled trial after ordering supplemental briefing from the parties); *see also Tony Hong v.*

---

[12] *Dmarcian* and *Geospatial Technology Associates* are also not "similar" as Defendants profess. In *Dmarcian*, the plaintiff had admitted that it deposited a version of software created in 2021, but provided dates of publication and author information for the 2012 version. In *Geospatial Technology Associates*, the deposit, among other things, included material added after the asserted date of first publication or completion date. Regardless, as of the writing of this brief, to date none of the registrations in either of these cases have been declared invalid by the respective courts.

*Rec. Equip. Inc.*, No. 4:19-cv-00435-BLW, 2022 U.S. Dist. LEXIS 19367 (D. Idaho Feb. 1, 2022) (denying summary judgment after referral to the U.S. Copyright Office, and supplemental briefing by the parties, finding that genuine issues of material fact still remained). This is precisely why Defendants' MSJ is premature, given that any response by the Register of Copyrights may not fully resolve the issues, and likely would require further briefing on the issues by the parties. Moreover, it is worth mentioning that invalidating Plaintiff's Squeezamals Registrations due to any purported inaccuracy due to a difference of a publication date of a mere few months, and an alleged lack of disclosure of Plaintiff's own creative works is absurdly inequitable, particularly when Defendants unquestionably released the Alleged Infringing Products after Plaintiff's Squeezamals Products—in fact, Defendants are arguing that an even earlier publication date applies than Plaintiff avers—and there is no question that Plaintiff, not Defendants, are owners of all the Squeezamals Works.

### E. DEFENDANTS HAVE FAILED TO REBUT THE PRESUMPTION OF VALIDITY, LET ALONE ESTABLISH THAT IT SHOULD BE "VITIATED"

Finally, Defendants' request that this Court enter summary judgment in their favor on the basis that "that the information obtained in discovery removes any presumption of validity from the copyrights" (Defendants' MSJ, p. 1), and that "BHTBC must prove the operative facts" (Defendants' MSJ, p. 2) is utterly misguided, and improper. As Defendants acknowledge (Defendants' MSJ, p. 4), "[a] party may move for summary judgment, ***identifying each claim or defense — or the part of each claim or defense —*** on which summary judgment is sought on which summary judgment is sought." Fed. R. Civ. P. 56(a). If all relief requested is not granted, the Court "may enter an order stating any material fact. . .that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). Defendants fail to cite to a single legal authority, nor is Plaintiff aware of any, that establishes that whether or not the presumption

of validity of a copyright—a concept that orders the burden of proof in a copyright case[13]—constitutes a part of any claim or defense or a material fact, such that this Court could appropriately render a blanket summary judgment ruling regarding the same.

Nevertheless, as Defendants also denote (Defendants' MSJ, p. 8), under 17 U.S.C. 410(c), "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright **and** of the facts stated in the certificate." (emphasis added). "The plaintiff's certificate of copyright registration 'shifts the burden to the defendant to demonstrate why the copyright is not valid.'" *eScholar, LLC v. Otis Educ. Sys.*, No. 7:04-cv-04051-SCR, 2005 U.S. Dist. LEXIS 40727, at *21-22 (S.D.N.Y. Nov. 3, 2005). As addressed herein, as well as in connection with Plaintiff's Opposition to Defendants' Motion for Summary Judgment Regarding Standing and Failure to Join A Necessary and Indispensable Party (*Dkt. No. 269*, pp. 10-11), and the reconsideration thereof (*Dkt. No. 288*, pp. 3-5), Defendants have unquestionably not offered sufficient evidence of record that actually casts doubt on Plaintiff's ownership of the Squeezamals Registrations, and the validity thereof. *See, e.g.*, *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, at 414-415 (S.D.N.Y. 1999) (finding defendants' evidence was not "sufficiently strong" to overcome the presumption of validity, and that because defendants had failed to demonstrate that any misstatement was knowing, they could not rebut the presumption); *see also Stern v. Lavender*, 319 F. Supp. 3d 650 (S.D.N.Y. 2018) (finding inconclusive narrative failed to rebut presumption of validity, particularly when vastly outweighed by circumstantial evidence that the plaintiff was the copyright owner).

Moreover, Defendants fail to cite to a single legal authority supporting the notion that the

---

[13] *See Estate of Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 166-167 (noting that the presumption merely "orders the burden of proof") (internal citations omitted).

presumption can, and should, be eliminated across the board as a matter of law, particularly when this case is to be tried by a jury, and that Plaintiff must then "prove up all the facts, including those in the application as to the alleged dates and nation of publication,[14] and those associated with alleged ownership by written agreement." Defendants' MSJ, p. 8. *See, e.g., Gaste v. Kaiserman*, 863 F.2d 1061 (2d Cir. 1988) (question of whether or not presumption was rebutted was decided by jury); *see also Op Art v. B.I.G. Wholesalers*, 2006 U.S. Dist. LEXIS 116199 (N.D. Tex., July 20 2006) (same). Therefore, not only have Defendants failed to rebut the presumption of validity by failing to establish any knowing inaccuracies in Plaintiff's Squeezamals Applications, but also, Defendants have failed to establish that the presumption should be eliminated altogether as a matter of law, and as such, Defendants' MSJ on that point should likewise be denied.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully submits that Defendants' MSJ should be denied in its entirety, and this matter should not be referred to the U.S. Copyright Office. In the unlikely event that the Court finds referral to the Register of Copyrights appropriate on any of the issues raised by Defendants, Plaintiff respectfully requests the opportunity to respond to Defendants' suggested questions for the Register of Copyrights, which, as drafted, Plaintiff submits are improper.

Dated:  January 12, 2024                          Respectfully submitted,


**EPSTEIN DRANGEL LLP**


BY: /S Kerry B. Brownlee

---

[14] It is unclear how the nation of publication listed is of any relevance whatsoever to Plaintiff's infringement claim, or Defendants' defenses thereto. Importantly, in Defendants' MSJ, they do not aver that Plaintiff knowingly submitted any inaccuracy with respect to the nation of publication on any of the Squeezamals Applications, let alone that any such inaccuracy (were it to exist, which it does not) would impair the validity of the Squeezamals Registrations.

Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Grace Rawlins
grawlins@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Beverly Hills Teddy Bear Company*