Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipounselors.com
Grace Rawlins
grawlins@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Tel: 212-292-5390
Fax: 212-292-5391
*Attorneys for Plaintiff*
*Beverly Hills Teddy Bear Company*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEVERLY HILLS TEDDY BEAR COMPANY *Plaintiff* <br><br> v. <br><br> BEST BRANDS CONSUMER PRODUCTS, INC.; AND BEST BRANDS SALES COMPANY, LLC *Defendants* | CIVIL ACTION NO. 19-cv-3766-AS |

**PLAINTIFF'S COUNTERSTATEMENT TO DEFENDANTS' RULE 56.1 STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT MOTION OF COPYRIGHT INVALIDITY INCLUDING A REQUEST FOR A REFERRAL TO REGISTER OF COPYRIGHTS**

Pursuant to Local Rule 56.1, and the Court's Individual Rule 8(I), Plaintiff Beverly Hills Teddy Bear Company ("Plaintiff" or "BHTBC"), by and through its undersigned counsel, respectfully submits the following counterstatement to Defendants Best Brand Consumer Products, Inc. and Best Brands Sales Company, LLC's (collectively, "Defendants" or "Best Brands") Rule 56.1 Statement of Material Undisputed Facts (*Dkt. No. 293*, "Defendants' SMUF")

1

in Support of Motion for Summary Judgment of Copyright Invalidity Including a Request for a Referral to the Register of Copyrights) (*Dkt. No. 292*) ("Defendants' MSJ")[1]:

1. Exhibit 1 is a true and correct copy of GennComm's March 11, 2019 1st Verified First Amended Complaint against BHTBC in California state court. Cohen Dec. ¶1.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Exhibit 1 is a document that speaks for itself. Plaintiff does not dispute that Exhibit 1 is a copy of GennComm's March 11, 2019 Verified First Amended Complaint against BHTBC in California state court, but disputes that the statements set forth therein are true and correct.

2. Exhibit 2 is a true and correct copy of BHTBC's Answer to GennComm's Verified First Amended Complaint. Cohen Dec. ¶2.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 2 is a document that speaks for itself.

3. Exhibit 3 is a true and correct copy of excerpts from the deposition of David Socha dated June 29, 2023 (excerpted). Cohen Dec. ¶3. (The full deposition is in Exhibit 14).

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 3 is a document that speaks for itself.

4. Exhibit 4 is a true and correct copy of an email of Randy Clark dated November 27, 2017 to Genna Rosenberg and Jeremy Medwed. Cohen Dec. ¶4.

---

[1] In the opening paragraph of Defendants' SMUF, they indicate that "Plaintiffs" submit the same; however, the SMUF is on behalf of Defendants. Additionally, Defendants also include the headings from their brief, which do not qualify as facts, but instead legal argument, as such, Plaintiff has not included those in the instant response. To the extent any response is required by Plaintiff, Plaintiff disputes all of the headings on the basis that the headings constitute legal arguments, do not contain any citations to evidence, and do not qualify as facts.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 4 is a document that speaks for itself.

5. Exhibit 5 is a true and correct copy of an email of David Socha dated October 15, 2017 (BHTBC1625). Cohen Dec. ¶5.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 5 is a document that speaks for itself.

6. Exhibit 6 is a true and correct copy of the 30(b)(6) Deposition of David Socha dated February 25, 2020 (excerpted), Cohen Dec. ¶6. (The full deposition transcript is in Exhibit 15).

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 6 is a document that speaks for itself.

7. Exhibit 7 is a true and correct copy of the 30(b)(6) Deposition of Randy Clark dated February 21, 2020 (excerpted). Cohen Dec. ¶7. (The full deposition transcript is in Exhibit 16).

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 7 is a document that speaks for itself.

8. Exhibit 8 is a true and correct copy of artwork for displays for retail sales obtained from BHTBC in discovery. Cohen Dec. ¶8.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff does not dispute that Exhibit 8, which is a document that speaks for itself, is a document produced by BHTBC in discovery, but disputes Defendants' characterization of it as "artwork for displays for retail sales". Exhibit 8 constitutes art boards comprised of non-final designs, and a mock up of a retail display. *See* Ex. 7 , Clark Dep., 85:20-87:18; *Declaration Of Kerry B. Brownlee In Support Of*

*Opposition To Defendants' Motion For Summary Judgment Motion Of Copyright Invalidity Including A Request For A Referral To Register Of Copyrights* ("*January 2024 Brownlee Dec.*"), filed herewith, ¶ 8.

9. Exhibit 9 is a true and correct copy of artwork obtained from BHTBC in discovery. Cohen Dec. ¶9.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff does not dispute that Exhibit 9, which is a document that speaks for itself, is a document produced by BHTBC in discovery, but disputes Defendants' characterization of it as "artwork". Exhibit 9 is a chat between Plaintiff and Mr. Tjio, along with artwork.

10. Exhibit 10 is a is a true and correct copy of a chart summarizing information in Beverly Hills' Series 1 Registrations. Cohen Dec. ¶10.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 10 is a document that speaks for itself.

11. Exhibit 11 is a true and correct copy of the asserted Copyright-Registrations-in-Suit. Cohen Dec. ¶11.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 11 are documents that speak for themselves.

12. Exhibit 12 is a true and correct copy of a comparison of the Unicorn to previously published works. Cohen Dec. ¶12.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Exhibit 12 is a document that speaks for itself. Plaintiff does not dispute that Exhibit 12 contains images of Plaintiff's unicorn, narwhal, and teal cat, and that the narwhal and teal cat were released prior to the unicorn, but disputes that Exhibit 12 demonstrates what Defendants allege.

13. Exhibit 13 is a true and correct copy of a Sample VA Copyright Application. Cohen Dec. 13.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Plaintiff does not dispute that Exhibit 13, which is a document that speaks for itself, is a sample Form VA paper copyright application.

14. Exhibit 14 is a true and correct copy of the deposition of David Socha dated June 29, 2023 (complete). Cohen Dec. ¶14

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 14 is a document that speaks for itself.

15. Exhibit 15 is a true and correct copy of the 30(b)(6) Deposition of David Socha dated February 25, 2020 (complete). Cohen Dec. ¶15

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 15 is a document that speaks for itself.

16. Exhibit 16 is a true and correct copy of the 30(b)(6) Deposition of Randy Clark dated February 21, 2020 (complete). Cohen Dec. ¶16.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 16 is a document that speaks for itself.

17. Exhibit 17 is a true and correct copy of the Register of Copyrights' Response in *Dmarcian, Inc. v. Dmarcian Europe B.*V, 21-cv-00067-MR (W.D.N.C), Dkt. 272.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 17 is a document that speaks for itself.

18. Exhibit 18 is a true and correct copy of the Register of Copyrights' Response in *Geospatial Technology Associates, LLC v. the United States et al.*, 16-cv-346-EGB (Ct. Cl.), Dkt. 349.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 18 is a document that speaks for itself.

19. BHTBC represented to the Copyright Office that its asserted designs (other than the unicorn) had a first publication date of "December 21, 2017." Exhibits 10 and 11.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

20. GennComm's verified pleading in California recounts that "[o]n November 27, 2017, RANDY CLARK, President of Defendant requested a call with Plaintiffs and sent to Plaintiff an email with a pdf showing the Squishamals and retail display, to show use of Plaintiff's innovation." Exhibit 1 ¶48.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Exhibit 1 is a document that speaks for itself. Plaintiff does not dispute that Exhibit 1 states "[o]n November 27, 2017, RANDY CLARK, President of Defendant requested a call with Plaintiffs and sent to Plaintiff an email with a pdf showing the Squishamals and retail display, to show use of Plaintiff's innovation", but disputes that any such statement is true and correct.

21. "Squishamals" was the earlier name for BHTBC's Squeezamals-designs-in-suit. Exhibit 7, Randy Clark Dep. 36:21-37:7.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

22. The pleading goes on to say that "[o]n November 27, 2017, RANDY CLARK spoke with GENNA ROSENBERG and JEREMY MEDWED [of GennComm] by telephone and advised that Target had reduced their order by eighty percent (80%), and reiterated their costing challenges notwithstanding the significant sales already conducted pursuant to the underlying agreement herein." Exhibit 1 ¶49.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Exhibit 1 is a document that speaks for itself. Plaintiff does not dispute that Exhibit 1 states "[o]n November 27, 2017, RANDY CLARK spoke with GENNA ROSENBERG and JEREMY MEDWED [of GennComm] by telephone and advised that Target had reduced their order by eighty percent (80%), and reiterated their costing challenges notwithstanding the significant sales already conducted pursuant to the underlying agreement herein.", but disputes that the entirety of any such statement is true and correct.

23. In its Answer, BHTBC admitted under oath Clark's statement to Rosenberg that Target had reduced their order. Exhibit 2 ¶49.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*. Exhibit 2 is a document that speaks for itself.

24. Clark's email to GennComm in November 2017 (Exhibit 4) shows the Squishamals / Squeezamals and indicates that BHTBC was "pitching" them, i.e., offering them for sale.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 24 of Defendants' SMUF. More specifically, Plaintiff does not dispute that the email in Exhibit 4 involves references to "pitching" the Squishamals/Squeezemals products. However, Plaintiff disputes that this equates to "offering them for sale", which requires legal analysis.

25. Mr. Clark's email shows the samples of the Squishamals/Squeezamals products-in-suit that were being shown to retailers. Exhibit 4.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Exhibit 4 is a document that speaks for itself. Plaintiff does not dispute that Exhibit 4 depicts a 2-dimensional mock up of a CDU that Plaintiff was "pitching to customers for Squishamals", but disputes that such artwork

7

qualifies as "samples of the Squishamals/Squeezamals products-in-suit", which are three-dimensional products (*see* Defendants' MSJ, Exhibit 11).

26. BHTBC's activities, and the dates thereof, in offering its products for sale to retailers, are known to BHTBC.  Exhibit 6, Socha Dep. 108:15 – 109:5; Exhibit 7, Clark Dep. at 32:9-33:13; Exhibit 6, Socha Dep. at 89:4-11; Exhibit 6, Socha Dep. 108:15 – 109:5; Exhibit 7, Clark Dep. at 32:9-33:13.  *See also*, Exhibit 7, Randy Clark Dep. at 85:20-86:3.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 26 of Defendants' SMUF, given that the statement itself is vague and ambiguous. More specifically, Plaintiff does not dispute that Mr. Socha and Mr. Clark have knowledge of certain of Plaintiff's sales activities, as identified on the referenced pages on Exhibit 6, Socha Dep. 89:4-11 (acknowledging that Mr. Socha attended some sales meetings where sample were shown), 108:15-109:5 (discussing meeting with Target); and Exhibit 7, Clark Dep. at 32:9-33:13 (discussing meeting with Target, which was handled by a representative, and not Mr. Clark personally), 85:20-86:3 (discussing when art boards, not physical products, may have been shown), but denies that this demonstrates that Plaintiff has knowledge of any and all unidentified "activities, and the dates thereof, in offering its products for sale to retailers".

27. This is information within its own records, and within the direct personal knowledge of its CEO and President. *Id.*

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 27 of Defendants' SMUF, given that the statement itself is vague and ambiguous. More specifically, Plaintiff does not dispute that Mr. Socha, as CEO, and Mr. Clark, as President, have direct personal knowledge of certain activities, but

denies that they have "direct personal knowledge" of unspecified "information within [Plaintiff's] own records".

28. They were well aware of their sales efforts. *Id.*

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 28 of Defendants' SMUF, given that the statement itself is vague and ambiguous. More specifically, Plaintiff does not dispute that Mr. Socha and Mr. Clark are aware of certain of their own sales efforts, as identified during each person's respective deposition, but denies that they have awareness of a vague category of unidentified sales efforts.

29. By the end of November, there had been a Target order, and a subsequent reduction of the order. Exhibit 2 ¶49.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 29 of Defendants' SMUF. More specifically, Plaintiff does not dispute that Target had expressed interest in Plaintiff's Squeezamals products, and subsequently reduced the quantities that it had expressed interest in, but disputes that a physical order had been placed by the end of November 2017. *See* Exhibit 16, Clark Dep. 34:7-10 ("Now, when I say 'order,' it might not be an actual physical purchase order. It might be a commitment, 'Yes, we're going to order X amount,' you need it by X date."); *see also* Exhibit 16, Clark Dep. 32:9-34:18.

30. Mr. Socha testified that the designs were first shown in Hong Kong in October 2017. Exhibit 5 (email), and Exhibit 6, Socha 2-25-20 Dep. at 86:20 - 88:19.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 30 of Defendants' SMUF. More specifically, Plaintiff does

9

not dispute that Exhibit 5 denotes that "[w]e have a new line that is getting a lot of attention at the show in Hong Kong. We will send u a confidential spec.", and that Mr. Socha testified that Squishamals were shown privately in Hong Kong in October 2017 (Exhibit 6, Socha 2-25-20 Dep. at 87:14-17), but disputes that all designs for the Squeezamals products, or all of "the [unspecified] designs", were shown in Hong Kong in October 2017.

31. In an email on October 15th (under the subject line "Squishamals") he stated that "We have a new line that is getting a lot of attention at the show in Hong Kong." Exhibit 5.

    **PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

32. In Hong Kong, he showed the designs to "key partners," i.e., to overseas distributors. Exhibit 6, Socha Dep. at 87:9-89:22, and Exhibit 5.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 32 of Defendants' SMUF. More specifically, Plaintiff does not dispute that Mr. Socha testified that he showed certain of the designs for the Squeezamals products at some meetings in Hong Kong (Exhibit 6, Socha Dep. at 89:2-12), and that certain designs were shown to "key partners" (*Id.* at 87:17-25), but disputes the characterization of "key partners" as overseas distributors, that Mr. Socha himself was involved in all such showings, and the suggestion that all designs were shown.

33. The first samples were kept hidden beneath a food service tray. Exhibit 15, Socha Dep. at 89:14-17.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*, given that the statement itself is vague and ambiguous. More specifically, Plaintiff does not dispute that Mr. Socha testified that certain samples of the Squeezamals products (likely the dog and the panda) were hidden underneath a food service tray at a show in Hong Kong (Exhibit 6, Socha Dep. at 89:13-

10

25), but disputes that these were the "first samples" and the suggestion that samples were routinely "kept hidden beneath a food service tray", without any reference to a specific time or place.

34. Mr. Socha testified that the designs were shown to their Australian distributor, their UK distributor, and their Canadian distributor, to get them to buy it. Exhibit 6, Socha Dep. at 87:22-88:14.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 34 of Defendants' SMUF. More specifically, Plaintiff does not dispute that Mr. Socha testified that certain of the designs for the Squeezamals products may have been shown to Plaintiff's Australian distributor, UK distributor and Canadian distributor to get them to buy the Squeezamals products (Exhibit 6, Socha Dep. at 87:22-88:14), but disputes Defendants' mischaracterization of Mr. Socha's testimony as suggesting that all unspecified designs were shown to such distributors.

35. Randy Clark, the company president, was showing the designs at meetings, and Mr. Socha was at some of the meetings. Exhibit 6, Socha Dep. at 89:4-11. *See also*, Exhibit 7, Randy Clark Dep. at 85:20-86:3 (testifying that the designs were shown in Hong Kong in October).

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 35 of Defendants' SMUF. Plaintiff does not dispute that Mr. Socha was at some of the meetings in Hong Kong where certain of the nonfinal designs for the Squeezamals products were shown, and that Randy Clark was also involved in certain design showings (Exhibit 6, Socha Dep. at 89:4-11) involving art boards featuring some of the nonfinal artwork for series 1 of the Squeezamals products in Hong Kong

(Exhibit 7, Randy Clark Dep. at 85:20-86:3), but denies that Mr. Clark and/or Mr. Socha was/were involved in showing unspecified designs at unidentified meetings.

36. Beverly Hills then received commitments for purchases in October from their distributor in Australia (Exhibit 6, Socha Dep. 101:2-25), their distributor in the UK (id., Socha Dep. 99:7 - 100:12; 101:20 - 103:21), and so forth.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 36 of Defendants' SMUF. More specifically, Plaintiff does not dispute that in October 2017, Plaintiff's Australian distributor expressed interest in the Squeezamals products (indicating a "forecast" of "300K plus once we get our hands on samples and can take it around to all retailers") (Exhibit 6, Socha Dep. 101:2-25, Ex. 19, *January 2024 Brownlee Dec.*, Ex. A), and that Mr. Socha testified, on the basis of an October 23, 2017 email from Plaintiff's UK distributor, that Plaintiff had a "potential" verbal commitment in October 2017 (103:10-21), and had received a "proposal" around that time (104: 3-11). Plaintiff otherwise denies Defendant's mischaracterization of Mr. Socha's testimony, and "and so forth", given that such language is so vague and ambiguous that Plaintiff cannot reasonably respond to the same.

37. Thereafter, Mr. Socha's company continued to offer the products for sale. For example, its 30(b)(6) witness believed that their representative approached Five Below with artwork showing the line. *Id.*, Socha Dep. 90:10 – 91:21.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 37 of Defendants' SMUF, and notes that the assertion itself is inappropriately argumentative. More specifically, Plaintiff does not dispute that Mr. Socha testified that one of Plaintiff's representatives may have potentially shown one

        sample of a Squeezamals product to Five Below (Exhibit 6, Socha Dep., 90:10 – 91:21), but disputes that this demonstrates that Plaintiff "continued to offer the [unspecified] products for sale". What qualifies as a bona fide offer for sale requires legal analysis. Further, Mr. Socha specifically testified in response to questioning from Defendants' counsel that in or about October 2017, Plaintiff did not have the products developed, and as such, any nonfinal artwork and/or samples would *not* have been shown to "everybody". Exhibit 6, Socha Dep., 92:4-22.

38.   The artwork illustrating the intended designs was in final, or essentially final, form by the end of October. Exhibit 6, Socha Dep. 107:16-24, 109:10-23; Exhibit 7, Clark Dep. 35:20-36:20.

        **PLAINTIFF'S RESPONSE:** *DISPUTED.* Plaintiff disputes some of the factual assertions set forth in paragraph 38 of Defendants' SMUF. What constitutes "artwork illustrating the intended designs" is so vague, and ambiguous that Plaintiff cannot appropriately respond to said allegation. Nonetheless, Plaintiff does not dispute that Mr. Socha testified that at the end of October 2017, the two-dimensional artwork for certain of the Squeezamals products was "pretty close" to the final designs (Exhibit 6, Socha Dep. 109:10-23), and that Mr. Clark testified that designs attached to an email of October 27, 2017 were versions of artwork for the series 1 Squeezamals products that were used, and modified to create said products (Exhibit 7, Clark Dep. 35:20-36:20), but denies that such testimony establishes that "[t]he artwork illustrating the [unspecified] intended designs was in final, or essentially final, form by the end of October."

39.   Artwork of displays for retail sales are attached as Exhibit 8. Exhibit 8.

**PLAINTIFF'S RESPONSE:** *DISPUTED*. Per Plaintiff's response to paragraph 8 above, Plaintiff does not dispute that Exhibit 8, which is a document that speaks for itself, is a document produced by BHTBC in discovery, but disputes Defendants' characterization of it as "artwork for displays for retail sales".

40. Beverly Hills then offered the line for sale to Target at a sales meeting on November 2, 2017. Exhibit 6, Socha Dep. 108:15 – 109:5; Exhibit 7, Clark Dep. at 32:9-33:13.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 40 of Defendants' SMUF. Per Mr. Socha's testimony, Plaintiff does not dispute that Plaintiff's representative pitched the Squeezamals products (then the Squishamals products) to Target at a meeting on November 2, 2017 (Exhibit 6, Socha Dep. 108:15-109:5), but disputes that this constituted offering "the line for sale to Target" in the legal sense. *See* Exhibit 7, Clark Dep. at 32:9-33:13 (wherein Mr. Clark describes the process by which the Squeezamals products came to launch in January 2018, with Defendants' counsel choosing the term "offer. . .to sell", which is a term of art); *see also* 33:16-34:18 (wherein Mr. Clark explains that often buyers are only shown "early conceptual art without seeing samples", and that the Squeezamals products were not yet manufactured).

41. Socha confirmed in his deposition that BHTBC showed Target the products, Target purchased them, and then BHTBC shipped them later. Exhibit 3 at 107:9 - 109:8.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes some of the factual assertions set forth in paragraph 41 of Defendants' SMUF, given that Defendants intentionally mischaracterize Mr. Socha's testimony. More specifically, Plaintiff does not dispute that a representative from Plaintiff met with Target on November 2, 2017, and

during or before that nonfinal artwork and/or an early sample (or samples) of certain Squeezamals products were shown to Target (*see* Exhibit 7, Clark Dep. at 32:5-39:15), Target committed to purchase, and then purchased the Squeezamals products (*see Declaration of Kerry B. Brownlee In Support of Opposition to Defendants' Motion for a Referral to U.S. Copyright Office* (*Dkt. No. 61*)("Brownlee Referral Dec."), Ex. B, *Dkt. No. 61-2*, the first invoice for the Squeezamals Products indicating that they were estimated to ship on or about December 27, 2017), and that Plaintiff shipped the same to Target on Flight No. KZ202 on December 21, 2017 (*Declaration Of Limor Wigder In Support Of Defendants' Motion For A Referral To The U.S. Copyright Office*, hereinafter, "*Widger Dec.*", Ex. 21*, Dkt. No. 55-21*) (the airway bill for the first shipment to Target) to be launched in store in January 2018 (Exhibit 7, Clark Dep. at 37:5-8).

42. BHTBC never produced in discovery a single document corroborating the alleged first publication dates in any of its asserted registrations.  Cohen Dec. ¶19.

    **PLAINTIFF'S RESPONSE:** *DISPUTED*. Plaintiff disputes all of the factual assertions set forth in paragraph 42 of Defendants' SMUF. *See, e.g., Wigder Dec.*, Ex. 21, *Dkt. No. 55-21* (the airway bill for the first shipment to Target, signed December 20, 2017, which indicates that the Squeezamals products actually shipped to the United States on Flight No. KZ202 on December 21, 2017); *Brownlee Referral Dec.*, Ex. B, *Dkt. No. 61-2* (the first invoice for the Squeezamals Products indicating that they were estimated to ship on or about December 27, 2017); *Wigder Dec., Ex. 18, Dkt. No. 55-18* (first invoice date for unicorn of March 14, 2018, which confirms that unicorn would have shipped to Target prior thereto).

43. BHTBC asserts that the unicorn had a date of first publication (February 27, 2018) which

was later than December 2017 date of the other registrations, including the Narwhal. *See e.g.*, Exhibits 10 and 11.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

44.  In its copyright application for the Unicorn, BHTBC did not inform the Copyright Office that the unicorn was related to any prior published works, as shown by the contents of the issued registration which does not list any such information. Exhibit 11.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

45.  In its copyright application for the Unicorn, BHTBC did not inform the Copyright Office that the unicorn was related to any prior registrations, as shown by the contents of the issued registration which does not list any such information. Exhibit 11.

**PLAINTIFF'S RESPONSE:** *UNDISPUTED*.

**PLAINTIFF'S RULE 56.1 STATEMENT OF ADDITIONAL MATERIAL UNDISPUTED FACTS**

46.  Plaintiff's U.S. Copyright Registration Nos.: VA 2-111-231, covering the Squeezamals Series 1 White Cat; VA 2-111-208, covering the Squeezamals Series 1 Monkey; VA 2-111-230, covering the Squeezamals Series 1 Penguin; VA 2-112-188, covering the Squeezamals Series 1 Unicorn; VA 2-140-693, covering the Squeezamals Series 1 Teal Cat; VA 2-140-694, covering the Squeezamals Series 1 Duck; VA 2-140-678, covering the Squeezamals Series 1 Ladybug; VA 2-140-680, covering the Squeezamals Series 1 Pink Owl; VA 2-140-672, covering the Squeezamals Series 1 Bunny; VA 2-140-676, covering the Squeezamals Series 1 Fox; VA 2-140-679, covering the Squeezamals Series 1 Pig; and VA 2-140-698, covering the Squeezamals Series 1 Narwhal (collectively, "Squeezamals Works", and "Squeezamals Registrations", respectively) all issued before or within five

years after first publication of each of the Squeezamals Works. *Dkt. Nos. 117-3-117-5; see also* Defendants' SMUF, Ex. 11.

47. As evidenced by the Effective Date of Registration listed on all the Squeezamals Registrations, Plaintiff filed all of the applications covering the three-dimensional sculptural Squeezamals Works (collectively, the "Squeezamals Applications") in or about July 2018.

48. The Squeezamals Series 1 White Cat, Squeezamals Series 1 Monkey, Squeezamals Series 1 Penguin, the Squeezamals Series 1 Teal Cat, the Squeezamals Series 1 Duck, the Squeezamals Series 1 Ladybug, the Squeezamals Series 1 Pink Owl, the Squeezamals Series 1 Bunny, the Squeezamals Series 1 Fox, the Squeezamals Series 1 Pig, and the Squeezamals Series 1 Narwhal (collectively, the "Series 1 Squeezamals Launch Products") were first in store in Target in January 2018. Defendants' SMUF, Ex. 7, Clark Dep. 23:7-24:25.

49. The Squeezamals Series 1 Unicorn was released by Plaintiff after the Series 1 Squeezamals Launch Products. *See Wigder Dec.*, Ex. 18, *Dkt. No. 55-18*.

50. Plaintiff's invoice to Target pertaining to the Series 1 Squeezamals Launch Products is dated January 1, 2018, and indicates a ship date of December 27, 2017. *Brownlee Referral Dec.*, Ex. B, *Dkt. No. 61-2* (marked BHTBC000940).

51. The air waybill pertaining to the shipment of the Series 1 Squeezamals Launch Products for Target is signed December 20, 2017, and indicates it was on Flight KZ202 on the 21st. *Wigder Dec.*, Ex. 21, *Dkt. No. 55-21* (marked BHTBC001761).

52. The Squeezamals Registrations for the Series 1 Squeezamals Launch Products all state that the date of publication for each of those Squeezamals Works was December 21, 2017. *See*

*Dkt. Nos. 117-3-117-5*; *see also* Defendants' SMUF, Ex. 11.

53. The Squeezamals Registration for the Squeezamals Series 1 Unicorn states that said Squeezamals Work was published on February 27, 2018. *See Dkt. Nos. 117-3-117-5*; *see also* Defendants' SMUF, Ex. 11.

54. The first invoice date pertaining to the Squeezamals Series 1 Unicorn is March 14, 2018 (*Wigder Dec.*, Ex. 18, *Dkt. No. 55-18*), which demonstrates that the Squeezamals Series 1 Unicorn shipped prior to that date (*see, e.g.*, *Brownlee Referral Dec.*, Ex. B, *Dkt. No. 61-2* and *Wigder Dec.*, Ex. 21, *Dkt. No. 55-21*) (invoice date postdates shipment date).

Dated: January 12, 2024                                 Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY:    /S Kerry B. Brownlee
         Kerry B. Brownlee (KB 0823)
         kbrownlee@ipcounselors.com
         Jason M. Drangel (JD 7204)
         jdrangel@ipcounselors.com
         Grace Rawlins
         grawlins@ipcounselors.com
         60 East 42nd Street, Suite 1250
         New York, NY 10165
         Telephone: (212) 292-5390
         Facsimile: (212) 292-5391
         *Attorneys for Plaintiff*
         *Beverly Hills Teddy Bear Company*