UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY HILLS TEDDY BEAR COMPANY<br><br>   Plaintiff,<br><br>v.<br><br>BEST BRANDS CONSUMER PRODUCTS, INC., and BEST BRANDS SALES COMPANY, LLC<br><br>   Defendants. | Civil Action No.:<br><br>1:19-cv-3766 (AS)<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT BEST BRANDS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF COPYRIGHT INVALIDITY AND
REFERRAL TO THE REGISTER OF COPYRIGHTS**

Morris E. Cohen
Lee A. Goldberg
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 3rd Floor
New York, New York 10019
(646) 380-2087 (phone – main)
(646) 380-2084 (phone – direct)
(646) 514-2123 (fax)
MCohen@GoldbergCohen.com
LGoldberg@GoldbergCohen.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii
TABLE OF EXHIBITS ......................................................................................................... v
INTRODUCTION ................................................................................................................. 1
ARGUMENT ......................................................................................................................... 1
I.  BHTBC SUBMITTED FALSE INFORMATION TO THE COPYRIGHT OFFICE ....... 1
    A.  It Submitted False Publication Dates ..................................................................... 1
    B.  It Withheld Material Information from the Unicorn Registration ........................ 3
    C.  Plaintiff Does Not Have Supplemental Registrations ............................................ 5
II.  IT KNEW THE INFORMATION WAS FALSE OR WAS WILLFULLY BLIND ......... 5
III.  A REFERRAL TO THE COPYRIGHT OFFICE IS WARRANTED .............................. 8
IV.  THE COPYRIGHT APPLICATIONS SHOULD BE INVALIDATED .......................... 8
V.  THE PRESUMPTION OF VALIDITY IS ALSO VITIATED ......................................... 9
VI.  BEST BRANDS' MOTION ON THE DEVELOPED RECORD IS PROPER ............... 10
CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Carol Barnhart Inc. v. Econ. Cover Corp.*, 594 F. Supp. 364 (E.D.N.Y. 1984) ........................... 9

*Dr. Seuss Enters., L.P. v. ComicMix LLC*, 2018 U.S. Dist. LEXIS 84986 (S.D. Cal. May 21, 2018) ................................................................................................................... 4, 5

*Famolare, Inc. v. Edison Bros. Stores, Inc.*, 1979 U.S. Dist. LEXIS 13349 (N.D. Ill. Mar. 30, 1979) ........................................................................................................................ 3

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 2017 U.S. Dist. LEXIS 174466 (C.D. Cal. Mar. 24, 2017) ("*Gold Value I*") ................................................................ 2

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC,* 2023 U.S. Dist. LEXIS 62711 (C.D. Cal. Mar. 17, 2023) ("*Gold Value II*") ............................................................. 6

*Grigson v. Lopez*, 2023 U.S. Dist. LEXIS 83277 (C.D. Cal. May 10, 2023) ................................ 6

*HealtheState, LLC v. United States*, 160 Fed. Cl. 91 (2022) ...................................................... 10

*LADS Network Sols., Inc. v. Agilis Sys., LLC*, 2022 U.S. Dist. LEXIS 176006 (E.D. Mo. Sep. 28, 2022) ........................................................................................................................ 7

*Lennar Homes Tex. Sales & Mktg., Ltd. v. Perry Homes, LLC,* 117 F. Supp. 3d 913 (S.D. Tex. 2015) ....................................................................................................................... 4

*Lieb v. Korangy Publ'g, Inc.*, 2022 U.S. Dist. LEXIS 69510 (E.D.N.Y. Apr. 14, 2022) ........... 6, 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................................... 8

*Neman Bros. & Assoc. v. Interfocus, Inc.*, 2023 U.S. Dist. LEXIS 2143, 2023 WL 115558, at *10 (C.D. Cal. Jan. 4, 2023) .................................................................................. 7

*Oliver v. Meow Wolf, Inc.*, 2022 U.S. Dist. LEXIS 152865 (D.N.M. Aug. 25, 2022) .................. 6

*PalatiumCare, Inc. v. Notify LLC*, 2023 U.S. Dist. LEXIS 64802 (E.D. Wis. Apr. 13, 2023) .. 6, 7

*Softketeers, Inc. v. Regal W. Corp.*, 2022 U.S. Dist. LEXIS 232122 (C.D. Cal. Dec. 22, 2022) ... 6

*The Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302 (S.D.N.Y. 2019) ............... 9

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941 (2022). ................................ 6, 7

**Statutes**

17 U.S.C. §101 ................................................................................................................................ 2
17 U.S.C. **§**409(9). ......................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................................... 10
Fed. R. Civ. P. 56(g) .................................................................................................................... 11

**Treatises**

William F. Patry, Patry on Copyright § 17:112 (2015). .............................................................. 5

**Other Authorities**

Copyright Compendium 3rd §1008.2 (Sept. 29, 2017)......................................................................... 4
Copyright Compendium 3rd §1802.9(G) (Sept. 29, 2017) ............................................................... 6
Copyright Compendium 3rd §1906.1 (Sept. 29, 2017)................................................................ 2, 3
Copyright Compendium 3rd §1906.3 (Sept. 29, 2017)................................................................ 1, 3

## TABLE OF EXHIBITS

Exhibit 1    Copyright Compendium 3rd §1906.1 (2017) (highlighted)

Exhibit 2    BHTBC emails regarding physical samples for Target meeting

## INTRODUCTION

BHTBC has admitted that it sent samples to its sales representative to show retailer Target (which is publication), who then showed them to Target for it to sell (again publication). The images of record also show that the unicorn is based on prior published works, despite BHTBC's frivolous contrary contention. BHTBC disregards Judge Woods' ruling,[1] but it cannot deny the facts from its own records. Nor can its experienced counsel who filed the applications claim ignorance of the law. Thus, summary judgment is warranted that there are knowing inaccuracies in the registrations; that they cannot be presumed valid; and that a referral to the Copyright Office ("USCO") is required.[2] The USCO rejects applications under circumstances like these, so invalidation of the registrations will be in order after the USCO's response.

## ARGUMENT

### I. BHTBC SUBMITTED FALSE INFORMATION TO THE COPYRIGHT OFFICE

#### A. It Submitted False Publication Dates

BHTBC (Dkt. 299) does not deny that Target placed an order and reduced it by 80%, all by November 27th. Dkt. 301 at 7 ¶23. Nor does it dispute the cited law (Dkt. 292 at 8-9) that an offer for sale is publication, and that a correct publication date is statutorily required.

To try to evade this, it clings to §1906.3 of the Compendium. Dkt. 299 at 11-12. It conveniently ignores the top of the page. Namely, "[p]ublication occurs when … samples are offered to sales representatives for the purpose of selling those works to wholesalers and

---

[1] BHTBC alleges "utterly irrelevant, extraneous facts, innuendo, and flagrant accusations, including unsupported allegations of 'concealment'" (Dkt. 299 at 5). But Judge Woods *explicitly* ruled that there was concealment. Dkt. 202 at 4.

[2] BHTBC's comments that Best Brands is "deliberately seeking to delay this action even further, thereby needlessly racking up legal expenses" is illogical. Dkt. 299 at 5. Best Brands is attempting to put an end to this baseless matter without having to spend the enormous attorney's fees needed to proceed to trial on a case where the copyrights should not have been issued in the first place.

1

retailers." Ex. 1, Copyright Compendium 3rd §1906.1 (2017).  In October 2017, BHTBC shipped 8" and 3.5" samples (Ex. 2) to Neil Kohler, its sales representative who oversees sales to Target (Dkt. 293-15 at 48:4-18), for the purpose of selling Target (Ex. 2).  By itself, this constituted publication.  *Compendium id.; accord, Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 2017 U.S. Dist. LEXIS 174466, at *18 (C.D. Cal. Mar. 24, 2017) ("*Gold Value I*").

Kohler's sales meeting the next Thursday was *also* a publication. As its CEO Socha admits, BHTBC showed the Squeezamals to retailer Target, and Target placed an order for them, to sell them to customers.  Dkt. 293-3 at 107:9 - 109:8.  Legally, that is publication.[3]

BHTBC averred that it shipped the products a few months later.  Dkt. 293-3 at 13, 107:8-21.  Since it claims to have shipped them on December 21st (Dkt. 299 at 14),[4] the offer for sale was months earlier.  The testimony and documents are all consistent.

BHTBC tries to evade this by alleging that the toys did not "exist" yet (Dkt. 299 at 11). That is false.  It had physical samples (Ex. 2), which Kohler showed Target, as Socha admitted. BHTBC showed copies that existed.  Compendium 3rd §1906.3.  It was not pitching a vague idea.

"Costing" is another evasion.  When BHTBC showed samples, it was an offer for sale – Target even placed an order.  Later, Target reduced its order by 80% because of price (Dkt. 293-

---

[3] 17 U.S.C. §101 (BHTBC's "offering to distribute copies [to Target] … for purposes of further distribution [by Target to customers] **…** constitutes publication."  As *Urban Textile* noted, "Urban argues that its actions do not rise to the level of 'publication' … [but] Existing and prospective customers seek out Urban's design for the sole purpose of acquisition; they walk in to Urban's studio or request to view their designs with the intent of reselling it. … Urban is giving customers not only the ability to view the designs, but also the ability to acquire them. Urban is showing a willingness to enter into a bargain, such that any reasonable customer would understand the product as being offered to him or her for sale. As such, the Court finds that Urban's actions constitute an offer to distribute the Subject Design for the purpose of further distribution, and thus publication of such." *Urban Textile, Inc. v. Cato Corp.*, 2016 U.S. Dist. LEXIS 193921, at *11-12 (C.D. Cal. Apr. 1, 2016).

[4] Although BHTBC relies on its alleged shipment dates, it cites no law that a shipment is publication – because it is not.  The shipment date is plainly later than the offer for sale date – BHTBC offered the products for sale, took orders on those products, and then shipped them.

3 at 8, 102:3-5), so BHTBC tried to reduce the price. Trying to lower costs, to decrease price, does not change the prior offer for sale.[5] Indeed, they still had 20% of the original order in hand.

Similarly, sales under the UCC is a red herring. An *offer for sale* is a publication, so the law regarding completed sales is irrelevant.

As to the "2D vs. 3D" argument, it is misleading. BHTBC shipped 3D samples to Kohler, <u>and put tags on these 8" and 3.5" physical items</u> (Ex. 2).[6] BHTBC identifies no changes by designer Tijo thereafter. On the contrary, BHTBC stated that there is no difference between Tijo's 2D images and the 3D versions, and that translating from the 2D to 3D products was immaterial to the registrations (Dkt. 60 at 10-11). It is bound by those admissions.

In short, the December "publication date" is false. BTHBC provides no basis for it, other than its alleged "shipment" date, which is immaterial. The shipment to Kohler was a publication, and the Target meeting was a further publication, so BHTBC's alleged defense fails. It provides no evidentiary basis for the alleged February 27, 2018 "publication date" either.

      **B.**     **It Withheld Material Information from the Unicorn Registration**

BHTBC claims the unicorn does not contain "appreciable" material from prior works. Dkt. 299 at 18. That is frivolous. The images show a high overlap. *See e.g.*, Dkt. 293-12.

---

[5] BHTBC seems to argue that **all** copies must have been manufactured when the offer is made. That is wrong. Under BHTBC's logic, if a buyer orders a million copies, it is not a "publication" unless every copy exists at the time of the order. If that were true, there would never be a publication as copyright owners would need a metaphysical understanding of what would happen in the future. Rather, "publication occurs when **one or more** copies are offered to … a retailer." Ex. 1, Compendium 3rd §1906.1 (emphasis added). One copy is enough – all future copies need not exist.

    For example, if an author shows a greeting card sample to a retailer to sell to the public, that is an offer for sale. Ex. 1, Compendium 3rd §1906.1 (Ch. 1900, p.6). She does not have to print every card first for the cards to be "available for distribution." The sample is enough. And later efforts to decrease the cost to print the cards do not change the existence of the earlier offer for sale.

[6] Before then, BHTBC showed some samples at a trade show in Hong Kong (Dkt. 293-15 at 87:14 – 88:18) in offers for sale to distributors. *Cf.*, *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 1979 U.S. Dist. LEXIS 13349, at *14 (N.D. Ill. Mar. 30, 1979) ("The whole purpose of a [trade] show is to display samples and sell [products]."

As to the law, BHTBC cites several non-binding district court cases. In so doing, it tries to evade the question: namely, whether the Copyright Office would have rejected its application. The USCO's rules expressly require identification of a party's prior published works. They state that: "The U.S. Copyright Office has a longstanding practice of precluding previously published material from a claim in a collective work or derivative work, even if the author of the collective work or derivative work is the author of the previously published material." Compendium 3rd §1008.2 (2017). It identifies many reasons for this requirement. *Id.*

Similarly, the statute requires "in the case of a … derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." 17 U.S.C. §409(9). It does not exempt a party's own preexisting works.

Cases not cited by BHTBC have held the same. *See e.g.*, *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 2018 U.S. Dist. LEXIS 84986, at *11 (S.D. Cal. May 21, 2018); *Lennar Homes Tex. Sales & Mktg., Ltd. v. Perry Homes, LLC,* 117 F. Supp. 3d 913, 925 (S.D. Tex. 2015) ("Even if the registrant owns both the derivative work and the underlying work, § 409(9) still requires disclosure."). As the *Dr. Seuss* case observes, "[t]he purpose of the statute requiring disclosure is better served when disclosure is made whether the previously published material was copyrighted and/or written by the author or by a third party." *Id.* Likewise, the "Compendium Glossary … defin[es] 'unclaimable material' as including '(i) previously published material; (ii) previously registered material;' … Notably, this does not distinguish between previously published material owned by the author or by a third party." *Id.* at *11 n.6.

Likewise, a leading treatise states that it is "'incorrect that applications need not disclose in Space 6 [of the copyright application] that the work is a derivative work if the preexisting

4

work is also owned by the applicant.'  Indeed, as explained in this treatise: 'The purpose of disclosure on Space 6 is twofold: to permit the Copyright Office to determine whether the new material is sufficient to support the derivative registration, and to place on the public record a clean separation of the original, preexisting work from the derivative work so that copyright in the original work is not impermissibly extended through successive registrations for undisclosed variations.'" *Id.* at *10, quoting William F. Patry, Patry on Copyright § 17:112 (2015).

Similarly, the USCO has explained to the courts that it will reject an application if it learns of withheld information that a work is derivative of prior published works, including the author's own material.  Dkt. 293-18, Geospatial Decision p.15.  *See also, id*. pgs. 11-12.

BHTBC was obligated to abide by the USCO's rules when it filed its application.  It has no excuse for withholding material information required by the Copyright Office.

   **C.** **Plaintiff Does Not Have Supplemental Registrations**

As to a "supplemental registration" to correct the inaccuracies, BHTBC never filed for one.  Also, the USCO's policy is that it may decline to issue a supplementary registration if there is litigation involving a registration; or it seems likely the proposed change would be directly at issue in the litigation; or the proposed change may confuse or complicate a pending dispute; all of which are present here.  Compendium 3rd §1802.9(G) (2017).  Also, BHTBC did not sue on a supplemental registration, it sued on the original registrations, so its argument is of no moment.

**II.** **IT KNEW THE INFORMATION WAS FALSE OR WAS WILLFULLY BLIND**

Faced with its proven knowledge, BHTBC claims the inaccuracies were "unknown," or mere excusable errors of law.  Dkt. 299 at 19-21.  That is wrong.

Factually, they were not "unknown."  BHTBC's executives knew of their *extensive* offers for sale.  Dkt. 292 at 13-14.  This was no secret to them.  They also knew that the unicorn was

5

based on prior works. *See e.g.*, Dkt. 293-12. They were not ignorant of their own products. *Id.*

Legally, the Supreme Court has held that "courts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law. We have recognized in civil cases that willful blindness may support a finding of actual knowledge." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 948 (2022). The applicant's experience with copyright law and the complexity of the rule are both relevant. *Id.*

As to applicant's experience, "Plaintiff offered no admissible evidence to support its alleged ignorance of the law" here.[7] On the contrary, it knew the law: experienced counsel[8] applied for the copyrights (Dkt 293-11), the same counsel on its brief (Dkt. 299).[9] *Softketeers, Inc. v. Regal W. Corp.*, 2022 U.S. Dist. LEXIS 232122, at *57 (C.D. Cal. Dec. 22, 2022) ("Claiming ignorance … rings hollow … when Defendants are sophisticated parties advised by counsel."). That BHTBC had counsel but concealed the facts anyway makes its actions worse.

As to the rule's "complexity," the Compendium expressly states that providing samples to sales representatives to sell retailers, or offering them to retailers for further sale, are each publication. *Gold Value II*, 2023 U.S. Dist. LEXIS 62711 at *38 ("application of the Copyright

---

[7] *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC,* 2023 U.S. Dist. LEXIS 62711, at *37 (C.D. Cal. Mar. 17, 2023) ("*Gold Value II*"); *PalatiumCare, Inc. v. Notify LLC*, 2023 U.S. Dist. LEXIS 64802, at *18-19 (E.D. Wis. Apr. 13, 2023) ("this bare assertion asks the Court to accept without evidence" that PalCare made a good-faith mistake of law or fact).

[8] *Lieb v. Korangy Publ'g, Inc.*, 2022 U.S. Dist. LEXIS 69510, at *43 (E.D.N.Y. Apr. 14, 2022) ("Unlike the registrant in Unicolors, Lieb cannot claim that his lack of legal knowledge excuses the failure to provide accurate information."). Moreover, "Plaintiff is a sophisticated entity with substantial experience with litigating claims under the Copyright Act … [and] as shown by this action and the many others filed by Plaintiff, it relies on copyright law to protect its substantial business interests." *Gold Value II*, 2023 U.S. Dist. LEXIS 62711, at *38-39.

[9] *Compare with*, *Oliver v. Meow Wolf, Inc.*, 2022 U.S. Dist. LEXIS 152865, at *17 (D.N.M. Aug. 25, 2022) ("it is likely that [the legal principle] confused Plaintiff when she applied for the TXu Registration without counsel's assistance.") *Grigson v. Lopez*, 2023 U.S. Dist. LEXIS 83277, at *10 (C.D. Cal. May 10, 2023) ("Here, there is nothing in the pleadings to suggest that Plaintiff submitted the copyright registration … through an attorney.").

6

Act is not complex" as to publication).  The principles are basic.  *See also,* Dkt. 292 at 8-9.  The same goes for the unicorn – the copyright application defined (Dkt. 293-13 at 3, §6) and requested the information (*id.* at 5 §6), and the Compendium requires it (*supra,* Section I.B), but BHTBC withheld it.  There were ample resources on the pertinent rules.[10]  Most importantly, it cannot be in dispute that BHTBC's experienced counsel understands these rules.

Even the plain meaning of "offers for sale" should have flagged the issue,[11] particularly considering BHTBC's extensive offers to customers.  Similarly, BHTBC's attempt to dispute knowledge (Dkt. 299 at 21) that the unicorn was related to prior published works is simply frivolous.  As shown by the images (*see*, Dkt. 293-12), this was well-known to BHTBC.  It was also well-known to its counsel who applied for the Narwhal and Teal Cat, and then applied for the Unicorn only days later.  *Compare,* 293-11 at 91 (Narwhal filed July 19, 2018) and 293-11 at 36 (Teal Cat filed July 19, 2018), *with* Dkt. 293-11 at 28 (Unicorn filed July 25, 2018).

In short, BHTBC was "actually aware of, or willfully blind to, legally inaccurate information."  *Unicolors*, 142 S.Ct. at 948.[12]  Later events only confirm this.  BHTBC concealed both the Target order and the 80% reduction through the close of discovery here.  Dkt. 91 ¶¶35-40.  Those details only emerged after GennComm contacted Best Brands.  *Id.*  Even then, BHTBC tried to obstruct inquiry into the specifics when its CEO Socha was deposed in June 2023.  *See,* Dkt. 293-3 at 103:13 – 106:13.  BHTBC's bad faith is apparent.

---

[10] *Lieb, id* at *40-41 ("The clarity of these [Copyright Office] resources [available to Plaintiff], coupled with the simplicity of the information that [it] was asked to provide, makes this a case where only willful blindness to the law can explain the inaccuracy at issue."); *Neman Bros. & Assoc. v. Interfocus, Inc.*, 2023 U.S. Dist. LEXIS 2143, 2023 WL 115558, at *10 (C.D. Cal. Jan. 4, 2023) (the "publicly accessible Compendium provided guidance" on the issue at bar); *PalatiumCare,* 2023 U.S. Dist. LEXIS 64802 at *18-19 (same).

[11]  *Healthestate, LLC v. United States*, 168 Fed. Cl. 624 (2023).

[12]  *See also*, *LADS Network Sols., Inc. v. Agilis Sys., LLC*, 2022 U.S. Dist. LEXIS 176006, at *19 (E.D. Mo. Sep. 28, 2022) (Under *Unicolors*, "mistakes of law knowingly included in a copyright registration application can also render a subsequently issued registration unenforceable.").

7

## III.   A REFERRAL TO THE COPYRIGHT OFFICE IS WARRANTED

Referrals are mandatory when there are knowing inaccuracies (Dkt. 292 at 16 n.7), which BHTBC does not deny (Dkt. 299 at 9-11). It only claims that there are no knowing inaccuracies (*id.* at 11); which is plainly incorrect. Referral further has merit based on prior USCO opinions in similar situations. Dkt. 294-17 at 4 (p.1), Dkt. 293-18 at 15 (p.15).

Also, in view of BHTBC's briefing, Q1 can be more precisely tailored as follows:

Question 1: Would the Register of Copyrights have refused registration of the First Set of Applications-in-Suit, which list a December 2017 first date of publication, if it had known that samples of the works were sent in October 2017 to BHTBC's sales representative for him to show Target to solicit retail sales, or if it had known that he showed those samples to Target in an October meeting the next week (and that Target then placed an order)?

## IV.   THE COPYRIGHT APPLICATIONS SHOULD BE INVALIDATED

BHTBC's discovery proves the knowing inaccuracies in its registrations, which is grounds for summary judgment on that issue. BHTBC cannot evade *its own evidence* by demanding a jury. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). If the USCO confirms it would have rejected the applications – as per its past opinions (*supra*, Section III) – the registrations should be invalidated (Dkt. 292 at 18 (collecting cases)).

Nor is it "inequitable" to hold BHTBC accountable for violating the Copyright Office's rules, and for submitting false information to the Copyright Office. This is especially so since it is BHTBC's ***recurring*** pattern. BTHTC concealed all evidence regarding the GennComm agreement, which transferred copyright ownership. It concealed all evidence regarding the ongoing litigations with GennComm, in which it made admissions directly relevant to this case. It concealed all evidence regarding the Target order, and later reduction thereof. There are also

8

ample grounds to find that it concealed evidence regarding third-party designs that it based its designs on. Dkt. 260 at 2. And, disturbingly, it almost "got away" with concealing the evidence herein regarding the knowing inaccuracies, if not for the fact that third-party GennComm contacted Best Brands's counsel on July 14, 2020 to alert us to BHTBC's bad faith. Dkt. 90 at 8. Even after Best Brands obtained the documents, BHTBC tried to obstruct inquiry into the facts during the deposition of its CEO (Dkt. 293-3 at 103:13 – 106:13). That was contrary to law, as recognized by this Court's Rules.[13] Based on the facts and recurring conduct, BHTBC's registrations should be invalidated for providing knowingly false information to the Copyright Office. That is required by law, is equitable, and is the only fair outcome.

## V. THE PRESUMPTION OF VALIDITY IS ALSO VITIATED

"Plaintiff misapprehends the law. 'It is clear . . . that a certificate of registration creates no irrebuttable presumption of copyright validity. … Moreover, the evidentiary weight given to the certificate is within the discretion of the Court.'" *Carol Barnhart Inc. v. Econ. Cover Corp.*, 594 F. Supp. 364, 367 (E.D.N.Y. 1984) (summary judgment ruling, in court's discretion, that presumption of validity was overcome) (citations omitted), *aff'd*, 773 F.2d 411, 414 (2d Cir. 1985). It is basic that summary judgment can be granted on a part of a defense (Fed. R. Civ. P. 56(a)), and that the court "may enter an order stating any material fact … is not genuinely in dispute" (*id.* 56(g)). There is no reason why the warts in BHTBC's case are an exception. The presumption is a legal issue and "[s]ummary judgment is now a recognized means of disposing of issues in copyright infringement litigation." *Carol Barnhart*, 594 F. Supp. at 367. Registrations with proven inaccuracies cannot be entitled to a presumption of validity.

---

[13] Your Honor's Individual Rule 6.A. *See also, The Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302 (S.D.N.Y. 2019) (noting that use of objections to obstruct a deposition can be sanctionable).

## VI.  BEST BRANDS' MOTION ON THE DEVELOPED RECORD IS PROPER

BHTBC falsely alleges that the record is "largely the same" (Dkt. 299 at 15).  But BHTBC previously concealed the Target order, which emerged after supplemental discovery opened in December 2020 (Dkt. 124).  Socha was then deposed thereon in June 2023 (Dkt. 293-3).  Thus, Judge Woods could not have ruled on this 3 years earlier in June 2020 (Dkt. 68).  In fact, his ruling was *without prejudice* to developing a further record (Dkt. 68 at 14-15), which further record is the basis for this motion.

BHTBC also asserts meritless procedural objections.  When Best Brands told Judge Woods it wanted to move for summary judgment on these issues (Dkt. 258 at 1, 3), he bifurcated briefing to address standing first, since it is a threshold issue (Dkt. 262 at 15:15-25).  In the recent hearing before Your Honor, Best Brands cited its request to Judge Woods (Dkt. 258), and this Court approved the filing of this motion.  As originally planned, the motion includes both referral and invalidity sections, to advance judicial efficiency.  It shows referral is warranted, and avoids delays from further briefing down the road once the Copyright Office issues its decision.

In summary, the ample evidence in Best Brands' motion shows that it is in good faith,[14] and merits favorable judicial action.

## CONCLUSION

BHTBC's own evidence warrants summary judgment that there are knowing inaccuracies in Plaintiffs' registrations, and that the registrations cannot be afforded a presumption of validity.  The inaccuracies also require a referral to the Copyright Office.  Upon receipt of the Copyright Office's response, it is expected that invalidation of the registration will be in order.

---

[14] *HealtheState, LLC v. United States*, 160 Fed. Cl. 91, 96 (2022) ("In light of the evidence submitted in support of [Defendant's] motion, the Court is not concerned that [Defendant] is seeking referral to the Register in bad faith.")

Dated:  January 29, 2024	Respectfully submitted,

	*/s/ Morris E. Cohen*

	Morris E. Cohen
	Lee A. Goldberg
	GOLDBERG COHEN LLP
	1350 Avenue of the Americas, 3rd Floor
	New York, New York 10019
	(646) 380-2087 (phone – main)
	(646) 380-2084 (phone – direct)
	(646) 514-2123 (fax)
	LGoldberg@GoldbergCohen.com
	MCohen@GoldbergCohen.com

	*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that on January 29, 2024, a true and correct copy of the foregoing was served on counsel of record via the Court's ECF system.

Dated: January 29, 2024                      */s/ Morris E. Cohen*

                                                                  Morris E. Cohen